UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DR. JAMES J. TIESINGA *ex rel.* UNITED STATES GOVERNMENT, and DR. JAMES J. TIESINGA<br><br>Plaintiffs,<br><br>-against-<br><br>DIANON SYSTEMS, INC. and ETHEL JANEGA<br><br>Defendants. | Case No. 302 CV 1573 (DJS)<br><br><br><br>December 28, 2004 |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Defendants DIANON Systems, Inc. and Ethel Janega (hereafter "Defendants") hereby respond to the Motion to Compel ("Plaintiff's Motion") filed by Plaintiff Dr. James J. Tiesinga on or about December 7, 2004. In his Motion, Plaintiff contends that he is entitled to discovery of all claims of disability discrimination alleged by DIANON employees since 1996. It is Plaintiff's position that, for example, there would be some relationship between (i) a claim in 1996 that DIANON failed to accommodate a janitor with a broken wrist by providing him with an ergonomic mop, and (ii) Dr. Tiesinga's allegation that he was harassed and constructively discharged in 2002 because he was HIV-positive.

Clearly, Plaintiff's Motion seeks discovery that is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiff's Motion should be denied.

NE:127057v1

**BACKGROUND**

Plaintiff commenced the instant case by filing, on or about September 6, 2002, a 19-Count Complaint alleging claims for (1) Hostile Work Environment Harassment (due to his positive HIV status) under the Connecticut Fair Employment Practices Act ("CFEPA"; C.G.S. sec. 46A-51 et seq.); (2) Retaliation under CFEPA; (3) Hostile Work Environment Harassment (due to sexual orientation) under the Connecticut Fair Employment Practices Act ("CFEPA'); (4) a second count of Retaliation under CFEPA; (5) Violation of the federal Rehabilitation Act; (6) a cause of action that is currently maintained under seal; (7) Negligent Supervision; (8) negligent retention; (9) False Imprisonment; (10) Intentional Infliction of Emotional Distress; (11) Negligent Infliction of Emotional Distress; (12) a second count of Negligent Infliction of Emotional Distress; (13) Constructive Discharge; (14) a second cause of action that is currently maintained under seal; (15) Invasion of Privacy; (16) Intentional Infliction of Emotional Distress against Ethel Janega; (17) a third count of Retaliation under CFEPA; (18) Coercion of Discriminatory Practice under CFEPA; and (19) Defamation. (See Complaint.)

Plaintiff's Complaint was maintained under seal, and thus was not immediately served on Defendants. On July 30, 2004, this Court granted Plaintiff permission to serve his Complaint on Defendants. (See Order dated July 30, 2004.) The Complaint was then served on Dianon on or about September 16, 2004, and served on Ms. Janega on or about September 17, 2004. (See Certification of Michael D. Thompson, Esq. (hereafter "Thompson Cert."), para. 3 & Ex. A.) Four days later, Plaintiff served Defendants with an Order from the Honorable Dominic J. Squatrito, stating that the parties could engage in discovery prior to planning meeting required by F.R.Civ.P 26(f). (Thompson Cert., para. 4 & Ex. B.) Plaintiff also served his First Request for Production of Documents & Things on Defendants. (Plaintiff's Motion, p.2.)

Subsequently, Defendants requested that Plaintiff's Counsel consent to a short extension of time for Defendants to file their Answer. (Thompson Cert., para. 5.) Plaintiff's Counsel refused to consent to such an extension. (Thompson Cert., para. 5.) Indeed, when Defendants sought an extension from the Court, Plaintiff filed a Motion for Default Judgment, asserting that it was vital that the case proceed immediately because of Plaintiff's HIV positive status (despite the fact that Plaintiff's Counsel had waited six weeks to serve the Complaint). (Thompson Cert., para. 5.)

Defendants then answered the Complaint and served their responses to Plaintiff's discover requests, including responses to Requests No. 7 and No. 8 upon which Plaintiff now bases his motion to compel. (See Plaintiff's Motion, Exhibit B.) Request No. 7, and Defendant's Response thereto, reads as follows:

> **Request No. 7**
>
> For the time period January 1, 1996 to the present, any and all documents that evidence and/or relate to any complaint made to the Company regarding the (alleged) occurrence of employment discrimination.
>
> **RESPONSE:**
>
> Defendant object to Request No. 7 on the grounds that it is vague, ambiguous, overbroad, not reasonably calculated to lead to the discovery of admissible evidence and seeks information subject to the attorney-client and/or attorney work product doctrine. Subject to and without waiver of the foregoing objections, Defendant state that it is not aware of the existence of any responsive documents pertaining to complaints of discrimination based on sexual orientation or HIV positive status arising out of the company's facility in Stratford, CT in the past five (5) years.

Request No. 8, and Defendant's Response thereto, reads as follows:

> **Request No. 8**
> Any and all documents that evidence and / or relate to any investigation conducted by, or on behalf of, DIANON in response to any complaint of employment discrimination made to the Company during the period January 1, 1996 to the present.

**RESPONSE:**

Defendants object to Request No. 8 on the grounds that it is vague, ambiguous, overbroad, not reasonably calculated to lead to the discovery of admissible evidence and seeks information subject to the attorney-client and/or attorney work product doctrine. Subject to and without waiver of the foregoing objections, Defendant will produce documents, if any, pertaining to complaints of discrimination based on sexual orientation or HIV positive status arising out of the company's facility on Stratford, CT in the past five (5) years.

Despite Defendants' appropriate responses, Plaintiff now moves this Court for an Order compelling Defendants to produce all claims of disability discrimination (rather than simply those pertaining to HIV positive status) over an eight (8) year period. Because Plaintiff's request would cover widely divergent medical conditions arising over an excessive period of time, said Motion should be denied.

### PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE IT IS OVERBROAD AS TO BOTH SUBJECT MATTER AND TIME.

**A.    Defendants Did Not Waive Their Objections.**

As noted above, Plaintiff served Defendants with an Order from the Honorable Dominic J. Squatrito, stating that the parties could engage in discovery prior to planning meeting required by F.R.Civ.P 26(f). (Thompson Cert., para. 4 & Ex. B.) However, Judge Squatrito's Order did not state that Defendants could be required to answer said discovery before they had even answered the Complaint (as Plaintiff contends), nor is there any logic to this proposition. Accordingly, Defendants did not waive their objections to Plaintiff's discovery requests.

B.  **Plaintiff's Demand for All Claims of Disability Discrimination is Overbroad.**

   (1)  The ADA and the Connecticut Fair Employment Practices Act Cover a Vast Array of Health Conditions and Prohibited Conduct; Accordingly, Claims for Disability Discrimination (Unlike Claims for Other Types of Discrimination) are Not Probative of Each Other.

In his Motion, Plaintiff relies entirely on caselaw holding that, in the course of litigation, a plaintiff may obtain discovery regarding complaints of the "same type" as that of which said plaintiff complains. Plaintiff fails to note that Defendants have never disputed this proposition. Indeed, Defendants have agreed to produce documents regarding other claims of sexual orientation discrimination. Defendants have noted, however, that Plaintiff attempts to impose an overly-broad understanding of what constitutes the "same type" of discrimination in the context of disability discrimination. While Plaintiff asserts that all claims for "disability discrimination" are of the "same type," that contention is belied by the clear language of the relevant statutes.

For example, under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" (or a record of such an impairment, or being regarded as having such an impairment). 42 U.S.C. 12102(2). Conversely, the Connecticut Fair Employment Practices Act defines the term "physically disabled" to encompass "any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." C.G.S. Sec. 46A-51(15). Accordingly, an act that constitutes "disability discrimination" under one statute may not constitute "disability discrimination" under another statute.

Moreover, disability discrimination statutes encompass an array of prohibited conduct far wider than that addressed by statutes pertaining to race, gender or age discrimination. The ADA

specifically recognizes this fact, stating that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. sec. 12101(a)(5) (emphasis added). Indeed, while the instant litigation arises from Plaintiff's alleged constructive discharge, the large percentage of ADA litigation arises from "discrimination" of an entirely different "type", pursuant to the ADA's directive that "the term 'discriminate' includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. sec. 12112(b)(5)(A). Accordingly, Plaintiff's demand for all complaints of disability discrimination would require production of requests for accommodation. However, it is clear that said complaints are of a very different "type" than Plaintiff's complaint regarding his alleged constructive discharge.

    (2)    Numerous Courts Have Recognized that Claims of Disability Discrimination by Different Individuals Have Little in Common with Each Other.

Moreover, "disability discrimination" covers an extensive of array of health conditions which have little or no relationship to each other (thereby differentiating said discrimination from other types of discrimination).[1]  Indeed, "there are spectrums of physical and mental

---

[1] Plaintiff does cite to Bolia v. Mercury Print Productions, Inc., 2004 U.S. Dist LEXIS (W.D. N.Y. October 28, 2004) and Mitchell v. National Railroad Passenger Corp., 208 F.R.D. 455 (D.D.C. July 15, 2002), which involve plaintiffs who asserted claims for disability discrimination. However, said claims were not the subject of the dispute in Bolia. Furthermore,

abilities that range from superlative to minimal or nonfunctional." *Sharing the Dream: Is the ADA Accommodating All?*, U.S. Commission on Civil Rights, October 2000. The courts have not opined on how the scope of discovery is impacted by the breadth of the disability discrimination laws. However, in the context of class certification, several courts have ruled that the discrimination claims of individuals with different alleged disabilities have little in common with each other.

For example, in <u>Lintemuth v. Saturn Corp.</u>, 1994 WL 760811, 3 A.D. Cases 1490 (M.D.Tenn., August 29, 1994) (attached hereto as Exhibit 1) <u>report and recommendation approved</u> 1994 WL 76123, 3 AD Cases 1490 (M.D. Tenn. 1994), the Magistrate Judge recommended against certifying a class of allegedly-disabled employees. The <u>Lintemuth</u> Court found that, based on the individualized nature of disability discrimination claims, the potential class members could not establish the "interwoven" requirements of "commonality" and "typicality" required for class certification.

The District Court first noted that "[t]he named plaintiffs suffer from a variety of medical conditions ranging from spinal related back injuries to carpal tunnel syndrome." 1994 WL 760811 at * 4. The District Court then went on to state that a class should not be certified based on the varying nature of the claims of the alleged class members: "The variance in the named plaintiffs' personal characteristics, coupled with the individualized, case-by-case analysis required by the ADA, renders the proposed representatives in this action unable to establish the necessary elements of the claims of the class in the course of establishing their own.

---

in <u>Mitchell</u>, the Court ruled that complaints involving the same type of discrimination were discoverable, but was never presented with the issue of what constitutes a "type" of disability discrimination.

Furthermore, the highly personal nature of each representative's disability also subjects their claims to unique defenses under the ADA which are significant enough to destroy typicality." 1994 WL 760811 at * 4.

Furthermore, the District Court specifically noted that the distinctive nature of disability discrimination distinguishes said claims from other types of employment discrimination, noting that "none of those actions were brought pursuant to a statute mandating a detailed analysis similar to the individualized approach of the ADA." Indeed, the District Court specifically stated:

> Several statutes have prohibited employment discrimination based on certain individual characteristics. However, a disability, as an individual characteristic, necessarily is more multi-faceted than characteristics such as race or gender. In discrimination cases involving race or gender, differences in individual characteristics among the representatives and class members are seldom significant as long as the common race or gender is shared. However, in discrimination cases based on a disability, the shared characteristic is being disabled, which unlike race and gender, involves varying degrees. Congress recognized this fact by developing the individualized, case-by-case approach utilized by the ADA.

1994 WL 760811 at * 5.

Indeed, the Lintemuth Court stated that, even if the class was narrowed to individuals suffering from the same health condition, the claims of the class members would not have enough in common to support class certification. "For example, even though two Saturn employees may be classified as suffering from a similar disability, it does not necessarily follow that they are subject to the same medical restrictions concerning individual work abilities. One employee classified with a 'back injury' may be restricted from lifting heavy objects, where as another employee with a 'back injury' could be restricted from standing for long periods of

time." 1994 WL 760811 at * 4. The Court concluded that, under such circumstances, there would be crucial differences in the claims of each individual:

> Under the ADA's required case-by-case analysis, the issue of whether the employee can perform, with reasonable accommodation, the essential functions of a desired position with reasonable accommodations would involve litigation highly individualized to each of the employees' particular situations. That is to say, the fact that one of the representative plaintiffs, with a certain type of disability, is able to prove the elements of discrimination under the ADA does not mean that the elements have been satisfied with respect to all members of the class with similar types of disabilities.

1994 WL 760811 at * 4.[2] In sum, the Lintemuth Court concluded that, because of the individualized nature of disability claims, the claims of different purported plaintiffs bore little relationship to each other (unlike claims for employment discrimination on other bases). See also Chandler v. City of Dallas, 2 F.3d 1385, 1396 (5th Cir. 1993) cert. denied 511 U.S. 1011 (1994) ("the determinations of whether an individual is handicapped or 'otherwise qualified' are necessarily individualized inquiries."); Davoll v. Webb, 160 F.R.D. 142, 143 (D.Colo. 1995) (same) affirmed in pertinent part 194 F.3d 1116 (10th Cir. 1999); Sokol v. New United Motor Mnfring., 1999 WL 1136683 (N.D.Cal. September 20, 1999) ("Courts have been cautious to certify disability discrimination claims due to the individualized determinations required by such

---

[2] Other sources have recognized that the scope of the term "disability" is further broadened by the fact that it covers not only individuals with different health conditions but also individuals who, while suffering from the same condition, experience said condition in varying degrees of severity. For that reason, the Commission on Civil Rights has noted that, "[c]ontrary to the general certainty associated with one's race, sex, or age ... what constitutes a 'disability' under the ADA is an issue which is far from certain." *Sharing the Dream: Is the ADA Accommodating All?*, U.S. Commission on Civil Rights, October 2000 quoting Adam C. Wit, *"Should 'Mitigating Measures' Be Considered in the 'Disability' Analysis under the ADA?,"* Employee Relations Law Journal, vol. 24, no. 1 (Summer 1998), p. 74. (Emphasis added.) Thus, the EEOC itself has recognized that, "[u]nlike Title VII and the ADEA, under which the charging party's status as a member of a protected group is seldom in doubt, coverage is frequently a significant issue in ADA cases." Equal Employment Opportunity Commission, Compliance Manual, *"Threshold Issues,"* (June 6, 2000), p. 12 (emphasis added).

claims.") (Exhibit 2); McCullah v. So. California Gas Co., 10 AD Cases 1438 (Cal.App. 2 Dist., Jul 20, 2000) review denied (October 18, 2000) (Exhibit 3). For the same reasons, Plaintiff's Motion seeking discovery of alleged disability claims beyond any based on HIV positive status should be denied.

B.   **Plaintiff's Discovery Requests are Overbroad in Time.**

Plaintiff's claim that he is entitled to discovery over an eight-year timeframe (going back five years before he began his employment) is clearly overbroad. Numerous courts have considered this issue, and have universally restricted to scope of discovery to a much shorter time frame. See Zhou v. Pittsburgh State Univ., 2004 U.S.App. LEXIS 14124 (10th Cir. July 8, 2004) (affirming limitation of discovery to three-year period of employment) (Exhibit 4); Robbins v. Camden City Board of Ed., 105 F.R.D. 49 (D.N.J. 1985) (discovery for period of employment and two years prior); Miles v. Boeing Co., 154 F.R.D. 117, 120 (E.D. Pa. 1994) (two years); Dickens v. Williams, 209 F.R.D. 279 (D.D.C. 2002) (three years). Accordingly, the eight-year time frame for which discovery is sought by Plaintiff's Motion is overbroad, and Plaintiff's Motion should therefore be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Plaintiff's Motion to Compel be denied.

                                    **EPSTEIN BECKER & GREEN, P.C.**
Attorneys for Defendants Dianon Systems, Inc.
and Ethel Janega

By: _/s/ Kerry M. Parker_
Kerry M. Parker (ct #26388)
kparker@ebglaw.com
Michael D. Thompson (ct #26389)
Epstein Becker & Green, P.C.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 642-1900

Mary A. Gambardella (ct #05386)
One Landmark Square, Suite 1800
Stamford, CT 06901-2601
(203) 348-3737

DATED: December 28, 2004