**Exhibit 1**

1994 WL 760811 (M.D.Tenn.), 3 A.D. Cases 1490, 8 A.D.D. 506
United States District Court, M.D. Tennessee, Columbia Division.
Janet LINTEMUTH, Robert Millage, Carole Simpson, Pamela Cameron, Melinda
Bradberry, Margery Palmer, Darla Farmiole, on behalf of themselves and all
others similarly situated
v.
SATURN CORPORATION.
1:93-0211.
Aug. 29, 1994.

## REPORT AND RECOMMENDATION

SANDIDGE, United States Magistrate Judge.

**\*1** By an Order entered June 10, 1994, the Court referred plaintiffs' motion for class certification of the complaint (filed December 9, 1993; Docket Entry No. 1) to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). The motion was referred for consideration, submission of proposed findings of fact, and recommendation for disposition. Oral argument on the motion was held on July 12, 1994. After consideration of plaintiffs' motion and the entire record in this action, I recommend that plaintiffs' motion for class certification be denied.

### BACKGROUND

Named plaintiffs, Janet Lintemuth, Robert Millage, Carole Simpson, Pamela Cameron, Melinda Bradberry, Margery Palmer, and Darla Farmiole, filed an employment discrimination complaint against their employer, Saturn Corporation ("Saturn"), pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Each plaintiff claims that he or she is a "qualified individual with a disability" as that term is defined by the ADA.

Defendant Saturn is a foreign corporation authorized by the State of Tennessee to conduct business from its principal office and manufacturing facility located in Spring Hill, Maury County, Tennessee. The plaintiffs allege that Saturn has failed to reasonably accommodate their known medical restrictions as required by the ADA. Each plaintiff claims to suffer from some disability which required them to miss an extended period of work at Saturn.

Named plaintiff Janet Lintemuth has been diagnosed with degenerative disc disease and lumbosacral spondylosis with resulting permanent spinal impairment. Named plaintiff Robert Millage has been diagnosed with degenerative disc disease, spondylosis, and a ruptured cervical disc with resulting permanent spinal impairment. Named plaintiff Carole Simpson has been diagnosed with bilateral carpal tunnel syndrome, tendinitis, myofascitis and temporomandibular joint dyscrasia. Named plaintiff Pamela Cameron has been diagnosed with degenerative disc disease, a herniated disc and spinal fusion surgery, with resulting permanent spinal impairment. Named plaintiff Melinda Bradberry has been diagnosed with bilateral carpal tunnel syndrome, ulnar neuropathy and left upper trunk brachioplexopathy. Named plaintiff Margery Palmer has been diagnosed with bilateral carpal tunnel syndrome. Named plaintiff Darla Farmiole has been diagnosed with meralgia paraesthesia. Most, but not all, of the members of the proposed class are alleged to suffer from conditions similar to those of the named plaintiffs.

After an appropriate recovery period, each plaintiff was cleared to return to work subject to certain medical restrictions placed on them by their treating physician and Saturn's company physician. As part of Saturn policy, the plaintiffs claim that upon their return to work they were assigned duties in a common segregated class, known as "module common," while they awaited placement in a permanent work unit, or "team," compatible with their medical restrictions.

**\*2** Saturn's automobile manufacturing operation is divided into three separate "business systems:" (1) Powertrain; (2) Body Systems; and (3) Vehicle Systems. Each business system is composed of several teams which are responsible for different stages of the manufacturing process. As part of this "team concept," team members are required to periodically rotate tasks, enabling them to learn each aspect of the individual unit's manufacturing responsibilities. See generally, Affidavit of R. Timothy Epps.

In conformance with Saturn's team concept, the plaintiffs contend that medically restricted employees are only placed in those permanent positions where the individual is capable of fully performing each task on the team's rotation circuit. However, the plaintiffs allege that they are capable of performing the essential tasks of several production teams throughout Saturn and that such an inflexible requirement fails to reasonably accommodate their known disabilities.

As a direct result of segregation in the module common, the plaintiffs contend that they are not given the same opportunities to earn overtime compensation as employees without medical restrictions. Furthermore, the plaintiffs assert that this denial of overtime opportunity adversely affects other privileges of employment which are directly related to the amount of overtime wages earned.

THE CLASS ACTION

Although this Court is prohibited from considering the merits of the plaintiffs' underlying claim when deciding whether to certify the class, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974), the complex nature of the plaintiffs' allegations and Saturn's defenses presents a situation where it is "necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 160 (1982).

The plaintiffs are suing Saturn under Title I of the ADA, which requires equal employment opportunities for qualified individuals with disabilities. The statute expressly states that:

[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

The protections of Title I, however, literally apply only to "qualified individuals with disabilities." As defined by the ADA, a qualified individual is a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that person holds. 42 U.S.C. § 12111(8). With respect to a particular individual, the term "disability" refers to: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

**\*3** In order to recover under the ADA, a determination must be made that the plaintiff suffers from a disability, as that term is defined by the ADA. If a plaintiff claims that he is capable of performing the essential tasks of a position aided by some type of accommodation, the court must further determine which tasks are essential and whether the accommodation requested by the plaintiff is reasonable, focusing on the potential hardship to employer if the particular accommodation were provided.

The interpretive guidelines prepared by the Equal Employment Opportunity Commission ("EEOC") indicate that Title I of the ADA mandates such a flexible, case-by-case approach in order to allow disabled individuals of varying abilities to receive equal employment opportunities. 29 C.F.R. Pt. 1630, App. at 401. "No specific form of accommodation is guaranteed for all individuals with a particular disability. Rather, an accommodation must be tailored to match the needs of the disabled individual with the needs of the job's essential functions." 29 C.F.R. Pt. 1630, App. at 400-01.

The plaintiffs in this action have alleged that they are qualified individuals with disabilities and that Saturn has discriminated against them by utilizing placement procedures which do not reasonably accommodate their known medical restrictions. The named plaintiffs are seeking to certify their claim as a class action, purporting to represent a class of 176 similarly situated, medically restricted employees at Saturn who have been placed in module common while awaiting permanent placement. Rule 23(a) of the Federal Rules of Civil Procedure lists four prerequisites to maintaining a suit as a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

A proposed class action is eligible for certification only upon the trial court's determination, following a rigorous analysis, that the action satisfies the prerequisites of Rule 23(a). *Falcon,* 457 U.S. at 161. As the party seeking class certification, the burden is on the representative plaintiffs to show that each required element has been met. *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976), *cert. denied,* 429 U.S. 870 (1976). After conducting a rigorous analysis of the plaintiffs' motion for class certification, this Court finds that the plaintiffs have failed to establish their claims as typical of the claims of the class at large. The issue of whether the plaintiffs have satisfied the remaining three prerequisites of Rule 23(a) is moot, as the plaintiffs' failure to satisfy the typicality requirement alone warrants denial of their motion.

THE TYPICALITY REQUIREMENT OF RULE 23(a)(3)

**\*4** The typicality requirement, while somewhat interwoven with the requirement of commonality, focuses primarily on the extent to which the proposed class representatives encompass the claims of

the other class members. Generally, a representative plaintiff's claim is typical if it has the same essential characteristics as the claims of the class as a whole. *See, De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225 (7th Cir.1983). The claims of the representative and the claims of the class should be similar to such a degree that the bulk of the elements of the class members' claims are established by the proof offered in support of the named plaintiffs' claim. *See, Retired Chicago Police Association v. City of Chicago,* 141 F.R.D. 477 (N.D.Ill.1992), *Spencer v. Central States,* 778 F.Supp. 985, 990 (N.D.Ill.1991).

Typicality applies not only to the characteristics of the representative's claim, but also to the defenses applicable to that claim. The existence of unique defenses applicable only to the representative plaintiff is capable of destroying typicality and may warrant the denial of class certification. *See, Koos v. First National Bank of Peoria,* 496 F.2d 1162 (7th Cir.1974), *Rodriguez v. Dept. of Treasury,* 108 F.R.D. 360 (D.D.C.1985); *Fradkin v. Ernst,* 98 F.R.D. 478, 488 (N.D.Ohio 1983).

The plaintiffs' allegations in this action charge Saturn with failing to make reasonable accommodations of their known medical restrictions. The named plaintiffs suffer from a variety of medical conditions ranging from spinal related back injuries to carpal tunnel syndrome. The variance in the named plaintiffs' personal characteristics, coupled with the individualized, case-by-case analysis required by the ADA, renders the proposed representatives in this action unable to establish the necessary elements of the claims of the class in the course of establishing their own. Furthermore, the highly personal nature of each representative's disability also subjects their claims to unique defenses under the ADA which are significant enough to destroy typicality.

The representative plaintiffs assert that because most of the individuals that make up the class they seek to represent suffer from similar disabilities, class action treatment is proper. Rule 23(a), however, requires that the representative plaintiffs' claims be typical of the class as a *whole.* Yet, supposing that the parameters of the class were narrowed to include only those individuals with disabilities similar to the representative plaintiffs, as Rule 23(c)(4) gives this Court the authority to do, the representatives' claims would still not be significantly typical to justify class certification. For example, even though two Saturn employees may be classified as suffering from a similar disability, it does not necessarily follow that they are subject to the same medical restrictions concerning individual work abilities. One employee classified with a "back injury" may be restricted from lifting heavy objects, where as another employee with a "back injury" could be restricted from standing for long periods of time. Under the ADA's required case-by-case analysis, the issue of whether the employee can perform, with reasonable accommodation, the essential functions of a desired position with reasonable accommodations would involve litigation highly individualized to each of the employees' particular situations. That is to say, the fact that one of the representative plaintiffs, with a certain type of disability, is able to prove the elements of discrimination under the ADA does not mean that the elements have been satisfied with respect to all members of the class with similar types of disabilities.

**\*5** Additionally, the ADA provides employers with a list of potential defenses which may be utilized with respect to charges of employment discrimination. A valid defense to a charge of failing reasonably to accommodate disabled employees is that the requested accommodation would subject the employer to undue hardship. 42 U.S.C. § 12113(a); *see also,* 29 C.F.R. Pt. 1630, App. at 423. The ADA mandates that the determination of what hardship is undue entails a close analysis of each plaintiff's disability, the extent to which their disability affects their ability to perform the duties of the position desired, and the reasonable accommodation requested. Thus, even though the representatives are classified with the same types of disabilities as the class, the ADA's case-by-case approach provides Saturn with a unique defense applicable to each representative, rendering their claims atypical of the claims of the class.

In seeking to certify this class, the plaintiffs relied on a number of class certification cases where dissimilar characteristics in a representative's claim were not found to be significant enough to destroy typicality. However, none of those actions were brought pursuant to a statute mandating a detailed analysis similar to the individualized approach of the ADA.

Several statutes have prohibited employment discrimination based on certain individual characteristics. However, a disability, as an individual characteristic, necessarily is more multi-faceted than characteristics such as race or gender. In discrimination cases involving race or gender, differences in individual characteristics among the representatives and class members are seldom significant as long as the common race or gender is shared. However, in discrimination cases based on a disability, the shared characteristic is being disabled, which unlike race and gender, involves varying degrees. Congress recognized this fact by developing the individualized, case-by-case

approach utilized by the ADA.

Case law concerning Title I of the ADA is sparse. However, in cases involving class certification brought under the Rehabilitation Act of 1973, it has also been recognized that dissimilarities between the representatives and the class become more significant due to that statute's individualized approach, which, except for its limited applicability to government entities, is essentially the same analysis mandated by the ADA. *See, Chandler v. City of Dallas,* 2 F.3d 1385, 1396 (5th Cir.1993). Where a representative plaintiff purports to represent a class of individuals with the same type of disability which affects their ability to perform the duties of a similar position in a similar manner, the issue of which accommodations requested of the employer would be reasonable is essentially the same for the entire class and can be fairly and economically decided on the basis of the representative plaintiff's proof alone. In such a case, the representative's claim would be typical of the class at large, making certification of the class proper.

**\*6** However, in the action before this Court, the representative plaintiffs' claims involve characteristics and defenses which are highly individualized. The varying disabilities and resulting medical restrictions of the representative plaintiffs are significant enough to render their claims atypical of the claims of the class. Accordingly, the plaintiffs' motion for class certification should be denied.

RECOMMENDATION

Based on the foregoing, I RECOMMEND that the plaintiffs' motion for class certification be DENIED. ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice, and must state with particularity the specific portions of this Report, or the proposed findings or recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

M.D.Tenn.,1994.

Linternuth v. Saturn Corp.

1994 WL 760811 (M.D.Tenn.), 3 A.D. Cases 1490, 8 A.D.D. 506

END OF DOCUMENT

Copr. (C) 2004 West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 2**

1999 WL 1136683 (N.D.Cal.), 9 A.D. Cases 1767, 17 NDLR P 123
KARINE SOKOL, et al., Plaintiffs
v.
NEW UNITED MOTOR MANUFACTURING, INC., Defendant
No. C 97-4211 SI
U.S. District Court Northern District of California
September 20, 1999

BNA Labor Relations Reporter Headnote - AD Cases
AMERICANS WITH DISABILITIES ACT
Class action
C108.7505 C351.03 C360.05 C360.72
N.D.Cal., 1999.
Disabled current and former employees challenging under ADA two of employer's alleged policies and procedures regarding reasonable accommodation do not meet typicality requirement for class certification, where policies are inseparable from interactive process of determining reasonable accommodations that depends on individualized inquiries ill-suited for class treatment; legitimacy of alleged "de facto" policy of refusing to consider tool and assembly line modifications as reasonable accommodations will vary depending on circumstances of individual employee, and legitimacy of procedures employed by allegedly unqualified personnel for determining reasonable accommodations cannot be determined without scrutinizing interactive process with respect to individual employees.
SOKOL v. NEW UNITED MOTOR MANUFACTURING
9 AD Cases 1767

BNA Labor Relations Reporter Headnote - AD Cases
AMERICANS WITH DISABILITIES ACT
Class action
C108.7501 C108.7522 C351.03
N.D.Cal., 1999.
Disabled current and former employees will not be certified as class in their challenge under ADA to employer's alleged policies regarding unregulated access to confidential employee medical records and election of vocational rehabilitation benefits as forfeiting eligibility for reassignment, even though such policies are uniformly applied and fall within range of conduct appropriately challenged on class basis, where class vehicle is not necessary to obtain relief sought; all putative class members would benefit from injunction issued to single plaintiff regarding access to medical records, and employer has replaced challenged practice regarding vocational rehabilitation benefits with new policy under which such benefits have no bearing on consideration for reassignment.
SOKOL v. NEW UNITED MOTOR MANUFACTURING
9 AD Cases 1767

Todd M. Schneider and Noah D. Lebowitz (Schneider & McCormac), San Francisco, Calif., and Guy B. Wallace, San Francisco, Calif., for plaintiffs.

C. Geoffrey Weirich, Paul W. Cane, Jr., and E. Jeffrey Grube (Paul, Hastings, Janofsky & Walker LLP), San Francisco, Calif., for defendant.

Full Text of Opinion

SUSAN ILLSTON, District Judge

Presently before the court is plaintiffs' motion for class certification. [FN1] Plaintiffs submit the following proposed class definition for certification:

> FN1. Plaintiffs filed their certification motion on June 25, 1999. On August 9, 1999, the Court rejected plaintiffs' proposed class definition as vague and overbroad, and permitted plaintiffs to file a new class definition that more narrowly identified the specific policies which were applied on a class-wide basis. See Order dated August 9, 1999. This order addresses the plaintiffs' new proposed class definition submitted to the Court on August

25, 1999.


All current and past employees with disabilities who since November 1, 1996, have been placed by Defendant NUMMI on the "ADA List" and who have disabilities within the meaning of the Americans with Disabilities Act and the Fair Employment and Housing Act, and who have been subjected to discrimination because of Defendant's discriminatory policies and practices regarding election of vocational rehabilitation under the state workers' compensation system, invasion of privacy in their on-site medical files, and return-to-work procedures regarding reasonable accommodations as specified in Plaintiffs' Submission in Response to Court's Order Re Class Certification. [FN2]

> FN2. In their submission in Response to Court's Order Re Class Certification, plaintiffs set out the following two return-to-work procedures regarding reasonable accommodations:


1. NUMMI's de facto policy of refusing to consider the possibility of tool and assembly line modifications as reasonable accommodations for employees with disabilities.
2. NUMMI's policy, practice and administrative method of using personnel who lack qualifications, expertise and procedures that are necessary to determine and provide appropriate reasonable accommodations for employees with disabilities.
Having carefully considered the papers submitted and the arguments of the parties, the Court DENIES plaintiffs' motion to certify the proposed class for the reasons set forth below.

## BACKGROUND

Plaintiffs Karine Sokol, Josephina Lopez and Stella Cortez are employees of defendant New United Motor Manufacturing, Inc. ("NUMMI"). They allege the following events.
Between 1991 and 1997, plaintiffs suffered work-related injuries to their wrists and/or shoulders resulting in permanent medical restrictions. Plaintiffs missed work and received workers' compensation benefits in connection with their industrial injuries. See Sokol Decl., ¶1; Cortez Decl., ¶2; Lopez Decl., ¶2.
After recovering from their injuries, plaintiffs returned to the worksite and individually consulted with NUMMI's Return to Work Coordinator ("RTW"), Debra Johnson, to discuss their respective medical restrictions and future employment opportunities. Sokol Decl., ¶3; Cortez Decl., ¶4; Lopez Decl., ¶4. Plaintiffs requested that they be returned to work with reasonable accommodations for their permanent disabilities. SAC, ¶¶18, 25, 32. Johnson informed them that no permanent positions were available consistent with their medical restrictions. Sokol Decl., ¶3; Cortez Decl., ¶4; Lopez Decl.; ¶4. Johnson then placed plaintiffs on a database of NUMMI employees with permanent restrictions awaiting re-assignment ("database"). [FN3] Johnson Depo., 23:7-10, Lebowitz Decl., Exh. E.

> FN3. Johnson attempts to match medically restricted employees on the database with new job openings as they become available. Employees who have work restrictions compatible with the new job openings are selected from the database in the order of their seniority. Johnson Depo., 23:11-25:2, Lebowitz Decl., Exh. E.


While on leave and awaiting re-assignment from the database, numerous positions at NUMMI became available which plaintiffs allegedly could have performed with reasonable accommodations. SAC, ¶¶21, 28, 35. Plaintiffs claim, however, that NUMMI never contacted them regarding reasonable accommodations that would have enabled plaintiffs to return to work. Sokol Decl., ¶7; Lopez Decl., ¶8; Cortez Decl., ¶8.
Following her placement on the restricted workers' database, Sokol elected to receive retraining through the vocational rehabilitation benefits provided through workers' compensation. According to NUMMI policy, an employee on the database who elects vocational rehabilitation benefits forfeits her eligibility for re-assignment from the database. SAC, ¶¶15-16; Johnson Depo., 56:8-13, Lebowitz Decl., Exh. E. Due to her election of vocational rehabilitation, Sokol was denied an opportunity for reassignment to a compatible position at NUMMI. Id. Sokol was eventually reassigned to a permanent

position at NUMMI approximately six months after her placement on the database. Id., 54:22- 55:8; SAC, ¶¶22-23.

While plaintiffs Lopez and Cortez were on leave and awaiting reassignment from the database, they were informed that if they wished to be considered for re-assignment from the database, they could not enter vocational rehabilitation. SAC, ¶¶29, 36. Lopez and Cortez have not elected to pursue vocational rehabilitation training and remain on the database awaiting reassignment. Lopez Decl., ¶¶5, 11; Cortez Decl., ¶¶5, 11. Lopez and Cortez have remained on the database for three years and four years, respectively, awaiting placement into permanent positions at NUMMI. Id.

In her capacity as RTW Coordinator, Johnson has access to the entire medical file of each NUMMI employee on the database. SAC, ¶39; see also, NUMMI policy re confidential medical information ("medical file review policy"), Lebowitz Decl., Exh. BB; Johnson Depo., 191:96-1929, Lebowitz Decl., Exh. E. Pursuant to NUMMI's medical file review policy, Johnson has reviewed plaintiffs' medical files in the course of her duties as RTW Coordinator. Johnson Depo., 77:18-20, 192:10-15, Lebowitz Decl., Exh. E.

On January 22, 1999, plaintiffs filed their Second Amended Complaint as a proposed class action against NUMMI. In the complaint, plaintiffs allege disability discrimination claims under (1) Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112, (2) Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §794, (3) the Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §12940 et seq., (4) Cal. Bus. & Prof. Code §§17200, et seq., and (5) California Public Policy. In their complaint, plaintiffs also alleged that NUMMI's medical file review policy violated their state constitutional right to privacy, Cal. Const. Art. I, §1.

With respect to the claims of disability discrimination, plaintiffs allege that (1) NUMMI fails to provide reasonable accommodations to its medically restricted employees, and employs a defective reasonable accommodations process, (2) NUMMI places its disabled employees in inferior positions with less pay and less opportunity for promotion, and (3) NUMMI's RTW Coordinator is ill-trained and underqualified. SAC, ¶¶38-40.

With respect to their invasion of privacy claim, plaintiffs allege that NUMMI permits certain unqualified employees, such as Johnson, access to their confidential medical files without their consent. SAC, ¶¶78-80.

DISCUSSION

1. Requirements for class certification

A court may certify a class if the plaintiffs demonstrate that all the requirements of Fed.R.Civ.P. 23(a) are satisfied and at lest one of the requirements of Rule 23(b) is satisfied. See Fed.R.Civ.P. 23; Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Of the four requirements listed in Rule 23(a), typicality is the one most relevant to the Court's analysis. This requirement.

focuses primarily on the extent to which the proposed class representatives encompass the claims of the other class members. Generally, a representative plaintiff's claim is typical if it has the same essential characteristics as the claims of the class as a whole. The claims of the representative and the claims of the class should be similar to such a degree that the bulk of the elements of the class members' claims are established by the proof offered in support of the named plaintiffs' claim. Lintemuth v. Saturn Corp., 1994 WL 760811, *4 [ 3 AD Cases 1490] (M.D.Tenn. 1994) (citations omitted).

As for prerequisites under Rule 23(b), plaintiffs seek class certification under subdivision (2), which provides for certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met."Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152 [ 9 FEP Cases 1402] (1974) (citing Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir. 1971)).

The decision to certify a class is committed to the discretion of the district court. Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1309 [ 16 FEP Cases 316] (9th Cir. 1977). When making this determination, the Court is mindful of the two goals underlying Rule 23: class actions promote judicial economy because they minimize the multiplicity of identical suits, and they permit parties with small claims to assert them when they otherwise might not, because of litigation costs that outweigh any potential recovery. See Crown Cork & Seal Co. v. Parker, 462 U.S. 345, 349, 103 S.Ct. 2392 [ 31 FEP Cases 1697] (1983).

## 2. Rule 23 as applied to the proposed class

In their proposed class action complaint, plaintiffs allege that NUMMI discriminated against plaintiffs and the proposed class because of their disabilities. Plaintiffs seek to certify a class of current and past disabled employees who have been subject to four allegedly unlawful policies and/or practices. Three of the policies are challenged under the ADA as discriminatory against disabled NUMMI workers. The fourth policy allegedly invades worker privacy rights protected under the state constitution. Plaintiffs argue that class certification is appropriate because these policies have adversely affected the opportunities of its disabled employees on a class wide basis. NUMMI opposes certification, arguing that the individualized determinations necessary to evaluate plaintiffs' claims make class treatment inappropriate.

Courts have been cautious to certify disability discrimination claims as class actions due to the individualized determinations required by such claims. For example, in Mantolete v. Bolger, 767 F.2d 1416, 1425 [ 1 AD Cases 811] (9th Cir. 1985), a plaintiff sought to certify a nation-wide class of epileptics who were denied employment with the United States Postal Service because of their disability. The Ninth Circuit affirmed the district court's dismissal of the class allegations, and observed that

determining the propriety of relief in cases of this nature underscores the importance of case-by-case adjudication. Whether a particular individual is a "qualified handicapped individual" under the law will necessitate an inquiry into the individual's medical and work history as well as an inquiry into other factors bearing on the person's fitness for a given position. Id.

Other courts have expressed similar reservations in denying class certification of disability discrimination claims. See Chandler v. City of Dallas, 2 F.3d 1385, 1396 [ 2 AD Cases 1326] (5th Cir. 1993) ("the determinations of whether an individual is handicapped or 'otherwise qualified' are necessarily individualized inquiries."); Davoll v. Webb, 160 F.R.D. 142, 143 [ 4 AD Cases 161] (D.Colo. 1995) (same); Lintemuth, 1994 WL 760811, *4 (M.D.Tenn. 1994) ("Under the ADA's required case-by-case analysis, the issue of whether the employee can perform, with reasonable accommodation, the essential functions of a desired position with reasonable accommodations would involve litigation highly individualized to each of the employees' particular situations.").

The need for individualized determinations, however, has not precluded class actions based on claims of disability discrimination. Courts have certified class actions in the ADA/Rehab Act context where the challenged conduct is a specific policy that allegedly discriminates in a broad-based manner against class members.

For example, in Guckenberger v. Boston University, the court certified a class of learning disabled university students who challenged a formal university policy that allegedly discriminated against class members. Id., 957 F.Supp. 306, 325-327 [ 6 AD Cases 746] (D.Mass. 1997). The challenged conduct was embodied in written policies that applied to all learning disabled university students seeking accommodations. The uniform application of a specific policy to a class of similarly disabled individuals enabled the court to focus on the lawfulness of the policy's application rather than the individualized nature of the class claims Id., 957 F.Supp. at 326. See also, Hendricks-Robinson v. Excel Corp., 164 F.R.D. 667 [ 5 AD Cases 228] (C.D.Ill. 1996) (certifying class of employees who were laid off pursuant to a formal medical layoff policy and then terminated pursuant to the terms of a collective bargaining agreement); Wilson v. Pennsylvania State Police Department, 1995 WL 422750 (E.D.Pa. 1995) (certifying class of police officers denied employment pursuant to a specific departmental policy regarding vision standards); Kimble v. Hayes, 1990 WL 20208 (E.D.Pa. 1990) (same).

In the cases cited above which have certified classes composed of disabled persons in the ADA context, the challenged conduct was carried out pursuant to formal written policies that were easily identifiable and uniformly applied. In contrast to this line of cases, the third and fourth "practices" identified by plaintiffs in their submissions to the Court are inseparable from the interactive process of

determining reasonable accommodations, the lawfulness of which depends on individualized inquiries ill-suited for class treatment.

As the third NUMMI policy challenged under plaintiffs' proposed class definition, plaintiffs propose: NUMMI's de facto policy of refusing to consider the possibility of tool and assembly line modifications as reasonable accommodations for employees with disabilities.

As the fourth NUMMI policy challenged under plaintiffs' proposed class definition, plaintiffs propose: NUMMI's policy, practice and administrative method of using personnel who lack qualifications, expertise and procedures that are necessary to determine and provide appropriate reasonable accommodations for employees with disabilities.

These challenged practices are not the type of discrete policies with broad application that were certified for class treatment in Guckenberger, Hendricks-Robinson, Wilson, or Kimble. With respect to the "de facto policy" related to tool and assembly line modification, this allegation cannot be evaluated apart from the individual circumstances of NUMMI employees. For example, the failure to provide tool and assembly line modification does not violate the ADA where (1) NUMMI has provided a disabled employee with other reasonable modifications, (2) the employee is unable to perform the essential functions of the job even with the tool modifications or (3) the tool modification would constitute an undue hardship on NUMMI. See 42 U.S.C. §§12111(8) & 12112(b)(5)(A). The legitimacy of NUMMI's practices with respect to tool and assembly line modification will therefore vary depending on the circumstances of the individual employee. Since the claims of the named plaintiffs arising under the third de facto policy will involve highly individualized characteristics and defenses, their claims are not "typical" of the claims of the proposed class. Accordingly, this policy fails the typicality test of Rule 23(a)(3) and is therefore inappropriate for class treatment.

Similarly, the fourth "policy" proposed by plaintiffs in their class definition also fail to satisfy the typicality requirements of Rule 23. The challenged conduct here is that Johnson is unqualified to serve as RTW Coordinator, and that she employs inadequate "procedures . . . to determine and provide reasonable accommodations for disabled employees." However, the Court will be unable to determine the legitimacy of the "procedures" employed by Johnson under the ADA without scrutinizing the interactive accommodations process with respect to individual class members. Undoubtedly, the circumstances of the interactive process will vary widely between employees with different disabilities and job functions. Therefore certain accommodation "procedures" improperly employed in the context of one employee might be entirely appropriate in the context of another. In light of these individualized inquiries, the fourth policy fails to present claims that would be "typical" of the class. Fed.R.C.P. 23(a)(3). [FN4]

> FN4. To the extent plaintiffs seek to certify a class based on Johnson's alleged lack of qualifications, the court finds this an insufficient basis on which to proceed under the ADA.

Having determined that the third and fourth policies are inappropriate for class treatment, the Court next evaluates the first and second policies challenged in plaintiffs' proposed class definition. In contrast to the final two policies, the first two policies present discrete practices that are uniformly applied and therefore fall within the range of conduct that may be appropriately challenged under the ADA on a class basis. However, the Court declines to certify a class based only on these two policies because the class vehicle is not necessary to obtain the relief sought. See James v. Ball, 613 F.2d 180, 186 (9th Cir. 1979), reversed on other grounds 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981) (affirming district court's denial of class certification where "the relief sought will, as a practical matter, produce the same result as formal class-wide relief"); Kansas Health Care Ass'n v. Kansas Dep't of Soc. & Rehabilitation Servs., 31 F.3d 1536, 1538 (10th Cir. 1994) ("class certification is unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs"); see also 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §1785.2 (1986 & Supp. 1999) (recognizing need requirement as "appropriate consideration when certifying a Rule 23 (b)(2) action.").

As to the first policy regarding unreg-ulated access to confidential employee medical records, all putative class members would benefit from an injunction issued on behalf on a single plaintiff. As to the second policy regarding vocational rehabilitation election, NUMMI has replaced the challenged practice with a new policy under which "the decision to enter into vocational retraining has no bearing

on NUMMI's continued consideration of workers for reassignment opportunities." NUMMI's response at 1, n.1. Accordingly, injunctive relief is no longer an issue in light of NUMMI's new policy.

CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is DENIED. This order in no way reflects on the merits of the individual claims of the plaintiffs named in the complaint.

The parties are directed to contact the courtroom deputy to schedule a mutually convenient date for a further Case Management Conference at which further dates, including a trial date, will be scheduled.

IT IS SO ORDERED.

END OF DOCUMENT

COPR. (C) 2004 The Bureau of National Affairs, Inc.

**Exhibit 3**

NE:127057v1

82 Cal.App.4th 495, 98 Cal.Rptr.2d 208, 10 A.D. Cases 1438, 00 Cal. Daily Op. Serv. 6096, 2000
Daily Journal D.A.R. 8051

MICHAEL G. McCULLAH, Plaintiff- Appellant

v.

SOUTHERN CALIFORNIA GAS COMPANY, Defendant-Appellee

No. B136358

California Court of Appeal Second District, Division Six

July 20, 2000

Appeal from the California Superior Court, Ventura County (Hunter, J.). Affirmed.

BNA Labor Relations Reporter Headnote - AD Cases
STATE LAWS
Class action
C108.7504h Ch351.45h Ch360.01
Cal.App. 2 Dist., 2000.
Trial court properly declined to certify class of disabled current and former utility company employees
who are or were eligible to be rehired in action challenging company's job-bidding system under
California Fair Employment and Housing Act, where it cannot be shown that there are predominant
common questions of law and fact applicable to proposed class as whole; it is difficult to identify and
certify class when claim is based on employees' disabilities, question of whether employer must
provide reasonable accommodation involves case-by-case inquiry, and need for individualized inquiry
renders disability discrimination actions ill-suited for class treatment.
McCULLAH v. SO. CALIFORNIA GAS CO.
10 AD Cases 1438

BNA Labor Relations Reporter Headnote - AD Cases
STATE LAWS
Class action
C108.7505h Ch351.45
Cal.App. 2 Dist., 2000.
Claim by disabled former utility company employee who filed proposed class action challenging
company's job-bidding system under California Fair Employment and Housing Act is not typical of
claims of class members, despite contention that inadequacy of bidding system applies equally to all
disability bidders, where he appears to be exception inasmuch as he received temporary work for two
years after he was terminated and was rehired as customer service trainee.
McCULLAH v. SO. CALIFORNIA GAS CO.
10 AD Cases 1438

A. Barry Cappello, J. Paul Gignac, and Mikal J. Apenes (Capello & McCann), Santa Barbara, Calif., for
appellant.

Paul Grossman, Barbra L. Davis, and Martin C. Mead (Paul, Hastings, Janofsky & Walker), Los
Angeles, Calif., for appellee.

Full Text of Opinion

KENNETH R. YEGAN, Justice

Michael G. McCullah appeals from the order denying class certification of his employment
discrimination action against the Southern California Gas Company (Gas Company). The trial court
found there was no well-defined community of interest among the purported class members. (Code
Civ. Proc., §382.) We affirm.

Facts

Pursuant to a collective bargaining agreement with appellant's union, Gas Company maintains a job
bid list by which employees seeking job changes bid on positions before they become available. When

a position becomes vacant, it is filled by the most senior qualified person on the bid list unless another bidder has priority. Employees on disability have priority if they are qualified and are able to perform the duties of the position.

The collective bargaining agreement also gives priority to employees "in the path of layoff." Employees scheduled for layoff have preference over all other bidders. Assuming a position opens up, the layoff bidder is first offered the position. If he or she declines, the position is offered to qualified disability bidders and then nondisabled bidders in order of seniority.

Appellant suffered two work-related injuries as a Gas Company employee in 1989 and 1990. On October 5, 1990, he went on medical leave with disability pay and had the right to submit disability bids. Appellant submitted one bid in November 1994 and six bids in 1995 with no success.

In December 1994, Gas Company sent him to a six-week clerical skills training program. From April 1995 to March 11, 1997, appellant worked temporary positions at the Gas Company's Chatsworth facility.

In 1996, appellant's union negotiated a new disability benefit plan affecting employees on disability whose injuries were rated permanent and stationary prior to January 24, 1996. The collective bargaining agreement provided that these employees would be terminated in March 1997 unless (1) a vocational assessment showed they were incapable of performing the material duties of any gainful occupation for which they were qualified, or (2) they found a permanent position at Gas Company. Donald Gonzales, of the Gas Company human resources department, counseled appellant and told him to "put in all the bids you can." Appellant requested vocational rehabilitation. In February 1997, Gas Company paid for a $19,000 computer training and truck driving training program.

Appellant was terminated March 11, 1997, but continued to work on a temporary basis. In January 1998, he was rehired as a customer service trainee as part of a special program for disabled employees who had been terminated. When appellant failed the prequalifying test, Gas Company waived the test requirement. Appellant missed three days of training and was excluded from the program. Gas Company allowed him to enroll a second time. He failed to perform satisfactorily and was finally terminated.

Appellant filed suit for violation of the Fair Employment and Housing Act (FEHA; Gov. Code, §12900 et seq.), wrongful termination, unfair competition (Bus. & Prof. Code, §17200), negligence, and declaratory relief based on the theory that the bidding system was discriminatory. The first amended complaint defined the class members as: "[A]ll individuals residing in the State of California who: (a) are or, at any time within the four years preceding the date of filing of the original complaint in this action, were employed by the Gas Company; (b) became disabled in the course of their employment at the Gas Company; and (c) are or were eligible to be rehired by the Gas Company ('the Class.')." The trial court concluded that "this is just not a class action." The court stated, in order to try the claims, "[y]ou'd have to determine in every case the nature of the disability to see whether the persons are disabled or not. You would have to determine if a proper claim had been filed with the FEHA, whether the statute had run on any of these causes of action, and they're all separate and distinct as to each case. . . . [Y]ou've got to determine timeliness. You'd have to determine what accommodation reasonableness would be in each case depending upon the injury. . . . You'd have to determine job availability during that particular disability."

## Discussion

"The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, 470.)

" '[T]rial courts have been given great discretion with regard to class certification. . . . [I]n the absence of other error, [an appellate] court will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used . . . or (2) erroneous legal assumptions were made . . . .' [Citations.]" (Osborne v. Subaru of America, Inc. (1988) 198 Cal.App.3d 646, 654.)

With these general principles in mind, we measure the allegations of the complaint against the decisional law. Here the action is brought under FEHA which prohibits employment discrimination based on an employee's physical or mental disability. (Gov. Code, §§12926, subds. (h)-(i); 12940,

subd. (a); City of Moorpark v. Superior Court (1998) 18 Cal.4th 1143, 1157 [ 8 AD Cases 577].) Because FEHA is modeled on the federal Rehabilitation Act of 1973 ( 29 U.S.C. §701 et seq.) and the Americans With Disabilities Act (ADA; 42 USC §12101 et seq.), decisions interpreting those laws are relevant in deciding cases brought under FEHA. (Prilliman v. United Air Lines, Inc. (1997) 53 Cal.App.4th 935, 948 [ 6 AD Cases 1010].)

## Common Questions of Law and Fact

Appellant contends that FEHA cases are well-suited for class certification. (Gov. Code §12961.) [FN1] This may be true in some cases but not here. Appellant must make a threshold showing that there are predominant common questions of law and fact applicable to the class as a whole. (Code Civ. Proc., §382; Richmond v. Dart Industries, Inc., supra, 29 Cal.3d at p. 470.) "[T]he community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the 'class judgment' determining issues common to the purported class. [Citation.]" (City of San Jose v. Superior Court (1974) 12 Cal.3d 447, 459.)

Appellant asserts that this case centers on the conduct of the Gas Company and not the disabilities of the class members. He relies on Hendricks -Robinson v. Excel Corporation (C.D. Ill. 1996) 164 F.R.D. 667 [ 5 AD Cases 225], an ADA case in which an Illinois employer implemented a medical layoff program. Employees on medical leave were given a plant tour and told to check with human resources for available jobs. Those who remained on medical leave for more than a year were terminated. The trial court granted class certification on the ground that "the class members' claims are all based on the same legal theory-- whether Excel's policy on its face and/or in its common application violates the ADA. . . . [¶] Similarly, this matter satisfied the commonality requirement because Plaintiffs are putting Excel's medical layoff policy on trial and not their individual cases. The common question of law and fact at the heart of this case is whether Excel's policy on its face and/or its common application violates the employees' rights under the ADA." (Id., at p. 671.)

In Chandler v. City of Dallas (5th Cir. 1993) 2 F.3d 1385 [ 2 AD Cases 1326], the Fifth Circuit Court of Appeals came to the opposite conclusion. Two employees filed a class action, alleging that a driver safety program which established physical standards for city employees was discriminatory. The federal appellate court held that the class was untenable because "the effect of a given type of impairment, both on major life activities in general and on a person's ability to perform specific tasks, can vary widely from individual to individual. One person, with impaired vision may simply need to wear glasses, while another may need a guide dog. The prospect of continuing medical advances . . . further supports the need for individualized inquiries in this area. We conclude that class certification and class relief are inappropriate in the instant case." (Id., at p. 1396.)

We agree with the trial court's ruling that the Chandler case is analogous and controls. In race and gender discrimination cases, the identification of class members is straightforward. Where the discrimination claim is based on an employee's physical or mental disability, it is difficult to identify and certify the class. (E.g., Chandler v. City of Dallas, supra, 2 F.3d 1385, 1396 [ 2 AD Cases 1326].) The question of whether the employer must provide reasonable accommodation involves a case-by-case inquiry. (E.g., Ennis v. National Ass'n of Bus. & Educ. Radio, Inc. (4th Cir. 1995) 53 F.3d 55, 59-60 [ 4 AD Cases 589]; Hughes v. Bedsole (4th Cir. 1995) 48 F.3d 1376, 1388 [ 4 AD Cases 173]; Forris\ v. Bowen (4th Cir. 1986) 794 F.2d 931, 933 [ 1 AD Cases 921].) "[T]he need for this individualized, fact-driven determination renders Rehabilitation Act and ADA [and FEHA] actions ill-suited for class treatment. [Citations.]." (Burkett v. United States Postal Service (N.D. West Vir. 1997) 175 F.R.D. 220, 223; see also Sutton v. United Air Lines, Inc. (1999) 527 U.S. 471, ---- [ 119 S.Ct. 2139, 2147 [ 9 AD Cases 673]]; Davoll v. Webb (10th Cir. 1999) 194 F.3d 1116, 1146 [ 9 AD Cases 1533] [class certification denied in ADA action].)

Appellant also must show that he qualifies as a class representative, i.e., that his FEHA claim is typical of the claims of the class members. (See Stephens v. Montgomery Ward (1987) 193 Cal.App.3d 411, 422 [ 44 FEP Cases 498] [no standing where plaintiff, unlike other class members, was promoted to management position].) The first amended complaint alleges that "the inadequacy of the Gas Company's job bidding system--due to its failure to provide information on vacancies and affirmative assistance with reassignment--applies equally to all disability bidders, regardless of their type or degree of injury." Appellant appears to be the exception. After he was terminated, he received temporary work for two years and was rehired as a customer service trainee.

The trial court found that the FEHA action was too fact specific to make it amenable to class

certification. Employers need not provide reasonable accommodation if it imposes an undue hardship. [FN2] (Gov. Code, §12940, subd. (k); Cal. Code Regs., tit. 2, §7293.9; Brundage v. Hahn (1997) 57 Cal.App.4th 228, 235 [ 7 AD Cases 286].) Under appellant's construction of the law, Gas Company must grant the disabled employee job placement rights superior to all other employees. Federal courts have held that there is no such a duty if it requires the employer to disregard the rights of other employees under a collective bargaining agreement. (Willis v. Pacific Maritime Ass'n (9th Cir. 1998) 162 F.3d 561, 565-566 [ 8 AD Cases 1632] [reasonable accommodation that violates collective bargaining agreement and seniority rights is per se unreasonable]; Milton v. Scrivner, Inc. (10th Cir. 1995) 53 F.3d 1118, 1125 [ 4 AD Cases 432] [same]; Kralik v. Durbin (3rd Cir. 1997) 130 F.3d 76, 82-83 [ 7 AD Cases 1040] [same].) The employer is not required to create new positions or bump other employees to accommodate the disabled employee. (Aldrich v. Boeing Co. (10th Cir. 1998) 146 F.3d 1265, 1271, fn. 5 [ 8 AD Cases 424]; White v. York Intern. Corp. (10th Cir. 1995) 45 F.3d 357, 362 [ 3 AD Cases 1746].)

"[C]lass actions will not be permitted where there are diverse factual issues to be resolved, despite the existence of common questions of law. 'The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants. [Citation.] 'If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him [or her], then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions . . . .' [Citation.]" (Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1233.)

Finally, nothing in the recent case of Linder v. Thrifty Oil Co. (June 26, 2000) ---- Cal.4th ---- [2000 Daily Journal D.A.R. 6813] requires reversal. The trial court did not focus solely on the merits of the class action. Rather, the fair import of the trial court's ruling is that there is no well defined community of interest and that individual questions predominate. (See ante. p. 3.)

The judgment (order denying class certification) is affirmed. Gas Company is awarded costs on appeal.

GILBERT, Presiding Justice, and PERREN, Justice, concur.

FN1. Government Code section 12961 states in pertinent part: "Where an unlawful practice alleged in a verified complaint adversely affects, in a similar manner, a group or class of persons of which the aggrieved person filing the complaint is a member, or where such an unlawful practice raises questions of law or fact which are common to such a group or class, the aggrieved person or the director may file the complaint on behalf and as representative of such a group or class."

FN2. Reasonable accommodation includes: " '(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. [¶] (2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.' (§12926, subd. (m), italics added; Cal. Code Regs., tit. 2, §7293.9, subd. (a).)" (Hanson v. Lucky Stores, Inc. (1999) 74 Cal.App.4th 215, 225.)

END OF DOCUMENT

COPR. (C) 2004 The Bureau of National Affairs, Inc.

**<u>Exhibit 4</u>**

Source: Legal > Area of Law - By Topic > Labor & Employment > Cases > Federal > **Labor & Employment Cases, Federal** [i]
Terms: scope w/4 discovery (Edit Search)
Focus: **(scope w/4 discovery w/10 (years or time)) w/75 ((claims or complaints) w/5 discriminat! or accommodat! or retaliat!)** (Exit FOCUS™)

↙Select for FOCUS™ or Delivery
⌐

*2004 U.S. App. LEXIS 14124, \**

WEI-KANG ZHOU, Plaintiff-Appellant, v. PITTSBURG STATE UNIVERSITY, Defendant-Appellee.

No. 03-3273

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

2004 U.S. App. LEXIS 14124

July 8, 2004, Filed

**NOTICE: [\*1]** RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** (D. Kan.). (D.C. No. 01-CV-2493-KHV).

**DISPOSITION:** AFFIRMED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee appealed from decisions of the United States District Court for the District of Kansas granting summary judgment in favor of defendant employer on his claims alleging national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e through 2000e17, and retaliation. He also challenged the district court's denial of his motion to compel discovery.

**OVERVIEW:** The employee brought a Title VII action against the employer. The district court granted summary judgment in favor of the employer. The district court also denied the employee's motion to compel discovery. On appeal, the employee argued that the district court: (1) erred in limiting the **scope of his discovery** to the three-**year** period of his employment; (2) erred in dismissing his **claims** for disparate treatment and **retaliation;** and (3) erred in granting the employer's motion for reconsideration on the issue of the denial of his arbitration rights. The court first held that the employee waived his third issue. The employee argued that the district court erred in granting the motion for reconsideration at such a late date, but he failed to raise the issue in his response before the district court. The employee also argued that the district court erred in deciding the merits of the motion for reconsideration, but the court held that he waived the argument by failing to develop it in his brief. With respect to the employee's remaining issues, the court concluded that the district court correctly decided the case.

**OUTCOME:** The court affirmed the district court's decisions.

**CORE TERMS:** reconsideration, waived, summary judgment, oral argument, retaliation, discovery

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Standards of Review
*HN1* The court of appeals reviews the district court's grant of summary judgment de novo, applying the same standard under Fed. R. Civ. P. 56(c) as the district court. More Like This Headnote

Civil Procedure > Disclosure & Discovery
Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
*HN2* The court of appeals reviews a district court's discovery ruling for an abuse of discretion. More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
*HN3* The court of appeals will not consider an issue that was not raised before the district court. More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
*HN4* Arguments inadequately briefed in the opening brief are waived. More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
*HN5* See Fed. R. App. P. 28(a)(9)(A).

**COUNSEL:** WEI-KANG ZHOU, Plaintff-Appellant, Pro se.

For PITTSBURG STATE UNIVERSITY, Defendant-Appellee: Garry W. Lassman, Kyle M. Fleming, Wilbert & Towner, Pittsburg, KS.

**JUDGES:** Before SEYMOUR and ANDERSON, Circuit Judges, and KANE, ** Senior District Judge.

** The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

**OPINIONBY:** Stephanie K. Seymour

**OPINION: ORDER AND JUDGMENT ***

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

After examining the briefs and **[*2]** appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted

FOCUS - 26 Results - scope w/4 discovery
Case 3:02-cv-01373-MRK    Document 59-2    Filed 12/28/2004    Page 21 of 22
Page 3 of 4

without oral argument.

Plaintiff Wei-Kang Zhou, appearing pro se, appeals the district court's grant of summary judgment in favor of defendant Pittsburg State University (PSU) on his **claims** alleging national origin **discrimination** under Title VII, 42 U.S.C. §§ 2000e through 2000e-17, and retaliation. Mr. Zhou also challenges the district court's denial of his motion to compel discovery. On appeal, Mr. Zhou argues that the district court: (1) erred in limiting the **scope of his discovery** to the three-**year** period of his employment; (2) erred in dismissing his **claims** for disparate treatment and **retaliation;** and (3) erred in granting PSU's motion for reconsideration on the issue of the denial of his arbitration rights.

*HN1* We review the district court's grant of summary judgment de novo, applying the same standard under Fed. R. Civ. P. 56(c) as the district court. **[*3]** *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998). *HN2* We review the district court's discovery ruling for an abuse of discretion. *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550 (10th Cir. 1995).

Initially, we hold that Mr. Zhou has waived his third issue. Mr. Zhou argues that the district court erred in granting the motion for reconsideration at "such [a] late date." Aplt. Br. at 27. Mr. Zhou, however, failed to raise this issue in his response before the district court. *See* R. Vol. 5, Doc. 159. As a general rule, *HN3* this court will not consider an issue that was not raised before the district court. *In re Walker,* 959 F.2d 894, 896 (10th Cir. 1992). Mr. Zhou also argues that the district court erred in deciding the merits of the motion for reconsideration. But Mr. Zhou includes only one sentence in his brief to support this argument: "the district judge erred in granting the reconsideration motion for the reason stated in the Order (See, Doc 175, p.10-11)." Aplt. Br. at 27. This provides us with a citation to the district court's order, but offers no explanation or support for this alleged error. Accordingly, **[*4]** this argument is waived. *See Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 679 (10th Cir. 1998) *HN4* ("Arguments inadequately briefed in the opening brief are waived."); *see also* Fed. R. App. P. 28(a)(9)(A) *HN5* ("[Appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies.").

With respect to Mr. Zhou's remaining issues, having reviewed the briefs, the record, and the applicable law pursuant to the above-mentioned standards, we conclude that the district court correctly decided this case. We therefore AFFIRM the challenged decisions for substantially the same reasons stated by the district court in its Memorandum and Order of December 19, 2002, and its Memorandum and Order of March 24, 2003.

PSU's motion for clarification of the appellant's statement of issues is denied as moot.

Entered for the Court

Stephanie K. Seymour

Circuit Judge

Source:   Legal > Area of Law - By Topic > Labor & Employment > Cases > Federal > **Labor & Employment Cases, Federal** ⓘ
Terms:   scope w/4 discovery  (Edit Search)
Focus:   **(scope w/4 discovery w/10 (years or time)) w/75 ((claims or complaints) w/5 discriminat! or accommodat! or retaliat!)** (Exit FOCUS™)
View:   Full
Date/Time:   Thursday, December 23, 2004 - 12:35 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.