**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA <br> <u>ex</u> <u>rel</u>. DR. JAMES J. TIESINGA, <br><br>       Plaintiffs, <br><br>       v. <br><br> DIANON SYSTEMS, INC., <br><br>       Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    No. 3:02CV1573(MRK) <br> ) <br> ) <br> )    April 14, 2005 <br> ) <br> ) |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF THE UNITED STATES' MOTION TO
### SEVER CLAIMS AND FOR SEPARATE TRIALS

The United States respectfully submits this memorandum in support of its motion

pursuant to Fed. R. Civ. P. 21 for severance into two separate and distinct actions those claims

brought by the United States under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and

at common law, and those brought individually by the Relator, Dr. James Tiesinga, and for

separate trials pursuant to Fed. R. Civ. P. 42(b). The Relator and defendant Dianon Systems, Inc.

("Dianon"), do not object to the Government's motion.

A proposed scheduling order for the *qui tam* portion of the case is attached hereto as

Appendix A. Both Defendant Dianon and the Relator have indicated that they do not object to

the dates set forth in the proposed scheduling order.

### FACTS

On September 6, 2002, the Relator, Dr. Tiesinga, filed a twenty-one count Complaint

against his former employer, Dianon and former co-worker, Ethel Janega. The Relator amended

that Complaint in February of 2005. Of the twenty-one counts in the Relator's Amended

Complaint only one asserts a cause of action in which the United States is the real party in interest (Count 8). All of the other causes of action are personal to the Relator, including Count 16 which asserts a retaliation claim under 31 U.S.C. § 3730(h). Other individual claims asserted by the Relator include allegations arising under the Connecticut Fair Employment Practices Act, the American's with Disabilities Act, the Rehabilitation Act, as well as state common law claims for negligent supervision, negligent retention, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, constructive discharge, invasion of privacy, and defamation.

On March 18, 2005, the United States filed its Complaint against Dianon to recover damages and civil penalties under the FCA and at common law for billing federal health care programs for medically unnecessary tests. Prior to the United States' intervention in the case, in July 2004, Relator asked the court to lift the seal on the Relator's individual claims so that he could go forward with those claims while the United States was concluding its investigation of the *qui tam* allegations. The United States consented to that request. The Court granted Relator's motion on July 30, 2004, and ordered the Complaint unsealed except for those parts alleging violations of the FCA. The Relator served the redacted Complaint on defendant and discovery in that case has been proceeding over the intervening months. The discovery deadline for the employment portion of the case is currently set for May 31, 2005 and dispositive motions are due on June 30, 2005. Apart from those documents received during the course of the pre-intervention investigation, the United States and Dianon have not yet engaged in any form of meaningful discovery. In fact, the deadline for Dianon to respond to the United States' Complaint is over a month away, on May 18, 2005.

2

**ARGUMENT**

## I.     The United States' Claims Should be Severed From Those of the Relator, and the Actions Should Proceed Separately.

The United States seeks severance of its claims from those of the Relator pursuant to Fed.

R. Civ. P. 21. Rule 21 provides, in part, that "[a]ny claim against a party may be severed and

proceeded with separately." Although the severance provision appears in a rule relating to the

misjoinder and non-joinder of parties, it is clear that Rule 21 confers upon the district courts the

authority to sever claims prior to trial. *See generally* 7 Wright, Miller & Kane, *Federal Practice*

*and Procedure:* Civil 2d § 1689 (1986).

"Severance is appropriate when it will serve the ends of justice and further the prompt

and efficient disposition of litigation." *Levine v. Federal Deposit Ins. Corp.*, 136 F.R.D. 544,

550 (D.Conn. 1991). The decision to sever a claim is left to the discretion of the trial court. *Hal*

*Leonard Publishing Corp. v. Future Generations, Inc.*, No. 93 Civ. 5290, 1994 WL 163987, at

\* 2 (S.D.N.Y. Apr. 22, 1994) (*citing Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283

(2d Cir.1990)).

Whereas separate trials under Rule 42(b) usually result in one judgment, severed claims

under Rule 21 "become entirely independent actions to be tried, and judgment entered thereon,

independently." *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49

F.Supp.2d 709, 720-21 (D.N.J.1999) (quoting 9 Wright & Miller, *Federal Practice and*

*Procedure:* § 2387 (1971)). *See also Unites States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983)

("Severance under Rule 21 creates two separate suits or actions where previously there was but

one.").

3

Under either Rule 21 or Rule 42(b) the Court must consider the same concerns, namely, convenience of the parties, avoiding prejudice, and promoting expedition and economy. *Sutton Hill Assocs. v. Landes*, No. 87 Civ. 8452, 1988 WL 56710, at * 2 (S.D.N.Y. May 25, 1988). Specifically, courts determine: "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted." *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D.Pa. 2000) (quoting *German v. Fed. Home Mortgage Corp.*, 896 F.Supp. 1385, 1400 (S.D.N.Y. 1995)). The application of the above elements clearly favors the severance of this case into two independent actions.

## A. The Relator's claims and those of the United States arise from different transactions and occurrences.

The allegations contained in the Relator's Complaint are significantly different from the allegations in the United States' Complaint. The United States' FCA allegations involve Dianon's submission of claims for payment to federal healthcare programs for conducting flow cytometry tests. The Relator's claims arise from entirely different occurrences involving his employment at, and termination by, Dianon.

For example, the allegations in Relator's Amended Complaint revolve around the disclosure to Dianon of Relator's HIV positive status in May 2002, and the alleged abuse and retaliation that followed. Relator's Amended Complaint contains detailed allegations as to how employees at the company treated him after they learned of Relator's health condition, including

4

orders that he was forbidden to enter certain areas and that he was kept captive in his office. *See, e.g.*, Relator's Amended Complaint at ¶¶ 16-23. The United States' Complaint, on the other hand, involves allegations that Dianon knowingly utilized medically unnecessary antibodies when conducting flow cytometry tests and therefore submitted false or fraudulent claims to Medicare.

The only conceivable overlap between the claims of the United States and the claims of the Relator is the Relator's FCA whistle-blower retaliation claim under 31 U.S.C. § 3730(h). However, even that claim requires different proof than the Government's FCA claim. In order to prove a claim of retaliation under § 3730(h), a plaintiff must establish: "(1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity." *Wilkins v. St. Louis Housing Authority*, 314 F.3d 927, 932-33 (8th Cir. 2002). Thus, Relator's § 3730(h) claim relates to whether Dianon took action to retaliate against the Relator personally for engaging in protected activity. Protected activity means only that the Relator was investigating a possible false claim submitted to the Government. Thus, it is not necessary for the Relator to actually prove that false claims were submitted to the Government. Even though the United States' claims and the § 3730(h) claim both arise under the FCA, they are based on different transactions and occurrences.

**B. The separable issues will require the testimony of different witnesses and different documentary proof.**

In order to prove its claims, the United States must prove that Dianon knowingly

5

submitted claims for payment for medically unnecessary antibodies to the Government. The factual and legal issues relevant to the Relator's employment discrimination claims are quite different, involving alleged discrimination based on disability retaliation, hostile work environment, negligent supervision of Dianon employees, and infliction of emotional distress. None of these issues relates in any way to the United States' claims and do not involve overlapping factual or legal issues. The statutes involved all govern individual employment claims of the Relator and do not concern the question of whether Dianon submitted false claims to the United States.

Although there will undoubtedly be some small overlap of testifying witnesses, those numbered few that will need to testify twice will be addressing the treatment of the Relator on one hand and medical necessity of laboratory tests on the other. Factually, the testimony could not be more distinct. The same can be said for documentary proof. There is expected to be little overlap in the documents submitted to the jury on the fraud and the employment allegations.

## C. The Defendants will not be prejudiced if severance is granted.

As stated above, defendant Dianon does not oppose severance, so there is no basis to indicate that defendant will be prejudiced if severance is granted. In any event, the only reservation defendant has expressed regarding severance is that a small number of witnesses would be required to appear for two depositions and two separate trials. The Relator has shared with the United States and Dianon his list of potential deponents relating to the employment claims. Of that list, only four or five witnesses appear to have evidence which might be relevant

6

to both cases.[1] Thus, of the many potential deponents in the two cases, only a very small number would face the possibility of being deposed twice.

However, even if the case remained consolidated into one, those few overlapping witnesses would be prepared for depositions and trial by the set of lawyers representing Dianon with respect to the employment claims and an entirely different set of lawyers representing Dianon on the fraud claims. Furthermore, the United States and the Relator could not conceivably depose those overlapping witnesses on the employment and the fraud claims during one seven hour deposition. If this case were to remain one action, the United States would have good cause to request additional time under Fed. R. Civ. P. 30(d)(2), in excess of seven hours, in order to fairly examine these deponents.

Separating the claims of the United States and the Relator would also make for more efficient and less costly discovery. Dianon and the Relator have already propounded and responded to interrogatories and have exchanged document discovery. Some of the discovery deals with other similarly situated employees at Dianon who may have been discriminated against by the company. This obviously has no relation to the Government's case. Conversely, in the *qui tam* case, there will be discovery involving medical evidence and Medicare policies, regulations and documents that have no bearing on the employment case. Thus, the scope of discovery in the two actions is quite different. *See Hal Leonard*, 1994 WL 163987, at * 4 (a "significant difference in the scope of expected discovery" weighs in favor of separating claims).

---

[1]      The Relator, of course, has information related to both cases. He has informed the United States and the defendant that he has no objection to being deposed twice and testifying at two separate trials.

**D.    The United States and the Relator would be prejudiced if claims were not severed.**

Both the United States and the Relator would suffer prejudice if the case were not severed into two actions. As mentioned previously, discovery will soon be concluded in the Relator's employment case. Because the United States only recently filed its Complaint, the parties could not engage in any form of meaningful discovery under the deadlines currently set by the Court. Assuming, however, that the Court permits the United States to conduct discovery on the fraud claims beyond the May 31, 2005, deadline, the Relator's case will be at a standstill for months until discovery on unrelated issues of fraud is concluded.

Furthermore, because the issues, both factually and legally, differ to such a great extent, the United States would be prejudiced if it were required to try its claims at the same time as the Relator. The United States' has one discrete claim involving submission of false claims to the Government for a particular type of test. Medical necessity cases such as this often present factual issues that can be somewhat difficult for a layperson, like the typical juror, to understand. Unnecessarily complicating the Government's case by requiring that it be tried with unrelated employment discrimination issues arising under a myriad state and federal statutes will prejudice the ability of the Government to put on its case. Furthermore, presenting employment claims and fraud claims to one jury, during one trial, will result in undue and unnecessary confusion of the issues and burden the jury with two very different factual determinations.

In sum, each of the considered elements weighs heavily in favor of severing the case into separate actions.

8

**II.     The Court Should Order Separate Trials Pursuant to Fed. R. Civ. P. 42(b).**

The Court should also order two separate trials for the claims brought respectively by the United States and the Relator.  As set forth above, Dianon and the Relator do not object to two separate trials.

Fed. R. Civ. P. 42(b) provides, in pertinent part, that the court may order the separate trial of any claim, including a counterclaim, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy...."  As set forth above, "[s]everance is appropriate when it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Levine*, 136 F.R.D. at 550.  The decision to order separate trials under Rule 42(b), like the decision to sever claims under Rule 21, is left to the discretion of the trial court. *Hal Leonard*, 1994 WL 163987 at * 4.

The goals of Fed. R. Civ. P. 42(b) will be met by permitting separate trials in this case.  As set forth above, both parties' claims are based on very different sets of facts.  Moreover, the United States' case will require much in the way of complex expert testimony, whereas the Relator, although he may have some expert testimony, will most likely be relying on testimony from lay witnesses.

Finally, judicial economy will be fostered by two separate trials.  As presently formulated, the Court would be faced with managing a trial involving four sets of trial counsel (Relator's, the Government's, Dianon's employment litigation firm and Dianon's FCA litigation firm), two very different sets of allegations, potentially four sets of expert witnesses, and dozens of fact witnesses.  Severing the claims of the United States will make both cases smaller, more manageable, and less confusing to the jury.

## CONCLUSION

For all of the above reasons, the United States respectfully requests that the Court grant

its motion, and sever the claims of the United States set forth in its Complaint (including Count 8

of Relator's Amended Complaint), and all other personal claims of the Relator contained in

Relator's Amended Complaint, into two separate actions, with separate discovery schedules,

pursuant to Fed. R. Civ. P. 21, and allow for separate trials pursuant to Fed. R. Civ. P. 42(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

JOHN B. HUGHES
Assistant U.S. Attorney
Chief, Civil Division

RICHARD MOLOT
Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700

/s/

MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
RYAN FAYHEE
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0240
Attorneys for the United States

10

**APPENDIX A**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* DR. JAMES J. TIESINGA, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:02CV1573(MRK) |
| v. | ) | |
| | ) | |
| DIANON SYSTEMS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PROPOSED SCHEDULING ORDER

The following case management schedule shall apply to the qui tam aspects of this case, as agreed to by the Government, the Relator and the defendant:

1.   **Responsive pleading by defendant.**  Defendant will answer or otherwise respond to the United States' Complaint, which was filed and served on March 18, 2005, within sixty (60) days, by **May 18, 2005.**

2.   **Rule 26(f) Report and Initial Disclosure.**  The parties will file their Rule 26(f) Report and exchange initial disclosure pursuant to Rule 26(a)(1) by **June 1, 2005**.

3.    **Joinder of parties and amendment of pleadings**.  The parties will join any additional parties and file any and all amendments of pleadings no later than **July 1, 2005.**

4.   **Discovery:** All discovery, including discovery relating to expert witnesses, will be completed (not just propounded) by **January 31, 2006.**

5.   **Expert Discovery:** Plaintiff's expert reports will be served by **October 1, 2005**. Defendant's expert reports will be served by **November 1, 2005.**  Plaintiff's rebuttal

expert report will be served by **December 1, 2005.** All depositions of experts will be completed by **January 31, 2006.**

6.      **Dispositive Motions:** Dispositive motions, if any, including all motions to exclude testimony of experts pursuant to Fed. R. Evid. 702-05 and the *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) line of cases shall be filed by **February 28, 2006.**

7.      **Trial Memorandum:** If no dispositive motions are filed, the parties' Joint Trial Memorandum is due **March 15, 2006.** If dispositive motions are filed, the Joint Trial Memorandum is due 30 days after the Court's decision on the dispositive motion.

8.      **Trial Ready Date:** If no dispositive motions are filed, the case will be considered trial ready on **March 15, 2006.** If dispositive motions are filed, the case will be considered trial ready immediately after the filing of the parties' Joint Trial Memorandum.

IT IS SO ORDERED.

_____
Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April __, 2005**

CERTIFICATION OF SERVICE

I hereby certify that on this 14th day of April 2005, a true and correct copy of the

Memorandum of Points and Authorities in Support of the United States' Motion to Sever Claims

and for Separate Trial, was served by Fed Ex on:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Kerry M. Parker, Esq.
Michael D. Thompson, Esq.
Epstein, Becker & Green, P.C.
Two Gateway Center, 12th Floor
Newark, NJ 07102

Mary A. Gambardella, Esq.
Epstein, Becker & Green, P.C.
One Landmark Square, Ste. 1800
Stamford, CT 06901

Robert Salcido, Esq.
Akin Gump Strauss Hauer & Field, LLP
Robert Strauss Building
1333 New Hampshire Ave, NW
Washington, D.C. 20036

Pat Davis, Esq.
Ryan Fayhee, Esq.
United States Department of Justice
Civil Division
Patrick Henry Building
601 D Street, Room 9026
Washington, DC 20530

RICHARD MOLOT
ASSISTANT U.S. ATTORNEY