UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DR. JAMES J. TIESINGA *ex rel.* UNITED STATES GOVERNMENT, and DR. JAMES J. TIESINGA<br><br>　　　　Plaintiffs,<br><br>　　-against-<br><br>DIANON SYSTEMS, INC. and ETHEL JANEGA<br><br>　　　　Defendants. | Case No. 302 CV 1573 (MRK)<br><br><br><br><br><br><br>April 14, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO AFFIRM SCHEDULING ORDER AND COMPEL APPEARANCES FOR DEPOSITION**

As the Plaintiff in the above-captioned case, Dr. James J. Tiesinga (the "Plaintiff"), by and through his attorneys, respectfully submits this Memorandum of Law in support of his Motion to Affirm Scheduling Order and Compel Appearances for Deposition (the "Motion").

**BACKGROUND**

On March 2, 2005, Your Honor held a conference with counsel to address the discoverability of Affidavits collected by counsel for the Plaintiff. Towards the end of that conference, counsel for the Defendants raised the issue of whether the employment claims should be separated from the *qui tam* case for purposes of discovery and trial. Your Honor instructed all counsel to confer on the matter and thereafter share their positions with the Court.

Though counsel for the Defendants volunteered to schedule that conference, it did not convene until March 22, 2005, twenty (20) days later.  At any rate, at that conference, counsel discussed the interplay of the employment case with the *qui tam* case.  Ultimately, counsel agreed to adjourn the conference so that counsel for the Plaintiff and counsel for the United States could discuss, as a discovery matter, any overlap in the two cases, *e.g.*, common deponents.

The parties reconvened that Friday, March 25, 2005.  Counsel for the Plaintiff and the United States advised that of the ten (10) persons the Plaintiff might depose, the United States would probably depose four (4).  Unfortunately, despite subsequent conferences, the parties could not formulate a mutually satisfactory discovery schedule and decided to submit separate proposals to Your Honor.  The discovery dispute aside, the parties do agree the employment case, inclusive of the *qui tam* whistleblower claim, should be tried separately from the *qui tam* fraud case, *i.e.*, Count 8 of the Amended Complaint and the United States Complaint.[1]

## ARGUMENT

The Court should not modify the current Scheduling Order.  Thus far, the Order has governed the employment case successfully and the May 31, 2005 cut-off date affords the parties sufficient opportunity to complete discovery of the employment case.[2]

---

[1] The Plaintiff understands the United States has filed a Motion under Fed. R. Civ. P. 21 to sever the *qui tam* case or, in the alternative, for separate trials under Fed. R. Civ. P. 42(b).  He concurs, needless to say, as to the Motion.

[2] To date, under the Order, the Plaintiff has demanded production of his personnel file, requested entry to the DIANON facility, propounded a document request to DIANON, and a set of interrogatories for each Defendant.  The Defendants, for their part, have served two sets of document requests and interrogatories.  The Defendants have also served over a dozen subpoenas.

2

In particular, the Plaintiff is ready to be deposed and the depositions noticed by the Plaintiff can, if the Court So Orders, be accomplished before the cut off date.

1.  *The Deposition of the Plaintiff*

Initially, the parties agreed the deposition of the Plaintiff would occur on February 10, 2005. *See* Letter from Thompson to Carmody of 1/5/05, attached hereto as "Exhibit A." On January 31, 2005, the Defendants informed the Plaintiff his deposition needed to be adjourned because they did not have sufficient time to collect particular medical and employment records Your Honor had ruled were discoverable. *See* Letter from Thompson to Carmody of 1/31/05, attached hereto as "Exhibit B."

The next day, counsel for the Plaintiff advised counsel for the Defendants that, in an effort to have the deposition of the Plaintiff go forward on February 10, 2005, he could probably collect the records within 48 hours.[3] Later that same day, counsel for the Defendants shared, belatedly, another reason to delay the deposition, to wit, the fact the Court had not ruled whether Affidavits collected by the Undersigned were discoverable. In an effort to resolve the issue amicably, the Plaintiff offered to adjourn the deposition if the Defendants would reimburse him for 50% of his airfare. *See* E-mail from Carmody to Thompson of 2-2-05, attached hereto as "Exhibit C." The Defendants summarily rejected that offer. *See* Letter from Thompson to Carmody of 2-3-05, attached hereto as "Exhibit D." Ultimately, the Plaintiff decided not to burden the Court with the dispute, but simply incur the loss. *See* Letter from Carmody to Thompson of 2-4-05, attached hereto as "Exhibit E."

---

[3] The Plaintiff desired to maintain that date because his employer had spent a significant period of time planning for his absence, *e.g.*, they had scheduled another physician to fly in from San Antonio, Texas. In addition, the Plaintiff had already paid for his airfare and lodging.

Shortly thereafter, the parties agreed the deposition of the Plaintiff would occur on April 6, 2005.  However, counsel for the Defendants later informed the Undersigned the deposition could not go forward on this date either.  More specifically, counsel for the Defendant advised on March 25, 2005, *i.e.*, at the second attorney conference, that he needed to conduct discovery of the *qui tam* whistleblower claim before he could depose the Plaintiff.  Notably, the *qui tam* whistleblower claim was officially introduced to the case as of February 3, 2005, the day the Plaintiff filed the Amended Complaint.  The Plaintiff leaves the Defendants to explain why they did not propound discovery (which, incidentally, is fairly terse) until March 29, 2005 - roughly six (6) weeks after the claim was interposed.

The document request the Defendants served with regard to the *qui tam* whistleblower claim calls for, *inter alia*, production of:

> "… any and all written statements of evidence or information supplied by plaintiff to the United States government with respect to the allegations of violation by DIANON of the False Claims Act as alleged in the Amended Complaint."  A copy of the document request is attached hereto as "Exhibit F."

The Plaintiff has raised privilege objections, *e.g.*, the joint prosecutorial privilege, to the quoted (and other) requests.  The Plaintiff understands the Defendants will attempt to compel production of the documents.

Thus, it appears the deposition of the Plaintiff will be further delayed until the Court has an opportunity to rule on the issue of whether statements the Plaintiff supplied to the United States are protected by a privilege.  To be sure, the Plaintiff defers, entirely, to Your Honor in terms of when the issue will be ruled upon by the Court, but he is

4

hopeful such a decision may come before the May 31, 2005 discovery cut-off date arrives.

2.  *Depositions the Plaintiff Desires to Take*

The Plaintiff has re-noticed the deposition of Ms. Valerie Palmieri for April 27, 2005, and re-noticed the deposition of Defendant Ethel Janega for May 6, 2005. *See* Motion, "Exhibit A" and "Exhibit B," respectively.[4] The Plaintiff has also noticed the deposition of Dr. James "Jay" Amberson for May 11, 2005, and issued a subpoena for the deposition of Mr. Leon Bailey on May 18, 2005. Id., "Exhibit C" and "Exhibit D," respectively. For the reasons set forth below, the Plaintiff anticipates the Defendants will refuse to supply any of the deponents, and in the case of Mr. Bailey, attempt to quash the subpoena.

*(a) The Federal Courts Do Not Follow a "Rule of Priority"*

The Defendants have always maintained the Plaintiff is not able to conduct any deposition until they depose him, since they first noticed his deposition. In effect, the Defendants argue the rather antiquated "rule of priority" governs this case, even though their original pledge, as captured by their 26(f) Report to the Court, was that "[d]iscovery will not be conducted in phases." A copy of the relevant page of the Report is attached hereto as "Exhibit G."

More important than the position of the Defendants, of course, is the rule of law. The Federal Rules of Civil Procedure provide:

> "[u]nless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or

---

[4] This represents the third occasion on which these individuals have been noticed for their depositions.

>otherwise, does not operate to delay any other party's discovery."
>*See* R. 26(d).

Thus, the fact the Plaintiff was the first party to be noticed for a deposition does not, by straight application of the rule, "operate to delay" his ability to conduct discovery, *e.g.*, conduct depositions. *See* Fed. R. Civ. P. 26(d) advisory committee's note ("[a] priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects: [discussion omitted]"); a copy of this note is attached hereto and made a part hereof as "Exhibit H."

The Second Circuit has also cautioned "the much criticized and delay-inducing" rule of priority allows defendants to delay discovery and leaves a plaintiff "helpless" to proceed with his discovery. <u>George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.</u>, 554 F.2d 551, 556 n.5 (2d. Cir. 1978). That, thus far, has been precisely the case here, insofar as the Defendants have heretofore refused to supply a single deponent, despite the fact discovery began last November, six (6) months ago.

In sum, as a matter of law, the Defendants should not be able to resurrect the "rule of priority," and the Court should direct the deponents noticed by the Plaintiff to appear at the designated times.

### *(b) The "Overlap" Deponents Should be Questioned at Separate Times*

Not only do the Defendants argue the deposition of the Plaintiff is, in effect, a condition precedent to his right to conduct any deposition, they insist the Plaintiff not depose any of the overlap deponents until the United States is ready to conduct depositions, months down the road.

6

As noted above, the United States anticipates that of the ten persons the Plaintiff intends to depose, the government will probably depose four. They are: (1) Valerie Palmieri, (2) Dr. James "Jay" Amberson, (3) Dr. Suha Mishalani, and (4) Dr. Glen Siegel.

At the attorney conference, the Defendants suggested that, in the interests of "efficiency," the Plaintiff delay his deposition of the overlap deponents until the United States was ready to conduct their depositions. Insofar as the deponents could be deposed on consecutive days, the Defendants also argued this would be more convenient for the witnesses.

By a conservative measure, the United States will not be ready to begin any deposition for several months.[5] Though no party should be required to wait months to conduct a deposition, the Plaintiff would be especially prejudiced by such a delay. Not only did the Plaintiff start this case two and a half years ago, the trial is (realistically) several months away, and appeals are sure to follow. As the Court is aware, the Plaintiff also suffers from a serious health condition, to wit, an HIV infection. In this case, justice delayed may truly be justice denied.

Additionally, the interests of the overlap deponents would not be well served by consolidated depositions. Imagine the actual circumstances: the deponent endures intense questioning for an entire (7) hours on his / her knowledge of the employment case, only to go through those same rigors for seven (7) hours the next day with a different attorney who questions him / her on the esoteric science of hematopathology. The burden is self-evident and compelled the Plaintiff to request that he be deposed at

7

separate, relatively distant times. Whether the overlap deponents are questioned at different times or on consecutive days, the total sum of deposition time, *i.e.*, the inconvenience, will be the same. Due to the breadth and complexity of the deposition subjects, the Plaintiff believes it is in the interest of each overlap deponent to be questioned at separate times.[6]

In conclusion, the Plaintiff should not be forced to delay deposing any of the overlap deponents, particularly in light of the heavy burdens that would be imposed by virtue of consolidated depositions.

## **CONCLUSION**

For the reasons set forth above, the Plaintiff respectfully urges Your Honor to affirm the current Scheduling Order and direct each of the deponents identified in the Re-Notices and related papers to appear at the designated time and places.

Respectfully submitted,

Plaintiff

_____

Bryan T. Carmody (ct 22514)
Maya & Associates, P.C.
183 Sherman Street
Fairfield, CT 06430
203-255-5600
203-255-5699 (fax)

---

[5] Counsel for the United States mentioned during the attorney conferences the government would not be able to begin taking depositions until document production was complete.

[6] The Plaintiff also notes that, to the best of his knowledge, all of the overlap deponents reside locally. Thus, the witnesses would not be inconvenienced by having to travel twice for their depositions.

bcarmody@mayalaw.com

CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of April 2005, I caused a true and correct copy of the foregoing to be served upon the following counsel of record by Federal Express:

Kerry M. Parker, Esq.
Epstein Becker & Green, P.C.
*Attorneys for Defendants*
Two Gateway Center, 12th Floor
Newark, NJ 07102
973-639-8259


Richard Molot, Esq.
U.S. Attorney General's Office
*Attorneys for United States*
District of Connecticut
157 Church Street
New Haven, CT 06510


_____

Bryan T. Carmody (ct 22514)
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880
(203) 221-3100
(203) 221-3199 (facsimile)
bcarmody@mayalaw.com