IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>ex rel. Dr. James J. Tiesinga, )<br> )<br>            Plaintiffs, )<br>       v. )<br> )<br>DIANON SYSTEMS, INC., )<br> )<br>            Defendant )  | No. 3:02CV1573(MRK) |

**DEFENDANT DIANON'S MOTION TO DISMISS THE GOVERNMENT'S
COMPLAINT UNDER FED. R. CIV. P. 9(b) AND SUPPORTING MEMORANDUM OF
POINTS AND AUTHORITIES**

Dianon Systems, Inc., ("Dianon") hereby files this motion to dismiss the United States' complaint pursuant to Fed. R. Civ. P. 9(b). The grounds for the motion are set forth below.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On September 5, 2002, relator James J. Tiesinga filed this action under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, against Dianon. The government elected to intervene in the relator's action. On March 18, 2005, the government filed its FCA complaint against Dianon, which included related common law claims of unjust enrichment and payment by mistake of fact.

In its complaint, the government alleges that Dianon submitted false or fraudulent claims for payment to Federal healthcare programs for flow cytometry tests containing antibodies that were not medically necessary. *See* United States' Compl. ¶ 2   Hematopathologists use flow cytometry for the rapid identification and classification of specific white blood cells (leukocytes) using antibodies in single cell suspensions of eithe1r blood, bone marrow, or lymph tissue. *See* United States' Compl. ¶ 26. After interpreting the results of flow cytometry, hematopathologists

**ORAL ARGUMENT IS REQUESTED**

provide other specialists, such as oncologists, surgical oncologists, hematologists, and radiation oncologists, with the appropriate diagnosis and classification of leukemias and lymphomas. These specialists then provide specific treatment regimens and monitor the patients during treatment to determine remission status or recurrence of disease.

The government asserts that "in or about 1996 to the present, when Dianon billed for flow cytometry tests, **a significant portion of the antibodies** billed to Federal healthcare programs were not medically necessary." United States' Compl. ¶ 36 (emphasis supplied). The government asserts that between 1996 and 1998 Dianon billed for 26 antibodies and between 1998 and 2000 it billed for 18 antibodies, although it continued to perform 26 antibodies. *Id.* ¶¶ 28, 32. Further, the government asserts that during the time period covered in the complaint that 15,074 patients received flow cytometry services, and that of these 15,074 patients, 1,589 patients received repeat services (*i.e.,* two or more flow cytometry tests for a particular patient). *Id.* ¶ 44.

The government, in its complaint, never specifies the date or content of any particular false or fraudulent claim, identifies the specific patients that received the services, lists the antibodies that were allegedly unnecessary, or identifies the amounts wrongfully charged on individual claims. As a result of this lack of specificity, Dianon does not know, at the most general level, whether the government is asserting that the full universe of claims breached the FCA or only those concerning the repeat patients. Additionally, Dianon lacks notice regarding whether the government is asserting that even during the period in which Dianon tendered claims for 18 antibodies that Dianon breached the FCA. Finally, Dianon does not know whether the government believes that its antibody panel was fraudulent in all cases regardless of whether the test was performed on bone marrow or tissue.

## II. THE GOVERNMENT'S FCA ALLEGATIONS DO NOT SATISFY RULE 9(b)

Fed. R. Civ. P. 9(b) mandates that "the circumstances constituting fraud or mistake shall be stated with particularity." In this circuit, to satisfy Rule 9(b), the plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[1] Here, under the vast majority of cases construing Rule 9(b) in FCA actions, the complaint does not come close to satisfying this standard. Moreover, the government's complaint, if not dismissed, would undermine the purposes underlying Rule 9(b), which include, among other things, providing defendants with adequate notice of the allegations and furnishing the parties and the court with discernable boundaries to conduct and manage discovery.[2]

In applying Rule 9(b) in FCA actions alleging healthcare fraud, courts have routinely dismissed FCA actions, like this, in which the plaintiff merely alleges a general scheme of fraud but does not tie the alleged scheme to particular patients and specific federal claims. *See, e.g., United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 233 (1st Cir. 2004) (dismissing plaintiff's complaint because although plaintiff contended that defendants wrongfully billed Medicare and the complaint referred to false orders and progress notes, the "complaint never specifies the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement by Medicare … [and] provides no identification numbers

---

[1] *In re Cardiac Devices* Qui Tam *Litigation*, 221 F.R.D. 318, 332 (D. Conn. 2004) (citations omitted).

[2] *See, e.g., United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 198 F.R.D. 560, 564 (N.D. Ga. 2000) ("The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits"), *aff'd,* 290 F.3d 1301 (11th Cir. 2002); *see also Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ("Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis") (citations and internal quotations omitted).

or amounts charged in individual claims for specific tests, supplies, or services [or] identify or describe the individuals involved in the improper billing …"), *cert. denied*, 125 S. Ct. 59 (2004); *United States ex rel. Bledsoe v. Community Health Systems*, 342 F.3d 634, 643 (6th Cir. 2003) (affirming dismissal of plaintiff's complaint because, among other things, plaintiff failed "to set forth dates as to the various FCA violations …"); *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (barring complaint because it did not set forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making it, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud).[3]

---

[3] *See also United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, No. 99-3105, 2000 U.S.App.LEXIS 26914 at *14-*17 (10th Cir. Oct. 26, 2000) (dismissing complaint when allegations did not identify a physician or a specific occasion when the practice resulted in illegal activity because the plaintiff had "merely described the allegedly illegal contracts and arrangements without identifying any person, place or time when an actual false claim or other illegal activity occurred" and hence "at best" alleged "the existence of a general scheme or methodology by which defendants could have violated the False Claims Act" and that "is simply insufficient under Rule 9(b)"); *United States ex rel. Barrett v. Columbia/Healthcare Corp.*, 251 F.Supp.2d 28, 35 (D.D.C. 2003) (dismissing plaintiffs' complaint because they failed to "set out the details of the specific scheme and its falsehoods, as well as supply the time, place, and content of false representations, and link that scheme to claims for payment made to the United States") (citation omitted); *Peterson v. Comm. Gen. Hosp.,* No. 01-CV-50356, 2003 U.S. Dist. LEXIS 1783 (N.D. Ill. Feb. 7, 2003) (same); *United States ex rel. Stewart v. Louisiana Clinic*, 2002 WL 1066745 at *4 (E.D. La. May 28, 2002) (same); *United States ex rel. Obert-Hong v. Advocate Health Care*, No. 99 C 5806, 2001 U.S. Dist. LEXIS 3767 at *4-*7 (N.D. Ill. Mar. 27, 2001) (holding that plaintiff's complaint failed to satisfy Rule 9(b) because, among other things, plaintiff did not "list specific dates when defendants made these supposedly fraudulent claims. All [the relator] states is that these practices continued from 1994 forward") (citations and footnote omitted); *United States ex rel. Butler v. Magellan Health Servs., Inc.*, 101 F.Supp.2d 1365, 1369 (M.D. Fla. 2000) (barring plaintiff's claim because "Defendants correctly argue that Plaintiff merely alleges a scheme of fraud, and not specific occurrences or facts which support this general scheme.…"); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.Supp.2d 141, 147 (D. Mass. 2000) (same); *United States ex rel. Lacorte v. SmithKline Beecham Clinical Laboratories, Inc.*, No. 96-1380 C/W 97-942, 2000 U.S. Dist. LEXIS 176 at *12-*15 (E.D.La. Jan. 10, 2000) (same); *United States ex rel. Gublo v. NovaCare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999) (same); *State of Cal. ex rel. Mueller v. Walgreen Corp.,* 175 F.R.D. 631, 634-35 (N.D. Cal. 1997) (dismissing the plaintiff's complaint because although it "sets forth in some detail the nature of [the Defendant's] allegedly fraudulent scheme of 'short-filling' customers' prescriptions," the plaintiff failed "to provide any specific examples of the time, place, or content of the allegedly fraudulent scheme. For instance, he fails to identify (1) any particular prescription which was 'short-filled'; (2) any particular pharmacy or pharmacist engaging in the practice of 'short-filling' prescriptions; or (3) any particular [Defendant] customer who failed to obtain the remainder of a 'short-fill' prescription, but who nonetheless received a Medi-Cal statement indicating that [the Defendant] had billed Medi-Cal for the full amount of the prescription. Instead, plaintiff relies entirely on the general allegation that during the period between 1993 and 1995, [the Defendant] engaged in fraudulent 'short-filling' practices throughout California. This is not sufficient to meet Rule 9(b)'s particularity requirements"); *see also United States ex rel. El-Amin v. George Washington Univ.*, No. 95-2000, 2005 U.S. Dist. LEXIS 3563 (D.D.C. Feb. 25, 2005).

Moreover, in cases like this, where it may be impractical for the plaintiff to specify the alleged fraud on a patient-by-patient basis, courts have ruled that the government's complaint may satisfy Rule 9(b) if it otherwise provides the defendant with a list or related document that sets forth the specific patients that received the allegedly unnecessary services, identify which services were unnecessary, and list the amount the defendant allegedly gained. For example, in *In Re Cardiac Devices* Qui Tam *Litigation*, 221 F.R.D. at 336-337, the government's complaint satisfied Rule 9(b) when the government, under separate cover, provided the defendants with a list identifying the specific patients that received the allegedly fraudulent service, listed the specific procedures the patient received, provided some identifying number regarding the patient's account or medical record, listed the make and model of the investigational medical device implanted in the patient, and furnished the dates of service or the admission and discharge dates of the patient's hospital stay.[4]

Here, the government's complaint does not identify which claims the government believes are fraudulent, list when these claims were submitted, or identify which antibodies the government believes are unnecessary. Nor has the government provided Dianon with any list or other document containing that same information.[5]

---

[4] It is, in fact, common for the government to include this information, if not in the complaint, then in a related document, to comply with Rule 9(b). *See also United States ex rel. Kneepkins v. Gambro Healthcare, Inc*, 115 F.Supp.2d 35, 44-45 (D. Mass. 2000) (noting that defendants had "a point" that the government's allegations were insufficiently pled under Rule 9(b) because "the government did not identify specifically which claims for nonroutine tests were unnecessary" but not dismissing the action because "the government represented that it would provide the defendants with a refined computerized list specifically identifying every claim alleged to contain unnecessary testing"; further, the court admonished the government that "a list which simply regurgitated all the claims that *might contain* unnecessary tests, without specifically identifying which claims and which tests were said to be unnecessary tests, would not satisfy the Rule").

[5] Dianon would not object if the government moved the court to amend its complaint and represents in the complaint that it has provided this information to Dianon under separate cover as long as the information it provides to Dianon is comparable to what the government provided the defendants in *In re Cardiac Devices* and *Gambro Healthcare* – that is, it identifies the patients that allegedly received the fraudulent services, lists what antibodies were allegedly fraudulently tested, and identifies when those services were provided.

Finally, the Court's application of Rule 9(b) here would also effectuate the Rule's purpose of providing notice to the defendants regarding the specific allegations of fraud and establishing for the case discernable discovery limits. As one court recently pointed out in dismissing an FCA action under Rule 9(b):

> The Plaintiff wants a ticket to the discovery process. If given such a ticket, the next stage of this litigation is clear. The Plaintiff will request production of every lab test claim submitted by the Defendant over the last ten years. At that point, the Defendant may decide to settle the case to avoid the enormous cost of such discovery and the possible disruption of its ongoing business. On the other hand, the Defendant may choose to resist the discovery. In that case, the Court will be presented with the dilemma of allowing an unlimited fishing expedition or no discovery at all because of the difficulty in fashioning logical and principled limits on what has to be produced. The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits.

*Laboratory Corp. of Am.*, 198 F.R.D. at 564, *aff'd,* 290 F.3d 1301 (11th Cir. 2002).

### III. THE GOVERNMENT'S COMMON LAW CLAIMS SHOULD BE DISMISSED UNDER RULE 9(b)

Similarly, the government's common law claims of unjust enrichment and payment by mistake of fact should be dismissed because they are premised upon allegations of fraudulent conduct and lack sufficient specificity to satisfy Rule 9(b). *See generally In re Cardiac Devices* Qui Tam *Litigation*, 221 F.R.D. 318, 332 (D. Conn. 2004) ("Rule 9(b) has been held to apply to common-law claims where the counts are premised on allegations of fraudulent conduct") (citing cases); *see generally Sec. Inv. Protection v. Stratton Oakmont, Inc.*, 234 B.R. 293, 311 (Bkrtcy. S.D.N.Y. 1999) ("[W]here the complaint incorporates by reference prior allegations of fraud into other clams traditionally not perceived to be grounded in fraud, those claims must then be pleaded according to F.R.C.P. 9(b)") (citations omitted).

## IV. CONCLUSION

Here, notwithstanding the fact that this lawsuit was filed more than two years ago and the government has lodged serious allegations of healthcare fraud, the government has failed to specify such basic information as which patients allegedly received the fraudulent services, when they received those services, and what component of the service was unnecessary. Accordingly, its complaint should be dismissed under Rule 9(b).

Respectfully submitted,

By: _____
Robert Salcido
Fed. Bar No. 447951
(admitted *pro hac vice)*
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4095

Mary A. Gambardella (ct #05386)
Kerry M. Parker (ct # 26388)
Michael D. Thompson (ct # 26389)
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601
Telephone: (203) 348-3737

Thomas Kossl
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615
Telephone: (973) 492-1509

Bruce R. Parker
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244-7400

Attorneys for Defendant Dianon Systems, Inc.

7

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was sent via United States first class mail, postage prepaid, this ____ day of May, 2005 to:

       Bryan T. Carmody, Esq.
       Maya & Associates, P.C.
       183 Sherman Street
       Fairfield, CT 06430

       Richard Molot, Esq.
       U.S. Attorney General's Office
       District of Connecticut
       175 Church Street
       New Haven, CT 06510

       Patricia R. Davis
       Civil Division
       Commercial Litigation Branch
       P.O. Box 261
       Ben Franklin Station
       Washington, DC 20044

_____
    Penney Hughes