**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. Dr. James J. Tiesinga, | ) | |
| | ) | No. 3:02CV1573(MRK) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| DIANON SYSTEMS, INC., | ) | June 27, 2005 |
| | ) | |
| Defendant. | ) | |

**DIANON'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DIANON'S MOTION
TO DISMISS THE GOVERNMENT'S COMPLAINT UNDER FED. R. CIV. P. 9(b)**

Dianon Systems, Inc., ("Dianon") hereby files this Reply to the United States'

Opposition to Dianon's Motion to Dismiss the government's complaint pursuant to Fed. R. Civ.

P. 9(b). As is stated more specifically below, the government's complaint, at a minimum,

demonstrably fails to provide Dianon with notice of which statements are false and why those

statements are false. Accordingly, the Court should dismiss the government's complaint.

**I.      THE GOVERNMENT'S COMPLAINT DOES NOT PROVIDE DEFENDANT
         WITH NOTICE OR PROVIDE THE PARTIES AND THE COURT WITH
         DISCERNABLE BOUNDARIES TO CONDUCT AND MANAGE DISCOVERY**

In this circuit, to satisfy Rule 9(b), the plaintiff must: "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent."[1] As Dianon pointed

out in its motion, the government's complaint is deficient because, among other things, it does

not identify the statements that it contends were fraudulent and does not explain why those

statements were fraudulent. The government's complaint distinguishes between claims

submitted between 1996 and 1998 (when Dianon billed for 26 antibodies) and between 1998 and

---

[1] *In re Cardiac Devices* Qui Tam *Litigation*, 221 F.R.D. 318, 332 (D. Conn. 2004) (citations omitted).

2000 (when it billed for 18 antibodies), between repeat patients (which allegedly would need fewer antibodies) and non-repeat patients, and between bone marrow specimens and tissue. *See* Gov't Compl. ¶¶ 28, 32, 44. However, because the government neither identifies which antibodies are allegedly fraudulent nor provides specific patient examples within each of these categories, Dianon does not know, at the most general level, whether the government is asserting that even during the period in which Dianon tendered claims for 18 antibodies whether Dianon breached the False Claims Act ("FCA"), 31 U.S.C. § 3729, and, if so, how, whether the government is asserting that the full universe of claims breached the FCA or only those concerning the repeat patients or whether the government believes that its antibody panel was fraudulent in all cases regardless of whether the test was performed on bone marrow or tissue.

The government did not address any of these issues in its opposition. Instead, it asserts that it satisfied Rule 9(b) by simply alleging that all claims are fraudulent because they contain one or more medically unnecessary services. This, the government contends, provides the defendant with adequate notice regarding the allegations and, to the extent it does not, it can obtain the information during discovery. *See* United States' Opp'n to Def.'s Mot. to Dismiss the Compl. Under Fed. R. Civ. P. 9(b) at 1, 11-12 (hereinafter "Gov't Opp'n.").

The government's contention is mistaken. First, Rule 9(b) is not intended to simply provide defendant with "notice" of the allegations but to effectuate a number of other purposes, including furnishing the parties and the court with discernable boundaries to conduct and manage discovery.[2] However, even under the government's own narrow interpretation of Rule 9(b), Dianon demonstrably lacks notice of the government's claims for a significant time period

---

[2] *See, e.g.*, *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 198 F.R.D. 560, 564 (N.D. Ga. 2000) ("The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits"), *aff'd*, 290 F.3d 1301 (11th Cir. 2002); *see also Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

covered in the complaint.  For example, the government contends that Dianon has notice

regarding which antibodies were medically unnecessary because a Dianon pathologist allegedly

drafted a memorandum stating that only 18 of the 26 antibodies Dianon performed were

necessary and that, by definition, "Dianon certainly should be able to identify, at minimum,

those eight antibodies." *Id.* at 15.  However, as the government also concedes, from 1998 to

2000, Dianon only billed for these 18 antibodies. *Id.* at 3.  Hence, at a minimum, during this

time period, even under the government's theory, Dianon has absolutely no notice regarding

which, if any, antibodies, were medically unnecessary.[3]  This is perfect proof why the

government's complaint does not satisfy even a notice standard.[4]  Second, the government's

contention that its complaint should not be dismissed because it will provide the specifics of its

claim during discovery would render Rule 9(b) a dead letter and undermine its purpose.  *See*

Gov't Opp'n at 1, 11-12.  Specifically, the government contends that Dianon can learn of the

specifics of why the government believes a claim is fraudulent when the government presents its

expert report to Dianon near the completion of discovery. *Id.*  First of all, courts have routinely

rejected the notion that defendants accused of fraud should have to learn about the specifics of

the plaintiff's claim during discovery simply because the plaintiff must satisfy Rule 9(b) *before*

---

[3] Dianon provided the government with a sworn statement from the pathologist that authored the memorandum setting forth why the government's interpretation is wrong.  However, even assuming the government's contention was accurate for purposes of this motion, Dianon has no notice regarding why the claims would be fraudulent when during this time period it did in fact only bill for 18 antibodies.

[4] The government attempts to distinguish the cases Dianon cites by stating that these were cases in which "the United States had declined to intervene in the litigation brought by the relator and, therefore, had no control over the drafting or filing of the complaint."  *See* Gov't Opp'n at 10.  However, Fed. R. Civ. P. 9(b), by its terms, applies to all complaints asserting allegations of fraud and does not contain a special carve out exempting governmental complaints from its scope.  Moreover, the government, while addressing only a small subset of cases Dianon cited, seeks to distinguish those cases by asserting that the plaintiff, in those cases, did not specifically spell out how false claims were submitted  to the government, unlike the government's complaint here.  Contrary to the government's assertion, the cited cases were precisely like this case in that in each of those cases the plaintiff failed to specify why the category of claims was false or fraudulent, just as the government here has failed to specify why during the period in which 18 antibodies were billed any claims were false or fraudulent.  Moreover, there is no reason why the government cannot comply with Rule 9(b) because, as it states in its Opposition, it has received hundreds of medical records from Dianon.  Gov't Opp'n at 13.

embarking upon discovery.[5]  Indeed, the government's proffered approach would effectively

eliminate Rule 9(b) from the Federal Rules because presumably in every case defendant would

be able to learn the specifics of the plaintiff's claim of fraud at some point during discovery.

Rule 9(b), however, compels plaintiffs who seek to assert serious allegations of fraud to aver the

specifics of their claim in their complaint and not in their expert report.  This is consistent with

the purpose underlying Rule 9(b) which is to permit the parties and the Court to tailor discovery

to the specific allegations of fraud contained in the plaintiff's complaint.  *See Laboratory Corp.*

*of Am.*, 198 F.R.D. at 564.[6]

## II.    CONCLUSION

There are many ways in which the government can file a complaint that satisfies Rule

9(b).  Indeed, there are a multitude of Rule 9(b) FCA cases that provide ample guidance.  As

noted in Dianon's initial brief, the government can, for example, incorporate into its complaint a

---

[5]  *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, No. 99-3105, 2000 U.S.App.LEXIS 26914 at *12 (10th Cir. Oct. 26, 2000); *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 309 (5th Cir. 1999) ("A special relaxing of Rule 9(b) is a *qui tam* plaintiff's ticket to the discovery process that the statute itself does not contemplate"); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) ("The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed") (quoting *United States ex rel. Stinson v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1052) (S.D. Ga. 1990)); *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("[R]eady access to the discovery engine … has been held back" for fraud claims; "the who, what, when, and where *must* be laid out *before* access to the discovery process is granted (emphasis supplied)"); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (Rule 9(b) prohibits plaintiffs from "filing baseless claims and then attempting to discover unknown wrongs"); *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 198 F.R.D. 560, 563 (N.D. Ga. 2000)  ("The Court agrees with the Fifth Circuit that '[a] special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the discovery process that the statute itself does not contemplate'") (quoting *Epic Healthcare*), *aff'd*, 290 F.3d 1301 (11th Cir. 2002); *United States ex rel. Riley v. Alpha Therapeutic Corp.*, 1997 WL 818593, *4 n.1 (N.D. Cal. 1997) (allowing discovery to proceed prior to the resolution of the Rule 9(b) issue in this case would be "directly contrary to the purpose of Rule 9(b).  Plaintiffs must show there is some substance to their claim of fraud before a defendant is subjected to the rigors of the discovery process"), *aff'd without opinion,* 163 F.3d 607 (9th Cir. 1998).

[6]  Contrary to the government's assertion, it has not provided Dianon with a list of patient specific information similar to what it was ordered to provide in *United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F.Supp.2d 35, 44-45 (D. Mass. 2000).  *See* Gov't Opp'n at 14, n. 5.  In *Gambro*, the court stated that to comply with Rule 9(b) the government must do more than provide "a list which simply regurgitated all the claims that *might contain* unnecessary tests" but must specifically identify "which claims and which tests were said to be unnecessary tests." 115 F.Supp.2d at 44-45.  Here, the government, by its own admission, never has supplied such a list to Dianon.  *See* Gov't Opp'n at 14, n. 5 ("the information [provided to Dianon] does not list each antibody that is fraudulent").

list of patients that identifies the antibodies that it claims are fraudulent (*see, e.g., Gambro*, 115

F.Supp.2d at 44-45; *Cardiac Devices*, 221 F.R.D. at 336-337); it can draft a complaint

identifying categories of claims (repeat v. non-repeat; claims involving 18 billed antibodies

rather than 26) and provide specifics regarding some patients that fall within these categories

even if these patients' cases are only exemplary (*see, e.g., United States ex rel. Harris v. Bernad*,

275 F.Supp.2d 1, 8 (D.D.C. 2003)).   Here, however, the government has adopted the one

method that courts have uniformly rejected – set forth a general scheme, allege that all claims are

fraudulent, and assert that defendant will simply have to await the completion of discovery to

find out what the government is alleging.  This approach is contrary to the plain language of

Rule 9(b), contrary to the case law, and would render the Rule a dead letter.  The Court should

dismiss the government's complaint.

Respectfully submitted,


By: _____
     Robert Salcido
     Fed. Bar No. 447951
     (admitted *pro hac vice*)
     Akin Gump Strauss Hauer & Feld LLP
     1333 New Hampshire Avenue, NW
     Washington, DC 20036
     Telephone:  (202) 887-4095

     Mary A. Gambardella (ct #05386)
     Kerry M. Parker (ct # 26388)
     Michael D. Thompson (ct # 26389)
     Epstein Becker & Green, P.C.
     One Landmark Square, Suite 1800
     Stamford, CT 06901-2601
     Telephone:  (203) 348-3737

     Thomas Kossl
     Dianon Systems, Inc.
     200 Watson Boulevard
     Stratford, CT 06615
     Telephone:  (973) 492-1509

     Bruce R. Parker
     Venable LLP
     1800 Mercantile Bank & Trust Bldg.
     2 Hopkins Plaza
     Baltimore, MD 21201
     Telephone:  (410) 244-7400
     Attorneys for Defendant Dianon Systems, Inc.

## <u>CERTIFICATION</u>

The undersigned hereby certifies that a copy of the foregoing was sent via United States first

class mail, postage prepaid, this _____ day of June, 2005 to:


Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880


Richard Molot, Esq.
U.S. Attorney General's Office
District of Connecticut
175 Church Street
New Haven, CT 06510


Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044


_____
Penney Hughes