UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:02 CV 1573(MRK) |
| DIANON SYSTEMS, INC. | ) ) ) ) | August 29, 2005 |
| Defendants. | ) | |

**MEMORANDUM OF LAW IS SUPPORT OF UNITED STATES' MOTION TO STRIKE
DEFENDANT DIANON SYSTEMS' AFFIRMATIVE DEFENSES**

In support of its Motion to Strike Dianon Systems Inc.'s ("Dianon") Fourth and Fifth Affirmative Defenses, the Plaintiff states as follows:

**STATEMENT OF THE CASE**

Relator Dr. James Tsienga filed this action against Dianon on September 6, 2002, under the qui tam provisions of the False Claims Act (FCA), which permit a private party, called a "relator," to bring suit on behalf of the United States to recover damages for false or fraudulent claims. See 31 U.S.C. § 3730(b). On November 5, 2004, the United States notified the United States District Court for the District of Connecticut of its election to intervene in, and assume primary responsibility for, prosecuting this qui tam action, pursuant to 31 U.S.C. § 3730(b)(4). The United States filed its Complaint on March 18, 2005, alleging that, starting in 1996 and up to the present time, Dianon billed Federal healthcare programs for hematopathology flow cytometry tests that included antibodies that were medically unnecessary and, therefore, not reimbursable by Medicare. U.S. Compl. ¶¶ 2, 28-36.

1

On May 18, 2005, Dianon filed a Motion to Dismiss the Complaint. The Court denied the Motion, but ordered the United States to file an Amended Complaint that particularly described several examples of Dianon's fraudulent activities. The United States filed its Amended Complaint on July 14, 2005.

On August 8, 2005, Dianon filed its answer and affirmative defenses to the claims of the United States. Dianon's Fourth and Fifth Affirmative Defenses are the subject of this Motion to Strike.

## ARGUMENT

As its Fourth and Fifth affirmative defenses, respectively, Dianon asserts that (1) the United States has "failed to exhaust administrative remedies of the claims under the Medicare Act through the Department of Health and Human Services which has primary and/or exclusive jurisdiction over the matter" and (2) Dianon is "entitled to recoup and set-off sums by which Dianon was underpaid by the carrier for flow cytometry under principles of recoupment and set-off." As explained below, these affirmative defenses should be stricken as legally insufficient because they are, as a matter of law, unavailable in this case.

A.   **Standard of Review for Motions to Strike**

A motion under Rule 12(f) to strike defenses should be granted where such defenses are insufficient as a matter of law. Kaiser Aluminum & Chemical Sales v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982); Fabricana Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp., 684 F.2d 776, 779 (11th Cir. 1982). Although "[m]otions to strike are not generally favored . . . [t]he motion should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid

wasting unnecessary time and money litigating the invalid defense. Additionally, defenses which would tend to significantly complicate the litigation are particularly vulnerable to a motion to strike." S.E.C. v. Rivlin, 1999 WL 1455758 at *2 (D.D.C. Dec. 20, 1999), quoting S.E.C. v. Gulf & Western Indus., Inc., 502 F. Supp. 343, 345 (D.D.C. 1980) (citations omitted). By striking insufficient defenses, the court forces parties to focus on the essential issues and avoid litigating spurious ones. United States v. Union Gas Co., 743 F. Supp. 1144, 1150 (E.D. Pa. 1990); F.D.I.C. v. Eckert Seamans Cherin & Mellott, 754 F. Supp. 22, 23 (E.D.N.Y. 1990).

Indeed, in cases such as this, motions to strike can play an important role because they "remove unnecessary clutter from the case" and thereby "serve to expedite, not delay" the case. Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). In the context of a motion to strike insufficient defenses, "[w]hen an affirmative defense is purely a question of law, an early adjudication of that question of law will expedite the litigation and facilitate the administration of justice." Grason Elec. Co. v. Sacramento Municipal Utility District, 526 F. Supp. 276, 281 (E.D. Cal. 1981). Moreover, "[i]f it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter [should] be stricken as legally insufficient." Van Schouwen v. Connaught Corp., 782 F. Supp. 1240, 1245 (N.D. Ill. 1991).

**B.     The Fourth and Fifth Affirmative Defenses Should Be Stricken as Legally Inapplicable to this Case.**

Dianon's Fourth and Fifth Affirmative Defenses are inapplicable as a matter of law, regardless of any facts that Dianon could have alleged. If these meritless defenses were permitted to stand, the United States would be prejudiced by being forced to waste unnecessary

time and money litigating these invalid defenses which serve only to complicate the issues. See Rivlin, 1999 WL 1455758 at *2, quoting Gulf & Western Indus., 502 F. Supp. at 345 (citations omitted).

1.   Failure to Exhaust Administrative Remedies (Fourth Affirmative Defense)

Dianon asserts as its Fourth Affirmative Defense that the "[p]laintiff has failed to exhaust administrative remedies of the claims under the Medicare Act[1] through the Department of Health and Human Services which has primary and/or exclusive jurisdiction over the matter." This affirmative defense is legally insufficient and should be stricken.

The cases which have addressed the issue hold that exhaustion is not necessary when the United States is the plaintiff. In one of those cases, the United States had brought a FCA action against several providers to recover damages arising from the defendants' referral of Medicare patients for medically unnecessary diagnostic services. United States v. Roter, 1989 WL 63209 (E.D. Pa. June 12, 1989). One defendant moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that before the United States may bring an action in federal court to recover damages related to referrals of Medicare patients for medically unnecessary services, the Government first must "exhaust the peer review and administrative procedures, set out in 42 U.S.C. §1320c-5(b), that the Secretary of Health and Human Services follows before excluding a health care provider from the Medicare system." Id. at *1. The court noted that, under the cited Medicare provision, "any practitioner dissatisfied with the Secretary's exclusion or sanction determination is entitled to an administrative hearing and, ultimately, to judicial review under 42

---

[1] The statutory authority for the Medicare program lies in Title XVIII of the Social Security Act.

U.S.C. §405(g)." Id. The Roter court noted that neither the FCA nor the case law required that the United States first institute the peer review process before bringing an action for submission of allegedly fraudulent Medicare claims. Id. at *2. Because the United States was not seeking to exclude the provider, but rather to recover damages under the FCA, the court had jurisdiction over the action. Id. at *3. See also United States v. Gericare, C.A. No. 99-0366-CB-L, slip op., (S.D. Ala.. 4/16/2001) (attached as Ex. A) (holding that United States is not required to exhaust Medicare administrative remedies prior to filing FCA claim).

The Eleventh Circuit reached a similar conclusion in a Medicare-related case prosecuted by a qui tam relator alone. In U.S. ex rel. Body v. Blue Cross and Blue Shield of Alabama, 156 F.3d 1098, 1101 (11th Cir. 1998), the Eleventh Circuit considered whether the district court had subject matter jurisdiction over the relator's allegations that Blue Cross Blue Shield of Alabama violated the FCA by reimbursing Alabama hospitals for interest costs that were not chargeable to Medicare. Id. at 1101. The Body defendants argued that § 405(h) barred the district court from exercising subject matter jurisdiction over the relator's claims. Id. at 1100. The Eleventh Circuit closely examined the provisions of the Medicare Act and noted that, in context, the provisions clearly were "intended to prevent beneficiaries from circumventing the administrative process" for the adjudication of disputes between Medicare beneficiaries and the agency. Id. at 1104. Because the Body plaintiff was not a beneficiary (or a provider to whom a beneficiary had assigned his claims) the Eleventh Circuit held that the district court did have subject matter jurisdiction over the relator's claims.

Most recently, the First Circuit recognized that no exhaustion is required before the United States files suit. United States v. Lahey Clinic Hospital, Inc., 399 F.3d 1, 17 (1st Cir.

2005) (holding that section 405(h) does not preclude jurisdiction over government's common law "mistake of fact" action to recover alleged Medicare overpayments to defendant hospital). See, also, United States v. Medica-Rents Co., 2005 WL 723749 (N.D. Tex. March 29, 2005) (United States need not exhaust administrative requirement before bringing suit in district court to recover overpayments under common law theories of unjust enrichment and mistake); Luckey v. Baxter Healthcare Corp., 1996 WL 242977 (N.D. Ill. May 9 1996) (same); United States v. Tenant Healthcare Corp., 343 F. Supp. 2d 922 (C.D. Cal. 2004) (same).

Dianon has not alleged any specific provision of law that it contends requires the United States to exhaust any administrative remedies. Further, all courts which have considered the issue have concluded that the Government is not required to exhaust administrative remedies before bringing an action in federal court under the FCA or at common law to recover overpayments. Therefore, this defense should be stricken.

2. Recoupment and Set-Off (Fifth Affirmative Defense)

This Court also should strike Dianon's Fifth Affirmative Defense for recoupment and set-off as legally insufficient. Under FCA case law, Dianon has no right to recoupment or setoff, despite any facts it may allege, because Dianon failed to exhaust its administrative remedies before asserting this defense.

a. Recoupment

While both set-off and recoupment "are procedural devices by which a defendant seeks to reduce the amount he owes to a plaintiff by the amount of the plaintiff's cross-obligations to the defendant," the two principles differ with regard to whether they arise out of the same or different transactions as those put at issue in the complaint. Nashville Lodging Co. v. Resolution Trust

Corp., 59 F.3d 236, 246 (D.C. Cir. 1995). Recoupment, unlike set-off (discussed below), is "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant <u>arising out of the same transaction</u>." <u>United Structures of America, Inc. v. G.R.G. Engineering, S.E.</u>, 9 F.3d 996, 998 (1st Cir. 1993) (emphasis in original); <u>see also</u> <u>Nashville Lodging Co.</u>, 59 F.3d at 246; <u>First National Bank of Louisville v. Master Auto Service Corp.</u>, 693 F.2d 308, 310 at n. 1 (4th Cir. 1982).

Although Dianon fails to provide any facts in its statement of defenses which would give rise to such a defense, the United States believes that Dianon's "recoupment" defense relates to Medicare billings for which Dianon believes it was entitled to payment. In a letter to the Regional Medicare Medical Director dated December 4, 1997, attached as Exhibit B, Dr. James Amberson, Chief Medical Director at Dianon, stated that Dianon was wrongly denied payment on 1275 tests conducted between April 1996 and August 1997. Based on the relevant caselaw, however, any recoupment claim by Dianon relating to Medicare payments must first be pursued administratively. Because Dianon has failed to exhaust its administrative remedies, this Court lacks jurisdiction over its recoupment defense.

In general, because they represent claims against the plaintiff, recoupment "affirmative defenses" are actually in the nature of compulsory counterclaims. To the extent the counter-claims in this case could be treated as compulsory, the Court would have to consider whether sovereign immunity would bar Dianon's recoupment claim.[2]

---

[2] In its list of affirmative defenses, Dianon baldly states, without any supporting facts, that it is entitled to recoupment. Consequently, Dianon has not only failed to provide proper notice in accordance with Federal Rule 8, but has also failed to allege whether its claims arise out of the same transactions at issue in the United States' Amended Complaint. In fact, the United States is not pursuing any damages for claims not paid by Medicare, but is pursuing claims for Dianon's

Ordinarily, courts hold that, by filing a complaint, the United States waives sovereign immunity with respect to any compulsory counterclaims that may arise in relation to allegations in that complaint. F.D.I.C. v. F.S.S.S., 829 F. Supp. 317, 321 (D.Alaska 1993); United States v. Royal Geropsychiatric Services, Inc., 8 F. Supp.2d 690, 696 (N.D. Ohio 1998) (citations omitted). Courts construe this waiver narrowly, limiting the defendant's claim to simply reduce the defendant's liability, regardless of whether the claim was cast as an affirmative defense or counterclaim. See United States ex rel. Fallon v. Accudyne Corp., 921 F. Supp. 611, 618 (W.D Wis. 1995) (declining to dismiss recoupment affirmative defense and counterclaims but noting "that such counterclaims are limited to the right to a set-off against any recovery by the United States and may not be the basis for any affirmative judgment against the United States"); United States v. Neyland, 149 F.3d 1185 (Table), 1998 WL 381364 *7 (6th Cir. June 25, 1998) (right to recoupment limited to amount of Government's claim).

In the context of FCA actions alleging Medicare fraud, however, courts have refused to permit defendants to pursue recoupment against the United States if they have not first exhausted their administrative remedies under the Medicare statute. In Royal Geropsychiatric, for example, the United States brought a FCA action against the defendants alleging that they had submitted false claims for services to Medicare, Medicaid, and Railroad Retirement patients. 8 F. Supp.2d at 692. The defendants asserted a recoupment counterclaim for any underbillings arising out of the same claims that the United States alleged were false. Id. In considering the United States' motion to dismiss, the court expressly noted that parties defending against the United States

---

knowing submission of medically unnecessary claims. For these reasons, to the extent that Dianon is pursuing recoupment for denied claims, those claims, by definition, must arise out of separate transactions.

usually had a right to assert recoupment claims to reduce the Government's recovery, but nonetheless concluded that "defendants' recoupment claim . . . would completely circumvent the detailed administrative process in place to address these matters." Id. at 696. Because the recoupment claim was "inextricably intertwined" with claims for benefits and "arose under" the Medicare Act, the court determined that the defendants were required to exhaust their administrative remedies before asserting recoupment in the FCA case. Id. Therefore, the court dismissed the recoupment counterclaim for lack of subject matter jurisdiction. Id. at 697.

Another district court reached the same result even where, as here, the defendants attempted to characterize their recoupment claim as an affirmative defense rather than a counterclaim. United States ex rel. Kirsch v. Armfield, 56 F. Supp.2d 588, 592 (W.D. Pa. 1998). The court first focused on sovereign immunity, finding that a "waiver of sovereign immunity must be express and unequivocal, and must be strictly construed in favor of the United States." Id. at 590, citing Clinton County Com'rs v. United States Environmental Protection Agency, 116 F.3d 1018, 1021 (3rd Cir. 1997). The district court also based its holding on its analysis of 42 U.S.C. § 405(g) and the case law construing that Medicare provision, and concluded that "Congress' enactment of an extensive statutory scheme for administrative determination of Medicare Part B benefits negates the recoupment exception." Id. at 592-93. Thus, the Kirsch court dismissed the defendants' affirmative defense. Id. at 593.

Dianon may not assert a recoupment defense in this case because the tests at issue do not arise out of the same transactions as the tests at issue in this FCA action. Moreover, to the extent Dianon's claim could be considered compulsory, Dianon has not exhausted the administrative process set out in 42 U.S.C. § 405(g) and, for that reason, cannot maintain its recoupment

defense.

      b.      Set-off

Set-off, properly defined, constitutes a separate claim by a defendant against the plaintiff, which, unlike recoupment, does not arise from the same transaction placed at issue in the complaint. Nashville Lodging, 59 F.3d at 246 ("set-off refers to the balancing of obligations that the parties incurred in wholly separate transactions"). Thus, set-off is more properly stated as a permissive counterclaim, because it arises "out of a transaction extrinsic of plaintiff's cause of action." United Structures of America, 9 F.3d at 998 (emphasis in original); see also First National Bank of Louisville, 693 F.2d at 310, n.1 (set-off is counterclaim arising from independent claim against plaintiff).

Thus, regardless of the fact that Dianon has cast its set-off claim as an affirmative defense, this "defense" operates in practical terms as a permissive counterclaim, governed by Fed. R. Civ. P. 13(b). F.D.I.C., 829 F. Supp. at 322 and n. 11 (D.Alaska 1993). The limited waiver of sovereign immunity that generally applies to compulsory counterclaims arising outside of the Medicare Act does not apply to permissive counterclaims. FDIC, 829 F. Supp 317 at 322; Neyland, 1998 WL 381364 at *7; see also Fed. R. Civ. P. 13(d) (rule does not enlarge defendant's ability to sue United States).

In the case at bar, Dianon has not alleged any facts in support of its "set-off and recoupment" defense, so the United States is unable to determine whether its defense is more in the nature of a recoupment claim, arising out of the same transactions at issue in United States' complaint, or whether it is in the nature of a set-off, arising out of separate transactions. Either way, the defense is improper. If the claim arises out of the same transaction or occurrence as the

10

United States' claims – i.e., relates to the same claims which the Government alleges to be false – then Dianon must exhaust Medicare's administrative process before seeking relief in district court. If the claim arises out of different transactions or occurrences and thus is in the nature of set-off, Dianon's claim is barred by the doctrine of sovereign immunity. Either way, this defense is legally invalid and should be stricken.

C.    **Conclusion**

For the reasons set forth above, the United States respectfully requests that this Court strike Dianon's Fourth and Fifth Affirmative Defenses.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

RICHARD M. MOLOT
Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700

MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
RYAN FAYHEE
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0240
Attorneys for the United States

11

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the United States' Memorandum of Law in Support of the Motion to Strike Defendant's Affirmative Defenses, was served by mail, this 29th day of August 2005 on:

> Bryan T. Carmody, Esq.
> Maya & Associates, P.C.
> 266 Post Road East
> Westport, CT 06880
>
>
> Kerry M. Parker, Esq.
> Michael D. Thompson, Esq.
> Epstein, Becker & Green, P.C.
> Two Gateway Center, 12th Floor
> Newark, NJ 07102
>
> Mary A. Gambardella, Esq.
> Epstein, Becker & Green, P.C.
> One Landmark Square, Ste. 1800
> Stamford, CT 06901
>
> Robert Salcido, Esq.
> Akin Gump Strauss Hauer & Field, LLP
> Robert Strauss Building
> 1333 New Hampshire Ave, NW
> Washington, D.C. 20036

_____
RICHARD M. MOLOT
Assistant United States Attorney