EXHIBIT A

SO. DIST. AL.
MOBILE, AL 36602

2001 APR 16 P 3:

FILED
CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO.: 99-0366-CB-L |
| GERICARE MEDICAL SUPPLY, INC., CROWNE INVESTMENTS, INC., and LARRY KEEFER | ) ) ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on the motion of Defendants Gericare Medical Supply, Inc., Crowne Investments, Inc., and Larry Keefer, to dismiss this action, as alleged in Plaintiff's Second Amended Complaint, on the grounds that this Court lacks subject matter jurisdiction over these defendants. (Doc. 120). This Court finds and it is hereby **ORDERED** that "Defendants' Motion to Dismiss For Lack of Jurisdiction" is due to be and is **DENIED**.

Defendants argue that the Medicare Act and applicable case law prohibit the Government from bringing the present action under the False Claims Act where the Government alleges that the claims submitted to Medicare for payment were for items that were not reasonable and necessary. Defendants argue that the Medicare Act authorizes the Secretary of the Department of Health and Human Services alone to decide whether items and services are reasonable and necessary and eligible for payment under Medicare. The Court finds Defendants' argument to be without merit.

This is a False Claims Act ("FCA") case, 31 U.S.C. § 3729. Under the FCA, the Attorney General has authority to bring a civil action for any violation of the Act. 31 U.S.C. § 3730(a). While the Court (or, if facts are disputed, the jury) may be required in this litigation to determine the reasonableness and necessity of certain medical items presented to Medicare for payment, federal courts have demonstrated that medical necessity may be determined by the courts in cases involving fraud and/or violations of the FCA in the Medicare context. See, e.g., United States v. Davis, 117 F.3d 459, 460 (11th Cir. 1997) (upholding the restitution amount ordered by the district court in a criminal case in which the defendants were convicted for "submitt[ing] false claims and bill[ing] Medicare for medically unnecessary nutritional supplements and feeding supply kits, ostensibly for the purpose of [PEN] therapy, the majority of which the intended patients never received"); United States v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35, 41-42 (D. Mass. 2000) (holding that United States had stated a claim under the FCA when it alleged that defendants had submitted claims for Medicare reimbursement for blood tests defendants had certified were medically necessary, even though defendants knew they were not medically necessary because the tests could have been performed at no additional cost to Medicare in conjunction with another set of routine monthly blood tests).

Citing to provisions of the Medicare Act governing disputes by private parties dissatisfied with the disposition of their Medicare claims, Defendants argue that the Government must first exhaust its administrative remedies or be precluded from filing suit under the FCA in federal court. The provisions cited by Defendants do place restrictions on providers and beneficiaries regarding filing suit against the Government when they are dissatisfied with a determination

made under those provisions; however, they do not bar suits brought by the Government under the FCA. 42 U.S.C. § 1395ff(b)(1); 42 U.S.C. §1395ii; 42 U.S.C. § 405(g) & (h).

In United States v. Roter, 1989 WL 63209 at 1-2 (E.D. Pa. 1989), the court specifically addressed the subject matter jurisdiction issue presented here. The Roter action involved an FCA action brought by the Government against several providers arising out of their referral of Medicare patients for medically unnecessary diagnostic services. The court held that the Government was not required to first exhaust administrative procedures before bringing an action against the defendants in federal court based upon their allegedly fraudulent actions, and, therefore, the court did not lack subject matter jurisdiction over the Government's action. Id.

The court's analysis in Roter is particularly instructive in the present case, and pertinent portions of that opinion are set forth below:

> [Defendant] Ackerman contends that before the government may commence a civil action against a health care provider to recover damages related to referrals of Medicare patients for medical testing that is allegedly unnecessary, it must first exhaust the peer review and administrative procedure, set out in 42 U.S.C. § 1320c-5(b), that the Secretary of Health and Human Services follows before excluding a health care provider from the Medicare system.
>
> The applicable procedures are explained in some detail in Lavapies v. Bowen, 687 F. Supp. 1193 (S.D. Ohio 1988). In brief, 42 U.S.C. §1320c-5(b)(1) provides that when a medical peer review organization determines, after 'reasonable notice and opportunity for discussion with the practitioner . . . concerned,' that a health care provider is providing medically unnecessary services, it shall submit its determination to the Secretary. If the Secretary agrees with this determination, and the practitioner shows an unwillingness or inability to comply with his or her obligation under the statute, 'the Secretary (in addition to any other sanction provided under law) may exclude . . . such practitioner . . . from eligibility to provide services under this chapter on a reimbursable basis.' In lieu of the exclusion sanction, the Secretary may require, as a condition of the practitioner's continued eligibility to

3

participate in the Medicare program, that the practitioner reimburse the United States 'an amount not in excess of the actual or estimated cost of the medically improper or unnecessary services' provided.

Under 42 U.S.C. § 1320c-5(b)(4), any practitioner dissatisfied with the Secretary's exclusion or sanction determination is entitled to an administrative hearing and, ultimately, to judicial review under 42 U.S.C. § 405(g).

Ackerman argues that because the government alleges that his referrals were for medically unnecessary services, it must afford him the peer review procedures set out in § 1320c-5 before instituting a civil action to recover the costs of these services. The government's failure to do so, he contends, deprives him of his procedural due process rights, and divests this court of subject matter jurisdiction over this action.

I disagree. Under the False Claims Act, 31 U.S.C. § 3728, a person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment by the United States, is liable for a civil penalty of $2,000, a sum equal to twice the amount of damages sustained by the government, and the costs of the civil action brought to recover these damages. 31 U.S.C. § 3730 requires the Attorney General to 'diligently . . . investigate a violation under section 3729,' and authorizes him to bring civil actions to recover damages arising from false claims.

I find nothing in the False Claims Act or the caselaw requiring that the government first institute the peer review process described in 42 U.S.C. § 1320c-5(b) before it may bring a civil action relating to the submission of allegedly fraudulent Medicare claims. On its face, § 1320c-5(b) relates to the procedures that the Secretary of Health and Human Services must carry out before he may *exclude* a health care practitioner from the Medicare system. Ackerman cites County of San Diego v. Bowen, 631 F. Supp. 947 (S.D. Cal. 1986), and Lavapies v. Bowen, 687 F. Supp. 1193 (S.D. Ohio 1988), as support for his position that the peer review procedure is a jurisdictional prerequisite to a fraud or False Claims Act action by the government to recover past Medicare payments. However, both decisions involve challenges *by health care providers* to their *exclusion* from the Medicare system. In that context, it is undisputed that the administrative procedures set out in 42 U.S.C. § 1320c-5(b) must be exhausted before the provider may bring a

4

> judicial action to challenge the exclusion, see County of San Diego, 631 F. Supp. at 950, unless the plaintiff is bringing a collateral challenge to the regulations, or other special circumstances exist which warrant the waiving of the exhaustion requirement. See Lavapies, 687 F. Supp. at 1203.
>
> However, § 1320c-5(b) specifically provides that the Secretary's exclusion remedy may be 'in addition to any other sanction provided by law.' As the government points out, the statute's preservation of alternative remedies could scarcely have been clearer. I therefore conclude that this Court has jurisdiction over the government's claim under the False Claims Act. . . .
>
> . . . The government is simply seeking damages for the allegedly false claims which are attributable to the acts of Ackerman and the other defendants. In this respect, the case is analogous to the hundreds of other civil actions, involving a myriad of factual circumstances, which the government brings every year under the False Claims Act. As with those other actions, the government will be required to substantiate at trial the allegations that the claims involved were false or fraudulent. To meet the government's case, defendants may thus take advantage of the full panoply of procedural rights afforded litigants at trial. The fact that the government's proof in this case might entail an examination of the medical necessity of certain tests does not mean that the government must resort to the peer review process required in the unrelated context of an exclusion of a healthcare provider from the Medicare system.

Roter, 1989 WL 63209, *1-3 (emphasis in original). This Court finds the court's rationale in Roter to be sound.

Based on the foregoing, this Court finds that Defendants' motion to dismiss for lack of subject matter jurisdiction is without merit and, therefore, it is **ORDERED** that the motion to dismiss is due to be, and hereby is, **DENIED**.

DONE and ORDERED this the 16th day of April, 2001.

CHIEF DISTRICT JUDGE