**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Dr. James J. Tiesinga, | )<br>)<br>) No. 3:02CV1573(MRK)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| DIANON SYSTEMS, INC., | ) September 22, 2005 |
| Defendant. | )<br>) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE
GOVERNMENT'S UNJUST ENRICHMENT AND PAYMENT BY MISTAKE OF FACT
CLAIMS AND IN OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE
AFFIRMATIVE DEFENSES**

Defendant Dianon Systems, Inc. ("Dianon") respectfully submits this memorandum in support of its motion to dismiss the government's claims for unjust enrichment and payment by mistake of fact and in opposition to the government's Motion to Strike Affirmative Defenses.

The government, on the one hand, asserts that Dianon's affirmative defense of primary jurisdiction and exhaustion of remedies should be dismissed because the government is **not** required to exhaust its administrative remedies prior to filing an action. The government then, on the other hand, claims that Dianon's affirmative defense of recoupment and set-off should be dismissed because Dianon **is** required to exhaust administrative remedies prior to asserting these defenses. Neither the governing statute nor policy mandate that the government and private persons be treated in such a disparate fashion. Moreover, the government's motion to strike regarding recoupment and set-off is premature because it involves issues of fact and law that cannot be resolved at this early stage in litigation.

## I.      GOVERNMENT'S COMMON LAW CLAIMS SHOULD BE DISMISSED

The basis for Dianon's affirmative defenses of exhaustion of remedies and primary jurisdiction is that the government's common law claims for an alleged overpayment should be dismissed because the complex regulatory scheme governing the Medicare program sets forth both the substantive rules for determining the amount of Medicare reimbursement and the administrative process by which that amount is finally determined.  The government may only recover for an overpayment by acting within the confines of the administrative scheme and obtaining an administrative determination of overpayment.  Because the government has failed to exhaust its administrative remedies, the government's motion to strike Dianon's affirmative defenses should be denied and Dianon's motion to dismiss the government's overpayment claims should be granted.[1]

### A.      The Government Failed to Utilize the Administrative Process Mandated by the Medicare Act to Recover its Purported Overpayment

The Medicare Act, and implementing regulations, establish a comprehensive scheme under which suppliers, like Dianon, receive payment and have their claims adjudicated.

As an initial matter, suppliers seek reimbursement through carriers, which are usually private insurance companies.  *See* 42 U.S.C. § 1395u.  Once payment is received, the process under Medicare for recovery of overpayments is governed by numerous provisions within the

---

[1] Exhaustion of administrative remedies is required where Congress mandates an exhaustion requirement by statute.  *Coit Independence Joint Venture v. Federal Savings and Loan Ins. Corp.*, 489 U.S. 561, 579 (1989); *see also McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required.") (citation omitted).  Where, as here, there is a failure to exhaust administrative remedies made exclusively by statute, the court will be deprived of jurisdiction.  *Hironymous v. Bowen*, 800 F.2d 888, 892 (9th Cir. 1986).

Medicare Act and implementing regulations and agency rules.[2]  In short, when a carrier

determines that a supplier is liable for an overpayment it issues an initial demand letter

requesting repayment within thirty days.  If repayment is not received within forty days of the

initial demand letter, the carrier initiates a recoupment process and issues a notification to the

supplier of such action.  Upon receipt of notification of an intent to recoup, the supplier may

submit a request for a review or hearing or otherwise protest the recovery.[3]  At that point the

Medicare Part B appeal process is initiated.

The Medicare Part B appeal process is a five step process that typically begins with an

"initial determination."[4]  *See* 42 C.F.R. § 405.801 *et seq* (2004).  Each of the five steps with

limited exceptions is not available until the prior step has been exhausted.  *See* 67 Fed. Reg.

69312, 69313 (Nov. 15, 2002).  This five-step process entails (1) an appeal to the carrier with a

"request for review" within six months of the initial determination[5]; *see* 42 C.F.R. § 405.807

---

[2]  *See* 42 U.S.C. § 405.301 et seq.; CMS, Medicare Financial Management Ch. 4 – Debt Collection Pub. 100-6, 4-§80 *et. seq*. at http://www.cms.hhs.gov/manuals/106_financial/fin106c04.pdf.

[3]  *See* Med. Fin. Mgt. Ch. 4 – Debt Collection Pub. 100-6, 4-§90.2.

[4]  This process was amended by statute in 2000 under section 521 of the Benefits and Improvement and Protection Act of 2000 ("BIPA") (Pub .L. No. 106-554) (currently codified at 42 U.S.C. §1395*ff et seq*.) for initial determinations made on or after October 1, 2002.  Generally, section 521 of BIPA was designed to establish a uniform process for handling Medicare Part A and B appeals, revise applicable time frames, change certain amount in controversy requirements, and create new appeals entities known as Qualified Independent Contractors.  However, pursuant to CMS Ruling 02-01 (October 1, 2002), only three provisions of the BIPA amendments were put into effect as of October 1, 2002.  *See* 67 Fed. Reg. 62478, 62480 (Oct. 7, 2002).  Moreover, CMS instructed its contractors that except for the three immediate rule implementations to follow pre-BIPA appeals processes until the BIPA requirements could be fully implemented. *Id*. at 62481.  Subsequently, CMS issued a proposed rule to more fully implement Section 521.  *See* 67 Fed. Reg. 69312 (Nov. 15, 2002).  However, these new regulations implementing Section 521 have not been finalized.  Moreover, although further revisions were made under sections 931 to 940A of the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("MMA") (Pub. L .No. 108-173) most of the amendments did not become effective until Fall 2004 or thereafter.  Thus, the summary of the appeals process provisions and corresponding citations to CMS regulations reflect the pre-BIPA and MMA rules.

[5]  For initial determinations made on or after October 1, 2002, the request for review must be filed within 120 days in accordance with BIPA Section 521 amendments actually effectuated by CMS.  *See* CMS Ruling 02-01.  Moreover, when the appeal is triggered by an overpayment determination, and the amount in controversy is more than $100, the supplier may begin his appeal at the "Carrier Fair Hearing" level.  *See* Med. Fin. Mgt. Man. at 4-§90.2.

(2004); (2) an appeal for a "Carrier Fair Hearing" within six months of the review determination if the amount in controversy is at least $100; *see* 42 C.F.R. § 405.821 (2004); §405.815 (2004); (3) an appeal to an Administrative Law Judge ("ALJ") within sixty days of the carrier hearing decision for amounts in controversy over $500[6]; *see* 42 C.F.R. § 405.855 (2004); (4) an appeal to the Departmental Appeals Board ("DAB") of the Department of Health and Human Services within sixty days of the ALJ decision;[7] *see* 42 C.F.R. § 405.856 (2004); and (5) judicial review within sixty days of the DAB decision for amounts in controversy of $1000 or more, subject to certain limitations on the subject matter that can be challenged in court. *See* 42 U.S.C. § 405(g); 42 C.F.R. § 405.857 (2004).

### B. Section 405(b) of the Social Security Act Bars Consideration of the Government's Overpayment Claims Prior to Administrative Exhaustion

Here, the government has not adhered to its own administrative process, mandated by statute, and instead seeks to bypass its administrative scheme, discussed above, by instituting its overpayment claims before this Court. However, the plain language of the Social Security Act and policy dictate that the government's unjust enrichment and payment by mistake of fact claims are subject to dismissal because the government failed to exhaust its administrative remedies.

First, the plain language of section 405(h) of the Social Security Act bars consideration of the government's overpayment claim prior to administrative exhaustion. Specifically, in section

---

[6] This amount was revised by BIPA section 521 to $100 and was also among the three provisions that were put into effect by CMS as of October 1, 2002.

[7] The regulations governing DAB review are contained under 20 C.F.R. 967 *et seq.* which govern appeals under the Social Security Administration. Medicare payment and coverage appeals are handled by the "Medicare Appeals Council" ("MAC") which was merged into the DAB in the mid-1990s. A decision by the MAC constitutes a final agency decision and can be appealed to federal court. *See* 67 Fed. Reg. at 69313. A physician and/or supplier can also appeal to federal court from an ALJ decision if the DAB does not review the ALJ's decision. *See* 42 C.F.R. §405.857.

405(h) of the Social Security Act, which is applied to Medicare by 42 U.S.C. 1395ii, Congress

defined specifically the limited instances in which federal courts could review Medicare

determinations.  The statute provides:

> The findings and decision of the [Secretary] after a hearing shall be
> binding upon all individuals who were parties to such hearing. ***No
> findings of fact or decision of the [Secretary] shall be reviewed by
> any person, tribunal or governmental agency except as herein
> provided***.  No action against the United States, the [Secretary] or
> any officer or employee thereof shall be brought under section
> 1331 or 1346 of Title 28 to recover on any claim arising under this
> subchapter.

42 U.S.C. § 405(h), as applied to Medicare by 42 U.S.C. § 1395ii (emphasis added).

The Supreme Court has explained that this section channels Medicare claims through the

special review system under the Medicare program.  *Shalala v. Illinois Council on Long Term

Care, Inc.*, 529 U.S. 1, 8 (2000).  The second sentence of section 405(h) "makes clear that a court

is precluded from undertaking judicial review of any findings of fact or decisions of the

Secretary except as provided in the Medicare Act itself."  *United States v. Idaho Falls Assocs.

Ltd. Partnership*, 81 F. Supp. 2d 1033, 1049 (D. Idaho 1999).  Specifically, section 405(h)

purports to make exclusive the judicial review method set forth elsewhere in the Medicare Act,

*Illinois Council*, 529 U.S. at 10, and prevents review of decisions of the Secretary except as

specifically provided.  *Weinberger v. Salfi*, 422 U.S. 749, 757-58 (1975); *see Drennan v. Harris*,

606 F.2d 846, 850 (9th Cir. 1979) (Section 405(h) would preclude district court jurisdiction to

review Agency or intermediary determination of amount of benefits to be paid to a provider

under *Weinberger v. Salfi*, 422 U.S. 749 (1975)).

Recently, a district court, although later reversed, correctly applied the plain language of

the Social Security Act to bar the government's common law claims when it had failed to exhaust

its administrative remedies.  *See United States v. University of Massachusetts Mem'l Med. Ctr.*,

296 F. Supp. 2d 20 (D. Mass. 2003) (granting motion to dismiss for lack of subject matter jurisdiction), *rev'd*, *United States v. Lahey Clinic Hosp.*, 399 F.3d 1, 7 (1st Cir. 2005).  In *University of Massachusetts*, the district court dismissed the action on the grounds that the court lacked subject matter jurisdiction because the Secretary had not made a final determination of overpayment as required under the Medicare statutes and regulations.  *Id* at 28.

Specifically, the court rejected the contention that section 405(h) does not apply to claims brought by the government.  Rather, the court concluded that section 405(h) applies with equal force to claims brought by and against the government.  According to the court, the Social Security Act's statement that "no findings of fact or decision of the [Secretary] shall be reviewed . . . except as herein provided" in no way "suggests that review is limited only [to] actions brought against the United Sates."  *Id*. at 24 (stating that "a narrow interpretation of Section 405(h) [is] inconsistent with the 'sweeping and direct'" language of the third sentence of Section 405(h)) (quoting *Salfi*, 422 U.S. at 757; *see Idaho Falls*, 81 F. Supp. 2d at 1049 (finding that section 405(h) "does not merely apply to actions brought against the government to recover benefits under the Medicare Act," but precludes judicial review of any findings of fact or decisions of the Secretary except as provided in the Medicare Act itself).

Indeed, as the court correctly noted, a reading of the language of the second sentence in section 405(h) that would limit *only* review of actions against the government would render the third sentence – which *expressly* bars actions against the government arising from the agency's Medicare reimbursement determinations – "largely superfluous."  *Id*. (citing *Salfi*, 422 U.S. at 758, for the proposition that the third sentence in 405(h) cannot be relegated "to a function which is already performed by other statutory provisions").  On this basis, the plain language of section 405(h) bars the government's attempt to seek recoupment of Medicare payments when the

administrative process has not already rendered a final determination of the appropriate reimbursement.[8]

Finally, aside from the plain language of the statute, the policy underlying the Medicare Act dictates that the government exhaust its administrative remedies prior to seeking recovery of an overpayment. The complexity of the Medicare regulatory framework cautions against implying a common law cause of action to recoup alleged overpayments. "As noted by one Court, Medicare regulations are 'among the most completely impenetrable texts within human experience'." *United States v. Medica-Rents*, 285 F. Supp. 2d 742, 770 (N.D. Tex. 2003) (internal quotation and citations omitted). For courts to make overpayment determinations, they would have to artificially dissect the regulatory scheme, selecting and applying certain substantive aspects of the regulations not only without administrative guidance, but while ignoring the specific procedural requirements that those same regulations provide.

The agency has set up a detailed process to determine the correct amount of reimbursement. Given this regulatory scheme, efforts to enlist the courts to collaterally attack – or preclude altogether – such determinations should not be permitted. *See Illinois Council*, 529

---

[8] In *Lahey*, the First Circuit concluded that the Social Security Act did not repeal the jurisdictional power of courts to hear actions under 28 U.S.C. § 1345. 399 F.3d at 10-17. The court overlooks the language of § 1345, which provides that courts shall have jurisdiction "[e]xcept as otherwise provided by Act of Congress." *See* 28 U.S.C. § 1345 ("Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions ... commenced by the United States ..."). As noted above, the second sentence of § 405(h) – "no findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided" – manifests an express congressional intent to repeal § 1345 in decisions regarding the payment or overpayment of Medicare claims. Moreover, a district court, in *United States v. Tenet Healthcare Corp.*, 343 F. Supp. 2d 922 (C.D. Cal. 2004), failed to apply the Social Security Act to bar the government's overpayment claims in a False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, because it was concerned that the government would have to pursue separate remedies: the FCA allegations before the district court and its overpayment claims before the agency. This result should not dissuade this Court from applying the plain language of the pertinent statutes. The FCA affords a statutory basis for the jurisdiction of this Court – perhaps because of the conventional experience of judges in adjudicating fraud claims. Alternatively, the Social Security Act, in the first instance, assigns jurisdiction to the expert agency – perhaps because of its experience and expertise in applying its complex reimbursement regulations. Although more enlightened legislators might have drawn these jurisdictional lines differently, these were the lines Congress chose. If the government desires to pursue its overpayment claims, it need only exhaust the administrative process as contemplated by law.

U.S. at 13 ("insofar as [Section] 405(h) demands the 'channeling' of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts"); *see also McCarthy*, 503 U.S. at 145 (finding that exhaustion promotes judicial efficiency by potentially mooting controversies and avoiding piecemeal litigation); *Salfi*, 422 U.S. at 765 (holding that exhaustion prevents premature interference with agency processes, allows the agency to function efficiently and have an opportunity to correct its own errors, affords the parties and the courts the benefit of the agency's experience and expertise, and compiles a record which is adequate for judicial review).

Because the government did not comply with its own mandatory process, the Court should dismiss the government's overpayment claims.

## II.    THE GOVERNMENT'S MOTION TO DISMISS DIANON'S RECOUPMENT CLAIMS IS PREMATURE

As the government concedes, "[m]otions to strike are not generally favored" in the law. *See* Govt.'s Mem. of Law in Support of Mot. to Strike at 2 (quoting *inter alia*, *SEC v. Rivlin*, Civ. A. No. 99-1455 (RCL), 1999 WL 1455758, at *2 (D.D.C. Dec. 20, 1999)). "Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedures § 1380 at 394 (2004) (footnotes omitted); *see also Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, 17 (S.D.N.Y. 1985) ("a motion to strike will be granted only if there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the defense to stand would prejudice the plaintiff").

Indeed, because motions to strike do seek the "drastic" remedy of depriving a party of its affirmative defenses at what is normally a very early stage in the litigation, courts uniformly agree they should only be granted when "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *See, e.g.*, *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (emphasis added); *Williams Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (same), *vacated on other grounds*, 478 U.S. 1015 (1986). As another court explained, a court "may only strike those defenses so legally insufficient that it is beyond cavil that defendants could not prevail upon them." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio1991) (emphasis added). Even the cases cited by the government recognize this point. *See e.g., SEC v. Gulf & Western Indus., Inc.*, 502 F. Supp. 343, 345 (D.D.C. 1980) (noting that before a motion to strike can be granted "the Court must be convinced . . . that under no set of circumstances could the defense succeed") (emphasis supplied).

Thus, when the success of an affirmative defense turns on "disputed issues of fact" or "substantial questions of law," the courts agree that the motion to strike should be denied. *See e.g., Salcer*, 744 F.2d at 939 (explaining that "[t]o do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts."); *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989) ("Motions to strike . . . should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law.").

In fact, the federal courts "review with extreme scrutiny a motion to strike which seeks the opportunity to determine disputed and substantial questions of law, particularly when no discovery has occurred in the case." *United States v. Hardage*, 116 F.R.D. 460, 463 (W.D. Okla.

1987) (emphasis added); *accord SEC v. Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992) ("It is particularly important to refrain from considering disputed questions of law when . . . there has been <u>no significant discovery</u>.") (emphasis added). Such a searching review is required because motions to strike were "never intended to furnish an opportunity for the determination of" factual and legal issues which are "better determined in a hearing on the merits." *See, e.g., Gilbert v. Eli Lilly & Co. Inc.*, 56 F.R.D. 116, 121 (D.P.R. 1972); *see also Green Mountain Power Corp. v. Gen. Elec. Corp.*, 496 F. Supp. 169, 170 (D. Vt. 1980) ("[A] motion to strike is generally regarded as an inappropriate vehicle to resolve substantial questions of law <u>until after discovery and a hearing on the merits</u>.") (emphasis added).

The government, in its motion, asserts that the basis for Dianon's affirmative defense of recoupment and set-off is a letter a company representative wrote to the carrier protesting underpayment on 1275 tests submitted between April 1996 and August 1997. *See* Gov't Memo at 7. In that letter, Dianon pointed out that the government had deprived Dianon of proper payment on claims, like those in this case, because its Local Medical Review Policy was too narrow. *Id.* at Ex. B at 1-2. Rather than accuse the company of fraud, as the government has done here, the carrier, after reviewing the company's position, ultimately agreed and extended the list of diagnosis that could provide the basis for payment for flow cytometric immunophenotyping.

However, the government's contention that Dianon's affirmative defenses are solely based upon that correspondence is mistaken. Dianon's affirmative defenses, at a minimum, apply to all claims that Dianon has billed but has not been appropriately paid from the time the relator filed his lawsuit in this action to the present time where Dianon may still seek

administrative remedies.[9]  To date, Dianon has not had the opportunity to take a single deposition of anyone from the Department of Health and Human Services or its carrier regarding its affirmative defenses.

Accordingly, because Dianon has not had an opportunity to undertake discovery on these claims, and, because, as even the government concedes, the affirmative defense of recoupment is appropriate, even in actions the government files, when it is used to reduce the amount of the government claims, *see, e.g., United States ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 618 (W.D. Wis. 1995) (declining to dismiss recoupment affirmative defense and counterclaims and noting that defendant's counterclaims "are limited to the right to a set-off against any recovery by the United States . . ."), the government's motion to strike is premature and should be denied.  If, after discovery, the government remains unconvinced about the validity of these affirmative defenses, it may properly move for summary judgment.  Today, however, is not the time for these motions.

## III.    THE GOVERNMENT'S MOTION MUST ALSO FAIL BECAUSE IT CANNOT DEMONSTRATE PREJUDICE

Putting aside the legal sufficiency of these affirmative defenses, the government has not demonstrated that it will suffer any prejudice if its motion to strike is denied.  This failure is fatal to the government's motion and provides an additional, independent ground upon which the government's motion should be denied.

---

[9] Moreover, as to the remaining claims, the government's contention that Dianon failed to exhaust its administrative remedies should be rejected.  Dianon is the defendant in these proceedings – not a voluntary participant.  In this context, Dianon is under no duty to exhaust any administrative remedies before asserting a recoupment defense against the government. *See, e.g., Frederick v. United States*, 386 F.2d 481, 489 (5th Cir. 1967) ("It would be anomalous to hold that a defendant, in court in an action he did not bring, is required to plead a counterclaim against the government because it is compulsory under Rule 13(a) but that once pleaded his counterclaim is subject to dismissal on the ground that he had not, before being sued, taken affirmative action to seek" administrative remedies).  Moreover, under these circumstances, seeking administrative relief would be futile. *See Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992) (exhaustion not required where it would be futile).

As numerous federal courts have held, even if the factual and legal issues are not in dispute, a motion to strike still should not be granted unless the plaintiff is able to "demonstrate [that] it will be prejudiced significantly if the attacked allegations are left in the pleadings." *See Hardage*, 116 F.R.D. at 463; *see also Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W. Va. 1993) ("Even where 'technically appropriate and well-founded,' motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party."); *McBride's Industries, Inc.*, 106 F.R.D. at 17; *see generally* 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedures § 1380 at 394-97 (2004) ("in order to succeed on a Rule 12(f) motion to strike surplus matter from an answer, the federal courts have established a standard under which it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.") (footnotes omitted).

In this case, the government has not shown that it will be prejudiced by the inclusion of these affirmative defenses. Indeed, outside of the routine discovery costs that every plaintiff must endure when it files suit, the government has not even argued that it will be prejudiced if these defenses remain in this case other than assert some potential theoretical harm that the government would be "forced to waste unnecessary time and money litigating these invalid defenses which serve only to complicate the issues." *See* Govt.'s Memo at 3-4. The expenses associated with or necessitated by discovery do not amount to prejudice; they are simply the costs generated by the litigation filed by the government. To the extent that the government does not wish to incur these costs, it should simply drop its suit.

**CONCLUSION**

Accordingly, for the foregoing reasons, the government's overpayment claims should be dismissed from the complaint and its motion to strike Dianon's affirmative defenses should be denied.

Respectfully submitted,

By: _____

Robert Salcido
Fed. Bar No. 447951
(admitted *pro hac vice)*
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4095

Mary A. Gambardella (ct #05386)
Kerry M. Parker (ct # 26388)
Michael D. Thompson (ct #26389)
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601
Telephone: (203) 348-3737

Thomas Kossl
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615
Telephone: (973) 492-1509

Bruce R. Parker
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244-7400

Attorneys for Defendant Dianon Systems, Inc.

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was sent via United States first

class mail, postage prepaid, this 21 day of September 2005 to:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Richard Molot, Esq.
U.S. Attorney General's Office
District of Connecticut
175 Church Street
New Haven, CT 06510

Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

Penney Hughes