UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DR. JAMES J. TIESINGA *ex rel.* UNITED STATES GOVERNMENT, and DR. JAMES J. TIESINGA<br><br>Plaintiffs,<br><br>-against-<br><br>DIANON SYSTEMS, INC. and ETHEL JANEGA<br><br>Defendants. | Case No. 302 CV 1573 (MRK)<br><br><br><br>October 20, 2005 |

BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR EXTENSION OF TIME,
TO ENFORCE COURT ORDER AND FOR FEES

EPSTEIN BECKER & GREEN, P.C.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 642-1900
Attorneys For Defendants
Dianon Systems, Inc. and Ethel Janega

Of Counsel:
    Kerry M. Parker

On The Brief:
    Kerry M. Parker
    Michael D. Thompson

NE:151342v1

## **PRELIMINARY STATEMENT**

Defendants, DIANON Systems, Inc. and Ethel Janega ("Defendants"), hereby move to extend the deadline for expert witness reports by 30 days from the date Defendants receive Plaintiff's responses to Defendants Third Set of Interrogatories. This extension is needed due as Defendants recently discovered that Plaintiff has been concealing the fact that he was terminated by his employer, Ameripath.[1] Given that Defendant's expert will opine on the overwhelming psychological impact that Plaintiff imputes to his alleged discharge by Dianon, Defendants clearly need to take discovery regarding this subsequent discharge.

Defendants further seek to enforce this Court's Order of January 31, 2005 compelling the production of authorization to obtain Plaintiff's employment records from 1991 to the present. Despite the Court's Order, Plaintiff has refused to produce an authorization for the release of his employment records at Massachusetts General Hospital ("MGH"), where he performed his residency. Plaintiff contends that his residency was not "employment," and thus he has no obligation to produce these documents. However, the caselaw is clearly to the contrary and, more importantly, the records at issue will obviously contain the same relevant information as that contained in any "employment" records. Thus, Plaintiff has violated both the letter and the spirit of the Court's January 31, 2005 Order. Accordingly, Defendants respectfully request that this Court enforce its Order of January 31, 2005 (or otherwise compel the production of these documents).

Finally, Defendants request that Plaintiff be ordered to pay the costs and fees incurred by Defendants in bringing this motion.

---

[1] Under the existing Scheduling Order, Defendants' expert reports are due November 1, 2005, with discovery to close on November 30, 2005.

NE:151342v1

## BACKGROUND

As the Court is already aware, the instant case arises from Plaintiff's claims of discrimination, harassment and constructive discharge arising from his employment at Dianon in 2002.[2] Plaintiff claims that, as a result of his conflicts with co-workers and his constructive discharge from Dianon, he was "besieged by suicidal feelings that ultimately required his hospitalization at Yale University Psychiatric hospital. Since that time, [Plaintiff] has been prescribed anti-depressant medication, and regularly sees a psychiatrist for support." (Amended Complaint, para. 26.)

Defendants served discovery requests on Plaintiff in early November 2004. Included among the requests were the following:

> **Interrogatory No. 2:** Identify, for the period from the date of Plaintiff's first full time employment to the present, the name and address of each of your employers (including self-employment), and the inclusive date(s) of such employment, job titles(s), rate(s) of pay and total gross compensation, name(s) of supervisor(s) and the reasons you left each of the employers listed in response to this Interrogatory. This answer should

---

[2] Plaintiff commenced the instant case by filing a 19-Count Complaint under seal on or about September 2002. The seal was partially lifted in or about September, 2004, at which time the Complaint was served upon defendants. The remainder of the seal was lifted in January, 2005. The Complaint was amended to include two additional claims in February 2005. Plaintiff's Amended Complaint alleges claims for (1) Hostile Work Environment Harassment (due to his positive HIV status) under the Connecticut Fair Employment Practices Act ("CFEPA"; C.G.S. sec. 46A-51 et seq.); (2) Retaliation under CFEPA; (3) Hostile Work Environment Harassment under the Americans with Disabilities Act ("ADA"); (4) Retaliation under ADA; (5) Hostile Work Environment Harassment (due to sexual orientation) under CFEPA; (6) a second count of Retaliation under CFEPA; (7) Violation of the federal Rehabilitation Act; (8) Violation of the False Claims Act;[2] (9) negligent supervision; (10) negligent retention; (11) False Imprisonment; (12) Intentional Infliction of Emotional Distress; (13) Negligent Infliction of Emotional Distress; (14) a second count of Negligent Infliction of Emotional Distress; (15) Constructive Discharge; (16) Unlawful retaliation in violation of the False Claims Act; (17) Invasion of Privacy; (18) Intentional Infliction of Emotional Distress against Ethel Janega; (19) a third count of Retaliation under CFEPA; (20) Coercion of Discriminatory Practice under CFEPA; and (21) Defamation.

include a statement of whether you were terminated from employment voluntarily or involuntarily.

**Request for Production No. 12:**   All documents which refer or relate to Plaintiff's employment or any work for any company or entity from the time of Plaintiff's graduation from medical school to the present, and (for each employer) a completed "Authorization and Request for Employment Records" of the form attached hereto.

**Request for Production No. 13:**   Any and all documents that relate, refer to or touch upon plaintiff's employment subsequent to plaintiff's employment with Dianon including, but not limited to, plaintiff's efforts to secure employment following his separation from Dianon.

(Thompson Cert., para. 3.) These requests included authorizations for the release of medical and employment records. Plaintiff, however, refused to produce the completed authorization forms. Rather, Plaintiff asserted that he would decide which medical and employment records Defendants should have, and would provide those documents directly to Defendants. Accordingly, Defendants were forced to bring this issue to the Court's attention.

On January 31, 2005, this Court entered an Order compelling the production of these documents. Specifically, by Order dated January 31, 2005, the Court ordered:

> **No later than February 4, 2005, Plaintiff will provide Defendants with the requested Authorizations for Medical Records (except dental records) and employment records (1991 to present).**

(Order, January 31, 2005.) Accordingly, Plaintiff produced an authorization for the employment records from the job he held prior to his employment at Dianon (at NYU Medical Center) and the job he held subsequent to his employment at Dianon (at Ameripath). However, Plaintiff never produced an authorization from his employment at Massachusetts General Hospital from July 1994 through June 1998.

On June 13, 2005, the Court issued an Scheduling Order providing that "Defendant's expert reports will be served by November 1, 2005." (Scheduling Order, June 13,

2005.) In light of the allegations in Plaintiff's Complaint, Defendants felt that it was necessary to conduct discovery pertaining to the credibility of Plaintiff's allegations of psychological harm arising from his conflicts with Dianon co-workers. This discovery has included, but is not limited to, (i) deposing co-workers at Ameripath (where Plaintiff was employed) in August regarding the many complaints of harassment that he made at that job, (ii) deposing Plaintiff's psychologist regarding the emotional distress arising from Plaintiff's alleged harassment at Ameripath (which, according to Plaintiff, was minimal), (iii) retaining a psychiatrist to perform an independent examination of Plaintiff, and (iv) having said psychiatrist prepare an expert report.

On August 9, 2005, Defendants' counsel wrote to Plaintiff's counsel to request production of this authorization. (See Certification of Michael D. Thompson (hereafter "Thompson Cert."), para. 4.) After more than one month, Plaintiff's counsel responded by asserting that he did not consider Plaintiff's residency to be "employment," and thus did not believe that he was required to produce the requested authorization. (Thompson Cert., para. 5.) Defendants' counsel then presented Plaintiff's counsel with caselaw demonstrating that numerous federal courts have found that hospital residents are employees of the hospitals at which they perform their residencies. (Thompson Cert., para. 5.) Nevertheless, Plaintiff's counsel has refused to produce the requested authorization. (Thompson Cert., para. 5.)

Earlier this month, Defendant's Counsel was told that Plaintiff's employment at Ameripath had been terminated. (Thompson Cert., para. 6.) Plaintiff had not disclosed this fact had never been disclosed to Defendant, despite Plaintiff's ongoing discovery obligations, and despite the fact that several of the discovery requests propounded on Plaintiff in November 2004 called for this information. (Thompson Cert., para. 6.)

In an attempt to obtain further information regarding this issue, Defendants' counsel requested that Plaintiff supplement his discovery responses. (Thompson Cert., para. 7.) In a subsequent telephone conversation, Plaintiff's counsel asserted that he has no obligation to update his discovery responses of his own accord. (Thompson Cert., para. 7.) However, Plaintiff's counsel stated that, <u>if and only if</u> Defendants specify which discovery requests they believe pertain to this issue, he will consider updating his response. (Thompson Cert., para. 7.) **Moreover, Plaintiff's counsel was specifically asked to confirm that Plaintiff was no longer employed at Ameripath. Despite this Court's prior admonitions that counsel attempt to cooperate in discovery, Plaintiff's counsel refused to even confirm or deny this fact. (Thompson Cert., para. 8.)**

Finally, after Defendants' counsel stated that Defendants would be serving additional discovery requests pertaining to this issue, Plaintiff's counsel stated that he would (i) review said requests, and then decide whether he felt compelled to answer them, and (ii) would not take a position as to whether he would consent to an extension of the expert witness deadlines until after he had reviewed said discovery requests. (Thompson Cert., paras. 9 & 10.)

In light of the foregoing, Defendants move this Court to extend the deadlines for expert witness reports by 30 days from the date Defendants receive Plaintiff's responses to Defendants Third Set of Interrogatories. Defendants note that they do not seeks to alter the timing of any dispositive motions or the current trial ready date.

# ARGUMENT

## POINT I

### THE EXPERT WITNESS' DEADLINES IN THIS CASE SHOULD BE EXTENDED IN LIGHT OF PLAINTIFF'S FAILURE TO DISCLOSE RELEVANT EVIDENCE.

Federal Rule of Civil Procedure 26 specifically provides that a party to a lawsuit in federal court has an obligation to timely supplement his or her discovery responses:

> **(e) Supplementation of Disclosures and Responses.**
>
> **A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances….**
>
>> **(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.**

(F.R.Civ.P. 26(e)(2).) By concealing the fact that he was terminated from his employment at Ameripath (and possibly concealing any subsequent employment that he may have obtained), Plaintiff has clearly breached his discovery obligations with regard to the following discovery requests:

> **Interrogatory No. 2:** Identify, for the period from the date of Plaintiff's first full time employment to the present, the name and address of each of your employers (including self-employment), and the inclusive date(s) of such employment, job titles(s), rate(s) of pay and total gross compensation, name(s) of supervisor(s) and the reasons you left each of the employers listed in response to this Interrogatory. This answer should include a statement of whether you were terminated from employment voluntarily or involuntarily.

> **Request for Production No. 12:** All documents which refer or relate to Plaintiff's employment or any work for any company or entity from the time of Plaintiff's graduation from medical school to the present, and (for each employer) a completed "Authorization and Request for Employment Records" of the form attached hereto.
>
> **Request for Production No. 13:** Any and all documents that relate, refer to or touch upon plaintiff's employment subsequent to plaintiff's employment with Dianon including, but not limited to, plaintiff's efforts to secure employment following his separation from Dianon.

(Thompson Cert., para. 3.) Moreover, if Plaintiff has made any efforts to secure subsequent employment, has actually secured subsequent employment, has filed for unemployment or has performed any other activities typically associated with a loss of employment, Plaintiff would be in breach of his obligation to update his responses to several other discovery requests (including but not limited to Interrogatory Nos. 3, 4, 6, 8, and 9, and Request for Production Nos. 11 and 15).

As noted above, Defendants have retained an expert (Dr. Stuart Kleinman) who has examined Plaintiff and will opine with respect to Plaintiff's allegations of emotional distress and mental anguish. Accordingly, for purposes of comparison, Defendants took considerable discovery regarding the harassment to which Plaintiff had allegedly been subjected at his Ameripath, and the psychological impact of said harassment on Plaintiff. That discovery, of course, is being evaluated by Dr. Kleinman. By the same token, it is necessary for Defendants to take discovery regarding Plaintiff's discharge from Ameripath (which, Defendants believe, will show that Plaintiff is overstating the alleged impact such a discharge has on his psyche). Indeed, Dr. Kleinman has informed Defendants' counsel that he believes these records are relevant and necessary to his analysis.

In light of the foregoing, Defendants respectfully request that this Court extend the deadline for expert witness reports by 30 days from the date Defendants receive Plaintiff responses to Defendants' Third Set of Interrogatories (which are being served contemporaneously herewith).

## POINT II

### PLAINTIFF WAS EMPLOYED BY MGH FROM 1994 THROUGH 1998, AND THUS HAS BREACHED THE COURT'S ORDER BY FAILING TO PROVIDE AN AUTHORIZATION FOR THE RELEASE OF RECORDS FROM MGH.

As noted above, this Court previously ordered that:

**No late than February 4, 2005, Plaintiff will provide Defendants with the requested Authorizations for Medical Records (except dental records) and employment records (1991 to present).**

(Order, January 31, 2005.) Despite this Order, Plaintiff refuses to produce his records from the work that he performed at MGH. Rather, Plaintiff contends that this job was not "employment" and thus is not covered by the Court's Order.

As an initial matter, it should be noted that, even if Plaintiff not an "employee" for strict legal or tax purposes, there is no logical reason that the records from MGH should not be produced. Clearly, his service at MGH was in the nature of employment, and the records constitute "employment records" as contemplated by the Court's Order. Indeed, the MGH records, just like the records of the other healthcare providers for whom Plaintiff worked, are reasonably calculated to lead to the discovery of admissible evidence (given that they may reflect Plaintiff's work habits, ability to get along with others and professional reputation). Accordingly, Plaintiff should be required to produce an authorization for the MGH records regardless of whether his residency falls within the technical definition of "employment."

Moreover, Plaintiff's contention that he was not an employee of MGH while performing his residency is clearly contrary to the existing caselaw. Indeed, as Defendants informed Plaintiff's counsel), federal courts have repeatedly applied state and federal employment discrimination laws to such medical residents. See, e.g. Sussman v. New York City Health and Hospitals Corp., 47 Fed.Appx. 19 (2nd Cir., 2002); Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel., 342 F.3d 1281 (11th Cir. 2003).

Indeed, this issue was specifically considered in Ghosh v. Southern Illinois University, 331 F.Supp.2d 708 (C.D.Ill. 2004) aff'd 2005 WL 2033778 (7th Cir. August 24, 2005). In Ghosh, the plaintiff was a medical resident who asserted claims for employment discrimination (under 42 U.S.C. sec. 1981 and Title VII of the Civil Rights Act of 1964) due to her termination from the defendant's residency program. The District Court noted that a "threshold issue in this case is whether [the defendant] is [plaintiff's] employer for purposes of Title VII." 331 F.Supp.2d at 724. Applying an "economic realities" test, the District Court concluded that "all elements of the [] test point towards the existence of an employer/employee relationship." Id. at 725.

Notably, the "economic realities" test applied in Ghosh considered the following factors: (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and the performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; (3) responsibility for the costs of operation, such as equipment supplies, fees, licenses, workplace, and maintenance of operations; (4) the method and form of payment and benefits; and (5) length of job commitment and/or expectations. Id. at 724-25. Similarly, in determining whether a worker is an independent contractor, courts of the Second Circuit consider the following factors: (1) the right

to control the manner and means by which the services are provided; (2) the worker's right to work for more than one client; (3) whether the work performed by the worker is part of the regular business of the hiring party; (4) sources of tools and instruments used by the worker; (5) whether the hiring party has provided the worker with training; (6) whether the worker can hire, supervise and pay his own employees; (7) the extent of the worker's discretion over when and how long to work; (8) the method of payment; (9) provision of employee benefits; and (10) tax treatment.  Thomas v. Texaco, Inc., 998 F. Supp. 368 (S.D.N.Y. 1998); O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir. 1997).

In this regard, the Massachusetts General Hospital/Harvard Medical School:  Residency Training Program in Anatomical and Clinical Pathology Brochure clearly demonstrates that a resident in the MGH residency program meets the criteria of an employee:

| Factor to be Considered | Conditions of Plaintiff's residency with MGH |
|---|---|
| The right to control the manner and means by which the services are provided | "Residents on the [anatomic pathology] services are directly supervised by a staff pathologist (or occasionally a fellow) who bears ultimate responsibility for the correct handling and diagnosis of all specimens on the rotation." (See Thompson Cert., para. 12, Massachusetts General Hospital/Harvard Medical School:  Residency Training Program in Anatomical and Clinical Pathology Brochure (hereafter Mass. Gen'l Brochure"), p. 8.) |
| The worker's right to work for more than one client | "During the term of this contract, you will not engage in any professional activities outside the scope of this training program (i.e., moonlighting is prohibited)."  (Mass. Gen'l Brochure, p. 54.) |
| Whether the work performed by the worker is part of the regular business of the hiring party | Pathology services are, of course, part of the regular services provided by Massachusetts General Hospital. |
| Sources of tools and instruments used by the | "The AP laboratories of MGH are responsible for over 70,000 surgical specimens, 63,000 cytology preparations, and 360 |

| | |
|---|---|
| worker | (soon to be 500) autopsies per year. In addition, a joint cytogenetics laboratory with the Brigham and Women's Hospital performs over 7,000 cytogenetic analyses per year and over 1,000 molecular genetic tests per year...." (Mass. Gen'l Brochure, p. 8.) |
| Whether the hiring party has provided the worker with training | Plaintiff does not deny that he was provided training at Massachusetts General Hospital. |
| Whether the worker can hire, supervise and pay his own employees | "Five formally trained Pathologist's Assistants and three Surgical Pathology technicians process most small and many large specimens, once the resident has demonstrated competence." (Mass. Gen'l Brochure, p. 8.) |
| The extent of the worker's discretion over when and how long to work | "The core AP rotations include approximately 14 weeks of rotations in Autopsy, 42 weeks in Surgical Pathology, 8 weeks in Cytopathology, 3 weeks in Cytogenetics/Molecular Pathology, [and so forth]." (Mass. Gen'l Brochure, p. 8.) |
| The method of payment | "For the period of this engagement, the graduate trainee's annual salary will be as specified in the attached schedule of salaries for the graduate trainee's particular year of training." (Mass. Gen'l Brochure, p. 53) |
| Provision of employee benefits | "A summary of the graduate trainee benefits package, which includes health, life and disability insurance options, is attached.... The Partners Employee Assistance Program (EAP) provides confidential professional assistance and counseling to employees (including graduate trainees) and their families.... Job-related health services are provided to all employees (including graduate trainees)...." (Mass. Gen'l Brochure, p. 53.) |
| Tax treatment | Individuals who work more than 40 hours per week or do not regularly attend classes are not subject to the "student" exemption for payroll taxes. See 26 CFR §31.3121(b)(10)-2(d)(3)(iii) ("The services of a full-time employee are not incident to and for the purpose of pursuing a course of study.... [and] an employee whose normal work schedule is 40 hours or more per week is considered a full-time employee."); 26 CFR §31.3121(b)(10)-2(d)(1) (an alleged student providing services for pay to a learning institution are not excepted from the definition of employment unless the purported student is regularly attending classes). |

In response, Plaintiff points to <u>Davis v. Mann</u>, 882 F.2d 967, 974 (5th Cir. 1989) in which he contends that "the Fifth Circuit flatly held a resident is not able to state due process claims against the related facility because, regardless of whether he receives compensation, the resident is not an employee of the facility." (Thompson Cert., para. 5.) However, Plaintiff simply misstates the ruling in this case.

As an initial matter, it must be noted that <u>Davis</u> deals with Constitutional due process issues, not with employment discrimination claims. Accordingly, there is no legal basis for applying the <u>Davis</u> ruling to this case. Moreover, in <u>Davis</u>, the plaintiff entered into a contract under which he would provide services, receive compensation and, "[i]n addition, the contract stated that the University would provide and appropriate educational program…." <u>Id.</u> at 968-69. Accordingly, the Fifth Circuit stated that "Davis' education and <u>employment</u> were inseparable." <u>Id.</u> at 974 (emphasis added). Plaintiff correctly notes that the Fifth Circuit stated "that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification…" <u>Id.</u> at 974. However, the Fifth Circuit stated that this circumstance merely renders a "residency program [] distinct from <u>other types of employment</u>", thereby recognizing that Davis was an employee of the defendant. <u>Id.</u> (emphasis added).

### POINT III

**DEFENDANTS ARE ENTITLED TO RECOVER THE ATTORNEYS' FEES INCURRED IN PREPARING THIS MOTION.**

In an effort to conduct this litigation in a cooperative fashion, Defendants attempted to discuss this matter with Plaintiff's counsel. Plaintiff, however, refused to produce the MGH records, refused to offer any information regarding the issue of Plaintiff's discharge from

Ameripath and refused to take any position regarding an extension of the expert witness deadlines. Local Rule 16(g) provides:

> "[i]It shall be the duty of counsel to promote the just, speedy and inexpensive determination of every action. The Court may impose sanctions directly against counsel who disobey an order of the Court or intentionally obstruct the effective and efficient administration of justice."

Ct. L.Civ.R. 16(g).[3] Furthermore, in <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1998), the United States Supreme Court explained that a federal court may exercise its inherent power to award attorney's fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (internal citations omitted). Awarding attorney's fees as a sanction for bad faith conduct "reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." <u>Id.</u> at 46 (internal quotation marks omitted). Thus, this Court has ample authority to issue an award of attorneys' fees against plaintiff.

As set forth above, Plaintiff's conduct throughout the discovery period satisfies the standards of Local Rule 16(g) and <u>Chambers</u>. While Defendants desire nothing more than to move forward with this litigation, it has become apparent that it will be impossible to do so unless some penalty is imposed on Plaintiff's continued breaches. Thus, to prevent the conduct of Plaintiff and his counsel from repeating itself in the future, Defendants request that this Court order plaintiff to pay the costs and fees incurred in bringing this motion.

---

[3] Similarly, Local Rule 16(f) states that, for failure to comply any of the Court's discovery orders, "the Court in its discretion may impose such sanctions as are authorized by law, including ... an order with respect to the imposition on the party or, where appropriate, on counsel personally, of costs and counsel fees, or such other order with respect to the continued prosecution or defense of the action as is just and proper."

## CONCLUSION

In light of the foregoing, Defendants respectfully request that the Court (i) extend the deadline for expert witness reports by 30 days from the date Defendant receives Plaintiff responses to Defendants Third Set of Interrogatories, (ii) enforce this Court's Order of January 31, 2005 compelling the production of an authorization to obtain the plaintiff's employment records and (iii) order that Plaintiff to pay the costs and fees incurred by Defendants in bringing this motion.

         DEFENDANTS, DIANON SYSTEMS, INC.
         & ETHEL JANEGA

By: _____
    Mary Gambardella
    Federal Bar # ct 05386
    EPSTEIN BECKER & GREEN, P.C.
    One Landmark Square, Suite 1800
    Stamford, Connecticut 06901
    (203) 348-3737
      and

    Kerry M. Parker (ct # 26388)
    Michael D. Thompson (ct # 26389)
    Epstein Becker & Green, P.C.
    Two Gateway Center, 12th Floor
    Newark, New Jersey 07102
    (973) 642-1900

    Attorneys for Defendants

Dated: October 20, 2005

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was sent via Federal Express, postage prepaid, this 21st day of October, 2005 to:

>Bryan T. Carmody, Esq.
>Maya & Associates, P. C.
>183 Sherman Street
>Fairfield, CT 06430

>Richard Molot, Esq.
>U.S. Attorney General's Office
>District of Connecticut
>157 Church Street
>New Haven, CT  06510

_____
Mary Gambardella

xxx