UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
_____

|  |  |  |
|---|---|---|
| DR. JAMES J. TIESINGA | : | |
| | : | Case No. 3:02 CV 1573 (MRK) |
| Plaintiff | : | |
| | : | |
| *versus* | : | |
| | : | October 27, 2005 |
| DIANON SYSTEMS, INC. and | : | |
| ETHEL JANEGA | : | |
| | : | |
| Defendants | : | |
| | : | |

_____

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF TIME, TO ENFORCE COURT ORDER AND FOR FEES

The Plaintiff, Dr. James J. Tiesinga (hereafter, the "Plaintiff" or "Dr. Tiesinga"), by his attorneys, Maya & Associates, P.C., respectfully submits this Memorandum of Law in opposition to the Motion for Extension of Time, to Enforce Court Order and for Fees (hereafter, the "Motion") filed by the Defendants on or about October 24, 2005.

## BACKGROUND

The Plaintiff brought the above-captioned action in September of 2002. However, due to the seal posture of the case (required by the inclusion of Counts brought under the False Claims Act), discovery did not begin (and even then, only as to the employment aspects of the case) until November of last year.  At that time, the Defendants served on the Plaintiff a Request for the Production of Documents and First Set of Interrogatories (collectively, the "Requests").  The Plaintiff responded to the

**ORAL ARGUMENT <u>NOT</u> REQUESTED**

Requests in part, and objected to the Requests in part. The Court addressed the objections by an Order dated January 31, 2005 (hereafter, the "Order"). A copy of the Order is attached hereto as "Exhibit A."

### *The Residency Records*

In pertinent part, Your Honor ordered the Plaintiff to supply the Defendants with "Authorizations for … Employment Records (1991 to present)." The Plaintiff duly produced Authorizations for each employer covered by that period: NYU Medical Center (for whom the Plaintiff was employed immediately subsequent to the completion of his residency), and AmeriPath, his current employer.

On August 9, 2005, the Defendants requested an Authorization for "employment records" from Massachusetts General Hospital (hereafter, the "Hospital"), the facility at which Dr. Tiesinga performed his residency. *See* Letter from Attorney Thompson to Attorney Carmody of 8-9-05, attached hereto as "Exhibit B." On September 2, 2005, counsel for the Plaintiff informed counsel for the Defendants, *via* telephone, the Plaintiff did not consider his residency at the Hospital to qualify as an employment relationship, and for that reason, did not see the Order as applicable. *See* Affidavit of Bryan T. Carmody, Esq. dated 10-26-05, attached hereto as "Exhibit C."

Later that day, by letter, the Defendants offered case authority for the proposition Dr. Tiesinga was an employee of the Hospital. *See* Letter from Attorney Thompson to Attorney Carmody of 9-2-05, attached hereto as "Exhibit D." On September 12, 2005, by reply letter, the Plaintiff offered contrary case law and regulatory citation, but also invited a return communication for further discussion. *See* Letter from Attorney Carmody to Attorney Thompson of 9-12-05, attached hereto as "Exhibit E."

Until service of the Motion, the Plaintiff had no further contact with the Defendants as to the requested execution of an Authorization for the Hospital.  *See* Exhibit C, ¶¶ 1-2.

### *Employment Status*

On October 12, 2005, by letter, the Defendants requested the Plaintiff "…supplement [his] discovery responses to address [his] current employment situation …"  *See* Letter from Attorney Thompson to Attorney Carmody of 10-12-05, attached hereto as "Exhibit F."  Two days later, the Defendants sent another letter to the Plaintiff. In that letter, the Defendants shared their belief the Plaintiff was "no longer employed by AmeriPath," and informed the Plaintiff of their intent to serve "additional interrogatories regarding this issue" (what would be a Third Set of Interrogatories), and request an extension of "the expert witness discovery deadlines …" *See* Letter from Attorney Thompson to Attorney Carmody of 10-14-05, attached hereto as "Exhibit G." On October 18, 2005, counsel for the Plaintiff contacted counsel for the Defendants by telephone to discuss the issues raised by the aforementioned letters.  *See* Exhibit C, ¶ 3.

At the start, the Plaintiff informed the Defendants of his position that any duty to supplement a discovery response must be tied to, and arise from a discovery request previously served by the Defendants.  Accordingly, the Plaintiff requested the Defendants identify, by a brief, informal e-mail, the specific Interrogatory(s) and / or Request(s) for Production they felt the Plaintiff had failed to supplement as required.  Notably, counsel for the Defendants agreed to that approach.  However, the Defendants never sent the promised e-mail to the Plaintiff, rather, the Defendants rashly filed the Motion.  Id., ¶ 3.

The Defendants accurately note the Undersigned did not confirm or deny the current employment status of the Plaintiff. Brief in Support of Motion, page 5. Aside from the fact counsel for the Defendants has historically refused to engage in "courtesy" discovery, the Defendants had previously informed the Plaintiff of their intent to serve a Third Set of Interrogatories with regard to the employment status of the Plaintiff. *See* Exhibit G. Thus, the Plaintiff informed the Defendants of his intent to address the matter in the identical context.[1] *See* Exhibit C, ¶ 5.

The Defendants also accurately note the Plaintiff did not, at the time of the call, adopt a position as to whether their expert should be afforded additional time to produce his report. Brief in Support of Motion, page 5. The Defendants advised the Plaintiff the need for the extension lied in the fact their expert would require an opportunity to evaluate the information they expected to gather *via* the Third Set of Interrogatories. However, at the time of the call, the Defendants had not served that discovery device on the Plaintiff, nor had counsel for the Defendants offered any "preview" of the device. Thus, the Plaintiff informed the Defendants that he would not be able to form a position with regard to the extension until the Plaintiff was aware of the information sought, or put differently, the substance of the basis for the requested extension. *See* Exhibit C, ¶6.

## **ARGUMENT**

### *1.    The Plaintiff Hardly Concealed Evidence*

The Defendants levy a serious accusation against the Plaintiff, and by extension,

---

[1] The position of the Defendants that counsel for the Plaintiff stated he would respond only if he felt "compelled," is a half-truth, at best. Brief in Support of Motion, page 5. In fact, the Undersigned simply informed the Defendants the Plaintiff would respond to the Third Set of Interrogatories in the same way he would respond to any other discovery device, to wit, by responses and / or objections as applicable. *See* Exhibit C, ¶ 4.

the Undersigned: "… that Plaintiff has been concealing the fact that he was terminated by his employer, Ameripath." Motion, page 1. The Defendants attempt to persuade Your Honor the Plaintiff had the duty to disclose that "fact" as a supplemental response to the Requests. Brief in Support of Motion, pages 6-8.

To begin with, the Plaintiff has not been "terminated" by AmeriPath. In point of fact, AmeriPath recently informed the Plaintiff the Company would not renew the Employment Agreement (hereafter, the "Agreement") to which the Plaintiff is a signatory. Today, however, the Plaintiff remains as an employee of AmeriPath, and he will retain that status until (at least) December 14, 2005, the day the Agreement expires. *See* Exhibit C, ¶ 7. Thus, the information unearthed by the Defendants, *i.e.*, that the Plaintiff was terminated from AmeriPath, does not accord with reality.

The Defendants contend the Plaintiff "clearly breached his discovery obligations with regard to …" Interrogatory No. 2:

> "Identify, for the period from the date of Plaintiff's first full time employment to the present, the name and address of each of your employers (including self-employment), and the inclusive date(s) of such employment, job title(s), rate(s) of pay and total gross compensation, name(s) of supervisor(s) and the reasons you left each of the employers listed in response to this Interrogatory. This answer should include a statement of whether you were terminated from employment voluntarily or involuntarily."
>
> Brief in Support of Motion, page 6.

Interrogatory No. 2 clearly does not encompass the fact Dr. Tiesinga recently learned AmeriPath would not renew the Agreement. Admittedly, the Agreement identifies December 14, 2005 as the expiration date. However, no person can be sure that, while the Agreement is set to expire that day, the employment relationship will not continue beyond that date for a variety of commonplace, *ad hoc* purposes, *e.g.*, the

Company requests, and Dr. Tiesinga agrees to supply transitional help. The Defendants concede Dr. Tiesinga carries the duty to supplement a discovery response only "seasonably." Brief in Support of Motion, page 6, quoting from Fed. R. Civ. P. 26(e). By that measure, the Plaintiff submits any supplement duty on his part would not crystallize until the ultimate conclusion of the employment relationship, probably, but not necessarily, on December 14, 2005.

The Defendants also highlight Request for Production Nos. 12 and 13:

Request for Production No. 12: All documents which refer or relate to Plaintiff's employment or any work for any company or entity from the time of Plaintiff's graduation from medical school to the present, and (for each employer) a completed "Authorization and Request for Employment Records" of the form attached hereto.

Request for Production No. 13: Any and all documents that relate, refer to or touch upon plaintiff's employment subsequent to plaintiff's employment with Dianon including, but not limited to, plaintiff's efforts to secure employment following his separation from Dianon.

Brief in Support of Motion, page 7.

As Your Honor might recall, Request for Production No. 12 was the subject of a dispute between the parties, which Your Honor resolved by way of the Order. As noted above, the Order directed the Plaintiff to supply the Defendants with an Authorization for each employer. *See* Exhibit A. The Plaintiff duly executed, and thereafter provided to the Defendants, an Authorization for AmeriPath. For this reason, the Plaintiff did not discern any duty on his part to supplement Request for Production No. 12, as the Defendants are equipped with an Authorization. In fact, the Defendants have heretofore received hundreds upon hundreds of documents from AmeriPath, and undoubtedly are in contact with AmeriPath already for documents that relate to the current employment status of the Plaintiff.

Request for Production No. 13 focuses, almost entirely, on documents that relate to employment the Plaintiff has obtained subsequent to his departure from DIANON. To that extent, Request for Production No. 13 is totally duplicative of Request for Production No. 12. At any rate, as Request for Production No. 13 concludes, the Defendants refer to documents that relate to efforts the Plaintiff made to secure employment "following his departure from [DIANON]." Even if Request for Production No. 13 extends to any recent efforts by the Plaintiff to secure employment beyond AmeriPath, a doubtful proposition[2], the Plaintiff represents to Your Honor that he does not possess any responsive documents. Simply put, the Plaintiff is not able to produce that which he does not possess.

Lastly, the Undersigned must address the charge he flouted the instructions of Your Honor for counsel to cooperate in the resolution of discovery disputes. Brief in Support of Motion, page 5. As noted above, prior to the call on October 18, 2005, the Defendants had informed the Plaintiff of their intent to conduct discovery as to the recent separation between the Plaintiff and AmeriPath. *See* Exhibit G. Accordingly, at the time of the call, the Plaintiff sensibly informed the Defendants he would address the issue in the identical context. *See* Exhibit C, ¶ 5.

Though the Defendants endeavor to fault the Plaintiff for his refusal to offer a "courtesy" disclosure, the Defendants, not surprisingly, neglect to account for their routine refusal to engage in "courtesy" discovery. Examples truly abound, but the

---

[2] The Defendants, themselves, evidently do not see Request for Production No. 12 to extend that far, insofar as the Defendants recently served a Third Request for Production of Documents that calls for: "[a]ny and all documents that refer or relate to any effort made by plaintiff, since August 1, 2005, to obtain employment." A copy of the Third Request for Production of Documents is attached hereto as "Exhibit H."

Plaintiff will not burden the Court beyond a single illustration. Last June, the Plaintiff deposed Leon Bailey, a former official of DIANON Human Resources. In the midst of an answer, Mr. Bailey identified several documents, each of which was clearly discoverable. Though the Plaintiff requested a courtesy production of the documents, counsel for the Defendants insisted the Plaintiff prepare a formal discovery device. The exchange between counsel is attached hereto as "Exhibit I."

For these reasons, the Plaintiff had no manifest duty to serve a supplemental response to the Request as to the non-renewal of the Agreement, and the decision by the Undersigned to address the question in the context of the Third Set of Interrogatories was entirely reasonable.

## 2.    *The Plaintiff Does Not Object to an Extension for the Production of Expert Reports, But Does Object to Parts of the Related Discovery Devices*

Today, with the benefit of service of the Third Set of Interrogatories and Third Request for Production of Documents, the Plaintiff is able to form a position as to whether the expert retained by the Defendants should be allotted additional time to turn over his expert report. The Plaintiff has no objection to production of the expert report inside of thirty (30) days of service of his responses to the Third Set of Interrogatories and the Third Request for Production of Documents. Upon receipt of the report, the Plaintiff would request a thirty (30) day period to depose the expert.

Here, though, the Plaintiff might apprise the Court of objections he intends to interpose with regard to the Third Set of Interrogatories.[3] The Third Set of Interrogatories is attached hereto as "Exhibit J." Interrogatory No. 5 essentially requires

---

[3] To be sure, the Plaintiff is ready to discuss the objections with the Defendants in the absence of Court intervention, as required by discovery rules. However, the Plaintiff

the Plaintiff to identify individuals or entities the Plaintiff has contacted as part of his recent efforts to secure employment. In fact, the Plaintiff has contacted a variety of persons for that purpose, but the process is currently at a delicate, nascent stage. If the Plaintiff discloses the prospects, the Defendants will assuredly contact each prospect, and disclose the fact the Plaintiff has sued a prior employer. Naturally, a disclosure of that type would interfere with, if not outright extinguish the opportunity of any person to secure new employment. In light of these concerns, the Plaintiff respectfully requests his duty to respond to Interrogatory No. 5 be held in abeyance until the Plaintiff actually commences new employment.[4]

The Plaintiff also objects to Interrogatory No. 4. Although the Defendants represented the Third Set of Interrogatories was designed to gather information for their expert, specifically the recent separation of the Plaintiff from AmeriPath, *see* Exhibit G, Interrogatory No. 4 bears no relationship to that need and / or subject matter. Interrogatory No. 4 questions, rather vaguely, whether the Plaintiff has "[e]ver spoken in public" about the number of antibodies that are "medically necessary" for flow cytometry.

For a variety of reasons, Interrogatory No. 4 calls for objection. Initially, through past Sets of Interrogatories, the Defendants have already propounded far more than the twenty-five (25) Interrogatories allotted by the Federal Rules of Civil Procedure. Furthermore, the Defendants certainly had the opportunity to question the Plaintiff at his

---

decided to share the objections to Your Honor presently, to the extent the Court would desire a discussion of the objections in the larger context of the Motion.
[4] The Third Request for Production of Documents includes a parallel Request for Production. *See* fn. 2, *supra*. As noted before, the Plaintiff does not currently possess any responsive documents. However, to the extent the Plaintiff later acquires such documents, the Plaintiff respectfully requests equivalent abeyance protection.

deposition (which, by his consent, lasted the better part of two [2] days) about his position with regard to the proper number of antibodies for flow cytometry.  In fact, at the deposition, the Defendants questioned the Plaintiff at length about that very issue.[5] Finally, the scope of Interrogatory No. 4 not only extends far beyond the purpose the Defendants had represented for the Third Set of Interrogatories, but goes beyond the scope of the employment case itself.  Put a different way, the Defendants should address the matter in the context of the *qui tam* case.

In sum, the Plaintiff has no objection to the extension sought by the Defendants with regard to the deadline for disclosure of expert reports, but objects to the specific Interrogatories noted above, designed (ostensibly) for the benefit of the expert.

### 3.    *The Plaintiff Concedes No Violation of the Order, But Will Produce an Authorization for the Hospital*

The Plaintiff has never considered the residency he performed at the Hospital as "employment."  Notably, that position was based not on an arbitrary, uniformed opinion, but legal authority from a Circuit Court of Appeals.[6]  Before the above-captioned case even began, the Defendants were undoubtedly aware Dr. Tiesinga had performed his residency at the Hospital.[7]  Nonetheless, the Defendants delayed until August of this year to inform the Plaintiff of their position that he was an "employee" of the Hospital. *See* Exhibit B.

---

[5] Interestingly, the corporate representative for DIANON at the Plaintiff's deposition was Robert Salcido, Esq., who represents DIANON for purposes of the *qui tam* aspects of this case.

[6] *See* Davis v. Mann, 882 F.2d 967, 974 (5th Cir. 1989) ("[i]t is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program.")

[7] For example, in the midst of the interview process, the Plaintiff supplied the Defendants with a *Curriculum Vitae* that reflected his residency at the Hospital.

Thereafter, the Plaintiff cited contrary legal authority to the Defendant with an invitation for further discussion. *See* Exhibit E. The Defendants did not share their assessment of the <u>Davis</u> case, or the other authority cited by the Plaintiff. In fact, the Defendants made no further contact with the Plaintiff, nor did the Defendants request a telephone conference with the Court, as required by the Order entered by Your Honor on December 7, 2004.[8] Rather, the Defendants impetuously filed the Motion, and cited to new authority in the Motion, specifically <u>Thomas v. Texaco, Inc.</u>, 998 F.Supp. 368 (S.D.N.Y. 1998) and <u>O'Connor v. Davis</u>, 126 F.3d. 112 (2d. Cir. 1997). *Compare* Exhibit D. The Motion also includes quotes from the Hospital Brochure, a document not mentioned, let alone quoted at any time to the Plaintiff. *See* Exhibit C, ¶ 2. Thus, to the extent the Defendants did not apprise the Plaintiff fully of their authority, *e.g.*, the Hospital Brochure, and ignored the clear instructions of Your Honor for a telephonic conference prior to motion practice, the Defendants, not the Plaintiff, are in default of their discovery obligations.

The Plaintiff still does not concede he was an "employee" of the Hospital at the time of his residency. However, to spare the Court of further imposition, the Plaintiff will execute an Authorization for the Hospital. The Plaintiff respectfully reserves, of course, all rights to challenge the admissibility of any production the Defendants obtain *via* the Authorization.

**4.**     <u>**The Defendants' Request for Fees Rings Hollow**</u>

The Defendants suggest they are entitled to recover attorneys fees incurred for the preparation of the Motion because the Plaintiff refused to (1) execute an Authorization

_____

[8] That Order provides: "[b]efore filing any motion relating to discovery, the parties are required to jointly confer with the Court by telephone, [number omitted]." A copy of that

for the Hospital, (2) comment on the status of his present employment, and (3) form a position as to whether their expert should be afforded additional time for disclosure of his report. Brief in Support of Motion, pages 12-13.

The refusal of the Plaintiff to execute an Authorization for the Hospital was imbued with good faith, as he relied upon appellate legal authority. In fact, if the good faith of any party is open to doubt, it would be on the part of the Defendants, who failed to apprise the Plaintiff of the totality of their legal authority, only to later defy the instructions of Your Honor to request a conference with the Court prior to any discovery motion practice. *See* Exhibit K.

Moreover, the scope of the Requests did not cover the non-renewal of the Agreement, and the Plaintiff reasonably elected to address the status of his current employment in the context of the discovery devices of which the Defendants previously made the Plaintiff aware. *See* Exhibit G.

Finally, the Plaintiff never "refused" to form a position as to an extension for the production of expert reports; rather, the Plaintiff informed the Defendants that he could not develop a position until service of the Third Set of Interrogatories, insofar as the information sought by that device constituted the basis for the requested extension. The Plaintiff received the Third Set of Interrogatories only a few days ago, and now promptly advises the Defendants, together with Your Honor, of his position: no objection to the request.

In the Motion, the Defendants have sought a variety of relief, but also seize the opportunity to vilify the Plaintiff, not to mention the Undersigned. The Plaintiff has no intent to dignify the evident "mud-slinging" desires of the Defendants by a counter

---

Order is attached hereto as "Exhibit K."

request for an award of his fees to defend the Motion, as premature and vitriolic as it might be.  Rather, the Plaintiff simply requests the Court deny the award of fees requested by the Defendants.

## **CONCLUSION**

In summary, the Plaintiff has no objection to the extension requested by the Defendants for production of expert reports, if the Plaintiff can be afforded a thirty (30) day period thereafter to depose the expert.  Also, the Plaintiff will execute an Authorization for the Hospital.  However, the Plaintiff respectfully requests the Court deny any award of fees to the Defendants.

Respectfully submitted,

Plaintiff

_____

Bryan T. Carmody (ct 22514)
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880
(203) 221-3100
(203) 221-3199 (facsimile)
bcarmody@mayalaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this _____ day of October 2005, I caused a true and

correct copy of the foregoing to be served upon the following counsel of record by

Federal Express:

Kerry M. Parker, Esq.
Epstein Becker & Green, P.C.
*Attorneys for Defendants*
Two Gateway Center, 12th Floor
Newark, NJ 07102

Richard Molot, Esq.
U.S. Attorney General's Office
*Attorneys for United States*
District of Connecticut
157 Church Street
New Haven, CT 06510

Robert Salcido, Esq.
Akin Gump Strauss Hauer & Field, LLP
*Attorneys for Defendants*
Robert Strauss Building
1333 New Hampshire Ave, NW
Washington, D.C. 20036

_____

Bryan T. Carmody (ct 22514)
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880
(203) 221-3100
(203) 221-3199 (facsimile)
bcarmody@mayalaw.com