IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. Dr. James J. Tiesinga, | ) ) ) |
| Plaintiffs, | ) No. 3:02CV1573(MRK) ) |
| v. | ) ) |
| DIANON SYSTEMS, INC., | ) November 4, 2005 ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE GOVERNMENT'S UNJUST ENRICHMENT AND PAYMENT BY MISTAKE OF FACT CLAIMS**

Defendant Dianon Systems, Inc. ("Dianon") respectfully submits this Reply in support of its motion to dismiss the government's claims for unjust enrichment and payment by mistake of fact.

I.   **THE COURT SHOULD DISMISS THE GOVERNMENT'S COMMON LAW CLAIMS**

The Social Security Act and policy mandate that the government's unjust enrichment and payment by mistake of fact claims be dismissed. Specifically, the plain language of section 405(h) of the Social Security Act limits instances in which federal courts can review Medicare determinations. The statute provides:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. *No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal or governmental agency except as herein provided.* No action against the United States, the [Secretary] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h), as applied to Medicare by 42 U.S.C. § 1395ii (emphasis added).

As Dianon pointed out in its initial brief, and the government does not contest, the Social Security Act has a comprehensive administrative process under which the government can assert its overpayment claims. Because the government has not exhausted this process, its claims should be dismissed.

Moreover, as Dianon pointed out, policy considerations support requiring the government to exhaust its administrative remedies. Otherwise, administrative agencies are deprived of their ability to interpret and apply their rules and courts are unable to benefit from the agency's expertise. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (holding that exhaustion prevents premature interference with agency processes, allows the agency to function efficiently and have an opportunity to correct its own errors, affords the parties and the courts the benefit of the agency's experience and expertise, and compiles a record which is adequate for judicial review).

The government attacks Dianon's position by noting – as Dianon had already informed the Court - that a district court opinion that supports Dianon's position was later reversed by the First Circuit. *See United States v. University of Massachusetts Mem'l Med. Ctr.*, 296 F. Supp. 2d 20 (D. Mass. 2003), *rev'd*, *United States v. Lahey Clinic Hosp.*, 399 F.3d 1, 7 (1st Cir. 2005); *see* Dianon's Mem. in Supp. of its Mot. to Dismiss the Gov't Unjust Enrichment and Payment by Mistake of Fact Claims at 5.

The government's attack, however, misses its mark. The reason Dianon invokes the district court decision – which like the First Circuit's decision is not binding on this Court - is because the district court's reasoning is superior to that of the First Circuit. This is because it applies the statutory language that "no findings of fact or decision of the [Secretary] shall be reviewed . . . except as herein provided" and correctly rules that this language in no way

"suggests that review is limited only [to] actions brought against the United Sates." *Id.* at 24 (stating that "a narrow interpretation of Section 405(h) [is] inconsistent with the 'sweeping and direct'" language of the third sentence of Section 405(h)) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)); *see also U.S. v. Idaho Falls Assocs. LTD P'ship*, 81 F. Supp. 2d 1033, 1049 (D. Idaho 1999) (finding that section 405(h) "does not merely apply to actions brought against the government to recover benefits under the Medicare Act," but precludes judicial review of any findings of fact or decisions of the Secretary except as provided in the Medicare Act itself).[1]

The government and the First Circuit disagree with the district court's reasoning because they believe that "the government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid" and "[n]o statute is necessary to authorize the United States to sue in such cases. The right to sue is independent of statute ..." *See* Gov't Opp'n to Defs.' Mot. to Dismiss at 3.[2] The government's assertion would be correct but for the existence of section 405(h) of the Social Security Act. Because the plain language of the statute should be applied, the government's common law claims should be dismissed.

## II. THE GOVERNMENT IS NOT PREJUDICED BY DIANON'S AFFIRMATIVE DEFENSES

As part of its initial motion to dismiss, the defendant also filed its opposition to the government's motion to strike its affirmative defenses regarding recoupment and set-off. Specifically, Dianon pointed out that the government did not assert in its motion how specifically

---

[1] The Second Circuit has not ruled on this issue. The government, in its motion, cites to *United States v. Aquavella*, 615 F.2d 12 (2d Cir. 1979), but, as the district court pointed out in *Univ. of Mass.*, during the time period covered in *Aquavella*, there was no statutory procedures governing provider appeals and thus there was not a detailed administrative scheme that was being bypassed by the party's lawsuit. This distinction makes *Aquavella* "no longer persuasive." 296 F.Supp.2d at 26, n. 6.

[2] The government cites to *Lahey* to support this proposition, which in turns quotes from a Supreme Court case decided decades before the creation of the Medicare Program. Here, defendant is not disputing that the

3

it would be prejudiced by those affirmative defenses and that omission doomed its motion. *See generally* 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedures § 1380 at 394-97 (2004) ("in order to succeed on a Rule 12(f) motion to strike surplus matter from an answer, the federal courts have established a standard under which it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party") (footnotes omitted).

Moreover, Dianon pointed out that correspondence to its Medicare carrier regarding the appropriateness of billing for 1275 tests involving the same billing code in dispute in this case was relevant to its affirmative defenses. In its Reply, the government asserted, in light of Dianon's statement, that its prejudice would be that "Dianon clearly intends to take deposition of government and carrier employees on the issue of denied claims." *See* United States Reply Mem. in Further Support of its Mot. to Strike Def's Affirmative Defenses at 5, n.3.

The government's claim of prejudice, however, is misplaced because those personnel would be deposed on this topic whether or not the affirmative defenses the government seeks to strike survived. For example, one of Dianon's affirmative defenses – that the government does not challenge – is that the government "had actual knowledge of all relevant facts relevant to Dianon's billings for flow cytometry services." *See* Dianon's Answer and Defenses to United States Am. Compl. at 14. Because of this defense – and the case law that uniformly holds that whenever government officials know of the underlying conduct, as occurred here in part through the carrier correspondence, the government cannot establish a violation of the False Claims Act

---

government can collect any overpayment. It is just saying that the government, like everyone else, must follow the law when it does so.

("FCA"), 31 U.S.C. § 3729-3733, as a matter of law[3] – these depositions would occur regardless of whether the government's motion to strike were granted. Accordingly, the government has not demonstrated any prejudice sufficient to strike the affirmative defenses.

## III. CONCLUSION

Accordingly, the Court should grant Dianon's motion to dismiss and reject the government's motion to strike Dianon's affirmative defenses.

Respectfully submitted,

By: _/s/ Robert Salcido_
Robert Salcido
Fed. Bar No. 447951
(admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4095

---

[3] *See United States ex rel. Costner v. URS Consultants*, 317 F.3d 883, 887-88 (8th Cir. 2003) ("The record shows that the EPA discussed these problems with the defendants and referred the matter to OSHA for investigation and possible sanctions. Although the record indicates that the defendants' performance under the contract was not perfect, the extent of the government's knowledge through its on-site personnel and other sources shows that ... the government knew what it wanted, and it got what it paid for.... Thus, the district court did not err in finding that the defendants' openness with the EPA about their problems and their close working relationship in solving the problems negated the required scienter regarding these issues") (citation and internal quotation omitted); *United States ex rel. Becker v. Westinghouse Savannah River*, 305 F.3d 284, 289 (4th Cir. 2002) ("we join with our sister circuits and hold that the government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation" and hence the government's "full knowledge of the material facts underlying any representations implicit in [the defendant's] conduct negates any knowledge that [the defendant] had regarding the truth or falsity of those representations"); *United States ex rel. David Bennett v. Genetics & IVF Inst.*, No. 98-2119, 1999 U.S. App. LEXIS 27911 (4th Cir. 1999) (although the defendant's contract mandated that, in conducting paternity testing, it conduct two tests, it informed the government entity that it would perform only one test [since DNA testing was more accurate than the previously used serology testing] both before the contract was awarded and after it was awarded but before performance began; the court affirmed the district court's determination that no reasonable jury could conclude that the defendant had the requisite intent under the FCA because the government knew of defendant's practices and had not objected); *see also United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321 (9th Cir. 1995) (concluding that where defendants openly shared all information with the government and fully cooperated with it during the testing process, that the government's knowledge defeats any inference that defendant "knowingly" presented false claims to the government ); *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992) (same)

Mary A. Gambardella (ct #05386)
Kerry M. Parker (ct # 26388)
Michael D. Thompson (ct #26389)
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601
Telephone: (203) 348-3737

Thomas Kossl
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615
Telephone: (973) 492-1509

Bruce R. Parker
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244-7400

Attorneys for Defendant Dianon Systems, Inc.

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was sent via United States first class mail, postage prepaid, this 3rd day of November 2005 to:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880


Richard Molot, Esq.
U.S. Attorney General's Office
District of Connecticut
175 Church Street
New Haven, CT 06510


Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

_____
Penney Hughes