## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA )
ex rel. DR. JAMES J. TIESINGA, )
) 
    Plaintiffs, )
) 
v. )      No. 3:02CV1573(MRK)
) 
DIANON SYSTEMS, INC., )
) 
    Defendant. )

## DIANON SYSTEMS, INC.'S MOTION TO COMPEL
## YALE NEW HAVEN HOSPITAL TO
## PRODUCE DOCUMENTS PURSUANT TO SUBPOENA

    Dianon Systems, Inc. (Dianon), by and through its undersigned counsel, submit

its Motion to Compel Third Party Yale New Haven Hospital to produce documents

pursuant to Dianon's subpoena issued June 21, 2006 and in support thereof state as

follows:

## OVERVIEW

    1.    Dianon served a subpoena for certain documents on Yale New Haven

Hospital on June 21, 2006. See Exhibit 1.  On July 10, 2006, Yale New Haven Hospital

filed objections to the subpoena, asserting the subpoena was overly broad, unduly

burdensome, and requested irrelevant information. See Exhibit 2.  Yale New Haven

Hospital's objections were filed beyond the 14 day time period pursuant to F.R.C.P.

45(c)(2)(B) and therefore should not be considered by this Court.

    2.    To the extent the Court will consider Yale New Haven Hospital's belated

objections, for the reasons stated below, those objections have no merit because: (a) the

requested documents are vital to Dianon's defense of this matter as they are the only documents available to test the sole government expert's methodology; (b) the documents are relevant for cross-examination for the government's expert; and (c) the documents are relevant regarding the prevailing medical standards for conducting flow cytometry testing[1]. Furthermore, Yale New Haven Hospital has failed to support its assertions that Dianon's document request is unduly burdensome. Finally, Dianon's counsel has related their willingness to narrow the scope of its document request to address Yale New Haven Hospital's assertions that the requests are overly burdensome. See Exhibit 3, July 27, 2006 e-mail memorializing previous discussions concerning the scope of the subpoena. Dianon has provided notice to Yale New Haven Hospital pursuant to F.R.C.P. 45(c)(2)(B) that it would file this motion because the Hospital would not provide any documents unless ordered by the Court. Id., July 31, 2006 e-mails.

**FACTUAL BACKGROUND**

3.     Plaintiff United States of America asserts that Dianon submitted false claims for flow cytometry testing that Medicare reimbursed during the period 1996 through 2003 – a total of 12,545 claims. The Government asserts that Dianon's flow cytometry tests included medically unnecessary antibodies or markers in their "panel" or array of antibodies tested. Since Medicare reimbursed flow cytometry tests on a per antibody basis, the United States alleges that the inclusion of alleged medically unnecessary antibodies constitute false claims for each test Medicare and Tricare

---

[1] The government's alleged false claims involve flow cytometry testing for diseases of the blood and lymph system. Flow cytometry testing must be performed on living cells from bone marrow, blood, or tissue. A patient's treating physician orders flow cytometry testing from a laboratory to diagnose and characterize diseases of the blood and lymph systems such as leukemia and lymphoma. Once a laboratory receives the patient specimen, the cells are mixed in tubes with various antibody combinations and passed through the flow cytometer. The pattern or expression of antibodies on cells allows the hematopathologist at the laboratory to separate normal cells from abnormal cells and then, depending on which antibodies are affixed to the abnormal cells, identify and classify the disease.

reimbursed. Plaintiff seeks damages and penalties in excess of $100 million for these alleged false claims.

4.      Dianon, a small laboratory in Stratford, Connecticut, asserts that its antibody panel for flow cytometry testing was well within the prevailing medical standards, their methodology was consistent with peer reviewed medical literature, and their antibody panel design provided excellent patient care.

5.      Neither the Center for Medicare and Medicaid services ("CMS") nor CMS's local carrier which administered payment for Medicare services in Connecticut ("carrier") provided any written guidance, rule, regulation, or other notice defining the number of antibodies that would be considered medically reasonable and necessary. Without written guidance or notice, determinations of medical necessity devolve to the prevailing standards in the medical community.

6.      The government produced Stuart Flynn, M.D., a former anatomic pathologist at Yale Medical School[2], as its sole expert on the prevailing medical standards for flow cytometry testing. Dr. Flynn reviewed several hundred flow cytometry tests from Dianon and provided opinions as to which markers were medically unnecessary given a patient's presenting symptoms. Dr. Flynn opined that a laboratory must review the patient's clinical information and design a "targeted" panel of antibodies based upon this information. Exhibit 4, Report of Stuart Flynn, M.D. at 2-3. However, Dr. Flynn admitted that his flow cytometry laboratory used a standard panel or array of

---

[2] At the time of his deposition on May 10, 2006, Dr. Flynn was still employed at Yale Medical School as an anatomic pathologist. Dr. Flynn has since left Yale Medical School. It is upon information and belief that Dr. Flynn is currently the Associate Dean for Academics at the University of Arizona College of Medicine for its Phoenix campus.

antibodies for flow cytometry testing until 2000 when his lab no longer provided this service. Exhibit 5, Deposition of Dr. Flynn at 64.

7.     When operational, Dr. Flynn's laboratory, in the Yale Medical School Department of Pathology ("Yale Pathology lab"), analyzed tissue samples. The Yale Pathology lab performed flow cytometry testing on tissue specimens for lymphoma analysis and rarely analyzed "wet specimens" (bone marrow and blood samples). Exhibit 5 at 33-34, 53-54, 72. Yale Medical School had a second flow cytometry laboratory in the Department of Laboratory Medicine ("Yale Laboratory Medicine lab"), which performed testing on blood and bone marrow for all acute leukemia cases. Id. Dr. Flynn testified he consulted with the Yale Laboratory Medicine lab on specific patient cases. Id. at 55. According to Dr. Flynn, both laboratories worked in conjunction with one another: the Department of Pathology lab primarily analyzed tissue specimens for lymphoma and the Department of Laboratory Medicine analyzed blood and bone marrow specimens for leukemia. The laboratories were located in the same facility on different floors. Id. at 72-73.

8.     Dianon performed flow cytometry mostly (more than 90% of tests Dr. Flynn reviewed) on blood and bone marrow or "wet specimens." The Yale Pathology lab did not test these types of specimens, but Yale Laboratory Medicine lab did. Dr. Flynn testified that he would normally send wet specimens "upstairs" to the Yale Laboratory Medicine lab for flow cytometry testing. Id. at 72-73.

9.     Though both Dr. Flynn (Yale Pathology Lab) and Dr. Smith (director Yale Laboratory Medicine lab) were professors at Yale Medical School, the respective laboratories and records are in the possession, custody, and control of two different legal

entities: the Yale Pathology lab and its records are in the possession of Yale Medical

School and the Yale Laboratory Medicine lab records are in the possession of Yale New

Haven Hospital.

**ARGUMENT**

10.    Dianon subpoenaed records from both laboratories to determine what

antibodies the Yale Flow Cytometry Laboratories used for patient care. The information

concerning how Yale's flow cytometry laboratories handled the same types of specimens

as Dianon's flow cytometry laboratory (i.e. patients with suspected lymphoma or

leukemia) is vital for several reasons.

11.    First, more than 90% of the cases reviewed by Dr. Flynn were test

performed on "wet specimens." Dr. Flynn admittedly had little experience performing

flow cytometry on wet specimens, yet provided opinions as to which antibodies were or

were not medically necessary. Dr. Flynn did not consult other members of the flow

cytometry medical community, did not analyze wet specimens for suspected leukemia,

and spent less than two hours reviewing medical literature on the subject to form his

opinions. Exhibit 5 at 21-22. Therefore, his alleged consultation and work with the Yale

Laboratory Medicine lab forms the basis of his opinions concerning wet specimen

analysis - particularly in cases of suspected leukemia. Evidence concerning the Yale

Laboratory Medicine lab's methodology for analyzing wet specimens is crucial to test

whether Dr. Flynn's methodology employed in this case is consistent with Yale

laboratory practice or was generated specifically for this litigation.

12.    Second, Dr. Flynn testified how the Yale Laboratory Medicine lab would

handle suspected leukemia cases at his deposition. See, e.g., Id. at pp. 61, 299-302, 323.

Dr. Flynn testified that the antibodies he used were "fundamentally similar" to the Yale Laboratory Medicine lab's practice of flow cytometry. Id. at 61. However, Dr. Flynn could not state which antibodies the Yale Laboratory Medicine lab used in flow cytometry testing. Id. at 48-49. Information concerning how the Yale Laboratory Medicine lab utilized different antibodies is needed to test the credibility of Dr. Flynn. To the extent Dr. Flynn will buttress his opinions concerning flow cytometry analysis through his work with and knowledge of the Yale Laboratory Medicine lab, documents outlining the antibodies it utilized are needed for cross-examination of Dr. Flynn. If the Yale Laboratory Medicine lab utilized antibodies similar to Dianon (including those antibodies Dr. Flynn opined are medically unnecessary), Dr. Flynn would lose credibility. In addition, to the extent that the Yale Laboratory Medicine lab used different antibodies compared to Dianon, that information is relevant to show that different laboratories have different flow cytometry practices.

13.     Third, CMS, the carrier, or other government agents did not publish rules, regulations, or guidance dictating how flow cytometry should be practiced or how many markers should be used to constitute medically reasonable and necessary flow cytometry practice. Therefore, the standards of the medical community or standard of care in the practice of flow cytometry dictate medically reasonable and necessary testing under Medicare. Dr. Flynn has designated specific antibodies he alleges are medically unnecessary in this case. Therefore, the specific antibodies the Yale Laboratory Medicine lab used in their antibody panels are relevant to the standard of care or prevailing medical standards regarding flow cytometry antibody panel design.

-6-

14.    The flow cytometry laboratory that Dr. Flynn directed shut down in 2000. Exhibit 4 at 49. The only records of how Yale Medical School conducted flow cytometry on any specimen from 1996 to the present are with Yale New Haven Hospital. Though Dianon subpoenaed records from the Yale Pathology lab regarding the antibodies used in their antibody panels prior to 2000, there are no records available.[3] The Yale Laboratory Medicine lab records concerning antibodies used in flow cytometry testing are the only evidence available to test Dr. Flynn's methodology, his credibility, and ultimately determine if his opinions were created specifically for this litigation or reflect how he and his colleagues practiced flow cytometry. The United States has subpoenaed similar documents from Dianon's experts' medical institutions. It is upon information and belief that those institutions have provided the same information and documents to the government that Dianon seeks in its subpoena.

15.    On July 10, 2006, Yale New Haven Hospital objected to Dianon's subpoena for the following reasons: (a) the documents requested are not relevant to the Government's claim and are not calculated to lead to the discovery of admissible evidence; (b) the breadth of documents requested is overwhelming; and (c) the requests are nothing more than a "back door attempt to obtain written expert opinions from an unretained expert, who has no personal knowledge of the facts pertinent to the parties' dispute in this lawsuit." Exhibit 2 at 2-3.

16.    Yale New Haven Hospital's objections to Dianon's subpoena have no merit. As explained above, the documents sought are not only relevant but vital to test

---

[3] Counsel for Yale Medical School, Harold Rose, recently produced documents responsive to the subpoena – approximately 30 pages of a procedure manual for flow cytometry DNA ploidy analysis which is irrelevant to the flow cytometry testing at issue in this case. No documents have been produced to date regarding the antibodies Dr. Flynn used for the type of flow cytometry testing at issue in this case.

-7-

the Government's theory of this case, which rests solely upon the expert opinions of Dr. Flynn. The documents sought not only would lead to the discovery of admissible evidence, but would be admissible on their own for Dr. Flynn's cross-examination. Finally, Dianon does not wish to burden Yale New Haven Hospital more than is necessary and has related this desire to its counsel. See, e.g. Exhibit 3. Dianon does not wish to depose Dr. Smith, the co-director of the Yale Laboratory Medicine lab, and obtain his expert opinions. Rather, Dianon wishes to obtain basic facts as to how Yale's flow cytometry laboratories performed its testing and compare that to Dr. Flynn's assertions in this case.

17.    Finally, Dianon has tried to narrow its requests. Specifically, Dianon requested documents that outline the various antibody combinations the Yale Laboratory Medicine lab used. Exhibit 1, Document Schedule Nos. 3 and 5. This information is readily available, should comprise less than 30 pages, and is crucial to Dianon's case. Dianon also seeks one or more laboratory manuals describing how Yale University's flow cytometry laboratories process flow cytometry specimens. Id. at Document Schedule No. 1. Dianon is willing to accept one laboratory manual that is representative of how the Yale Laboratory Medicine lab conducted flow cytometry over the past ten years. To the extent that this methodology has not changed, one manual would suffice. To the extent it has, additional documents that track those changes would be necessary. The manual(s) Dianon requests are documents required by the College of American Pathologists Laboratory Accreditation Program for Flow Cytometry and should also be readily available.

18.    The party seeking to avoid production of documents pursuant to a subpoena must show the request is unduly burdensome. F.R.C.P. 45(c)(3)(A)(iv), *The Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D.Conn. 2005). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Id.* The factors analyzed to determine if a subpoena request is unduly burdensome are relevance, the needs of the requesting party, the breadth of the document request, the time period covered by it, and the particularity of the description of the requested documents. *Id.*

19.    Yale New Haven Hospital has failed to meet its burden to establish: (a) the request is unduly burdensome; (b) the documents requested are irrelevant; (c) the documents are inaccessible; or (d) the document production would be cost prohibitive. Yale New Haven Hospital has only produced bald assertions that compliance with the subpoena would be overly burdensome. This failure to support its objections is only magnified by the fact that Dianon is willing to accept much less than a complete production of the requested relevant documents. See Exhibit 1, Document Schedule 1, 3, and 5, and Exhibit 3.

20.    In sum, Dianon requests vital documents necessary to test Dr. Flynn's methodology and credibility. The government's assertions and damages hinge on Dr. Flynn's methodology and opinions. The documents sought will be admissible for cross-examination purposes and are crucial to Dianon's defense at trial. Dianon has pursued the least disruptive means to obtain this evidence. Finally, the evidence Dianon requests from Yale New Haven Hospital is unique and there is no substitute for the requested documents.

WHEREFORE, Dianon Systems, Inc. requests this Court to compel Yale New Haven Hospital to produce, at a minimum, documents reflecting the various antibody combinations that its flow cytometry laboratory uses to diagnose various leukemia and lymphoma conditions and one or more laboratory manuals during the period 1996 to the present outlining how its flow cytometry laboratory handles specimens from the time they are received by the laboratory through the issuance of a report as requested in Dianon's Document Schedule attached to the subpoena, categories #1, 3, and 5.

Respectfully submitted,

Bruce R. Parker, admitted pro hac vice
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland  21201
(410) 244-7400

Robert Salcido, admitted pro hac vice
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036

Attorneys for Dianon Systems, Inc.

-10-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of August, 2006, a copy of the

foregoing Motion to Compel Yale New Haven Hospital to Produce Documents Pursuant

to Subpoena was sent via, electronic mail to Bonnie Patten, bpatten@wiggin.com,

Richard M. Molot,  Richard.Molot2@usdoj.gov,  and Bryan T. Carmody,

bcarmody@mayalaw.com, and mailed, postage prepaid to:

Bonnie Patten, Esq.
Penny Seaman, Esq.
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT 06508-1832

Richard M. Molot, AUSA
Patriicia Davis, AUSA
U.S. Department of Justice
Connecticut Financial Center
157 Church Street
P.O. Box 1824
New Haven CT 06510

Bryan T. Carmody
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Bruce R. Parker

BA2DOCS1\#297707

1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

## UNITED STATES DISTRICT COURT

### —— DISTRICT OF CONNECTICUT ——

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA<br><br>v.<br><br>DIANON SYSTEMS, INC. | **SUBPOENA IN A CIVIL CASE**<br><br>CASE NUMBER[1] 3:02-CV-1573 (MRK) |

TO:     **Custodian of Records**
        **Flow Cytometry Laboratory**
        **Yale New Haven Hospital**
        **20 York Street**
        **New Haven, CT 06504**

[ ]   **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

[ ]   **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[X]   **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

**See Document Schedule attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| **One Landmark Square, Suite 1800, Stamford, CT 06901***<br>**(*in lieu of production in person, documents may be mailed to the same)** | **July 26, 2006, 10 a.m.** |

[ ]   **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>(Attorney for Defendant) | DATE<br><br>**June 21, 2006** |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**Dean R. Singewald II, Esq.**
**Epstein Becker & Green P.C.**
**One Landmark Square, Suite 1800**
**Stamford, CT 06901**
**Tel. 203-348-3737**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

SERVED

| (SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| (SERVED ON (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
           Date

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that,subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

ST:45387v1

## DOCUMENT SCHEDULE

Dianon Systems, Inc. requests the custodian of records for the Immunology and Flow Cytometry Laboratories, Yale New Haven Hospital ("Flow Cytometry Laboratory") produce for inspection and/or copying the following documents regarding the use of flow cytometry immunophenotyping for hematopoietic diseases and malignancies ("flow cytometry testing") during the period 1996 to the present:

1.    All protocols, procedures, or manuals that relate to how the Flow Cytometry Laboratory handles and processes bone marrow, peripheral blood, and tissue specimens. Please include those policies, procedures, and protocols for processing a specimen from its receipt at the Flow Cytometry Laboratory through the testing of the specimen in the flow cytometer.

2.    All templates, forms, worksheets or other standard procedures for: (a) selecting antibodies used in bone marrow, peripheral blood, and tissue sample flow cytometry testing; (b) requesting flow cytometry testing (requisition forms); (c) analyzing flow cytometry test results; and (d) reporting results.

3.    All policies, procedures, manuals, or forms reflecting the antibody or reagent combinations used in flow cytometry testing of bone marrow, peripheral blood, and tissue samples.

4.    All policies, procedures, manuals or forms used to train or educate hematopathology residents, fellows or laboratory technicians in the: (a) selection of antibodies used in flow cytometry testing; (b) antibody or reagent combinations used in each test tube for flow cytometry testing; and (c) reporting of results from flow cytometry testing.

5.   Any and all list(s) antibody or reagent test tube combinations the Flow Cytometry Laboratory uses in the diagnosis of: (a) lymphoma; (b) leukemia; (c) chronic lymphocytic leukemia (CLL); and (d) myeloid disease processes using flow cytometry testing during the years 2002, 2003, 2004, 2005 and 2006.

THE ABOVE DOCUMENTS REQUESTED DO NOT INCLUDE PATIENT RECORDS OR OTHER HIPAA-PROTECTED HEALTH INFORMATION OF A PATIENT.

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br>**Ex rel. DR. JAMES J. TIESINGA** | : | **CASE NO. 3:02-CV-1573 (MRK)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **DIANON SYSTEMS, INC.** | : | |
| **Defendant.** | : | **JULY 10, 2006** |

## NON-PARTY YALE-NEW HAVEN HOSPITAL'S
## OBJECTIONS TO SUBPOENA

Pursuant to Rule 45, Fed.R.Civ.P., non-party, Yale-New Haven Hospital, by its undersigned attorney, objects to defendant's, Dianon Systems, Inc.'s, Subpoena, dated June 21, 2006, as follows:

### PRODUCTION OF DOCUMENTS

Dianon Systems, Inc. requests the custodian of records for the Flow Cytometry Laboratory, Yale-New Haven Hospital ("Flow Cytometry Laboratory") produce for inspection and/or copying the following documents regarding the use of flow cytometry immunophenotyping for hematopoietic diseases and malignancies ("flow cytometry testing") during the period 1996, to the present:

1.     All protocols, procedures or manuals that relate to how the Flow Cytometry Laboratory handles and processes bone marrow, peripheral blood and tissue specimens. Please include those policies, procedures and protocols for processing a specimen from its receipt at the Flow Cytometry Laboratory through the testing of the specimen in the flow cytometer.

2.      All templates, forms, worksheets or other standard procedures for: (a) selecting antibodies used in bone marrow, peripheral blood and tissue sample flow cytometry testing; (b) requesting flow cytometry testing (requisition forms); (c) analyzing flow cytometry test results; and (d) reporting results.

3.      All policies, procedures, manuals or forms reflecting the antibody or reagent combinations used in flow cytometry testing of bone marrow, peripheral blood and tissue samples.

4.      All policies, procedures, manuals or forms used to train or educate hematopathology residents, fellows or laboratory technicians in the (a) selection of antibodies used in flow cytometry testing; (b) antibody or reagent combinations used in each test tube for flow cytometry testing; and (c) reporting of results form flow cytometry testing.

5.      Any and all list(s) antibody or reagent test tube combinations the Flow Cytometry Laboratory uses in the diagnosis of (a) lymphoma; (b) leukemia; (c) chronic lymphocytic leukemia (CLL); and (d) myeloid disease processes using flow cytometry testing during the years 2002, 2003, 2004, 2005 and 2006.

THE ABOVE DOCUMENTS REQUESTED DO NOT INLCUDE PATIENT RECORDS OR OTHER HIPAA-PROTECTED HEALTH INFORMATION OF A PATIENT.

**OBJECTION:**    (Nos. 1-5) Non-party, Yale-New Haven Hospital, objects to Dianon Systems, Inc.'s Subpoena as the disclosure of the requested documents will subject Yale-New Haven Hospital to undue burden. The ten years worth of documents that defendant seeks is not relevant to the Government's claim against the defendant and the request is not reasonably calculated to lead to the discovery of admissible evidence. Further, the breadth of the documents requested is overwhelming. By way of example, Request No. 4, seeking to compel Yale-New Haven Hospital to produce and copy all policies, procedures, manuals or forms used to train or educate hematopathology residents, fellows and laboratory technicians for the past ten years with respect to flow

2

cytometry testing would be a tremendous and overburdening undertaking.

Dianon's request is nothing more than a back-door attempt to obtain written expert opinions from an unretained expert, who has no personal knowledge of the facts pertinent to the parties' dispute in this lawsuit and who does not care to become involved in this litigation, in direct contradiction to Rule 45, Fed.R.Civ.P.  To the extent Dianon seeks authoritative medical evidence regarding hematopathology and flow cytometry tests, the rules require it to retain the services of a willing expert, not to seek to force any academic medical institution to unwillingly serve as an uncompensated expert.

NON-PARTY,
YALE-NEW HAVEN HOSPITAL

By: _____
  Penny Q. Seaman ct05813
  Bonnie L. Patten ct12931
  Wiggin and Dana LLP
  P.O. Box 1832
  New Haven, CT  06508-1832
  (203) 498-4400
  Fax: (203) 782-2889
  pseaman@wiggin.com
  bpatten@wiggin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served this 10th day of July 2006,

via facsimile and first class mail, postage prepaid, to the following counsel of record:

Patricia R. Davis, Esq.
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
Fax: (202) 305-7868

Ryan Fayhee, Esq.
U.S. Department of Justice
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
Fax: (202) 305-7797

John B. Hughes, Esq.
Richard M. Molot, Esq.
U.S. Attorney's Office
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06510
Fax: (203) 773-5373

Bryan T. Carmody, Esq.
266 Post Road East
Westport, CT 06880
Fax: (203) 221-3199

Dean R. Singewald II, Esq.
Mary A. Gambardella, Esq.
Epstein, Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2165
Fax: (203) 324-9291

Kerry M. Parker, Esq.
Michael D. Thompson, Esq.
Epstein, Becker & Green, P.C.
Two Gateway Center, 12th Floor
Newark, NJ 07201-5003
Fax: (973) 642-0099

4

Robert Salcido, Esq.
Akin, Gump, Strauss, Hauer & Feld
1333 New Hampshire Avenue, N.W., Suite 400
Washington, DC  20036
Fax: (202) 887-4288

Bruce R. Parker, Esq.
Venable LLP
2 Hopkins Plaza
Baltimore, MD  21201
Fax: (410) 244-7742


Bonnie L. Patten

\14364\2084\603176.1

5

**3**

**Piermattei, William F.**

---

**From:** Patten, Bonnie L. [BPatten@wiggin.com]

**Sent:** Monday, July 31, 2006 4:18 PM

**To:** Piermattei, William F.; Seaman, Penny Q.

**Subject:** RE: Dianon Systems Inc Motion to Compel

Hi Bill: to be quite honest, I cannot remember exactly what the document request was narrowed to but will take your word that it is as reflected below. You are correct, however, that YNHH will not produce the documents itemized below unless ordered to do so by the court. B.

Bonnie Patten
Wiggin and Dana
203-498-4367

-----Original Message-----
**From:** Piermattei, William F. [mailto:WFPiermattei@Venable.com]
**Sent:** Monday, July 31, 2006 3:49 PM
**To:** Patten, Bonnie L.; Seaman, Penny Q.
**Subject:** Dianon Systems Inc Motion to Compel

I have not received a response from you regarding the information outlined below. We plan to file our Motion to Compel production of documents pursuant to our June 21, 2006 subpoena in the near future, but no later than the end of this week. Should you wish to discuss this matter, I am available at the number below. Thank you, Bill

William Piermattei
Venable, LLP
2 Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201
410-244-7473

---

PRIVILEGED AND CONFIDENTIAL COMMUNICATION

The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately.

-----Original Message-----
**From:** Piermattei, William F.
**Sent:** Thursday, July 27, 2006 8:22 AM
**To:** 'Patten, Bonnie L.'; 'pseaman@wiggin.com'
**Cc:** 'Salcido, Robert'
**Subject:** July 31 teleconference cancelled

The July 31st teleconference concerning Dianon's subpoena for Yale New Haven Hospital records has been cancelled. Judge Kravitz has recused himself from the issue and it will be referred to a Magistrate Judge.

For purposes of our Motion to Compel, I want to make sure we do not misstate your position regarding our attempts to limit the document request. As I related to Ms. Patten, we are willing to accept the following Yale New Haven Hospital flow cytometry records and discharge your obligations under the subpoena:

(1) documents that reflect the different antibody combinations or panels used at the flow cytometry laboratory to detect diseases of the blood and lymph system (such as leukemia, lymphoma and myeloid conditions) during the period 1996 to the present; and

(2) one or more flow cytometry procedure manual(s) from the period 1996 to 2004 detailing how the flow lab handles blood, bone marrow or tissue specimens from receipt of the specimen to the issuance of a report. If the procedures for handling the specimen were generally the same during this period, one manual will suffice. If significant changes were made to the manual during this period, we would want documentation of those changes.

I related the above, narrowed request to Ms. Patten after receiving your objections to the subpoena. Ms. Patten declined to accept the offer to limit the document production, noting that Yale New Haven Hospital will not produce any documents unless ordered by the Court. Should you disagree with the above recitation, please let me know.

Sincerely

William Piermattei
Venable, LLP
2 Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201
410-244-7473

PRIVILEGED AND CONFIDENTIAL COMMUNICATION

The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately.

*****************************************************************************
U.S. Treasury Circular 230 Notice: Any tax advice contained in this communication (including
*****************************************************************************
*****************************************************************************
This electronic mail transmission may contain confidential or privileged information. If you
*****************************************************************************

*****************************************************************
This transmittal is intended for a particular addressee(s). It may constitute a confidential attorney-client communication. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, copying or distribution or dissemination is strictly prohibited. If you suspect that you have received this transmittal in error, please notify Wiggin and Dana immediately at 203-498-4400, or by email, reply to the sender and delete the transmittal and any attachments.
Neither this message nor the documents attached to this message are encrypted.
*****************************************************************

8/1/2006