IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Dr. James J. Tiesinga, | ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 3:02CV1573(MRK) |
| DIANON SYSTEMS, INC., | ) ) | August 25, 2006 |
| Defendant | ) ) ) | |

**DEFENDANT'S MOTION AND SUPPORTING MEMORANDUM TO UNSEAL
DOCUMENTS FILED UNDER SEAL**

Unless the sealed material reveals information that injures third parties or jeopardizes confidential, ongoing governmental investigations, the Court should lift the seal on the Court's file.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On September 5, 2002, relator James J. Tiesinga filed his *qui tam* action under seal. *See* Compl. The relator alleges that defendant Dianon Systems, Inc. ("Dianon"), violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, by billing Medicare for a medically unnecessary number of antibodies in its flow cytometry panel. *See* Compl. ¶¶ 13, 73-78.

On November 5, 2004, the United States filed its Notice of Election to Intervene. In its Notice, the United States requested that all materials filed under seal other than the Complaint and Notice remain under seal.[1]

On December 1, 2004, the Court ordered the government and relator to identify specifically which documents should remain sealed and to provide a basis for the maintenance of

---

[1] *See* The United States' Redacted Statement Regarding Unsealing of the Court File at 1-2 (Dkt. 65).

the seal. On December 15, 2004, the United States filed a Statement with the Court under seal, arguing that four memoranda in support of the United States' motions for extensions of the seal period (Document Nos. 11, 14, 18, and 23) should remain sealed.

On December 21, 2004, the Court granted the United States' request regarding the four memoranda. Specifically, the Court ruled that "[f]or the moment" it was satisfied that the "pre-intervention pleadings contain information that, on balance, should remain under seal at this time so as to protect and preserve the confidentiality of the Government's investigations." Order at 2 (citing *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 902 F. Supp. 189, 191 (E.D. Mo. 1995)). The Court further ruled, however, that its Order was without prejudice to the right of any person to seek the unsealing of these documents. *Id.*[2]

For the reasons stated below, the Court should lift the seal on the remaining five documents unless it is clearly demonstrated that public access to the Court's file will in fact injure third parties or prejudice the government in confidential, ongoing investigations. This is because, first, the FCA provides no authority under which court records can be permanently sealed without the defendant learning of their content. Second, the vast majority of courts to address the issue have ruled that *qui tam* records should be unsealed once the government's intervention decision has been made. Third, basic notions of due process and open public access to court records compel the conclusion that Dianon should gain access to the court records. Fourth, Dianon's interest in access to the documents to defend its case overrides the government's interest in secrecy.

---

[2] Subsequently, the United States identified one additional document, docket number 30 (the ex parte reply memorandum) that it believes should be kept sealed. *See* Supplemental Statement at 2-3 (Dkt 67).

2

## II.     THE COURT SHOULD PERMIT PUBLIC ACCESS TO THE COURT FILE

The FCA's language, legislative history, and case law support unsealing the entire file in this case. Further, Dianon's and the public's interests in disclosure outweigh any governmental interest in secrecy here because the public's interest in government programs is especially high and Dianon needs access to these records to defend against the United States' claims.

### A.     The FCA Does Not Authorize the Maintenance of the Seal in this Action

As an initial matter, as multiple courts have held, the plain language of the FCA does not authorize the United States to maintain court records permanently under seal. Section 3730(b)(2) provides that the *qui tam* complaint is to be filed under seal and "remain under seal for at least 60 days." *Id.* Under subsection (b)(3), the government "for good cause shown" shall move the court for extensions of the sixty day period "during which time the complaint remains under seal." *Id.* The complaint is then "unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure." *Id.*

Given this statutory scheme, courts generally have held that Congress intended the seal to be temporary and that there is no statutory basis to maintain the seal over all court records. *See United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp.2d 1228, 1231 (N.D. Ala. 2000) ("The court finds no authority under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, or elsewhere to hold information relating to this [*qui tam* case] under seal"); *United States v. CACI Intern., Inc.*, 885 F. Supp. 80, 81 (S.D.N.Y. 1995) ("[T]he statute makes no mention of the government's right to keep *in camera* information under seal indefinitely.... While § 3730(b)(3) only refers to the complaint, this section illustrates that the government may be limited in the amount of time it may keep material under seal"); *cf. United States ex rel. McCoy v. California Medical Review*, 715 F. Supp. 967, 968-69 (N.D. Cal. 1989) ("Section 3730(b)(3) ... provides no

3

authority ... for extending the seal once the Government has intervened.... Relators are correct that neither this section nor any other in the FCA provides authority for retaining the civil action under seal once the Government has elected to intervene").

Moreover, like the statutory language, the legislative history confirms that the seal on the pre-intervention court records was not intended to be permanent. Congress created the seal requirement to address the Department of Justice's concern that the public filing of a *qui tam* complaint "could potentially 'tip off' investigation targets when the criminal inquiry is at a sensitive stage." *See* S. Rep. No. 99-345, at 24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289. Hence, the purpose of "[k]eeping the *qui tam* complaint under seal for the initial 60-day time period" was "intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action." *Id.*

The government's interpretation subverts the purpose underlying the seal provision by seeking to extend it in a fashion not contemplated by Congress. Here the purpose animating the sealing provision has been effectuated. The government conducted its investigation and the seal has been lifted on the complaint. Hence there cannot be any concern that the defendant is being prematurely "tipped off" of the allegations made against it. *See United States ex rel. Costa v. Baker & Taylor Inc.*, 955 F. Supp. 1188, 1190 (N.D. Cal. 1997) ("The legislative history of the False Claims Amendments Act makes abundantly clear that Congress did not intend that the government should be allowed to prolong the period in which the file is sealed indefinitely").

### B. It is Unlikely that the Government can Demonstrate an Interest in Secrecy that Outweighs a Presumption of Disclosure

Because the defendant does not know the content of the sealed material, it is impossible for it to assert precisely why the government has not successfully rebutted the strong presumption in favor of public access to the Court's file. However, as is noted below, multiple courts, in the context of FCA litigation, have found that the government's extension requests, which are generally identical in form, do nothing more than disclose routine investigatory processes and hence should be disclosed to the defendant and the public. Moreover, defendant's interest in having the ability to defend its case outweighs any governmental interest in secrecy.

First, courts, as a general matter, examine whether the seal should be retained on any document based upon whether the party urging secrecy shows a significant interest that outweighs the presumption in favor of disclosure. This is especially true in FCA *qui tam* actions which necessarily implicate the citizen's desire to maintain a watchful eye over the workings of public agencies. *See Under Seal v. Under Seal*, No. 94-1171, 1994 U.S. App. LEXIS 16117 at *6 (4th Cir. June 27, 1994) ("Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater") (citations omitted); *United States ex rel. Erickson v. Univ. of Washington*, 339 F. Supp.2d 1124, 1127 (W.D. Wash. 2004) (public interest in FCA action outweighs governmental interest in secrecy); *Baker & Taylor*, 955 F.Supp. at 1190 ("defendants are accused of defrauding federal, state and local agencies across the country.... The proceedings of this case, therefore, fall well within the bounds of that which citizens may wish to observe"). Because of these interests, the burden of maintaining the cloak of secrecy over court records is on the party opposing disclosure. *See Under Seal*, 1994 U.S. App. LEXIS 16117 at *12 (the burden is on the party contesting the unsealing of the court records "to show why its interest should overcome the

5

public's interest in its right to access judicial records"); *United States ex rel. Doe v. X Corp.*, 862 F. Supp. 1502, 1510 (E.D. Va. 1994) ("Although special circumstances may justify preventing public exposure to [court] records, the party seeking to retain the seal must show 'some significant interest that outweighs the presumption' of public access") (citations omitted).[3]

Second, in conducting this weighing of interests, courts have ruled, in the vast majority of cases, that the government has not discharged its burden to show that its interest in suppression outweighs the public's right to access and the defendant's right to information helpful to its defense. In drawing this line between what information should be sealed and what information should be disclosed, courts distinguish between information that would harm third parties or jeopardize an ongoing investigation (which should not be disclosed) and information that would reveal routine investigative procedures (which should be publicly disclosed):

> It is appropriate to decline to unseal filings where disclosure of confidential investigative techniques, of information which could jeopardize an ongoing investigation, or of matters which could injure non-parties is requested…

---

[3] The government cites to *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83 (2d Cir. 2004); *In re Boston Herald, Inc.*, 321 F.3d 174 (1st Cir. 2003); *United States v. Corbitt*, 879 F.2d 224 (7th Cir. 1989), for the proposition that case law "does not support a presumption in favor of disclosure when the disputed documents have been properly submitted to the court under seal." Gov't Statement at 3. The cases do not address whether the initial filing under seal was proper but whether there is sufficient interest to grant the public access to court records and each case expressly endorses the strong presumption in favor of disclosure that may only be overcome by a significant showing in favor of secrecy. *See Hartford Courant Co*, 380 F.3d at 96 ("We therefore hold that the docket sheets enjoy a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect them" and the presumption may only be overridden upon a "demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest") (citation and internal quotation omitted); *In re Boston Herald, Inc.*, 321 F.3d at 189 ("In addition to any constitutional right, there is also a presumption of public access to 'judicial records' under the common law") (citation omitted); *Corbitt*, 879 F.2d at 228 (noting that the "Supreme Court recognized a 'common law right to access' to judicial records" that "establishes, as a general matter, that court files should be open to the public for inspection and copying" but that presumption can be overridden by showing that access to records would be used for "improper purposes"). While the FCA authorizes certain documents to be filed under seal, there is no provision in the statute that mandates that those records be permanently sealed – including extending the seal to time periods when the purposes for filing the document under seal cease to exist and the public's interest in access outweighs the government's interest in secrecy.

> However, it is appropriate to unseal a document that reveals only routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business ... [and] contains no information about specific techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be utilized or the like.

*United Sates. ex rel. Health Outcome Technologies v. Hallmark Health System, Inc.*, 349 F. Supp. 2d 170, 173 (D. Mass. 2004) (internal quotations and citations omitted).

In distinguishing between the information regarding routine investigative processes and information that would jeopardize ongoing investigations, courts have routinely rejected the government's usual contention that the information it provided to the Court should be suppressed from disclosure because it would reveal sensitive investigative details. *See Hallmark Health System,* 349 F. Supp. 2d at 174 (unsealing entire court file except a Transfer Order that identified defendants that were not parties to that action and may contain information under seal in other courts); *Univ. of Washington*, 339 F. Supp.2d at 1126 (unsealing entire court file); *United States ex rel. Goodstein v. McLaren Regional Medical Center*, No. 97-CV-72992-DT, 2001 U.S. Dist. LEXIS 2918 at *8 (E.D. Mich. Jan. 24, 2001) (after reviewing the documents that the government asserted should be kept under seal because they disclosed the government's investigative strategy, the court lifted the seal on some of those documents because "the documents do not contain confidential investigative techniques, information that could jeopardize an ongoing investigation, or matter which could injure non-parties"); *see also Tenet Healthcare Corp.*, 105 F. Supp.2d at 1231 (unsealing the entire court record); *United States ex rel. Johnson-Pochardt vs. Rapid City Regional Hospital*, No. 01-5019-KES, 2003 U.S. Dist. LEXIS 4758, *8-*9 (D.S.D. Jan. 21, 2003) (unsealing entire court record and noting that continuing "to allow these documents to remain under seal ... does not promote the interest of

the public, is not in accord with the statutory language, and does not serve any justifiable purpose"); *CACI Intern.*, 885 F. Supp. at 83 (unsealing the entire court record because none of the documents disclose any confidential investigative techniques or information which could jeopardize an ongoing investigation or matters which could injure non-parties); *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21 (S.D.N.Y. 1994) (unsealing the entire court record because sealed document described routine investigative procedures that might be of some value to defendants).[4]

Third, the defendant's interest in obtaining the documents to prepare its defense overrides the government's interest in suppression:

*First*, a review of all the records filed in the case may reveal information that is important to Dianon's ability to defend this case. For example, the documents may reflect representations the government made to the Court regarding the defendant's conduct and the government's theory of the case that the defendant should know and have the opportunity to rebut.[5]

*Second*, the defendant needs access to the sealed documents to determine whether the relator can establish that the court has jurisdiction over his claims. If the allegations underlying

---

[4] Because the vast majority of published case law is contrary to the government's position, the government creates a false distinction between cases in which the government has declined to intervene (in which case the court presumably lifts the seal) and cases in which the government intervenes (in which case the court presumably refuses to lift the seal). *See* Gov't Statement at 7. First, this is a distinction without a difference. If the purpose of the seal provision is as the government claims – to promote a full and open dialogue between the government and the court regarding the progress of the government's investigation – then that purpose would be frustrated in any case in which the Court lifts the seal on the government's filings – whether it ultimately intervenes or not – because at the time in which the government is making its disclosures to the court it has not yet determined whether it will intervene or not. Second, not surprisingly, the case law does not support the government's distinction. Besides the three unpublished decisions the government cites, several published decisions reflect instances in which the government intervened and nonetheless the court refused to permanently seal the government's briefs. *See Hallmark Health System, Inc*, 349 F. Supp. 2d 170; *McLaren Regional Medical Center*, 2001 U.S. Dist. LEXIS 2918; *California Medical Review*, 715 F. Supp. 967.

[5] The Supreme Court has stated that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted). Moreover, this "right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18 (1938).

the lawsuit had been publicly disclosed, the relator may only participate in the action if he qualifies as an "original source," that is, has "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government . . . ." 31 U.S.C. § 3730(e)(4).

In this circuit a relator cannot qualify as an original source unless he directly or indirectly was a source to the entity that publicly disclosed the allegations. *See United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 18 (2d Cir. 1990); *see also United States v. New York Med. Coll.*, 252 F.3d 118, 120 (2d Cir. 2001) (citing *Long Island Lighting* with approval). Here, the government's filings may reveal what information the relator provided to the government and what additional information the government needed to investigate. These facts would potentially reveal whether the relator can qualify as an original source.

Finally, the government's contention that its interest in suppression overrides the presumption in favor of disclosure lacks merit. Specifically, the government contends that if disclosure were permitted, its dialogue with the Court would be chilled and its "work product" would be inappropriately disclosed. See Gov't Statement at 5-7. First, as an initial matter, if the government had an expectation of privacy regarding its dialogue with the Court, that expectation would be irrational in light of the fact that several courts have ordered the disclosure of precisely this information and in light of the general presumption in favor of full disclosure. Second, the government's contention regarding work product is meritless. The defendant is not asking for the government lawyer's private work file but for its representations to the Court regarding the defendant's conduct. Under these circumstances, courts have found the work product doctrine inapplicable because no discovery request is at issue. *See Hallmark Health System*, 349 F. Supp. 2d at 174.

9

## III. CONCLUSION

Here, the statutory seal purpose has been satisfied and the permanent retention of the seal could hamper Dianon's ability to defend this case. Accordingly, unless the sealed material contains information that could injure third parties or jeopardize ongoing governmental investigations, the Court should unseal the remaining sealed documents.

Respectfully submitted,

By: _____
Robert Salcido
Fed Bar No. 447951
(admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4095
E-mail: rsalcido@akingump.com

Thomas Kossl
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615
Telephone: (973) 492-1509

Bruce R. Parker
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244.7400
E-mail: BRParker@Venable.com

Attorneys for Defendant Dianon Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent via e-mail to Richard Molot, Esq. (Richard.Molot2@usdoj.gov) and Patricia R. Davis (pat.davis@usdoj.gov) and via United States first class mail, postage prepaid, this 25th day of August, 2006 to:

>Bryan T. Carmody, Esq.
>Maya & Associates, P.C.
>266 Post Road East
>Westport, CT 06880

_____
Penney Hughes