IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Dr. James J. Tiesinga,<br><br>       Plaintiffs,<br>v.<br><br>DIANON SYSTEMS, INC.,<br><br>       Defendant. | )<br>)<br>) No. 3:02CV1573(MRK)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF DEPOSITION

TO: United States of America

  Please take notice that, pursuant to Federal Rules of Civil Procedure Rule 30(b)(6), defendant Dianon Systems, Inc., will take the deposition upon oral examination of designee(s) regarding the subject matters attached as Exhibit A to this deposition notice. The deposition will begin at 9:00 a.m. on June 12, 2006 at the office of Venable LLP 575 7th Street, NW, Washington, DC 20004 or at another mutually agreed upon time and place. The oral examination will continue from day to day, until completed and will be video taped.

              _/s/_
              Bruce R. Parker, admitted pro hac vice
              Venable LLP
              1800 Mercantile Bank & Trust Bldg.
              2 Hopkins Plaza
              Baltimore, Maryland 21201
              (410) 244-7400

              _/s/_
              Robert Salcido, admitted pro hac vice
              Akin Gump Strauss Hauer & Feld, LLP
              1333 New Hampshire Avenue, NW
              Washington, DC 20036

Attorneys for Dianon Systems, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of May, 2006, a copy of the foregoing Notice of Deposition was sent via, first class, postage prepaid and e-mail to:

Richard Molot, Esq.
U.S. Attorney General's Office
District of Connecticut
175 Church Street
New Haven, CT 06510

Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

_____
Robert Salcido

## EXHIBIT A

DEFINITION

The following definition and instruction shall apply:

1. The word "communications" refers to every manner or means of disclosure or transfer or exchange of information whether orally or by document and whether face to face, by telephone, mail, e-mail, telexes, meetings, discussions, releases, personal delivery or any other means of imparting or exchanging information.

MATTERS TO BE EXAMINED

1. Medicare policies and decisions concerning flow cytometry:

    a) the number of times Medicare carriers reimbursed antibody panels of eighteen or more antibodies under CPT code 88180 from January 1, 1996 through January 1, 2004.

    b) Medicare consideration of a national policy, such as a National Coverage Determination, to limit the number of antibodies billed per test under CPT 88180 for leukemia and lymphoma testing from January 1, 1996 to the present.

    c) Medicare review, oversight, approval, or communications with Medicare carriers from January 1, 1996 to the present regarding Local Medical Review Policies (LMRPs) and Local Coverage Determinations (LCDs) for CPT 88180 including but not limited to:

        i. Consideration of limiting the number of antibodies per test deemed medically necessary for leukemia and lymphoma testing;

        ii. determinations of medical necessity; and

        iii. determination of ICD9 codes to be included in LMRPs and LCDs.

    d) Appeals of health care providers in regions or states where the number of antibodies or markers is capped by an LMRP or LCD from January 1, 1996 to the present regarding:

        i. limitations on the number of antibodies that can be billed or reimbursed per test under CPT 88180 for leukemia and lymphoma testing;

        ii. determinations that the number of antibodies used under CPT 88180 for any individual leukemia or lymphoma test were not medically necessary;

      iii.   determinations that the ICD9 codes used in any LMRP or LCD did not reflect all medically appropriate indications for flow cytometry testing for leukemia and lymphoma.

   e) Medicare communications with health care providers, including communications with health care providers from the National Institute of Health and Veterans Administration, regarding determinations of medical necessity, medically appropriate number of antibodies per test, and definitions of medical necessity included in local and regional LMRPs and LCDs for CPT Code 88180.

   f) Medicare communications related to the creation of CPT Codes 88184, 88185, 88187, 88188, and 88189.

   g) Medicare communications related to payments under CPT Codes 88187, 88188, and 88189.

2. Veterans Administration flow cytometry medical practice including:

   i.   the selection and use of outside or contractor healthcare professionals to provide flow cytometry analysis for leukemia and lymphoma;

   ii.   Veterans Administration hematopathologists employed by the Veterans Administration and their location of practice from January 1, 1996 through January 1, 2004;

   iii.   flow cytometry antibody panels used by Veterans Administration hematopathologists from January 1, 1996 through January 1, 2004 for the diagnosis and staging of hematopoietic disease;

   iv.   any guidance, discussion, publications, workshops, or other documents reflecting Veterans Administration assessment of medically appropriate antibodies to use in flow cytometry testing for leukemia and lymphoma; and

   v.   Veterans Administration reimbursement policies for flow cytometry antibody panels used in leukemia and lymphoma testing.

3. National Institute of Health (NIH) representative who can testify as to

   a) Antibody panel design and implementation for flow cytometry testing for leukemia and lymphoma or the diagnosis and staging of hematopoietic disease from January 1, 1996 through January 1, 2004;

4

b) The use of antibodies for research purposes and diagnostic purposes at NIH for flow cytometry testing used in the diagnosis and staging of hematopoietic disease from January 1, 1996 through January 1, 2004;

c) Determinations by the NIH for medically appropriate antibodies used in flow cytometry testing for leukemia and lymphoma and the reasoning that led to those determinations;

d) Any advice, discussions or communications made to Medicare regarding the appropriate number of antibodies to be used in a flow cytometry antibody panel for leukemia and lymphoma testing;

e) Any publications, guidance, or advisory opinions provided to the medical community as to the appropriate number of antibodies or utility of antibodies to be used in a flow cytometry antibody panel for leukemia and lymphoma testing and the reasons for providing such information;

f) Internal NIH policies, directives, or guidance as to medically appropriate indications for flow cytometry antibody panel testing for leukemia and lymphoma, ICD9 codes that would support medically appropriate application of flow cytometry antibody panel testing for leukemia and lymphoma, and antibody panel design and usage for leukemia and lymphoma testing from January 1, 1996 to the present.

4. Connecticut Medicare carrier policies regarding CPT 88180:

a) Creation and publication of Connecticut's LMRP or LCD for flow cytometry testing for leukemia and lymphoma from January 1, 1996 to the present;

b) Health care providers consulted in creating the Connecticut LMRPs and LCDs for the period January 1, 1996 to the present regarding the development of the ICD9 codes that would be used to indicate medical necessity;

c) Consideration of the number of antibodies that would be medically appropriate or determined medically necessary, medical conditions that would indicate the need for a flow cytometry antibody panel test for leukemia and lymphoma, and application of medical necessity standards in accepting or denying claims; and

d) All medical information and sources considered in creating and implementing LMRPs and/or LCDs for flow cytometry testing for leukemia and lymphoma from January 1, 1996 to the present.

5. The government's efforts to produce documents and information responsive to Dianon Systems' First Set of Interrogatories and Request for Production of Documents.