**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,            )
ex rel. Dr. James J. Tiesinga,       )
                                     )   No. 3:02CV1573(MRK)
                  Plaintiffs,        )
            v.                       )
                                     )
DIANON SYSTEMS, INC.,                )
                                     )
                  Defendant.         )

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT ON THE GOVERNMENT'S CLAIMS
THAT DEFENDANT'S MEDICAL SERVICES WERE NOT MEDICALLY NECESSARY
AND INDICATED**

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Page No.

I.   INTRODUCTION...................................................................................................1

II.  DIANON DID NOT VIOLATE THE FCA........................................................6

   A.  Dianon's Claims Are Not False As A Matter of Law Because Dianon
       Complied with the Rules and Regulations Governing the Medicare
       Program ....................................................................................................7

   B.  Dianon did not "Knowingly" submit any "False" Claim to the
       Government ..............................................................................................11

III. GOVERNMENT'S COMMON LAW CLAIMS SHOULD BE DISMISSED............16

IV.  CONCLUSION ..................................................................................................17

## Table of Authorities

Page No.

### Federal Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................7

*Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795 (D. Utah 1988) ..............................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................6

*Ficken v. Edward's, Inc.*, 183 A.2d 924 (Conn. Super. Ct. 1962) .................................17

*Gagne v. Vaccaro*, 255 Conn. 390 (2001) ......................................................................16

*Gartman v. Sec'y*, 633 F.Supp. 671 (E.D.N.Y. 1986)....................................................11

*Hagood v. Sonoma County Water Agency*, 81 F.3d 1465 (9th Cir. 1996),
    *cert. denied*, 519 U.S. 865, 136 L. Ed. 2d 116 S. Ct. 175 (1996) ...................2, 8, 12

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)................................................16

*In re Cardiac Devices* Qui Tam *Action*, 221 F.R.D. 318 (D. Conn. 2004) ...........3, 7, 12

*In Re Genesis Health Ventures, Inc.*, 272 B.R. 558 (Bkrtcy. D. Del. 2002), *aff'd*
    112 Fed. Appx. 140 (3d Cir. 2004) ......................................................................13

*Klementowski v. Sec'y*, 801 F.Supp. 1022 (W.D.N.Y. 1992)........................................11

*Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034 (N. D. Ill. 1998)......................9

*Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001) .....................................................7, 11, 12

*Moser Pilon Nelson Architects, LLC, v. HNTB Corp.*, No. 05 CV 422(MRK),
    2006 U.S. Dist. LEXIS 58334 (D. Conn. Aug. 8, 2006).........................................7

*State of N.Y. v. Sullivan*, 927 F.2d 57 (2d Cir. 1991) .....................................................11

*United States ex rel Anderson v. N. Telecom, Inc.*, 52 F.3d 810 (9th Cir. 1995),
    *cert. denied*, 516 U.S. 1043, 133 L. Ed. 2d 657, 116 S. Ct. 700 (1996) ..............4, 12

*United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir. 1999) ....................16

*United States ex rel. Bettis v. Odebrecht*, 297 F. Supp. 2d 272 (D.D.C. 2004);
  *aff'd*, 393 F.3d 1321 (D.C. Cir. 2004) ...................................................................................10

*United States ex rel. Bondy v. Consumer Health Found.*, 28 Fed. Appx. 178
  (4th Cir. Nov. 9, 2001) .......................................................................................................8

*United States ex rel. Burlbaw v. Orenduff*, 400 F. Supp. 2d 1276 (D.N.M. 2005)...........................9

*United States v. Data Translation, Inc.*, 984 F.2d 1256 (1st Cir. 1992) ...........................................13

*United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605 (8th Cir. 1992) .................................2, 8

*United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073-74
  (9th Cir. 1998) ..............................................................................................................1, 4, 8, 12

*United States v. Krizek*, 859 F. Supp. 5 (D.D.C. 1994), *aff'd in part, rev'd in part*,
  111 F.3d 934 (D.C. Cir. 1997)................................................................................................4, 13

*United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (7th Cir. 1999).......................2, 8

*United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402 (9th Cir.
  1995) ..................................................................................................................................1, 8

*United States ex rel. Local 234 v. Caputo Co.*, 321 F.3d 926 (9th Cir. 2003)................................1, 8

*United States ex rel. Milam v. Regents of the Univ. of Cal.*, 912 F. Supp. 868
  (D. Md. 1995) .....................................................................................................................8, 9

*United States v. Napco Intern., Inc.*, 835 F.Supp. 493 (D. Minn. 1993) ........................................13

*United States ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765 (8th Cir. 2002) ......................13

*United States ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619 (S.D. Ohio 2000)...........................8

*United States v. R.D. Prabhu*, No. 2:04-CV-0589-RCJ-LRL, 2006 U.S. Dist.    2, 9, 11,
  LEXIS 49690 (D. Nev. July 20, 2006)...........................................................................13, 15, 17

*United States ex rel. Rueter v. Sparks*, 939 F.Supp. 636 (C.D.Ill. 1996), *aff'd*,
  111 F.3d 133 (7th Cir. 1997) ..................................................................................................16

*United States v. Southland Mgmt. Corp.*, 326 F.3d 669 (5th Cir. 2003) ......................................1, 8

*United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822 (W.D. Mich.
  2000), *aff'd* 24 Fed. Appx. 491 (6th Cir. 2001) ....................................................................4, 13

*United States v. United Tech., Corp.*, 51 F. Supp. 2d 167 (D. Conn. 1999)...............................4, 15

*United States ex rel. Will v. A Plus Benefits, Inc.*, 139 Fed. Appx. 980 (10th Cir. 2005) ......................................................................................................................9

*Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir. 1992).....................................................................3, 12

## I.    INTRODUCTION

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, imposes liability on those who "knowingly" present "a false or fraudulent claim for payment . . . ." 31 U.S.C. § 3729(a)(1). The FCA provides that the United States may obtain treble damages and statutory penalties of up to $11,000 for each violation.[1] Here, there are potentially over 10,000 disputed claims. *See* Def.'s Local Rule 56(a)(1) Statement, ¶ 3 (hereinafter "Def.'s Rule 56(a)(1) Statement"). Hence, the government is potentially seeking more than $100,000,000 in statutory penalties alone.

To avoid summary judgment, the government must present sufficient evidence from which a reasonable jury could find the statutory elements of falsity and knowledge. Here, the government cannot meet this burden.

**Falsity:**    Claims are not "false" under the FCA unless they are furnished in violation of some controlling rule, regulation or standard. *See, e.g., United States ex rel. Local 234 v. Caputo Co.*, 321 F.3d 926, 933 (9th Cir. 2003); *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003) ("[W]hether a claim is valid depends on the contract, regulation, or statute that supposedly warrants it. It is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the False Claims Act") (citation omitted) (en banc); *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073-74 (9th Cir. 1998) (no falsity when defendants' acts conformed with Veteran Administration payment guidelines); *United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995) (whistleblower's FCA claims for payment based on work that satisfied contractual obligations "could not have been 'false or fraudulent' within the meaning of the [False Claims

---

[1] For violations committed on or after Sept. 29, 1999, the defendant is liable for treble damages plus penalties ranging from $5,500 to $11,000 per claim. *See* Civil Monetary Penalties Inflation Adjustment, 64 Fed. Reg. 47,099, 47,103–47,104 (Aug. 30, 1999).

Act]"); *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 608 (8th Cir. 1992) (a statement cannot be "false" or "fraudulent" under FCA when the statement is consistent with regulations governing program); *United States v. R.D. Prabhu*, No. 2:04-CV-0589-RCJ-LRL, 2006 U.S. Dist. LEXIS 49690 at *48-*49 (D. Nev. July 20, 2006) ("Claims are not 'false' under the FCA unless they are furnished in violation of some controlling rule, regulation or standard") (citations omitted).

Additionally, claims are not "false" under the FCA when reasonable persons can disagree regarding whether the service was properly billed to the government. *See United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (holding that "errors based simply on faulty calculations or flawed reasoning are not false under the FCA ... [a]nd imprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false under the FCA") (citations omitted); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996) ("How precise and how current the cost allocation needed to be in light of the [Water Supply Act's] imprecise and discretionary language was a disputed question within the [government]. Even viewing [plaintiff's] evidence in the most favorable light, that evidence shows only a disputed legal issue; that is not enough to support a reasonable inference that the allocation was *false* within the meaning of the False Claims Act"); *United States v. R.D. Prabhu, M.D.*, 2006 U.S. Dist. LEXIS 49690 at *50 (D. Nev. July 20, 2006) ("claims are not 'false' under the FCA when reasonable persons can disagree regarding whether the service was properly billed to the Government") (citations omitted).

Here, as to the government's claim that defendant Dianon Systems, Inc. ("Dianon"), submitted false claims for flow cytometry tests because they contained antibodies that were medically unnecessary, there is no dispute regarding these facts:

2

***First***, hematopathologists disagree regarding which of three standard approaches to undertake when performing flow cytometry. *See* Def.'s Rule 56(a)(1) Statement, ¶¶ 11-21.

***Second***, Dianon adopted one of the three approaches, known as the "comprehensive approach." *Id.*, ¶ 22.

***Third***, neither CMS nor defendant's Medicare carrier took a position regarding which of these approaches should be undertaken nor communicated its position to Dianon. *Id.*, ¶¶ 10, 23, 33-39.

Under these three undisputed facts, the case law, as discussed below, mandates a dismissal of the government's FCA allegations. This is because under uniform hornbook FCA case law when: (1) reasonable scientific or medical experts disagree regarding whether the claim was true or false and (2) the defendant has received no notice regarding the position the government has taken, if any, regarding the disputed issue and the government has not published any rule or standard governing the issue, courts routinely rule that the government cannot establish FCA "falsity" as a matter of law.

**Knowledge:**    As noted, the government cannot establish falsity as a matter of law, but, even if it could, it would still need to establish that, in addition, Dianon "knew" that its claims were false.

This circuit is clear that to establish FCA "knowledge" the government must show a "lie." *See In re Cardiac Devices* Qui Tam *Action*, 221 F.R.D. 318, 339 (D. Conn. 2004) ("The Second Circuit has adopted the Ninth Circuit's standard that the 'requisite intent is the knowing presentation of what is known to be false' as opposed to negligence or innocent mistake.... 'Known to be false' does not mean scientifically untrue, but 'a lie'.") (citations omitted); *see also Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992) ("The [FCA] is concerned with

3

ferreting out 'wrongdoing,' not scientific errors.  What is false as a matter of science is not, by

that very fact, wrong as a matter of morals"); *United States ex rel Anderson v. N. Telecom, Inc.*,

52 F.3d 810, 815-16 (9th Cir. 1995) (same).  Thus, a defendant does not "knowingly" submit a

"false" claim when his conduct is consistent with a reasonable interpretation of ambiguous

regulatory guidance.  *See, e.g., United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d

822, 831-32 (W.D. Mich. 2000) (where the regulatory terms were undefined and ambiguous and

the plaintiff's position "devolves to a dispute over the meaning of the terms governing the

delivery of the professional component of physicians services" there was no violation of the FCA

because a "legal dispute is ... insufficient" to establish FCA liability), *aff'd*, 24 Fed. Appx. 491

(6th Cir. 2001); *United States v. Krizek*, 859 F. Supp. 5, 9–10 (D.D.C. 1994) (ruling that because

the key term in the billing code was undefined and hence "ambiguous," the government could

not state an FCA cause of action), *aff'd in part, rev'd in part*, 111 F.3d 934 (D.C. Cir. 1997).

Further, a defendant does not "knowingly" submit "false" claims when his practice, at worst,

reflects honest mistakes or inadvertence.  *See, e.g., United States ex rel. Hochman v. Nackman*,

145 F.3d 1069, 1074 (9th Cir. 1998) (rejecting plantiff's FCA allegations because "plaintiffs at

best have shown only innocent mistake or mere negligence"); *United States v. United Tech.,*

*Corp.*, 51 F. Supp. 2d 167, 199 (D. Conn. 1999) (rejecting government's FCA action because

defendant's "actions were merely negligent, inadvertent or a mistake, and, therefore, not

actionable under the FCA").

There are several reasons that Dianon could not have "known" that its claims were false:

*First,* the controlling standard regarding the medical necessity of flow cytometry services

was contained in various Local Medical Review Policies ("LMRPs") that imposed no limitation

on the number of antibodies that could be billed to Medicare. *See* Def.'s Rule 56(a)(1) Statement, ¶¶ 33-34, 39.

*Second*, reasonable experts disagree regarding the correct number of antibodies that are needed to diagnose the patient's condition and what is the appropriate standard approach that physicians should use when testing the patient. *Id.*, ¶¶ 11-21. Indeed, even the government experts disagree among themselves. *Id.*, ¶¶ 13, 20.

*Third,* the government never informed Dianon which of the three standard approaches used to perform flow cytometry it should use. *Id.*, ¶¶ 23, 38.

*Fourth*, Dianon had multiple communications with the government regarding flow cytometry testing and even furnished the government with a detailed letter regarding 1275 denied claims and requested payment. *Id.*, ¶ 37. Yet, on the multiple occasions when the government reviewed Dianon's medical claims, it never questioned the number of antibodies Dianon billed to the Medicare program. *Id.*, ¶¶ 36-37.

*Fifth*, in the only Administrative Law decision raising the issue of whether a twenty-six number antibody panel was medically necessary, the Judge ruled that an antibody panel – utilizing the same amount of antibodies Dianon used – was medically necessary and conformed to the standard of care. *Id.*, ¶ 40.

*Sixth,* Dianon relied upon the medical expertise of its Board Certified hematopathologists who did not have any financial interest in the use of any particular panel. *Id.*, ¶¶ 24-32.

*Seventh,* the size of Dianon's panel was roughly equivalent to that other reference labs (and governmental entities) used and was recommended in the medical literature cited in Connecticut's LMRP. *Id.*, ¶¶ 17-18, 43-49.

**Eighth,** in 1997, when Dianon elected to bill for 18 antibodies, it continued to perform a panel that included 26 antibodies because its hematopathologists insisted that performing a comprehensive antibody panel was medically necessary and indicated to diagnose the patient's condition. *Id.*, ¶ 32.

In sum, the government cannot establish that Dianon knowingly lied in presenting claims for flow cytometry services because there was no express rule, regulation or policy that barred its submission of these claims; its services fell within the standard approaches used to perform flow cytometry; the government has never communicated any contrary position to Dianon; and Dianon's panel was consistent with panels used by the premier governmental entity performing the service as well as other reference laboratories. Similarly, for these same reasons, the Court should dismiss the government's unjust enrichment and payment by mistake of fact claims.

## II.     DIANON DID NOT VIOLATE THE FCA

Summary judgment is proper if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, Rule 56(c) mandates the entry of summary judgment unless the nonmoving party adduces evidence "sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The role of the court is to determine whether there is *sufficient* evidence so that a trier of fact could reasonably find in favor of the nonmoving party. The "mere existence of some alleged factual dispute between the parties will not defeat an

6

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Moser Pilon Nelson Architects, LLC, v. HNTB Corp.*, No. 05 CV 422(MRK), 2006 U.S. Dist. LEXIS 58334 at *4 (D. Conn. Aug. 8, 2006) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted") (*quoting Anderson*, 477 U.S. at 249-50).

To establish FCA liability, the government must demonstrate that "defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *See In Re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. 318, 343 (D. Conn. 2004) (citing *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001)). Because of the undisputed facts, the government cannot, as a matter of law, establish a *genuine* issue of material fact as to the third and fourth elements. Accordingly, the Court should grant Dianon's motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 247-48.

## A.    Dianon's Claims Are Not False As A Matter of Law Because Dianon Complied with the Rules and Regulations Governing the Medicare Program

The government contends that Dianon submitted false claims because it falsely certified on healthcare claim forms that its services were "medically indicated and necessary." Gov't Am. Compl. ¶¶ 18, 77. However, two bedrock principles of FCA law establish that under the undisputed facts in this case Dianon has submitted no false claims to the government as a matter of law.

*First*, courts have routinely ruled that the government cannot establish the falsity element under the FCA when the defendant's claims do not breach any statute, regulation or contractual

provision. *See, e.g., United States ex rel. Local 234 v. Caputo Co.*, 321 F.3d 926, 933 (9th Cir. 2003) (affirming district court dismissal of plaintiffs' action alleging that the defendants submitted false claims because they failed to pay prevailing wages under the Davis-Bacon Act because for "a false claim suit to succeed, the plaintiff must show that the claim was false, that is, contrary to an existing state of things" and here the plaintiffs have "not shown that the defendants failed to pay the prevailing wage"); *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003); *United States ex rel. Bondy v. Consumer Health Found.*, 28 Fed. Appx. 178, 182-83 (4th Cir. 2001) (the plaintiff could not establish falsity because the plaintiff did not demonstrate that "[CMS] disapproved of [the apportionment statistic] method [the defendant used on its cost report] or that the method chosen was not in accordance with [CMS'] established procedures"); *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073-74 (9th Cir. 1998); *United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995) (plaintiff's FCA claims for payment based on work that satisfied contractual obligations "could not have been 'false or fraudulent' within the meaning of the [False Claims Act]"); *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 608 (8th Cir. 1992); *United States ex rel. Milam v. Regents of the Univ. of Cal.*, 912 F. Supp. 868, 883 (D. Md. 1995) ("as a matter of law, . . . False Claims Act liability cannot be imposed on the basis of a literally true statement"). Here, the only rule, regulation or standard the government alleges Dianon has violated is Medicare and Tricare's medical necessity standard. *See* Gov't Am. Compl., ¶ 43.

**Second,** however, claims are not "false" if they fall within the range of reasonable medical and scientific judgment. *See, e.g., United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999); *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1477 (9th Cir. 1996); *United States ex rel. Roby v. Boeing Co.,* 100 F. Supp. 2d 619, 625 (S.D.

Ohio 2000) ("At a minimum, the FCA requires proof of an objective falsehood.... Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false"); *Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1047 (N. D. Ill. 1998) ("Courts have consistently declined to find that a contractor's exercise of scientific or professional judgment as to an applicable standard of care falls within the scope of the FCA"), *aff'd*, 183 F.3d 730 (7th Cir. 1999); *United States ex rel. Milam v. Regents of the Univ. of Cal.*, 912 F. Supp. 868, 886 (D. Md. 1995) ("At most, the Court is presented with a legitimate scientific dispute, not a fraud case. Disagreements over scientific methodology do not give rise to False Claims Act liability") (citation omitted); *Boisjoly v. Morton Thiokol, Inc.,* 706 F. Supp. 795, 810 (D. Utah 1988) ("[The certification] reflects an engineering judgment .... It is clearly not a statement of fact that can be said to be either true or false, and thus cannot form the basis of a FCA claim"); *see also United States ex rel. Will v. A Plus Benefits, Inc.*, 139 Fed. Appx. 980, 982 (10th Cir. 2005) ("At a minimum the FCA requires proof of an objective falsehood") (citations omitted); *United States v. R.D. Prabhu, M.D.*, 2006 U.S. Dist. LEXIS 49690 at *68-*69 (D. Nev. July 20, 2006) (defendant's "claims are not 'false' ... because his documentation practices would fall within the range of reasonable medical and scientific judgment regarding how to document the medical necessity of pulmonary rehabilitation services.... To establish falsity under the FCA, it is not sufficient to demonstrate that the person's practices could have or should have been better.... Accordingly, because, at a minimum, reasonable minds may differ regarding whether the documentation underlying [defendant's] claims satisfied some undefined standard, the Government has not establish[ed] falsity as a matter of law") (citations and footnote omitted); *United States ex rel. Burlbaw v. Orenduff,* 400 F. Supp. 2d 1276, 1288 (D.N.M. 2005) ("Where disputed legal issues arise from vague provisions or regulations, a contractor's decision

to take advantage of a position can not result in his filing a knowingly false claim") (internal

quotation and citations omitted); *United States ex rel. Bettis v. Odebrecht*, 297 F. Supp. 2d 272,

294-95 (D.D.C. 2004) ("even if plaintiff could suggest a better methodology than was used by

defendant, there is no basis for imposing FCA liability based on faulty or mistaken engineering

judgments") (citation omitted), *aff'd*, 393 F.3d 1321 (D.C. Cir. 2004).

Here, there can be no falsity because there is a genuine dispute regarding what approach

should be used to test for flow cytometry services. Drs. Braylan, Dr. Stetler-Stevenson, of the

NIH, and Dr. Holden believe that the comprehensive approach Dianon uses best serves the

patient and other approaches may potentially risk lives. Def.'s Rule 56(a)(1) Statement, ¶¶ 12-

18. Dr. Flynn, the government's litigation expert, advocates a different approach. *Id.* ¶¶ 20-21.

CMS and Dianon's carrier have refused to take a position on the issue. *Id.* ¶¶ 10, 23, 33-35, 38-

39. When, as here, reasonable scientific or medical experts disagree regarding whether the claim

was true or false and the defendant has received no notice regarding the position the government

has taken, if any, regarding the disputed issue and the government has not published a standard,

courts, as the cases cited above demonstrate, routinely rule that the government cannot establish

that any "false" claim was submitted under the FCA as a matter of law.

Additionally, this conclusion should be reached because courts, including the Second

Circuit, afford extra weight to the physician to exercise his or her best judgment in treating a

patient and hold that the physicians' judgment should not be rejected unless there is clear

evidence to contrary. Specifically, in determining medical necessity, courts employ what is

known as the "treating physician" rule, which provides that with respect to medical necessity, the

judgment of the treating physician should be given "extra weight" and should not be rejected

unless "'a reasoned basis [is offered] , in conformity with statutory purposes for declining to do

so.'" *State of N.Y. v. Sullivan*, 927 F.2d 57, 60 (2d Cir. 1991); *Klementowski v. Sec'y*, 801

F.Supp. 1022, 1026 (W.D.N.Y. 1992); *Gartman v. Sec'y*, 633 F.Supp. 671, 680-82 (E.D.N.Y.

1986) (noting that "[t]he physician is to be the key figure in determining utilization of health

services") (citations omitted); *see also United States v. R.D. Prabhu, M.D.*, 2006 U.S. Dist.

LEXIS 49690 at *66-*67 (D. Nev. July 20, 2006) (applying "treating physician" rule in context

of FCA medical necessity action); *see generally Mikes v. Straus*, 274 F.3d 687, 702 (2d Cir.

2001) (affirming district court's FCA dismissal of action and noting that although "a provider's

choice of procedures [must] be 'reasonable and necessary'," federal courts are not obligated to

"step outside their primary area of competence and apply a qualitative standard measuring the

efficacy of those procedures," and "[t]he quality of care standard ... is best enforced by those

professionals most versed in the nuances of providing adequate health care"). If physicians'

reasonable exercise of discretion results in their being subjected to treble damages and massive

civil penalties, it would chill their judgment in lawfully exercising their discretion in furnishing

patient care.

Accordingly, because Dianon submitted claims in conformance with CMS' rules and

regulations, the government cannot establish falsity as a matter of law. Moreover, because, at a

minimum, reasonable minds may differ regarding whether Dianon's claims were medically

necessary and appropriate, the government cannot establish falsity as a matter of law.

**B.    Dianon did not "Knowingly" submit any "False" Claim to the Government**

Moreover, even if, contrary to fact, the government were to demonstrate that Dianon's

claims were false, it would still need to demonstrate that Dianon "knowingly" submitted the

false claim or statement.

11

Under the FCA, a person is deemed to have acted "knowingly" when the person "acts in deliberate ignorance of the truth or falsity of the information" or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Indeed, as this Court has recently pointed out, the Second Circuit's knowledge standard does not seek to penalize honest mistakes, but only "lies":

> The Second Circuit has adopted the Ninth Circuit's standard that the "requisite intent is the knowing presentation of what is known to be false" as opposed to negligence or innocent mistake. *Mikes*, 274 F.3d at 703 (citing *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996), *cert. denied*, 519 U.S. 865, 136 L. Ed. 2d 116, 117 S. Ct. 175 (1996)). Indeed, Congress specifically amended the FCA to include this definition of scienter, to make "firm . . . its intention that the act not punish honest mistakes or incorrect claims submitted through mere negligence." *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting S. Rep. No. 99-345, at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272). "Known to be false" does not mean scientifically untrue, but "a lie." *United States ex rel Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815-16 (9th Cir. 1995), *cert. denied*, 516 U.S. 1043, 133 L. Ed. 2d 657, 116 S. Ct. 700 (1996) (internal quotation marks omitted).

*In Re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. at 339; *see also Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992) ("Proof of one's mistakes or inabilities is not evidence that one is a cheat. . . . Without more, the common failings of engineers and other scientists are not culpable under the Act. . . . The weakest account of the Act's 'requisite intent' is the 'knowing presentation of what is known to be false.' The phrase 'known to be false' in that sentence does not mean 'scientifically untrue'; it means 'a lie.' The act is concerned with ferreting out 'wrongdoing,' not scientific errors. What is false as a matter of science is not, by that very fact, wrong as a matter of morals. The Act would not put either Ptolemy or Copernicus on trial") (citations omitted).

In applying this standard, courts have routinely ruled that a defendant "does not 'knowingly' submit a 'false' claim when his conduct is consistent with a reasonable interpretation of ambiguous regulatory guidance." *United States v. R.D. Prabhu*, 2006 U.S. Dist. LEXIS 49690 at *57 (D. Nev. July 20, 2006) (citations omitted); *see also United States ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 768-69 (8th Cir. 2002) (no violation of FCA intent standard when billing practice was a "generally accepted practice"); *United States v. Data Translation, Inc.*, 984 F.2d 1256 (1st Cir. 1992) (when supplier's actions conformed with industry practice and were otherwise reasonable, the government could not state a cause of action under the FCA); *see also United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 831-32 (W.D. Mich. 2000), *aff'd* 24 Fed. Appx. 491 (6th Cir. 2001); *United States v. Krizek,* 859 F. Supp. 5, 9–10 (D.D.C. 1994), *aff'd in part, rev'd in part*, 111 F.3d 934 (D.C. Cir. 1997); *United States v. Napco Int'l., Inc.,* 835 F.Supp. 493, 498 (D. Minn. 1993) (because underlying regulation was ambiguous, the court would not permit the government to apply "an interpretative afterthought by the agency" against the contractor in a FCA action); *cf. In Re Genesis Health Ventures, Inc.,* 272 B.R. 558, 570 (Bkrtcy. D. Del. 2002) ("In this murky area in which no specificity exists in the statutory, regulatory or contractual scheme regarding the provision of credits, with no request by either the state or federal government for unpaid credit, either by way of the filing of proofs of claim or otherwise, there is insufficient basis to charge the debtors with the requisite scienter required to establish a factually false certification"), *aff'd* 112 Fed. Appx. 140 (3d Cir. 2004).

Here, several facts demonstrate that Dianon could not have "known" that each of the approximately 12,000 flow cytometry claims it submitted was "false":

- There was no LMRP, or other defined governmental standard, informing Dianon how the government wanted it to perform flow cytometry. *See* Def.'s Rule 56(a)(1) Statement, ¶¶ 10, 23, 33-39.

- Reasonable experts disagree among themselves regarding how many antibodies to use and the procedures that should be employed when performing the test. *Id.*, ¶¶ 11-21. Proof of the ambiguity and legitimate dispute is that even the government experts disagree among themselves. Dr. Stetler-Stevenson, of the NIH, the government's own Rule 30(b)(6) designee regarding the appropriate number of antibodies and utility of antibodies to be used in a flow cytometry panel, believes the comprehensive approach that Dianon uses best serves the patient's medical interest while Dr. Flynn, the government's litigation expert, claims to adhere to a targeted or directed approach. *Id.*, ¶¶ 12-13, 20-21.

- Dianon had an extended dialogue with its Medicare carrier regarding these services and several of its claims were reviewed under the guise of "medical necessity" and "utilization" reviews. *Id.*, ¶¶ 36-37. Yet at no point did anyone from CMS, the carrier, or Tricare inform Dianon that it was using an over-expansive panel or that it should have used the "screening" or the direct-targeted approach in flow cytometry rather than the comprehensive approach, as those terms are defined in the peer-reviewed medical, scientific literature. *Id.*, ¶¶ 23, 38-39.

- The size of Dianon's panel is roughly equivalent to that used by the premiere governmental flow lab, the NIH, and other leading reference labs and was found to be medically appropriate and necessary in the only Adminstrative Law Judge opinion on the issue. *Id.*, ¶¶ 40, 42-47.

Moreover, from a purely commonsense standpoint, the government's contention that Dianon knowingly submitted over 12,000 false claims does not withstand scrutiny.  If Dianon really believed that it was fraudulently submitting claims to the government under CPT 88180, would it write a comprehensive letter to the carrier Medical Director asking him to review more than 1275 of those claims? *Id.*, ¶ 37. If Dianon's hematopathologists really believed that only 18 antibodies were medically necessary and appropriate, then why would the company continue to perform all 26 antibodies (and incur substantial costs associated with supplies) unless the physicians, as they state, insisted that each antibody was medically necessary and appropriate? *Id.*, ¶ 32.  If the use of a comprehensive panel of 26 antibodies is per se unlawful, why would another company (Impath) challenge its carrier's refusal to pay on those claims and thereby

14

invite scrutiny of its practices?    *Id.*, ¶ 40. And why would it prevail in its lawsuit and why would the Administrative Law Judge rule that the use of a 26 antibody panel was consistent with the peer-reviewed medical and scientific literature and supported by recognized experts in the field? *Id.* Moreover, if the use of the comprehensive approach is per se fraudulent, why would the head of the government's premier flow cytometry lab, the NIH, endorse the same approach, state that it uses a larger panel than Dianon used, and represent that each antibody it uses is medically necessary to treat the patient?    *Id.*, ¶¶ 12-13. Finally, if the use of more than 18 antibodies is fraudulent, then why would other companies write to CMS as CMS was revising CPT 88180 to inform CMS that they routinely use that many antibodies, why would the American Clinical Laboratory Association write CMS to inform it that its survey data reflects that "the most typical number of [antibodies] reported for a myeloid/lymphoid panel was 26 [antibodies]" and why would CMS accept this data and base payment based upon that finding? *Id.*, ¶¶ 41, 43-47.

In short, Dianon could not have known that its conduct was allegedly fraudulent in utilizing a comprehensive approach to performing flow cytometry – which peer-reviewed medical literature and the government's Rule 30(b)(6) designee expressly endorse – because no one could have imagined that it would be branded as fraudulent until the government intervened in this lawsuit seeking more than $100 million dollars in damages and civil penalties.

Accordingly, because the government cannot establish facts to show that Dianon "knew" that it was submitting "false" claims, the government's claims should be rejected. *See United States v. R.D. Prabhu*, 2006 U.S. Dist. LEXIS 49690 at *72-*73 (D. Nev. July 20, 2006) (rejecting government's medical necessity claims in FCA action when underlying regulatory standards were ambiguous and reasonable experts disagreed); *United States v. United Tech.*,

15

*Corp.*, 51 F. Supp. 2d 167, 199 (D. Conn. 1999)  (rejecting government's FCA claims when the government failed to establish that defendant knowingly submitted false claims); *United States ex rel. Rueter v. Sparks*, 939 F.Supp. 636, 638-39 (C.D.Ill. 1996) (where defendant had good faith belief that his classification of labor hours was correct and practice had not been questioned in prior governmental audits, there was no FCA liability because plaintiff could show no more than that defendant was negligent), *aff'd*, 111 F.3d 133 (7th Cir. 1997) (table).

## III.    GOVERNMENT'S COMMON LAW CLAIMS SHOULD BE DISMISSED

The law governing the government's common law claims is likely federal common law. *See United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606 (8th Cir. 1999). However, because there is no federal statute on the subject, and no reason to suppose that the common law of Connecticut would, in the present context, be inconsistent with federal law, the court should look to Connecticut law. *Applied Pharmacy*, 182 F.3d at 606 (ruling that federal common law applied to government's unjust enrichment claim and finding that the law of the state where the action was filed and acts occurred should provide the "rule of decision, especially since the present case is governed by general principles of fairness and not by any rule that appears peculiar to the law of any state"); *see generally Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 97-98 (1991) (holding that courts should incorporate state law into federal common law as rule of decision, unless its application would frustrate objectives of a federal program).

To establish either unjust enrichment or payment by mistake of fact, the government must in essence establish that defendant's retention of a benefit is either "unjust" or "unconscionable." *See Gagne v. Vaccaro*, 255 Conn. 390, 409 (2001) ("Unjust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good

conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff")(citation omitted); *see also Ficken v. Edward's, Inc.*, 183 A.2d 924, 927 (Conn. Super. Ct. 1962) (finding payment by mistake when the "payment by the plaintiff to the defendant was made under a mistake, and it is unconscionable for the defendant to retain the money").

Here, for the reasons stated above – no rule, regulation or standard precluded payment on defendant's claims – the government's common law claims should be dismissed because it would not be unjust or unconscionable for Dianon to retain payment on those claims. *See generally United States v. R.D. Prabhu*, 2006 U.S. Dist. LEXIS 49690 at *77 (D. Nev. July 20, 2006) (where defendant was entitled to judgment as a matter of law on both the "falsity" and "knowledge" elements of the FCA, "the Court cannot find as a matter of law that the retention of benefits arising there from is inequitable"). Accordingly, the Court should dismiss the government's common law claims.

## IV.    CONCLUSION

The government's FCA lawsuit strives to set national policy on a subject that leading figures in the flow cytometry community have vigorously debated over the last decade in various international consensus conferences – what should be the standard approach in performing flow cytometry services. The government's litigation expert, when his lab was operational, used a directed, targeted approach, which relies heavily on clinical information and morphology. *See* Def.'s Rule 56(a)(1) Statement, ¶¶ 20-21. However, the leading figures in the area, such as Drs. Stetler-Stevenson, of the NIH, Holden, and Braylan believe that that approach is "dangerous" and could result in patient death. *Id.*, ¶¶ 12-13.

CMS considered legislating this issue and then declined. *Id.*, ¶¶ 10, 23. The issue, even today, has not been definitively resolved in the medical, scientific community. However, when,

or if, some ultimate resolution is made regarding which approach constitutes the best medical approach to diagnose leukemia and lymphoma and the government institutes some guidance regarding the matter, it should be done through notice and comment so that all physicians have effective notice regarding what standard approach they should use when they treat the patient. Further, such a policy, if adopted, should be promulgated prospectively and not established retroactively, as the government seeks here, through FCA litigation – especially when the defendant (here Dianon) would be subjected to treble damages and civil penalties in excess of $100 million for purportedly breaching a definitive standard that has not, to date, existed.

Here the undisputed evidence demonstrates that Dianon's hematopathologists made a good faith determination – based solidly upon the peer-reviewed scientific medical literature and their personal experience – that a comprehensive antibody panel was essential to diagnose the patient's condition. *Id.*, ¶¶ 25-32. Because the undisputed facts demonstrate that these medical professionals did not knowingly submit false certifications of medical necessity to the United States, the Court should grant Dianon's motion for summary judgment.

Respectfully submitted,

Robert Salcido
Fed. Bar No. 447951
(admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4095
Fax: (202) 887-4288
E-mail: rsalcido@akingump.com

Bruce R. Parker
Fed. Bar No. PHV01015
Venable LLP

1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244-7400
Fax: (410) 244-7742
E-mail: BRParker@Venable.com

Thomas Kossl
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615
Telephone: (973) 492-1509
Fax: (973) 492-9763
E-mail: kosslt@labcorp.com

Attorneys for Defendant Dianon Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing and Defendant's Local Rule

56(a)(1) Statement was sent via overnight mail to:

> Richard Molot, Esq.
> Assistant United States Attorney
> Office of U.S. Attorney, District of Connecticut
> Connecticut Financial Center
> U.S. Department of Justice
> 157 Church Street
> New Haven, Connecticut  06510

by messenger to:

> Patricia R. Davis
> 601 D Street N.W.
> Washington, D.C. 20004

and via United States first class mail, postage prepaid to:

> Bryan T. Carmody, Esq.
> Maya & Associates, P.C.
> 266 Post Road East
> Westport, CT 06880

on September 29, 2006.

Penney Hughes