**DOCUMENT # 18**



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA,<br><br>Plaintiff,<br><br>v.<br><br>DIANON SYSTEMS, INC. and<br>ETHEL JANEGA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:02CV1573(DJS)<br><br>EX PARTE MEMORANDUM<br>IN SUPPORT OF THE UNITED<br>STATES' MOTION FOR AN<br>ENLARGEMENT OF TIME TO<br>MAKE AN ELECTION<br>PURSUANT TO 31 U.S.C.<br>§ 3730(b)<br><br>October 27, 2003<br><br>**[FILED UNDER SEAL]** |

The United States of America, with the concurrence of the relator, respectfully submits this memorandum in support of its ex parte motion for an order, pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(3), granting a six-month extension of time, from November 6, 2003, to and including May 6, 2004, in which to notify the Court of its decision whether to intervene in the above-captioned False Claims Act qui tam action.[1] The United States seeks this extension of time in order to permit it to investigate the allegations in the complaint filed in this action against Dianon Systems, Inc. ("Dianon"). This is the third extension that the government has requested in this case.

The False Claims Act provides that, for good cause shown, the Court may extend the time for the government to make its election to intervene. See 31 U.S.C. § 3730(b)(3). The United States now seeks additional time, until May 6, 2004, to make its election regarding possible intervention in this litigation. The United States has good cause for this request. The United States cannot make an informed decision whether or not to intervene pursuant to 31 U.S.C. § 3730(b)(4) until it

**ORAL ARGUMENT IS NOT REQUESTED**

---

[1] The relator specifically consents to a three month extension. As to the second three month period, the relator takes no position.

completes its investigation. The government further requests that, during the requested extension period, the complaint and the other filings remain under seal.

## I. Statement of Facts

On or about September 6, 2002, the Relator, Dr. James J. Tiesinga, filed the instant qui tam action against Dianon and Ethel Janega, a Dianon employee. Dr. Tiesinga worked for Dianon from July 2001 to June 2002 as a pathologist specializing in Hematopathology. Dr. Tiesinga resigned from Dianon in June 2002, allegedly because he had been discriminated against by the company due to his HIV positive status.

Dr. Tiesinga alleges in his complaint that Dianon used an unnecessary number of antibodies when conducting flow cytometry analysis, which was a service offered by Dianon for the purpose of diagnosing blood diseases. According to Dr. Tiesinga's complaint, in the majority of cases Dianon would need no more than fifteen antibodies to respond to a physician's request for a blood disease test (e.g. "test for lymphoma"). However, Dianon would virtually always use twenty-five antibodies, i.e. a "full panel", and Medicare would reimburse Dianon for these added, but medically unnecessary, antibodies.

Since the last extension granted by the Court, the investigation of the relator's allegations by the Department of Justice and the Department of Health and Human Services, Office of Inspector General (HHS-OIG), has made substantial progress, but the investigation is not yet complete. First, after requesting and receiving extensive claims data from the Medicare program, HHS-OIG's Office of Audit Services created a statistically valid random sample of claims relating to flow cytometry services billed by Dianon to Medicare. Then, on or about May 5, 2003, the government sent a request for patient medical records to Dianon. The government requested approximately 200 patient

files, as well as other company documents related to flow cytometry services. Dianon sent its initial production of records to the government on or about June 3, 2003. Dianon produced additional records and files to the government during July-October 2003. Dianon most recently served the government with additional responsive documents on or about October 17, 2003.

After receiving the records, the government had the patient files reviewed and analyzed by an independent pathologist. That pathologist has now completed his review of a substantial number of the 200 patient files. The remaining files will be reviewed and analyzed in the near future.

The government now is in the process of meeting with the independent pathologist to evaluate his medical analysis of the patient files. In addition, the government is in the process of receiving additional data from Medicare related to the flow cytometry billing patterns of Dianon, as well as the billing patterns of other labs around the country. Also, the government may conduct interviews of individuals with knowledge of the fraudulent activities alleged in the relator's complaint.

Finally, the government has had several conversations with Dianon about the allegations in the relator's complaint.[2] It is anticipated that after the government substantially completes its investigation, as set forth above, the government will approach Dianon to discuss a potential settlement of this matter.

Accordingly, the government's investigative team needs additional time to conduct a

---

[2] As the Court is aware, on or about September 25, 2002, the Court granted the government's application for a partial lifting of the seal in the instant qui tam. The reason that the government requested a partial lifting of the seal at that time was because the government was in negotiations with Dianon to settle another, separate qui tam action which had been brought against Dianon, United States of America ex rel. Theresa M. Worner v. Dianon Systems, Inc., 3:99CV407(DJS). The government and Dianon settled that separate qui tam in December 2002.

3

complete and thorough investigation, including, among other things, completing the analysis of the patient medical records provided by Dianon; collecting additional Medicare billing data related to the allegations; and conducting interviews of individuals who may have relevant knowledge of the fraudulent practices alleged in the complaint.

The investigation has made considerable progress, but will necessarily take additional time to complete. Until the investigation is complete, the United States cannot make an informed decision about whether or not to intervene in this action.

## II. Points and Authorities

The False Claims Act requires a relator to file the complaint in camera, under seal, and to serve the complaint and supporting written disclosure of material evidence on the government. 31 U.S.C. § 3730(b)(2). The complaint remains under seal while the government is provided a period of time in which to investigate the allegations; the Act sets an initial period of 60 days, which the court "for good cause shown" may extend. Id. at § 3730(b)(2)-(3). The purpose of the investigation is to enable the Attorney General to determine, in his discretion, whether to "elect to intervene" in the action. Id. at § 3730(b)(2). If the Attorney General elects not to intervene, the Act authorizes the relator to conduct the action. Id. at § 3730(b)(4).

The relevant provision of the False Claims Act governing extension requests by the government provides in pertinent part that:

> The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal. . . . Any such motions may be supported by . . . submissions in camera.

31 U.S.C. § 3730(b)(3). Congress obviously contemplated that the United States could require more than 60 days to make its decision regarding intervention.

4

In the instant matter, the government now seeks additional time to complete its investigation. The government respectfully submits that it has good cause for an extension in this case. As outlined above, additional time is needed to further investigate and analyze the allegations in the complaint, which will include the analysis of billing data, consultation with our medical expert, and witness interviews.

The additional time requested is reasonable. The request is designed to allow the government to make sufficient progress toward completing its investigation. A shorter time would not allow the Department of Justice adequate time to discover evidence material to the investigation and to make a meaningful evaluation of investigative results.

## CONCLUSION

For the foregoing reasons, the United States, with the concurrence of the relator, respectfully requests that its motion for an extension of time be granted. If the Court grants the motion, the United States will be required to notify the Court of its decision concerning intervention in this qui tam action on or before May 6, 2004.

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General

        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY

By: _____
        RICHARD M. MOLOT
        ASSISTANT U.S. ATTORNEY
        Federal Bar No. CT21676
        157 Church Street
        New Haven, Connecticut 06510
        (203) 821-3792

        _____/s/_____
        MICHAEL F. HERTZ
        JOYCE R. BRANDA
        PATRICIA R. DAVIS
        Attorneys, Civil Division
        U. S. Department of Justice
        P.O. Box 261
        Ben Franklin Station
        Washington, D.C. 20044
        Telephone: (202) 307-0238

        Attorneys for the United States

CERTIFICATION OF SERVICE

I hereby certify that on this 27th day of October 2003, a true and correct copy of the Ex Parte Memorandum in Support of the United States' Motion for an Enlargement of Time to Make an Election Pursuant to 31 U.S.C. § 3730(b), was served by first-class mail on:

> Bryan T. Carmody, Esq.
> Maya & Associates, P.C.
> 183 Sherman Street
> Fairfield, CT 06430

Pursuant to 31 U.S.C. §3731(b)(2), no service was made upon the defendant since this case is still under seal.

_____
Richard M. Molot
Assistant United States Attorney

7