**DOCUMENT # 23**



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2004 MAY -5 A 11: 30
U.S. DISTRICT COURT
HARTFORD

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DR. JAMES J. TIESINGA, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:02CV1573(DJS) <br><br> EX PARTE MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR AN ENLARGEMENT OF TIME TO MAKE AN ELECTION PURSUANT TO 31 U.S.C. § 3730(b) <br><br> May 4, 2004 <br><br> [FILED UNDER SEAL] |
| Plaintiff, | | |
| v. | | |
| DIANON SYSTEMS, INC. and ETHEL JANEGA, | | |
| Defendants. | | |

The United States of America respectfully submits this memorandum in support of its ex parte motion for an order, pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(3), granting a six-month extension of time, from May 6, 2004, to and including November 6, 2004, in which to notify the Court of its decision whether to intervene in the above-captioned False Claims Act qui tam action. The United States seeks this extension of time in order to permit it to continue its investigation into the allegations in the complaint filed in this action against Dianon Systems, Inc. ("Dianon"). In addition, during this period the government will continue settlement negotiations with Dianon.

The False Claims Act provides that, for good cause shown, the Court may extend the time for the government to make its election to intervene. See 31 U.S.C. § 3730(b)(3). The United States now seeks additional time, until November 6, 2004, to make its election regarding possible intervention in this litigation. The United States has good cause for this request. The United States cannot make an informed decision whether or not to intervene pursuant to 31 U.S.C. § 3730(b)(4)

**ORAL ARGUMENT IS NOT REQUESTED**

until it completes its investigation. The government further requests that, during the requested extension period, the complaint and the other filings remain under seal.

## I. Statement of Facts

On or about September 6, 2002, the Relator, Dr. James J. Tiesinga, filed the instant qui tam action against Dianon and Ethel Janega, a Dianon employee. Dr. Tiesinga worked for Dianon from July 2001 to June 2002 as a pathologist specializing in Hematopathology. Dr. Tiesinga resigned from Dianon in June 2002, allegedly because he had been discriminated against by the company due to his HIV positive status.

Dr. Tiesinga alleges in his complaint that Dianon used an unnecessary number of antibodies when conducting flow cytometry analysis, which was a service offered by Dianon for the purpose of diagnosing blood diseases. According to Dr. Tiesinga's complaint, in the majority of cases Dianon would need no more than fifteen antibodies to respond to a physician's request for a blood disease test (e.g. "test for lymphoma"). However, Dianon would virtually always use twenty-five antibodies, i.e. a "full panel", and Medicare would reimburse Dianon for these added, but medically unnecessary, antibodies.

Since the last extension granted by the Court, the investigation of the relator's allegations by the Department of Justice and the Department of Health and Human Services, Office of Inspector General (HHS-OIG), has made substantial progress, but the investigation is not yet complete. In addition, the government has recently engaged in settlement discussions with Dianon.[1]

---

[1] As the Court is aware, on or about September 25, 2002, the Court granted the government's application for a partial lifting of the seal in the instant qui tam. The reason that the government requested a partial lifting of the seal at that time was because the government was in negotiations with Dianon to settle another, separate qui tam action which had been brought against Dianon, United States of America ex rel. Theresa M. Worner v. Dianon Systems, Inc.,

After creating a statistically valid random sample, the government requested approximately 200 patient files, as well as other company documents related to flow cytometry services, from Dianon. After receiving the records, the government had the patient files reviewed and analyzed by an independent pathologist. That pathologist has now completed his review of all 200 patient files. The government then met with the independent pathologist to evaluate his medical analysis of the patient files.    **REDACTED**

On or about March 10, 2004, the government and representatives of Dianon and LabCorp met in Washington, D.C. to begin potential settlement discussions. At that meeting, the government outlined the preliminary results of its investigation into Dianon's billings to Medicare for flow cytometry services. The government, Dianon, and LabCorp discussed various issues relating to the case and the government's investigation, including a damages analysis. After the March 10 meeting, on or about April 5, 2004, Dianon submitted a letter to the government outlining its position on the issues in the case and raising certain defenses. The parties have had several additional conversations by phone during April to discuss settlement, as well as various issues related to the government's investigation. Dianon has informed the government that, just last week, the company retained outside counsel to further evaluate the company's position. Dianon indicated that the company wants to make further settlement presentations to the government, but due to the complexity of the issues involved, it would take several months for Dianon's new outside counsel to prepare for these

---

3:99CV407(DJS). The government and Dianon settled that separate qui tam in December 2002.

3

presentations.

**REDACTED**

Accordingly, the government is preparing a subpoena to request information from LabCorp **REDACTED**

In-house counsel for Dianon has indicated that LabCorp may move to quash this subpoena.

Accordingly, the government's investigative team needs additional time to complete its investigation, including, among other things, serving a subpoena on LabCorp and receiving and analyzing the documents produced; collecting additional Medicare billing data related to the allegations in the complaint; and conducting interviews of individuals who may have relevant knowledge of the fraudulent practices alleged in the complaint. In addition, the parties will likely engage in further settlement negotiations over the next several months.

The investigation has made considerable progress, but will necessarily take additional time to complete. Until the investigation is complete, the United States cannot make an informed decision about whether or not to intervene in this action.

## II. Points and Authorities

The False Claims Act requires a relator to file the complaint in camera, under seal, and to serve the complaint and supporting written disclosure of material evidence on the government. 31 U.S.C. § 3730(b)(2). The complaint remains under seal while the government is provided a period

of time in which to investigate the allegations; the Act sets an initial period of 60 days, which the court "for good cause shown" may extend. Id. at § 3730(b)(2)-(3). The purpose of the investigation is to enable the Attorney General to determine, in his discretion, whether to "elect to intervene" in the action. Id. at § 3730(b)(2). If the Attorney General elects not to intervene, the Act authorizes the relator to conduct the action. Id. at § 3730(b)(4).

The relevant provision of the False Claims Act governing extension requests by the government provides in pertinent part that:

> The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal. . . . Any such motions may be supported by . . . submissions in camera.

31 U.S.C. § 3730(b)(3). Congress obviously contemplated that the United States could require more than 60 days to make its decision regarding intervention.

In the instant matter, the government now seeks additional time to complete its investigation. The government respectfully submits that it has good cause for an extension in this case. As outlined above. **REDACTED**

Moreover, the government will review additional Medicare billing data and may conduct further witness interviews. In addition, the parties will have the opportunity, during this period, to engage in additional settlement discussions.

The additional time requested is reasonable. The request is designed to allow the government to make sufficient progress toward completing its investigation. A shorter time would not allow the Department of Justice adequate time to discover evidence material to the investigation and to make a meaningful evaluation of investigative results.

5

CONCLUSION

For the foregoing reasons, the United States respectfully requests that its motion for an extension of time be granted. If the Court grants the motion, the United States will be required to notify the Court of its decision concerning intervention in this qui tam action on or before November 6, 2004.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

By: _____
RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3792

_____/s/_____
MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
Attorneys, Civil Division
U. S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0238

Attorneys for the United States

## CERTIFICATION OF SERVICE

I hereby certify that on this 4th day of May 2004, a true and correct copy of the Ex Parte Memorandum in Support of the United States' Motion for an Enlargement of Time to Make an Election Pursuant to 31 U.S.C. § 3730(b), was served by first-class mail on:

> Bryan T. Carmody, Esq.
> Maya & Associates, P.C.
> 183 Sherman Street
> Fairfield, CT 06430

Pursuant to 31 U.S.C. §3731(b)(2), no service was made upon the defendant since this case is still under seal.

Richard M. Molot
Assistant United States Attorney

7