# EXHIBIT 8

[x] telescope and compass

# PROGRAM SAFEGUARDS

[ Print this page ]

United HealthCare (UHC) originally produced the content archived below for use by Connecticut customers. First Coast Service Options, Inc. (FCSO), the new Connecticut Medicare Part B Carrier, is providing this content as it was previously posted. All new and revised content will be produced under First Coast Service Options, Inc. (FCSO).

**Services Advertised As Free or Without Charge**
**Program Integrity**
**Penalties for Assignment Violations**
**Unacceptable Payment Arrangements**
**How to Report Suspected Fraud or Abuse of the Medicare Program**
**Fraud and Abuse Penalties and Administrative Sanctions - Reminder**

### Services Advertised As Free or Without Charge

When a provider advertises a **free** or **discounted** service or a **free initial visit**, the beneficiary should be made aware of just what the free service or visit entails. This will help to ensure that the beneficiary is making an informed decision whether to continue treatment after the free service has been provided.

This is especially important since an advertisement that the service is being performed without charge may have been an enticement for the beneficiary to schedule an appointment with that provider. Failure to make this information available to the beneficiary may be interpreted as misleading and/or a misrepresentation.

Also, when a service is provided and the beneficiary's deductible or coinsurance is waived or based on a reduced price, the discount must be passed on to Medicare. Be advised that routine waiver of co-insurance could be considered a fraudulent practice.

   Provider Information
   Services Advertised As Free or Without Charge
   Program Integrity
   Penalties for Assignment Violations
   Unacceptable Payment Arrangements
   How to Report Suspected Fraud or Abuse of the Medicare Program
   Fraud and Abuse Penalties and Administrative Sanctions - Reminder

[ back to top ]

### Program Integrity

Most Medicare contractors have Fraud and Abuse units. These units have the responsibility to deter and detect fraud or abuse. Suspected cases of fraud are referred to the Office of Inspector General for further action. Medicare Fraud and Abuse units work closely with several government agencies including:

- The Justice Department
- FBI
- State Medicaid Fraud Control Units
- General Accounting Office

Medicare Fraud units also provide Anti-Fraud training programs for:

- Providers
- Beneficiary groups
- Consumer groups
- Any other groups interested in protecting the Medicare Trust Fund.

**What is Fraud?**

Fraud is defined as an intentional deception or misrepresentation that the individual knows to be false or does not believe to be true, and that could result in some unauthorized benefit to himself/herself or some other person. Fraud arises from an intentional false statement or misrepresentation, which results in reimbursement or financial gain from the act. Violators can be a provider, an employee of a provider, a beneficiary, family or friend of a beneficiary, or some other person or business entity.

Some examples of fraud are:

- Billing for services not rendered
- Misrepresentation of services
- Upcoding
- Misrepresentation of diagnosis reported on claims.
- Kickbacks

Other types of potential fraud include, but are not limited to the following:

- A complaint from a beneficiary, family member or friend that services shown on an explanation of Medicare Benefits statement were never rendered.

- Information that the beneficiary was billed in full after Medicare had made its determination and payment to the provider.

- A claim for services provided after the beneficiary's date of death.

- Any intentional false representation.

- A physician frequently providing services unrelated to medical necessity (e.g., a physician billing for services that are not medically appropriate or necessary for the patient's reported sign, symptoms, or complaints).

- A claim for non-covered services billed as covered services.

- Claims involving collusion between the provider and beneficiary resulting in higher charges billed to Medicare.

- Offering or receiving a kickback, bribe, or rebate.

- Altering claim forms to obtain higher payment amounts.

- Claims for a panel or series of lab tests when only part of the group of tests in the panel were medically indicated for the patient's signs symptoms, or complaints.

- The practice of one physician referring a patient to another physician for a consultation which is not medically necessary, "ping ponging" the patient so both doctors can bill Medicare.

- Routine waiver of co-insurance or deductible.

- Unbundling or exploded charges, for example, billing the components of a test or service separately instead of billing the global service in order to receive a higher reimbursement.

- False provider disclosure of ownership in a clinical laboratory.

- Split billing schemes, (e.g., billing procedures over a period of days when all treatments occurred during one visit).

- Use of the adjustment process to generate fraudulent payments.

- Billing Medicare for services a provider is not licensed by the state to perform.

- Providing services that are advertised as free, then billing the Medicare program.

- Providers charging Medicare patients a higher fee than their other patients.

**What is Abuse?**

Abuse is defined as incidents or practices of providers, although not usually considered fraudulent, that are inconsistent with accepted sound medical business or fiscal practices, which directly or indirectly result in unnecessary cost to the Medicare Program. A major form of abuse is the over-utilization of services. Such over-utilization occurs when a patient receives services that are not medically necessary or reasonable. Examples of abuse are:

- Services not medically necessary
- Screening services
- Violation of Assignment Agreement

An abusive situation can turn into fraud if the abusive situation is brought to the provider or beneficiary's attention, and the abusive situation continues.

Other types of potential Abuse include, but are not limited to the following:

- Multiple claims for the same services, same diagnosis, by the same provider sent to Medicare.

- Information that a beneficiary had to pay more than his/her co-insurance and deductible for covered services.

- A complaint of excessive charges for services or supplies.

Billions of dollars each year are paid out on fraudulent claims. First Coast Service Options, Inc., is charged with the responsibility of offering educational outreach programs, to providers and their employees and beneficiaries. Through these programs people are made aware of ways to detect and deter fraud in the Medicare program.

[ back to top ]

**Penalties for Assignment Violations**

The Medicare-Medicaid Anti-Fraud and Abuse Amendments of 1977 (PL 95-142) strengthen the Government's capability to detect and prosecute cases of Medicare and Medicaid fraud. We are notifying all physicians and suppliers of the penalties that are imposed by this law for repeated violations of the assignment agreement.

When a physician or supplier accepts assignment, he/she agrees that the reasonable charge determined by the carrier shall be his/her full charge for the service. He/she violates the assignment agreement if he/she collects or attempts to collect from the beneficiary or other person an amount that, when added to the benefit payment, exceeds the reasonable

charge.

Prior to the passage of the amendments, the only action that would be initiated against a physician or supplier who repeatedly violated the assignment agreement was revocation of assignment privileges under Medicare. The law now provides that any person who knowingly, willingly, and repeatedly violates the assignment agreement shall be guilty of a misdemeanor and subject to a maximum fine or $2000 and/or 6 months imprisonment. This legislation also provides that when a physician or practitioner has been convicted of a criminal offense related to his/her involvement in Medicare or Medicaid, he/she will be excluded from program participation and from any state health care programs as defined under Section 1128(h) of the Social Security Act.

In addition, the Omnibus Budget Reconciliation Act of 1981 provides authority for the imposition of civil monetary penalties of up to $2000 per item or service claimed for violations of an assignment agreement under Section 1842 (b)(3)(ii) of the Social Security Act.

[ back to top ]

**Unacceptable Payment Arrangements**

If your office uses the services of a billing company, vender, or other service to prepare the Medicare claim forms, you should read the following information carefully.

The Medicare law prohibits Medicare from paying benefits due a physician or other supplier of health care items and services, to another person or organization under a reassignment or power of attorney, or under any other arrangement whereby that other person or organization receives those payments directly. There are the following exceptions to this rule:

- Medicare may pay a physician's or supplier's benefits to his/her employer in accordance with the terms of his/her employment.

- Medicare may pay a hospital, clinic, or other medical facility or group practice prepayment plan, the physician's or supplier's benefits for services to patients of the facility or plan, in accordance with the physician's or supplier's agreement with the facility or plan.

- Medicare may pay a physician's or supplier's benefits in his/her name to a billing or collection agent, e.g., a medical bureau, if:

    1. The agent receives the payment under an agency agreement with the physician or supplier.

    2. The agent's compensation is not related in any way to the dollar amounts billed or collected.

    3. The agent's compensation is not dependent upon the actual collection of payment.

    4. The agent acts under instructions that the physician or supplier may modify or revoke at any time.

    5. The agent, in receiving the payment, acts only on the physician's or supplier's behalf.

    6. Medicare may pay a physician's or supplier's benefits in his name to a bank or other financial institution for deposit in an account from which he may freely withdraw any deposited funds.

    7. Medicare may pay a physician's or supplier's benefits in accordance with a reassignment established by, or pursuant to the order of, a court of competent jurisdiction.

A physician or supplier should notify Medicare if:

- Medicare has been mailing his/her benefits to the address of another person or organization.

- He/she has not given that other person or organization power of attorney or other advanced authority to negotiate the benefits checks.

- None of the above exceptions which would permit payment to another person or organization apply in this case.

A physician or other eligible recipient of assigned payment who hereafter enters into or continues such a prohibited payment arrangement may have any right to receive assigned payment revoked.

[ back to top ]

### How to Report Suspected Fraud or Abuse of the Medicare Program

Reporting suspected fraud and abuse of the Medicare Program will help keep money in the Medicare "Trust Fund" and eliminate spending money of fraudulent claims. If you suspect that a provider, beneficiary, co-worker, or friend are committing fraud or abuse of the Medicare program, you can notify this office in several ways:

- Call the Connecticut Medicare Part B office at 1-800-982-6819.
- Send a letter to the Medicare office addressed to the attention of the Fraud Unit.
- Contact the Office of the Inspector General (OIG) Hotline at 1-800-HHS-TIPS.

This Medicare office is required to investigate every fraud and abuse complaint received.

The following information included with your complaint will allow this office to thoroughly investigate your concerns.

- The full name and address of the provider or beneficiary in question.

- The basic scenario of the inappropriate activity.

- Any evidence you may have to substantiate your allegation.

- The name and Medicare numbers of any patients that may have had inappropriate services billed to the Medicare program under their Medicare number.

- Your name, address, and phone number. (This information will enable the Medicare office to contact you for clarification on any issues.)

Fraud and abuse of the Medicare Program costs tax payers billions of dollars each year. Fraud costs the system 10% of every dollar paid out for health care expenditures. You can do your part by reporting suspected fraud and abuse now.

[ back to top ]

### Fraud and Abuse Penalties and Administrative Sanctions - Reminder

Medicare Intermediaries and Carriers are required to keep the provider community aware of fraud or abuse penalties and administrative sanctions that could result from cases of fraud or abuse.

Fraud is defined as the intentional deception or misrepresentation that the individual makes, knowing it to be false, that could result in some unauthorized benefit.

Abuse may, directly or indirectly, result in unnecessary cost to the program, improper payment, or payment for services that fail to meet professionally recognized standards of care, or that are medically unnecessary.

Suspected cases of fraud or abuse are routinely referred to the Office of the Inspector General for consideration and application of criminal penalty, civil monetary penalty, or administrative sanctions.

http://www.connecticutmedicare.com/partb_fraud_FCSO_%20Program%20Safeguards%20Articl...   4/11/2006

CMS004059

**Civil Monetary Penalty**

The Medicare and Medicaid Patient and Program Protection Act of 1987 authorized imposition of civil monetary penalties where it is determined that a person (such as a practitioner, provider, or supplier) presents a claim for or violates agreements such as:

- An item or service not provided as claimed.
- An item or service that is false or fraudulent.
- A physician's service provided by a person who is not properly licensed or certified.
- An item or service furnished by an excluded person.
- Violation of the Medicare assignment provisions.
- A Medicare Participating Physician or supplier agreement violation.
- False or misleading information used to generate payment that would otherwise not be made by the Medicare Program.
- Violation of assignment requirement for certain diagnostic clinical laboratory tests.
- Violation of requirement of assignment for nurse anesthetist (CRNA) services.
- Nonparticipating physician or supplier violation of charge limitations for radiology fee schedule services.
- Violation of assignment requirements for physician's assistant services.
- Medicare nonparticipating physicians violation of limiting charge limits.
- Nonparticipating physicians violation of refund requirement for medically unnecessary services.
- Physician charges in violation of assignment provision for certain purchased diagnostic procedures where mark-up or payment is prohibited for these procedures due to failure to disclose required information.

Typical sanctions could involve assessments of up to double the amount of the volatile charges, civil monetary penalties of up to $2,000 per violation, and exclusion from the Medicare program.

**Administrative Sanctions**

The term "sanctions" represents the full range of administrative remedies and actions available to deal with questionable, improper, or abusive practices of practitioners, providers, or suppliers under exclusion from the Medicare program.

Administrative sanctions may be used:

- Against an abusive practitioner/provider/supplier
- Against a practitioner/provider/supplier who consistently fails to comply with the Medicare law.

The purpose of these sanctions is twofold. First, they are designed to be remedial by ensuring that questionable, improper, or abusive practices are dealt with appropriately. Practitioners, providers, and suppliers are encouraged to correct their behavior and operate in accordance with program policies and procedures. Second, the sanctions are designed to protect the programs by ensuring that improper payments are identified and recovered, and that future improper payments are not made.

Administrative remedies include:

- Education of the practitioner, supplier, or provider and/or issuance of a warning.
- Revocation of assignment privileges.
- Withholding of payments for recovery of overpayment.

[ back to top ]

---

Copyright 2000, First Coast Service Options, Inc.

http://www.connecticutmedicare.com/partb_fraud_FCSO_%20Program%20Safeguards%20Articl...   4/11/2006

CMS004060