# EXHIBIT 9

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2
       - - - - - - - - - - - X
 3     UNITED STATES OF AMERICA,,      |
       ex rel. Dr. James J. Tiesinga,|
 4            Plaintiffs,              |   No. 3:02CV1573(MRK)
                                       |
 5                 v.                  |
                                       |
 6     DIANON SYSTEMS, INC.,           |
              Defendant.               |   July 25, 2006
 7     - - - - - - - - - - - X

 8


 9


10     VIDEOTAPE DEPOSITION OF FRANK DELLI CARPINI, M.D.

11                 30(b)(6) Testimony


12


13          Taken before Kristine A. Paradis, LSR 338, a
            Court Reporter and Notary Public within and for
14          the State of Connecticut, pursuant to Notice
            and the Federal Rules of Civil Procedure, at
15          the offices of First Coast Service Options,
            Inc., 321 Research Parkway, Meriden,
16          Connecticut, on July 25, 2006, commencing at
            11:23 a.m.
17


18


19


20


21


22


23
                     FALZARANO COURT REPORTERS
24                     117 North Saddle Ridge
                  West Simsbury, Connecticut 06092
25                         860.651.0258
```

1    Figure 2.6."

2         Q    Now, is there any indication in the LMRP

3    that some other approach was advocated rather than a

4    comprehensive approach?

5                   MR. MOLOT:   Objection.

6         A    No.   I do not recall the LMRP referencing

7    which approach should be used.   It was basically

8    left at the discretion of the provider to provide

9    medically necessary and pertinent services to the

10   carrier.

11   BY MR. SALCIDO:

12        Q    Do you know whether physicians can rely on

13   peer-reviewed medical journals when making decisions

14   regarding medical necessity?

15                  MR. MOLOT:   Objection.

16        A    If -- if -- if a physician is referencing

17   peer-reviewed literature and incorporates it into

18   their practice of medicine, then I would assume that

19   they could incorporate that.

20   BY MR. SALCIDO:

21        Q    Would it be your view that a physician

22   could read this text which was cited in your LMRP

23   under Basis of Decision and then rely on this

24   comprehensive approach in terms of designing an

25   antibody panel?

1          Not citing that Medicare is an economic
2     constraint but the statute covers the Medicare
3     services only for medically necessary services by a
4     provider.  So, therefore, screening services are not
5     covered by Medicare and never have been.

6          So, any service in a comprehensive
7     approach to the FCM analysis that was not medically
8     necessary and directed towards a specific purpose of
9     the test would be considered screening and,
10    therefore, not covered.  So, therefore, the economic
11    constraint would be present in the sense that it's a
12    noncovered service.

13    Q    Well, if, in fact, providing a lesser
14    service could result in errors, as that word is used
15    here in the text, would then your position be that
16    the physician should perform the lesser service even
17    though it will result in errors in order to satisfy
18    the medical necessity standard?

19                   MR. MOLOT:  Object to the form of the
20              question.

21    A    No.  That's not at all what I'm saying.
22    What I'm saying is that an FCM comprehensive total
23    approach would include screening tests because
24    they're not all medically necessary.  So, if you're
25    going to do a comprehensive approach on every

```
1    specimen, it would be impossible that -- to think

2    that every specimen would need a comprehensive

3    approach.  So, therefore, in that -- included in

4    that would be uncovered services by Medicare because

5    they would be screening; they would not be medically

6    necessary.

7                    MR. SALCIDO:  Could you read back his

8              first sentence.

9

10                   (A part of the previous answer was

11             read by the Court Reporter.)

12

13   BY MR. SALCIDO:

14        Q    What is your foundation for making that

15   statement?  That is to say, the statement that a

16   comprehensive approach would necessarily include

17   screening?

18        A    I think if we go back to the statement I

19   referenced every single specimen.

20        Q    Well, let's be precise.  Let's say

21   specimens with ICD9s in the LMRP.

22        A    Specimens with ICD9s that are medically

23   appropriate and necessary as per the LMRP?

24        Q    Yes.  You're saying that then using a

25   comprehensive approach as been defined by the
```

```
 1   BY MR. SALCIDO:
 2        Q    Given the same specimen.
 3        A    Right.  They may -- they may have used
 4   less markers than the author uses in their research
 5   paper?  Is that -- that's what you're saying?
 6        Q    Yes.
 7        A    So, that being said, we're saying that
 8   Dianon may not have used enough markers because the
 9   literature says that the standard is more than what
10   they used?
11        Q    No.  What I'm saying is that the authors
12   with respect to blood, bone, marrow, and spleen used
13   27 markers.
14        A    Okay.
15        Q    Which is cited as a basis for the decision
16   of the LMRP.  Dianon used fewer than 27 markers.
17   Could Dianon have reasonably relied upon that fact
18   in making a determination that the services were
19   medically necessary and indicated?
20                  MR. MOLOT:  Object to the form.
21                  MR. SALCIDO:  That's what my question
22             is.
23                  MR. MOLOT:  Sorry.  Object to the form
24             of the question.
25        A    Well, I firstly would like to explain that
```

1  │ from what I'm understanding the question to be is
2  │ that you are using this literature as synonymous
3  │ with the policy.  And it's -- what it is is it's a
4  │ reference point in the policy as a piece of medical
5  │ literature that may have been referenced for
6  │ something entirely different than what we're
7  │ discussing.
8  │          The bibliography structure of a policy
9  │ merely states everything that was ever used, but it
10 │ doesn't give the actual citation in that literature
11 │ that was used to formulate the policy.  So,
12 │ therefore, for the record, I want to make that
13 │ perfectly clear that because this is listed as
14 │ bibliography, we are not saying that this in its
15 │ entirety is interchangeable with the policy.  This
16 │ may have been referenced for an entirely different
17 │ reason.  It may have even been referenced by a --
18 │ someone in our policy department for spelling of a
19 │ word, for spelling of a procedure.
20 │          So, that being said, I'm not sure I quite
21 │ understand the question.
22 │ BY MR. SALCIDO:
23 │     Q    Because you didn't answer it.
24 │          I just asked whether Dianon could
25 │ reasonably rely upon peer-reviewed medical journal

1    Medicare program, and that expands based on stepwise

2    by stepwise by stepwise to a comprehensive approach,

3    well then that would be the medically prudent and

4    medically necessary way to get to a comprehensive

5    approach.

6            So, therefore, yes, the stepwise approach

7    would be the approach that is most in accordance

8    with the Medicare program.

9    BY MR. SALCIDO:

10   Q    That wasn't my question.  And I'm sorry I

11   have to keep asking the question.

12   A    Oh, by all means do.  I have no problem

13   with it.

14   Q    I just noticed an important point.

15           Is there any literature that you're aware

16   of -- and again, it could -- any authoritative

17   literature put out by the carrier, CMS, Medicare,

18   that dictates that as opposed to a comprehensive

19   panel as it's been defined here versus a stepwise

20   approach as was defined in the text, that the

21   stepwise approach is the one that is needed in order

22   to satisfy Medicare's medical necessity standard?

23                   MR. MOLOT:  Object --

24   BY MR. SALCIDO:

25   Q    That's the question.

```
 1        A    Right.
 2                   MR. MOLOT:   Sorry.  Object to the form.
 3        A    And I apologize for not understanding
 4   before.
 5             Absolutely not because that's why we did
 6   not even address it in the policy because there is
 7   no mandate.  The mandate is medical necessity and
 8   medical prudency of the test.  So, whether it's
 9   comprehensive or stepwise is not the question.  The
10   question is the medical necessity of it.
11   BY MR. SALCIDO:
12        Q    And how does a physician determine medical
13   necessity?
14        A    The hematopathologist?
15        Q    Yes.
16        A    By doing the amount of testing or the --
17   in any Medicare service, doing the appropriate test
18   that's approp -- that's significant for that
19   diagnosis and doing -- it has to be mandated by
20   medical necessity by signs and symptoms or
21   indications to lead them to that particular test.
22        Q    Okay.  Now, with respect to -- which leads
23   us to the last exhibit.  And what I'm going to
24   direct you to is Section 13.7.1.
25        A    Evidence supporting LCDs?
```