# Medicare Provider News

Meriden Medicare Claim Office • 538 Preston Avenue • Meriden, CT 06450-9000 • (203) 639-3000 • www.medicare-link.com

## Phone Inquiry Reminder

Please remember that when you telephone our office with an inquiry, you must have your provider number available.

This will assist us in handling your inquiry accurately and efficiently.

## Medicare Part B Mail Directory

Connecticut Medicare Part B welcomes any questions that you may have regarding the Medicare Part B program. Always be sure to clearly explain your question or concern. This will help our staff to know exactly what issues to address when developing a response to your inquiry.

Please submit your questions to the appropriate department. This will ensure that your concerns are handled in a proper and timely manner. This can be achieved by including an Attention Line below the address on the envelope. Listed below is a directory of departments that includes the issues that you would address to their attention.

### Correspondence

The Correspondence attention line is used for inquiries pertaining to general issues regarding Medicare Part B. Some examples of these issues are entitlement, deductibles, assignment, and beneficiary address changes. Do not use words such as *REVIEW* or *RECHECK* when sending general correspondence.

### Review

If you believe the payment or determination is incorrect and want a claim to be reconsidered, then send it to the attention of the review department. Requests for review must be made within six months of the date of the Explanation of Medicare Benefits. These requests should not include review requests on Medicare Secondary Pay calculations. Claims that are denied for return/reject need to be resubmitted and should not be sent as a review. These resubmitted claims should be sent in as new claims.

UNITEDhealthcare®    Number 41 • April, 1998

## Proper Use of CPT Codes

As new medical techniques and procedures become available, the issue of how to equitably bill for these services becomes more important. For the purpose of reimbursement by Medicare, each service under the Resource Based Relative Value Scale has been assigned appropriate Relative Value Units (RVUs). The procedure or service that is not listed in the CPT or that has not been assigned a HCPCS code does not have any RVUs assigned to it. These services need to have these units established. CPT recognizes that there may be services or procedures for which there is no code to be found in the book. Whenever a provider performs a procedure that is not specifically listed in the CPT, he/she should use the UN-LISTED PROCEDURE CODE from the specific section of the book. As an example, for an unlisted radiology procedure, use the unlisted procedure code from the radiology section of the book. Providers who submit claims electronically should then give the description of the service on the comment line. Paper submitters should describe the service in a written report attached to the HCFA 1500 form.

Neither the manufacturers of devices nor the billing consultants are liable for false claims submitted to Medicare. It is the provider's responsibility to code the service properly.

## Fraud and Abuse Continue to Plague Medicare Program

The General Accounting Office (GAO) estimates that the Medicare Program continues to lose approximately 10 percent of its annual budget to fraud and abuse. This translates to an annual loss by the American taxpayer of approximately 23 billion dollars in 1997.

The Health Care Financing Administration (HCFA) contracts with fifty-four insurance companies countrywide to administer the Medicare Program. These companies, also referred to as contractors, carriers or intermediaries, processed one billion Medicare Part B claims in 1996.

Contractors are responsible for protecting the Medicare Trust Fund by developing payment controls and performing other review activities known as payment safeguards. To accomplish this, contractors have internal fraud units that coordinate and refer potential fraud cases to the Health and Human Services Office of the Inspector General (OIG) for further investigation and, in some cases, criminal or civil prosecution.

Medicare fraud units depend on several different sources for information on suspected fraudulent or abusive practices by Medicare providers.

Potential instances of fraud may be referred through claims processors, mailroom employees, medical review or customer service units, or directly from providers and beneficiaries via telephone or mail. Sometimes fraud units receive referrals directly from OIG or the Federal Bureau of Investigation (FBI). Fraud units thoroughly investigate every case of suspected fraud or abuse and, based on the results, take appropriate action. HCFA estimates that for every dollar spent on program safeguard activities there is a return of eleven dollars to the Medicare Trust Fund.

CMS004072

## What is Medicare Fraud?

Medicare defines fraud as "an intentional deception or misrepresentation of services to obtain some benefit of monetary value and result in unauthorized payments."

**Examples of Medicare Fraud**

- Billing for services that are not medically necessary:

    Medicare bases all allowable services on medical necessity. When a provider submits a claim for services performed that were not medically necessary, the claim must state: "submitted for denial only."

- Services not rendered:

    Medicare receives claims for services that were not actually furnished. Some examples of services that could be considered not furnished are claims that have incorrect dates of service, errors for patients with the same or similar names, billing for no shows, billing for canceled appointments, or intentionally billing for services that simply were not rendered.

- Submitting, offering or receiving kickbacks, bribes or rebates:

    Receiving or offering compensation based on specific private arrangements can fall into the above categories.

- Upcoding:

    Upcoding occurs when a provider bills Medicare at a higher procedure code than that of the actual service performed. There is no documentation in the records to support the higher service. Also, records may be altered to justify the higher service when, in fact, a lower service was rendered. Some examples are providers billing for:

    - a comprehensive evaluation and management service when only a problem-focused evaluation and management service was rendered

    - a surgical procedure as extensive surgery when only a base surgery was performed, or diagnostic services as more extensive diagnostic testing

- Misrepresenting diagnosis:

    A provider alters a diagnosis to justify higher payment for services or equipment.

- Misrepresenting services:

    Misrepresenting services may involve submitting a claim for a covered service when, in fact, the service was not covered. Examples may be:

    - providing routine foot care and then billing Medicare for more advanced care; or

    - billing for:

    - covered injections as evaluation and management services;

    - consultations that do not meet the definition criteria;

    - acupuncture falsely under a payable code.

- Routine waiver of coinsurance and deductible:

- Routine waiver of coinsurance and deductible by providers is unlawful, because it results in false claims, violations of the Anti-kickback Statute, and extensive overutilization of billed services.

The previous examples are a few of the types of fraud that can be committed against the Medicare program. You should direct any questions you may have to your Medicare contractor.

CMS004073

## Abuse of the Medicare Program

Medicare defines abuse as "incidents or practices inconsistent with sound medical, business, or fiscal procedures that cause unnecessary costs to the program." Abuse of the Medicare program takes many different forms.

Some examples are:

- over utilization of services,
- excessive charges for services or supplies,
- violation of the assignment agreement,
- exceeding the special charge limit,
- billing Medicare at a higher or different fee schedule rate than non-Medicare patients for identical services,
- improper or sloppy billing practices, and
- violations of the Medicare participation agreement.

Abusive practices can and often do evolve into fraudulent situations.

## What Can You Do to Prevent Fraud?

Primary responsibility for preventing Medicare fraud lies with Medicare providers and their staffs.

Providers must ensure that:

- all services billed to the Medicare Program are submitted honestly, reflecting the actual services rendered. Associating services with appropriate diagnosis codes will help reduce suspicion of fraudulent activity.
- office staff is adequately trained in Medicare billing procedures.
- if a billing service is used, the provider needs to monitor continually to ensure that claims are being submitted in accordance with the documentation supplied by the provider's office.
- procedures are in place that accurately record and document services rendered in patients files. Medicare considers lack of documentation a service not rendered, which may lead to suspicion of fraud. Clear, concise records are a *must*.
- they conscientiously review Certificates of Medical Necessity before signing. Providers must make certain that they prescribed the equipment being ordered and it is medically necessary for the patient.
- they carefully explain all their actions to their Medicare patients. Often, Medicare patients do not understand what services have been performed, and when they receive their explanation of benefits, they will call the Medicare office to request clarification.



CMS004074