IN RE: DIANON SYSTEMS )
)
)
)

## DECLARATION OF JAMES B. AMBERSON, M.D.

I, James B. Amberson, hereby declare the following to be accurate and true:

1.  Throughout the 1990's to the current date, I have held a number of senior management positions at DIANON *Systems* ("Dianon"), including Medical Director and member of the Board of Directors. I am board certified in anatomic pathology and cytopathology. I received my medical degree from The Johns Hopkins University School of Medicine and did my residency training in pathology at The New York Hospital, Cornell University Medical Center. I was a cytopathology fellow under Leopold Koss, M.D., at Montefiore Medical Cente, Bronx, New York. Before joining DIANON *Systems*, I was Assistant Professor of Pathology at the Cornell University School of Medicine. I have authored articles in urology and general pathology, DNA flow cytometry and image cytometry. I also hold an M.B.A. from Columbia University. The following information is based upon personal knowledge.

2.  In approximately 1995, Dianon developed a strategy to expand by providing comprehensive outpatient anatomic pathology services, including hematopathology. To implement this strategy, the company hired Drs. Ann Marie Connor and Richert Goyette, both of whom were board certified in hematopathology. These pathologists had complete authority and discretion in the design of Dianon's flow cytometric panel for immunophenotyping. The immunophenotyping panel and other hematopathology offerings of Dianon were developed as

part of Dianon's strategic plan to be a full service anatomic pathology laboratory and had nothing to do with changes in Medicare reimbursement rates that might have been occurring at the time. I never became aware of any manager or non-physician attempting to influence Drs. Goyette or Connor to either add or delete antibodies to be performed on those panels.

3. During the time period from 1996 through 1998, I had several conversations and corresponded at length with Dr. Arif Toor, the Connecticut Medicare carrier's Medical Director. After Dr. Toor left his position as Medical Director, I also had conversations and corresponded with the new Medical Director, Dr. Deli Carpini regarding immunophenotyping issues. During the course of those communications, both Drs. Toor and Deli Carpini should have become fully familiar with the comprehensive flow cytometric immunophenotyping panel Dianon provided. They never stated that fewer antibodies should be performed and never questioned the medical necessity of employing a large antibody panel for the diagnoses rendered by Dianon.

4. I have reviewed Dr. Tiesinga's claim in paragraph 13 of his *qui tam* complaint in which he asserts that he learned in May 2002 that Dianon was performing (in his view) an unnecessary number of antibodies in conducting flow cytometric analysis and claims, in paragraph 14, that I recognized that the use of twenty-five antibodies was inappropriate.

5. Contrary to his assertion, I do not recall and do not believe that Dr. Tiesinga ever claimed that Dianon either performed or had a policy of charging Medicare for medically unnecessary antibodies. Dr. Tiesinga's statement that he first became aware in May 2002 that Dianon was using 25 antibodies is simply untenable. By the time that this alleged discovery occurred, he had been working at Dianon for 10 months and signing reports based upon his interpretation of cases tested with these antibody panels. Dr. Tiesinga would have to have

2

become aware of the number of antibodies used in Dianon's flow cytometry panel as soon as he began working at Dianon in July 2001.

6.   Second, his statement is not credible because, during this same time period, Dr. Tiesinga readily agreed to visit the Oklahoma carrier to state that Dianon's comprehensive panel was medically necessary. Because of his experience in the area, I asked him to confirm his belief that the comprehensive panel was medically necessary and that he could make a strong argument supporting the medical necessity of Dianon's flow cytometry antibody panel. He confirmed his view that Dianon's antibody panel was medically necessary, which is the direct opposite of what he stated in his complaint, and that he would be able to convincingly support Dianon's flow cytometric test offerings.

7.   Since January 2003, when Laboratory Corporation of America ("LabCorp") acquired Dianon, I have participated in conversations with Dianon's co-directors of hematopathology, Drs. Mishalani and Segal, regarding the standardization of flow cytometry panels between LabCorp and Dianon. While Drs. Mishalani and Segal concur that reasonable hematopathologists can disagree as to the number of antibodies to perform, whether all important markers should be included at the outset, or whether antibodies should be added and studied in two or more stages; both have stated that, in their professional good faith opinion, Dianon's comprehensive panel is best tailored toward diagnosing the patient's condition where leukemia or lymphoma is suspected.

I have reviewed this declaration and declare under penalty of perjury that the foregoing is true and correct.

James B. Amberson, M.D.

3