UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : |
| ex rel. DR. JAMES J. TIESINGA, : |
| : |
| Plaintiffs, : No. 3:02CV1573 (MRK) |
| : |
| v. : |
| : |
| DIANON SYSTEMS, INC. and : |
| ETHEL JANEGA : |
| : |
| Defendants. : |

**RULING AND ORDER**

Presently pending before the Court is the United States' Motion for Protective Order [doc. # 183] and Defendants' Motion to Compel Production of Maryalice Stetler-Stevenson, M.D. for Continued Deposition [doc. # 182]. Having considered the parties' briefs in support of their motions and the supporting documentation, including excerpts from Dr. Stetler-Stevenson's deposition on August 22, 2006, the Court GRANTS the United States' Motion for Protective Order [doc. # 183] and DENIES Defendants' Motion to Compel Production of Maryalice Stetler-Stevenson, M.D. for Continued Deposition [doc. # 182].

In this case, the United States alleges that, from 1996 to 2004, Dianon Systems, Inc. ("Dianon") submitted over 12,000 fraudulent claims for flow cytometry testing. Specifically, the United States contends that Dianon used medically unnecessary markers or antibodies in flow cytometry tests designed to detect leukemia and lymphoma. The United States seeks recovery of in excess of $100 million from Dianon. On July 14, 2006, the parties jointly petitioned the Court to amend its scheduling order to allow the parties to conduct a number of scheduled depositions; the

motion identified deponents and included tentative dates for each deposition. *See* Joint Motion to Modify the Scheduling Order [doc. # 163]. One of the scheduled depositions was a representative of the National Institutes of Health ("NIH"), who would offer testimony on the subjects identified in Dianon's notice under Rule 30(b)(6) of the *Federal Rules of Civil Procedure*. The United States designated Dr. Maryalice Stetler-Stevenson as the NIH's 30(b)(6) witness, and the tentative date for her deposition was set for August 22, 2006. The Court granted the joint motion, extending discovery until August 31, 2006. *See* Order [doc. # 168].

On August 18, 2006, less than two business days before Dr. Stetler-Stevenson's scheduled deposition, Dianon sent the United States a notice of deposition for Dr. Stetler-Stevenson that appeared to notice her personal/expert deposition, pursuant to Rule 26(b)(4)(A) of the *Federal Rules of Civil Procedure*, as well as her Rule 30(b)(6) deposition. Dianon had never previously noticed Dr. Stetler-Stevenson for an individual deposition.[1] Moreover, no party had designated Dr. Stetler-Stevenson as an expert in this case.

Dr. Stetler-Stevenson appeared for her deposition on August 22, 2006. During the deposition, Dianon's counsel asked Dr. Stetler-Stevenson questions that the Government believed were beyond the scope of the topics listed in Dianon's Rule 30(b)(6) notice. As to most such questions, counsel for the United States merely objected that the question was beyond the scope of the notice but the witness was permitted to answer the questions. However, counsel for Dianon also asked Dr. Stetler-Stevenson a series of questions about whether she agreed or disagreed with certain

---

[1] Dianon claims that it sent the United States an email on June 23, 2006, advising the United States that if the United States did not designate Dr. Stetler-Stevenson as NIH's representative, that Dianon would seek to depose her in her individual capacity. See Mot. to Compel [doc. # 182] at 8 n.5. Because the United States did designate her as such, Dianon's June 23 email cannot be seen as prior notice of its intent to ask her the questions to which the United States here objects.

opinions that had been expressed by the experts designated by Dianon and the United States in this case. For these questions, counsel for the United States instructed the witness not to answer the question.

> For example, counsel for Dianon asked the following questions of Dr. Stetler-Stevenson:
>
> Q.   To refresh your memory of Dr. Borowitz's opinions in this case, would you please read to yourself the sentence that begins, the reason I say this, and stopping down at the end of the sentence that ends – that begins, the reason this is a critical distinction, and tell me when you're done and I'll ask you a question.
> A.   Yes.
> Q.   You've read it to yourself.  Doctor, is there anything in that segment of Dr. Borowitz's  report with which you disagree?
> MS. DAVIS:   Objection.  I'm going to instruct you not to answer.
> Q.   Let's go on to Dr. Braylan's report, Exhibit Number 4.  If you would please turn to page 8 of Dr. Braylan's report, down towards the end of the first paragraph.  Do you see his sentence beginning, focusing?
> A.   Yes.
> Q.   Dr. Braylan wrote, focusing the analysis to a particular cell population and ignoring the remaining cells because of a presumable clinical or pathologic diagnosis is like limiting the examination of a microscopic slide to only a portion of a tissue biopsy and ignoring the rest or restricting the observation of a radiographic study based on patient's symptoms.
> I read that correctly, right?
> MS. DAVIS:    Objection.
> THE WITNESS:  Yes.
> Q.   Do you agree with that?
> MS. DAVIS:   Objection, and I'm instructing her not to answer.
> Q.   Further down the next paragraph Dr. Braylan wrote, furthermore – let me catch you up with me.  Are you with me?
> A.   Yes.
> Q.   Furthermore, the inefficiencies of a process that necessitates the design in each case of a particular antibody or a chrome combination and their frequent uncertainty created by unlimited data convinced us that a global initial approach to the analysis is the appropriate tactic in the majority of the cases rather than the limited approach recommended by the government expert?
> Do you agree with that statement?
> MS. DAVIS:   Objection, and I instruct you not to answer.

Stetler-Stevenson Dep. at 152-54.  Dianon's counsel asked similarly worded questions regarding the

opinions that Dr. Holden had expressed in this case. *Id.* at 154-58. Also, Dianon's counsel asked Dr. Stetler-Stevenson whether the lawyers for the United States had ever asked her "for [her] opinion regarding the merits of this case," to which counsel for the United States again interposed an objection and instructed Dr. Stetler-Stevenson not to answer the question. *Id.* at 162-63.

In its Motion to Compel, Dianon seeks to continue Dr. Stetler-Stevenson's deposition to obtain answers to the questions that counsel for the United States instructed her not to answer. In its Motion for Protective Order, the United States objects to any continuation of the deposition of Dr. Stetler-Stevenson.

In their briefs, the parties spend considerable time debating the propriety of questions that go beyond the topics listed in a Rule 30(b)(6) deposition notice. Courts are divided on whether a party noticing a Rule 30(b)(6) deposition is limited to the topics set forth in the notice. *Compare Paparelli v. Prudential Ins. Co.*, 108 F.R.D. 727, 729-30 (D. Mass. 1985), *with King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995). The Court need not wade into that conflict in order to resolve the present motions, because, by and large, counsel for the United States permitted Dr. Stetler-Stevenson to answer those questions that the United States claimed exceeded the scope of the Rule 30(b)(6) notice. The only questions the witness was directed not to answer were improper questions by Dianon's counsel that appear to have been designed to get an admitted expert in the field, not simply to express her own opinions, but instead either to bless or condemn the trial opinions rendered by the parties' experts, even though neither party had actually designated Dr. Stetler-Stevenson as an expert in this case, and Dianon had never sought to take her deposition as

an expert under Rule 26(b)(4)(B) or Rule 45(c)(3)(B).[2] The Court cannot conceive of a proper purpose for the particular questions posed by Dianon's counsel. Notably, Dianon offers none in its brief.

Dianon certainly had the right to explore with Dr. Stetler-Stevenson the manner in which the NIH approaches certain issues that are relevant in this case and why. And had Dianon's counsel truly been interested in obtaining facts from Dr. Stetler-Stevenson, as the NIH's representative, counsel could have asked her to state how the NIH approaches cytometry testing and why, and those questions could have had imbedded in them certain facts relied upon by the trial experts in reaching their own opinions. But the questions posed to Dr. Stetler-Stevenson show that Dianon's counsel was not interested in her factual testimony about the way in which the NIH addresses the subjects covered by the parties' experts. Instead, Dianon's counsel baldly sought to use the guise of a Rule 30(b)(6) deposition to try to force a non-designated expert to embrace the trial opinions expressed by the parties' own designated experts. There is no warrant in the rules for such conduct.[3] *See Schering Corp. v. Amgen Inc.*, No. Civ.A. 98-97 MMS, 1998 WL 552944, at *2 (D. Del. Aug. 4,

---

[2] Rule 26(b)(4)(B) permits a party through deposition to obtain the facts known or opinions held by an expert who has been retained or employed by any party in the litigation. Rule 45(c)(3)(B) permits a court to quash or modify a subpoena that requires disclosure of an unretained expert's opinion unless the party issuing the subpoena shows a substantial need for the testimony that cannot be met without undue hardship and assures that the expert will be reasonably compensated. The drafters of the rule state that it was adopted to address the "growing problem [of] the use of subpoenas to compel the giving of evidence and information by unretained experts." Fed. R. Civ. P. 45 advisory committee's note to 1991 Amendments.

[3] Dr. Stetler-Stevenson had read the parties' expert reports before her deposition. Therefore, Dianon could have explored with Dr. Stetler-Stevenson how her reading of those reports influenced her deposition testimony. As is apparent from the questions quoted in the text, Dianon's questions sought no such information, but instead were bald-faced attempts to get Dr. Stetler-Stevenson to adopt or reject the opinions of the parties' experts.

1998) ("[A]n unretained expert has the right to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided for in the final sentence of [Rule 45](c)(3)(B) . . . .") (internal quotation marks omitted); *see also Bio-Tech. Gen. Corp. v. Novo Nordisk*, No. 02-235-SLR, 2003 WL 21057238, at *3 (D. Del. May 07, 2003) (same).

The only serious issue presented by the parties' motions is not the propriety of Dianon's questions – they were clearly improper – but rather whether the United States' direction to the witness not to answer the questions was appropriate. Ordinarily, it is improper for counsel to direct a witness not to answer a question posed at a deposition, even if the question is improper or beyond the scope of a deposition notice. Rule 30(d)(1) states that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1). Rule 30(d)(4) provides as follows:

> At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). If the order made terminates the examination, it may be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition must be suspended for the time necessary to make a motion for an order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Fed. R. Civ. P. 30(d)(4). These rules properly recognize that "[d]irections to a deponent not to answer a question can be even more disruptive than objections." Fed. R. Civ. P. 30 Advisory

Committee's Note to 1993 Amendments.

Here, the United States asserts that its direction to Dr. Stetler-Stevenson not to answer questions seeking her opinion about the parties' experts' opinions was done to allow it to present a motion to the Court under Rule 30(d)(4). In that regard, the United States notes that it had only two days' notice that Dianon would seek to expand the deposition beyond a Rule 30(b)(6) deposition and no prior notice that Dianon would seek to force Dr. Stetler-Stevenson to comment on the opinions expressed by the parties' trial experts.

The Court agrees with Dianon that ordinarily, in such circumstances, the parties should suspend the deposition to seek a ruling from the Court on the propriety of the questions posed. In that regard, the Court notes that it regularly makes itself available to parties telephonically during the course of depositions to resolve similar disputes. Without in any way intending to condone counsel's directions to Dr. Stelter-Stevenson in this case, the Court nonetheless concludes that any error was harmless, because the questions posed by Dianon's counsel were improper and the Court would have stricken any answer Dr. Stetler-Stevenson would have given in response to the questions. Furthermore, since the only issue presented on the current motions is whether the Court will allow Dianon to resume Dr. Stetler-Stevenson's deposition to obtain answers to questions that this Court has ruled are improper, the Court can resolve that issue without addressing the propriety of the directions to the deponent in this case.

For the foregoing reasons, the Court GRANTS the United States' Motion for Protective Order [doc. # 183] and DENIES Defendants' Motion to Compel Production of Maryalice Stetler-Stevenson, M.D. for Continued Deposition [doc. # 182].

IT IS SO ORDERED.


/s/    Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **November 15, 2006.**