# EXHIBIT 11

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:02CV1573(MRK) |
| ex rel. DR. JAMES J. TIESINGA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | December 7, 2005 |
| DIANON SYSTEMS, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF UNITED STATES OF AMERICA'S OBJECTIONS AND RESPONSES TO DEFENDANT DIANON SYSTEMS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, United States of America submits the following responses and objections to

Defendant Dianon Systems' First Set of Interrogatories and Request for Production of

Documents:

### Introductory Statement and General Objections

1.    The objections and responses set forth herein are based on information now

known to the United States and its attorneys and are made without prejudice to the United States'

right to assert additional objections should grounds for objection be discovered at a later time.

2.    The United States will respond to unobjectionable interrogatories and document

requests or portions of these requests to the best of its present ability. Because the United States

has not completed discovery of the facts pertaining to this action or its preparation for trial, the

United States reserves the right to rely on any facts, documents, or other evidence that may

develop or come to its attention at a later time.

3.    The United States reserves the right to object to the introduction into evidence in this or any other action of any of the responses or objections set forth in response to these interrogatories or document requests. The fact that the United States has answered any part or all of any particular interrogatory or document request is not intended to and shall not be construed to be a waiver by the United States of any objection to the relevance or admissibility of any evidence in this or any other action.

4.    The United States objects to each definition, instruction, and request to the extent that those definitions, instructions, and requests purport to impose on the United States obligations that are broader in scope or more burdensome than those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of this Court. For example, Local Rule 26 defines certain discovery terms, such as "communication," "document," and "identify."

5.    The United States objects to each interrogatory or document request to the extent that they call for the production of information or documents protected from disclosure by privilege or doctrine, including the attorney-client privilege, the investigative file privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the law enforcement privilege or any other applicable basis for invoking privilege. The United States will screen all materials and information to be released to Defendant to remove privileged materials; however, there is a possibility that privileged documents or information may be inadvertently disclosed. By accepting production, Defendant agrees that, to the extent there is any inadvertent disclosure of privileged information, it shall not constitute any waiver of the privileges and all such material shall be immediately returned to the United States. The United States reserves the right to object to the introduction into evidence

2

before the Court at any time before or at trial of information that is privileged under law and that

has been revealed or produced inadvertently. The United States does not, by responding to these

document requests, waive any claim of privilege or the protection of any doctrine.

6.      The United States objects to these document requests to the extent they require the

United States to draw legal conclusions or otherwise seek to impose upon the United States any

requirements beyond those established by the Federal Rules of Civil Procedure or the Local

Rules of the United States District Court for the District of Connecticut.

7.      The United States objects to these document requests to the extent that responding

would require it to violate any seal imposed by a Court, by statute, or by the Federal Rules of

Civil or Criminal Procedure, the False Claims Act, a grand jury proceeding, a criminal

sentencing or other disposition, or any other matter. The United States will not separately object

to any specific request to assert this ground where doing so would itself implicate the seal at

issue.

8.      These general objections apply to each interrogatory or document request and

thus, for convenience, are not repeated after each request, but rather are set forth herein and

hereby incorporated into each response. The assertion of the same, similar, or additional

objections or the provision of partial responses to individual interrogatories or document requests

does not and should not be construed to waive or modify any of the United States' general

objections.

9.      Documents produced in response to Defendants' document requests that fall

within the protections set forth in the Protective Order Governing the Disclosure of Health

Information filed with the Court on December 5, 2005, are so designated on the documents

3

themselves as required by the Protective Order.

10.     The United States objects to Defendants' definitions of the terms "You," "Your," and as vague, ambiguous and overly broad. The United States objects to these definitions as overly broad insofar as they encompass any agency, office, employee, agent, representative, officer or contractor of either the Legislative Branch or the Judicial Branch of the United States government. Subject to and without waiving the foregoing objections, the United States will interpret "You," and "Your" to mean the offices and agencies of the Executive Branch of the United States government, that are reasonably likely to possess responsive documents or information, and the employees of those offices and agencies.

4

## I. INTERROGATORY RESPONSES

### INTERROGATORY NO. 1

State the basis for your contention in paragraph 24 of your amended complaint that Dianon acted with actual knowledge, deliberate ignorance or reckless disregard of the laws, regulations and guidance applicable to federal healthcare programs when submitting claims for various flow cytometry procedures billed under CPT Code 88180.

### RESPONSE TO INTERROGATORY NO. 1

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, this contention interrogatory is premature at this preliminary stage of discovery.

Subject to and without waiving these objections, the United States responds as follows: Medicare and Tricare providers, including laboratories such as Dianon, must comply with applicable statutes, regulations and guidelines in order to be reimbursed by the government. A provider has a duty to have knowledge of the statutes, regulations and guidelines regarding coverage for Medicare services, including, but not limited to, the following: Medicare only covers reasonable and necessary medical services, 42 U.S.C. § 1395y(a)(1)(A), and providers should provide economical medical services, and then, only when, and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1). In addition, each time a provider signs a CMS 1500 claim form the provider certifies that the services in question "were medically indicated and necessary for the health of the patient." Moreover, pursuant to 42 C.F.R. § 411.406, a Medicare provider, such as Dianon, is on notice that the services it provided were not reasonable and necessary based on, among other things, its receipt of CMS notices, including manual issuances, bulletins or other written guides or directives from carriers, as well as a provider's knowledge of what are

5

considered acceptable standards of practice in the local medical community. See also Tricare

regulations at 32 C.F.R. § 199. In addition, a May 21, 1997 internal Dianon memo prepared by

Dianon pathologists indicated that only 18 antibodies in its flow cytometry panels were "essential

for the accurate and complete initial workup of flow cytometry specimens" and "their routine

usage can be justified to insurance carriers." Yet for various time periods after May 21, 1997,

Dianon billed federal healthcare programs for more than 18 antibodies for its flow cytometry

services. Finally, Dianon's own test requisition forms indicate that Dianon was on notice of the

relevant rules and regulations related to billing for only medically necessary services.

### INTERROGATORY NO. 2

State the basis for your contention in paragraph 36 that from 1996 to the present when
Dianon billed for flow cytometry tests, a significant portion of the antibodies billed to federal
healthcare programs were not medically necessary. For each such claim, identify which
antibodies were medically unnecessary.

### RESPONSE TO INTERROGATORY NO. 2

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, this contention

interrogatory is premature at this preliminary stage of discovery. Third, the United States objects

to this interrogatory to the extent it prematurely calls for the production of expert disclosure

under Rule 26(a)(2). Fourth, the United States objects to this interrogatory pursuant to Fed. R.

Civ. P. 33(d), because the answer to this interrogatory can be derived or ascertained from the

documents being produced pursuant to document requests below. Fifth, this request is overly

broad and burdensome, as Dianon submitted over 13,000 claims for flow cytometry services to

the government during the relevant time period.

Subject to and without waiving these objections, the United States responds as follows:

The United States has provided specific examples of which antibodies were not medically

necessary in its amended complaint.  In addition, the Dianon claims data and the patient sheets

from the government's initial sample, being produced in response to the document requests

below, contain detailed information that is responsive to this interrogatory.  Finally, the United

States will provide additional responsive information in its expert disclosure.

**INTERROGATORY NO. 3**

List all instances when the United States reimbursed laboratories or medical
professionals, other than Dianon, for flow cytometry antibody testing for leukemia and
lymphoma where the laboratory or medical professional used a panel of 26 or more antibodies
from 1997 through March 31, 2004. Include the date, number of antibodies reimbursed, and the
total amount of reimbursement. Also include the total number of medical and/or laboratory
service providers so reimbursed.

**RESPONSE TO INTERROGATORY NO. 3**

The United States objects to this interrogatory on the following grounds.  First, the United

States incorporates by reference its General Objections, stated above.  Second, the United States

objects to this interrogatory on the grounds that it seeks information not relevant to the claims or

defenses of any party and is not reasonably calculated to lead to the discovery of admissible

evidence.  Third,  the United States objects to this interrogatory because it is overly broad and

unduly burdensome.  This interrogatory appears to call for a review of claims data for every

single provider of flow cytometry services in the United States that submitted a claim to any

federal healthcare program for flow cytometry services for a seven year period.  To collect,

review and report on this data, which involves thousands of claims, would be unduly

burdensome.  The United States invites Dianon to meet and confer pursuant to Local Rule of

7

Civil Procedure 37(a)(2) concerning the scope of this interrogatory.


### INTERROGATORY NO. 4

Describe, in detail, the content of any and all written policies or standards issued or adopted by the United States governing the number of antibodies used in flow cytometry antibody panel testing for leukemia and lymphoma during the period 1996 through 2004. Include the date of publication and where the standard or policy was published.

### RESPONSE TO INTERROGATORY NO. 4

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, this request is

vague because it does not indicate which agency or agencies of the United States it refers to.

Third, the United States objects to this interrogatory on the grounds that it seeks information not

relevant to the claims or defenses of any party and is not reasonably calculated to lead to the

discovery of admissible evidence. Fourth, the United States objects to this interrogatory pursuant

to Fed. R. Civ. P. 33(d), because the answer to this interrogatory can be derived or ascertained

from the documents being produced pursuant to document requests below and/or from publicly

available sources.

Subject to and without waiving these objections, the United States responds as follows:

Please see the Local Medical Review Policies, Local Coverage Determinations and other

documents/guidance from Medicare produced in response to the requests for production of

documents, below.

### INTERROGATORY NO. 5

Provide the name, business address, and telephone number for all laboratories, medical professionals, and/or hematopathologists who conducted flow cytometry antibody panel testing

for leukemia and lymphoma at Veteran Affairs facilities or at the request of doctors at Veterans Affairs facilities during the period 1997 through 2004. For each person listed, indicate whether the professional is currently employed by the United States Government.

## RESPONSE TO INTERROGATORY NO. 5

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this interrogatory is unduly broad and burdensome. There are approximately 170 U.S. Department of Veterans Affairs (VA) medical centers in the United States. The VA does not keep a centralized list of the number of "laboratories" that perform flow cytometry testing. In addition, there is no centralized list of "medical professionals, and/or hematopathologists" who conducted flow cytometry testing during the time period in question. Moreover, some VA facilities ask outside labs to conduct flow cytometry tests. Fourth, the phrase "at the request of VA doctors" is vague and ambiguous in the context of this interrogatory.

Subject to and without waiving these objections, the United States answers as follows: A list of the names, addresses and phone numbers of VA medical centers and facilities is available at the VA's publically available website, www.va.gov. The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

## INTERROGATORY NO. 6

List all damages, penalties, or other monetary awards you contend you are entitled to in

9

this matter and the factual basis for each such contention.

### RESPONSE TO INTERROGATORY NO. 6

The United States objects to this interrogatory on the following grounds.  First, the United

States incorporates by reference its General Objections, stated above.  Second, this interrogatory

calls for a damages analysis, which is premature at this stage of discovery.

Subject to and without waiving these objections, the United States responds as follows:

The United States will provide its damages analysis on or before May 1, 2006, as agreed to by the

parties.

### INTERROGATORY NO. 7

List all publications, scientific opinions, articles, or learned treatises you contend
establishes the standard of care for the design of flow cytometry antibody panel testing for
leukemia and lymphoma during the period 1997 to the present. Include in your answer the author,
title, publication information and date of publication for each article or treatise.

### RESPONSE TO INTERROGATORY NO. 7

The United States objects to this interrogatory on the following grounds.  First, the United

States incorporates by reference its General Objections, stated above.  Second, the United States

objects to this interrogatory because it is overly broad and unduly burdensome. This interrogatory

appears to call for the production of any and all medical literature, text books, treatises, articles

and abstracts relating to flow cytometry and medical necessity.  Third, the United States objects

to this interrogatory to the extent it prematurely calls for the production of expert disclosure

under Rule 26(a)(2).  The United States invites Dianon to meet and confer in accordance with

Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

10

**INTERROGATORY NO. 8**

List all publications, scientific opinions, articles, or learned treatises you contend establishes that a 13 to 15 antibody panel as described in your Amended Complaint paragraphs 50 through 69 is the standard of care for the design of flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 to the present. Include in your answer the author, title, publication information and date of publication for each article or treatise.

**RESPONSE TO INTERROGATORY NO. 8**

See objections and response to Interrogatory number 7.

**INTERROGATORY NO. 9**

Describe all facts and information that would be relevant to a hematopathologist in crafting or designing an antibody panel for a patient.

**RESPONSE TO INTERROGATORY NO. 9**

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, this interrogatory is vague because it does not define what the "antibody panel" in question would be used for. Third, the United States objects to this interrogatory to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2). The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

**INTERROGATORY NO. 10**

Provide all facts and information that would be relevant for a reference laboratory, such as Dianon, to consider in designing antibody panel(s) for the diagnosis of leukemia and lymphoma.

**RESPONSE TO INTERROGATORY NO. 10**

The United States objects to this interrogatory on the following grounds. First, the United

11

States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2). Third, this interrogatory is vague and ambiguous, as the term "reference laboratory" is not defined, except as it relates to Dianon, and the terms "relevant" and "to consider" are unclear and undefined in the context of this interrogatory.

The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

### INTERROGATORY NO. 11

Describe all relevant facts and information concerning the differences between an on-site hematopathology laboratory and its practice of medicine and a reference laboratory, such as Dianon, and its practice of medicine in relation to the design and evaluation of flow cytometry antibody panel for the diagnosis and classification of leukemia and lymphoma.

### RESPONSE TO INTERROGATORY NO. 11

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2). Third, this interrogatory is vague and ambiguous, as the term "on-site hematopathology laboratory" is not defined, and the term "reference laboratory" is not defined except as it relates to Dianon. Also, the term "and its practice of medicine" is ambiguous in the context of "the design and evaluation of flow cytometry panel." The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

### INTERROGATORY NO. 12

12

Describe in detail any and all changes to Medicare billing and reimbursement policies and procedures for CPT Codes 88180, 88184, 88185, 88187, 88188, and 88189 during the period 1997 to the present. For each such change in policy or procedure given in response to this interrogatory, provide the factual basis and reasons for instituting the changes made, if any.

### RESPONSE TO INTERROGATORY NO. 12

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the United States objects to this interrogatory to the extent the answer is contained in publically available sources, such as the Federal Register.

Subject to and without waiving these objections, the United States responds as follows: From 1997 until January 1, 2005, there were no changes to how Medicare paid for flow cytometry. The CPT (Current Procedural Terminology) code 88180 was used by providers and suppliers to report and receive payment for flow cytometry services. Effective January 1, 2005, CPT code 88180 was replaced by CPT codes 88184, 88185, 88187, 88188 and 88189. *See* 2005 Medicare Physician Fee Schedule final rule published on November 15, 2004 (69 Fed. Reg. 66236). As indicated on page 66367 of the 2005 final rule, CMS accepted the work relative value units recommended by the AMA Relative Value Update Committee (RUC) for codes 88184, 88185, 88187, 88188, and 88189. CMS also accepted the practice expense inputs for clinical labor, medical supplies and medical equipment recommended by the RUC for CPT codes 88184 to 88189. These inputs and their prices were used to create the practice expense relative value units. The change to a different coding system for flow cytometry had been contemplated

13

in the August 15, 2003 proposed physician fee schedule rule, where CMS expressed concern

with the CPT coding system for flow cytometry, stating that "The current coding system

(payment on a per marker basis) may encourage the performance of more markers than may be

medically necessary because the pathologist determines what markers to perform and when to

perform them." 68 Fed. Reg. 49030, 49048. For further information on the issues CMS

identified with the coding of flow cytometry under CPT Code 88180, see p. 49047 – 49048 of the

August 15, 2003 proposed rule.

**INTERROGATORY NO. 13**

Describe all reasons, if any, why Medicare did not establish a flat fee for conducting flow
cytometry antibody panel testing for leukemia and lymphoma, rather than charging on a per
antibody basis, during the period 1997 through 2004.

**RESPONSE TO INTERROGATORY NO. 13**

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the term "flat fee"

is vague and undefined. Third, the United States objects to this interrogatory on the grounds that

it seeks information not relevant to the claims or defenses of any party and is not reasonably

calculated to lead to the discovery of admissible evidence. Fourth, the United States objects to

this interrogatory to the extent the answer is contained in publically available sources, such as the

Federal Register.

Subject to and without waiving these objections, the United States responds as follows:

In most cases, CMS relies on the AMA's CPT codes and coding guidelines. Physicians follow

the CPT conventions in reporting the code that most appropriately describes the service provided.

14

Physician fee schedule payment allowances are established based on the CPT descriptor. From

1997 through 2004, the descriptor for CPT code 88180 was "Flow Cytometry; each cell surface,

cytoplasmic or nuclear marker quantifies cell surface, cytoplasmic or nuclear antigens."

According to the CPT descriptor, this code was reported by the marker. Therefore, Medicare

relied on the AMA's CPT "per marker" description to pay for flow cytometry.

### INTERROGATORY NO. 14

In each instance you contend that Dianon submitted a claim to you for medically
unnecessary flow cytometry antibody panel testing for leukemia and lymphoma during the period
1997 through March 31, 2004, describe in detail the reasons why the claim was not denied.

### RESPONSE TO INTERROGATORY NO. 14

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this interrogatory on the grounds that it seeks information not relevant to the claims or

defenses of any party and is not reasonably calculated to lead to the discovery of admissible

evidence.

Subject to and without waiving these objections, the United States responds as follows:

Medicare and Tricare expect providers to have knowledge of the statutes, regulations and

guidelines regarding coverage for Medicare and Tricare services, including, but not limited to,

the following: Medicare only covers reasonable and necessary medical services, 42 U.S.C. §

1395y(a)(1)(A), and providers should provide economical medical services, and then, only when,

and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1). See also Tricare regulations

at 32 C.F.R. § 199. In addition, each time a provider submits a claim, it certifies on the CMS

15

1500 claim form that the services in question "were medically indicated and necessary for the health of the patient."   Thus, Medicare and Tricare do not generally review claims for medical necessity prior to paying claims.

### INTERROGATORY NO. 15

List all instances in which you declined to reimburse Dianon for a claim submitted to you for flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 through March 31, 2004 and state the reasons for declining to reimburse Dianon.

### RESPONSE TO INTERROGATORY NO. 15

The United States objects to this interrogatory on the following grounds.  First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence.  Third, the United States objects to this interrogatory to the extent that it seeks documents and information that is in the control, custody or possession of Dianon.  Fourth, the interrogatory is overly broad and unduly burdensome.

Subject to and without waiving these objections, the United States responds as follows: Each time a claim is denied a Remittance Advice containing a denial code (formerly called an "Action Code" and currently called a "Reason Code") and/or a Remark Code is sent to the Medicare provider who submitted the claim.  Thus, for each instance where a flow cytometry claim was denied by Medicare, Dianon already has in its possession the reason for the denial.

### INTERROGATORY NO. 16

Provide a definition of the term "medically necessary" as it relates to flow cytometry antibody panel design and evaluation.

16

## RESPONSE TO INTERROGATORY NO. 16

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request to the extent that it seeks documents and information that is in the control, custody or possession of Dianon. Third, the request is overly broad and unduly burdensome. For example, this interrogatory appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fourth, the United States objects to this interrogatory to the extent it seeks information that is publically available, such as Medicare's regulations related to medical necessity, as well as publically available Local Medical Review Policies and Local Coverage Determinations that discuss flow cytometry and medical necessity. Fifth, the United States objects to this interrogatory pursuant to Fed. R. Civ. P. 33(d), because the answer to this interrogatory can be derived or ascertained from the documents being produced pursuant to document requests below.

Subject to and without waiving these objections, the United States responds as follows: The medical necessity definitions are contained in publically available statutes and regulations, as well as publically available Local Medical Review Policies and Local Coverage Determinations related to flow cytometry (which are being produced in response to Dianon's document requests, below), as well as the publically available medical literature related to flow cytometry.

## INTERROGATORY NO. 17

Describe all efforts you made to notify Dianon that you believed its 26 antibody panel, or portions thereof, used in leukemia and lymphoma testing was medically unnecessary.

17

**RESPONSE TO INTERROGATORY NO. 17**

The United States objects to this interrogatory on the following grounds. The United States incorporates by reference its General Objections, stated above.

Subject to and without waiving these objections, the United States responds as follows: A Medicare and Tricare provider, such as Dianon, has a duty to know the statutes, regulations and guidelines regarding coverage for Medicare and Tricare services, including, but not limited to, the following: Medicare only covers reasonable and necessary medical services, 42 U.S.C. § 1395y(a)(1)(A), and providers should provide economical medical services, and then, only when, and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1). See also Tricare regulations at 32 C.F.R. § 199. In addition, each time a provider submits a CMS 1500 claim form the provider certifies that the services in question "were medically indicated and necessary for the health of the patient." Moreover, pursuant to 42 C.F.R. § 411.406, a Medicare provider is on notice that services it provided were not reasonable and necessary based on, among other things, its receipt of CMS notices, including manual issuances, bulletins or other written guides or directives from carriers, as well as a provider's knowledge of what are considered acceptable standards of practice in the local medical community.

**INTERROGATORY NO. 18**

Do you agree that training hematopathologists to use one standard antibody panel as opposed to numerous different antibody panels will, to a reasonable degree of medical certainty, decrease the error rate in diagnosing and classifying leukemias and lymphomas. If you do not agree, state the reasons and factual basis for your disagreement.

**RESPONSE TO INTERROGATORY NO. 18**

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2). Third, this interrogatory is vague and ambiguous, as the number of antibodies in the referenced "standard antibody panel" is not defined. In addition, the term "numerous different antibody panels" is ambiguous. For example, it is unclear whether "numerous" means, for example, four or five different antibody panels, ten or eleven different antibody panels, or some higher number of different panels. Furthermore, the phrase "decrease the error rate" is vague and undefined. The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

**AS TO THE OBJECTIONS:**

1-/7/05
DATE

RICHARD M. MOLOT
UNITED STATES ATTORNEY'S OFFICE
ASSISTANT U.S. ATTORNEY
FED. BAR # ct21676
157 CHURCH STREET
P.O. BOX 1824
NEW HAVEN, CT 06508

61

Respectfully submitted,

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL


KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


RICHARD M. MOLOT
UNITED STATES ATTORNEY'S OFFICE
ASSISTANT U.S. ATTORNEY
FED. BAR # ct21676
157 CHURCH STREET
P.O. BOX 1824
NEW HAVEN, CT 06508
(203) 821-3700 (phone)
(203) 773-5373 (fax)
Richard.Molot@usdoj.gov


MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
RYAN FAYHEE
ATTORNEYS, CIVIL DIVISION
COMMERCIAL LITIGATION BRANCH
P.O.BOX 261, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
Telephone:  (202) 307-0238

Attorneys for the United States

**AS TO THE RESPONSES:**

James Menas, Health Insurance Specialist in the Division of Practitioner Services, Hospital & Ambulatory Policy Group, in the Centers for Medicare & Medicaid Services, being duly sworn, deposes and says:

1. I have read the Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' First Set of Interrogatories.

2. The factual information sought by the Dianon's First Set of Interrogatories that relate to CMS is not within the personal knowledge of any one employee or several employees of CMS.

3. Information necessary to answer questions related to CMS was based on information collected from various sources within CMS.

4. To the best of my information and belief, the factual information contained in the United States' response to Dianon's First Set of Interrogatories No. 12 and No. 13 that relate to CMS is true and correct.

12/6/2005
_____
Date

_____
James Menas

**AS TO THE RESPONSES:**

John Warren, Director of the Division of Medical Review & Education, in the Office of Financial Management in the Centers for Medicare & Medicaid Services, being duly sworn, deposes and says:

1. I have read the Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' First Set of Interrogatories.

2. The factual information sought by the Dianon's First Set of Interrogatories that relate to CMS is not within the personal knowledge of any one employee or several employees of CMS.

3. Information necessary to answer questions related to CMS was based on information collected from various sources within CMS.

4. To the best of my information and belief, the factual information contained in the United States' response to Dianon's First Set of Interrogatories No. 14 through 17 that relate to CMS is true and correct.

6 DECEMBER 2005
_____
Date

_____
NAME

**AS TO THE RESPONSES:**

Maureen T. Regan, Esq., Counselor to the Inspector General for the Department of Veterans Affairs (VA), being duly sworn, deposes and says:

1. I have read the Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' First Set of Interrogatories.

2. The factual information sought by the Dianon's First Set of Interrogatories that relate to the VA is not within the personal knowledge of any one employee or several employees of the VA.

3. Information necessary to answer questions related to the VA was based on information collected from various sources within the VA.

4. I have no first hand knowledge of the facts, but to the best of my information and belief, the factual information contained in the United States' response to Dianon's First Set of Interrogatories that relate to the VA is true and correct.

11/30/05
Date

Maureen T. Regan

Maureen T. Regan, Esq.

## CERTIFICATION OF SERVICE

I hereby certify that on this 7th day of December 2005, a true and correct copy of the Plaintiff United States' Responses and Objections to Defendant Dianon Systems' First Set of Interrogatories and Request for Production of Documents, was served by first-class mail on:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Robert Salcido, Esq.
Akin Gump Strauss Hauer & Field, LLP
Robert Strauss Building
1333 New Hampshire Ave, NW
Washington, D.C. 20036

RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY