EXHIBIT 94



1

```
 1            UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
 2
    - - - - - - - - - - X
 3  UNITED STATES OF AMERICA,,      |
    ex rel. Dr. James J. Tiesinga,  |
 4        Plaintiffs,                |   No. 3:02CV1573(MRK)
                                     |
 5            v.                     |
                                     |
 6  DIANON SYSTEMS, INC.,           |
           Defendant.                |   July 25, 2006
 7  - - - - - - - - - - X

 8

 9

10

11   VIDEOTAPE DEPOSITION OF FRANK DELLI CARPINI, M.D.

12

13     Taken before Kristine A. Paradis, LSR 338, a
       Court Reporter and Notary Public within and for
14     the State of Connecticut, pursuant to Notice
       and the Federal Rules of Civil Procedure, at
15     the offices of First Coast Service Options,
       Inc., 321 Research Parkway, Meriden,
16     Connecticut, on July 25, 2006, commencing at
       10:00 a.m.

17

18

19

20

21

22

23
              FALZARANO COURT REPORTERS
24              117 North Saddle Ridge
           West Simsbury, Connecticut 06092
25                  860.651.0258
```

Falzarano Court Reporters

```
 1  position in either March of April 2001 at First
 2  Coast, did you have any experience with respect to
 3  CPT 88180?
 4              MR. MOLOT:  Object to the form of the
 5          question.  You can answer.
 6      A   Well, obviously when I was in GHI I dealt
 7  with 88180.  And that would have been my experience
 8  with it in my previous position as a Medicare
 9  carrier medical director.
10  BY MR. SALCIDO:
11      Q   And when you say you dealt with?
12      A   In the sense of putting out the policy for
13  GHI at that time.
14      Q   Were you familiar with the procedure
15  itself?
16      A   As a hands-on procedure for -- no.
17      Q   And in terms of the carrier medical
18  director's duties at First Coast, what were they?
19      A   In -- as a function -- as a role --
20      Q   Yes.
21      A   -- in the company?  The medical director
22  at First Coast Service is a medical liaison between
23  the provider community and the Medicare carrier.  It
24  serves as a -- the Medicare medical director at
25  First Coast is a con -- is an employee of the
```

1   company but serves as a consultant to all the
2   aspects of the company. So, we are at the disposal
3   of the medical review department, the appeals
4   department, the claims department, the executive
5   leadership team, and we serve as the professional
6   medical liaison for the carrier to any of the
7   aspects of the program in the community and within
8   the organization itself.
9        Q    And more precisely, what do you mean by
10  liaison between the community and the carrier?
11       A    Well, in -- one of the functions of the
12  carrier medical director is the CAC that we -- that
13  you referenced in the policy. That's the carrier
14  advisory committee. When a policy goes out, the
15  medical director puts the policy out there, presents
16  the policy for the carrier, and then serves as the
17  receiver of comments and discussions about the
18  policy before it's finalized and put into its final
19  format.
20       Q    Would one of the roles be to provide
21  information to the physician provider community?
22       A    Oh, absolutely. Education is part of the
23  role. And mostly all correspondences, either verbal
24  or written from a provider in the community or
25  practicing organization would always come through

```
 1  the medical director to contact the carrier.
 2              MR. SALCIDO:  Can we mark this as
 3       Exhibit 3.
 4
 5              (Defendant's Exhibit 3:
 6              Marked for Identification.)
 7
 8  BY MR. SALCIDO:
 9       Q    Now, if I could, Dr. Delli Carpini, I'd
10  like to refer you to the -- to the first sentence.
11  "A continuing responsibility of the Medicare
12  Carrier, required by the Health Care Financing
13  Administration, involves reviewing records to verify
14  compliance with the regulations of the Medicare
15  program."  Do you agree with that sentence?
16       A    Yes.
17       Q    Now, in terms of the next paragraph, it
18  says, "The purposes of this review is to" -- then it
19  has a colon and I'm jumping to the third bullet --
20  "rule out overutilization or abuse of the Medicare
21  program."
22            What is your understanding of the phrase
23  "rule out overutilization or abuse of the Medicare
24  program"?
25       A    Well, abuse of the Medicare program would
```

```
 1   be identifying claims that potentially are abusive
 2   in nature in the sense that the incorrect diagnosis
 3   is billed or incorrect medical necessity or usage of
 4   the service being rendered is not a covered service
 5   or a service that's not indicated for the particular
 6   scenario, the clinical scenario.
 7           Overutilization would mean that the number
 8   of services performed would exceed a certain
 9   parameter or certain clinical guideline or certain
10   review criteria that is set forth.
11      Q    Now, in terms of this exhibit, Exhibit 3,
12   are you familiar with the type of review that First
13   Coast would conduct that's embodied in this
14   document?
15      A    In this type scenario?
16      Q    Yes.
17      A    Yes.
18           MR. MOLOT:  Just for the record, this
19           document is from before he started at First
20           Coast just to make that clear.
21           MR. SALCIDO:  Yeah, I wanted to ask
22           that.
23   BY MR. SALCIDO:
24      Q    So, when First Coast came in as a carrier,
25   you weren't brought in as the medical director?
```