EXHIBIT 75

Case 3:02-cv-01573-MRK    Document 212-3    Filed 01/09/2007    Page 1 of 11



# SHANDS
## HealthCare

Legal Services

July 28, 2006

VIA FEDERAL EXPRESS
AIRBILL NO. 8581 2852 9820 0215

Ryan P. Fayhee, Esq.
U.S. Department of Justice
601 D Street, NW
CLB/CD, Room 9607
Washington, DC  20004

Re:   Response to Subpoena Duces Tecum
      United States ex rel Tsienga v. Dianon Systems, Inc.
      No. 3:02 CV 1573 (MRK)

Dear Mr. Fayhee:

Enclosed please find our responses to the Subpoena you served upon Shands Teaching Hospital and Clinics, Inc. in the above-referenced matter. We have separated the documents into eight groupings. Please accept the following explanation of the type of document in each group, and the numbered section or sections of Attachment C of your Subpoena to which those documents are intended to respond.

### Group A

Content:   Various requisition and worksheet forms.
           Responsive to items 3 and 4.

### Group B

Content:   Minutes of Laboratory Staff Meetings
           Responsive to items 2, 3, 5, and 6.

Ryan P. Fayhee, Esq.
July 28, 2006
Page 2

---

**Group C**

Content:   Policies and Procedures for evaluations currently performed.
Responsive to items 2, 3, and 5

**Group D**

Content:   Policies and Procedures for evaluations no longer performed.
Responsive to items 2, 3, and 5.

**Group E**

Content:   Flow Sheet dated 1996; Lymphoma Tray Parameters dated 11/5/07; Bone Marrow Tray Parameters dated 2/11/98.
Responsive to items 3 and 6.

**Group F**

Content:   Templates for Antibody Panels.
Responsive to items 1 and 6.

**Group G**

Content:   Quality Control Reports on Antibody Panels.
Responsive to items 1 and 6.

**Group H**

Content:   Description of Hematopathology Consultation Services; Sample Submission Instructions; Specimen Packaging and Shipping Instructions.
Responsive to item 3.

Ryan P. Fayhee, Esq.
July 28, 2006
Page 3

---

Please be advised that the Laboratory has a two-year record retention policy.

Please let me know if you require any additional documentation.

Sincerely,

Charles B. Koval
Deputy General Counsel

CBK:pg
Enclosures

# UNITED STATES DISTRICT COURT
Northern District of Florida

RECEIVED JUL 2 4 2006 SHANDS LEGAL SERVICES

United States ex rel. Tsienga,

v.

Dianon Systems, Inc.

SUBPOENA IN A CIVIL ACTION

No. 3:02 CV 1573 (MRK)
(United States District Court, District of Connecticut)

TO: Shands Teaching Hospital and Clinics, Inc., d/b/a Shands at the University of Florida
c/o Shands Healthcare Legal Services
720 SW 2nd Avenue, Suite 360A
Gainesville, FL 32601

___ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

___ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

**XX** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**SEE ATTACHMENT**

| PLACE | DATE AND TIME |
|---|---|
| **United States Department of Justice**<br>**Attn: Ryan Fayhee**<br>**601 D Street, N.W.**<br>**Washington, D.C. 20004** | **July 31, 2006**<br>**9 o'clock A.M.** |

___ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (Indicate if Attorney for Plaintiff or Defendant)<br>Ryan Fayhee<br>Commercial Litigation Branch<br>U.S. Department of Justice<br>(Attorney for the Plaintiff) | DATE<br>07/31/2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Ryan Fayhee
U.S. Department of Justice
Box 261, Ben Franklin Station
Washington, D.C. 20530  (202) 307-0240

## PROOF OF SERVICE

|  | Date | Place |
|---|---|---|
| SERVED |  |  |

| SERVED ON (Print Name) | MANNER OF SERVICE |
|---|---|

| SERVED BY (Print Name) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　Date

_____
Signature of Server

_____
Address of Server

---

le 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph of (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# ATTACHMENT A - INSTRUCTIONS FOR SUBPOENA COMPLIANCE

1. Time Period: Unless otherwise stated in any specification, this subpoena refers to Documents that were created, received or dated at any time during <u>the period of January 1, 2000 through the present</u>.

2. <u>Possession, Custody and Control</u>: This subpoena requires production of all documents responsive to one or more specifications which are in the possession, custody, or control of University of Florida College of Medicine's Custodian of Records, whether they be past or present, regardless of where located.

3. <u>Statement of "No Responsive Documents"</u>: If no documents exist that are responsive to a specification, a written statement to that effect shall be provided at the time of production.

4. <u>Identify Privileged Material</u>: Pursuant to Federal Rule of Civil Procedure 45, for any document or part thereof which is not produced by reason of a claim of privilege, the Custodian of Records shall provide: (1) the privilege being claimed and an explanation of the claim in sufficient detail to allow an assessment of its validity and (2) a description of each such document or part thereof, including, as applicable: type of document (e.g., letter, memorandum, or handwritten notes); subject matter; date of preparation; number of pages; name, address and title of author(s); and names, addresses and titles of all actual and intended recipients.

5. <u>Organization of Documents Produced</u>: All documents produced pursuant to this subpoena are to be organized in such a manner that all documents relating to a particular specification are grouped together and identified as being responsive to that specification.

6. <u>Semantics</u>: The singular form of a noun or pronoun shall be considered to include within its meaning the plural form as well and vice versa. All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tenses as well and vice versa. The words "or" and "and" are inclusive, referring to any one or more of the disjoined words or phrases and "any" and "all" also include "each and every."

7. <u>Unavailable Information</u>: To the extent that documents responsive to this subpoena once were, but no longer are, in the possession, custody or control of the Custodian of Records, this subpoena requires the production of all existing indices, lists, or documents in the possession, custody or control of the aforementioned, which reflect transfer or destruction of, or references to such documents.

# ATTACHMENT B - DEFINITIONS

1. "Shands Teaching Hospital and Clinics, Inc., d/b/a Shands at the University of Florida" means Shands Teaching Hospital and Clinics, Inc. and all affiliate(s); segment(s); region(s); division(s); group(s) and related organizations, joint ventures and partnerships; any present or former officers, directors, employees, agents, or members of the board of directors of these entities.

2. Document(s)" means writings or records of every kind or character, conveying information by mechanical, electronic, photographic, or other means, whether encarded, taped, stored or coded electrostatically, electromagnetically, or otherwise. "Document(s)" includes, but is not limited to: reports, records, correspondence, letters, envelopes, messages, notes, memoranda, calendars, diaries, minutes of meetings, working papers, directives, manuals, instructions, guidelines, analyses, agreements, accounts, summaries of investigations, contracts, charts, graphs, drawings, diagrams, press releases, trade letters, comparisons, books, notices, articles, magazines, newspapers, bulletins, internal and external newsletters, brochures, surveys, questionnaires, electronic mail, voicemail messages, facsimiles, telegrams, videotapes, audiotapes, photographs, films, magnetic tapes, computer discs (including floppy discs, hard discs, and hard drives), data cells, all programming instructions, record layouts, and other material necessary for the retrieval of all electronic or word processing material and printouts of data or information stored or maintained by electronic means, microfiche, microfilm, and telephone directories. "Document(s)" also includes preliminary drafts or revisions, any attachments or enclosures, as well as copies or duplicates that are not identical to the original because of additions, deletions, alterations or notations.

    **Documents requested herein do <u>not</u> include patient medical records, charts, test results, or any other HIPAA protected health information.**

3. "Relating to" means in any way to concern or to pertain to, whether directly or indirectly.

# ATTACHMENT C - ITEMS TO BE PRODUCED

1. All documents relating to how Shands Teaching Hospital and Clinics, Inc.'s panels of antibodies used in providing flow cytometry services were created or developed.

2. All documents including, but not limited to, protocols, procedures, or manuals, relating to panels of antibodies used by Shands Teaching Hospital and Clinics, Inc. in providing flow cytometry services.

3. All documents relating to Shands Teaching Hospital and Clinics, Inc.'s standard operating policies and procedures for flow cytometry services.

4. All versions of Shands Teaching Hospital and Clinics, Inc.'s requisition forms relating to flow cytometry services.

5. All documents relating to Shands Teaching Hospital and Clinics, Inc.'s training on how to provide, conduct, or bill for flow cytometry services.

6. All documents relating to any consideration, discussion, or decision by Shands Teaching Hospital and Clinics, Inc. to change the number of antibodies in its panels when providing or conducting flow cytometry services.

**Documents requested herein do not include patient medical records, charts, test results, or any other HIPAA protected health information.**

**Hematopathology Meeting**
**May 17, 2006**

**In attendance:** Dr. Braylan, Mai, Sandy, Linda, Kay, Hailan, Roger

1. A.  UF genetics laboratory will be moving to Rocky Point;
   B.  LABCO will be marketing the laboratory beginning 7/1/2006
   C.  Dr. Allen (sp?) will soon be joining Hematopathology as faculty and as a new attending physician.

2. When acquiring data from samples with a low percentage of B-cells, use one of the following gating strategies, such as acquiring more CD 19 or CD 20 positive cells, including the large cells, or simply acquire more total events, in order to generate a smooth kappa/lambda histogram with good peak separation. Also, check the cytospin for correlation between the sample itself and the flow data generated.

   ***We will begin the new types of trays, sometime around November 2006, or sooner, (BBS, confirmed CML, and Lymphocytosis without other abnormalities), we will also be adjusting our gating (or time) strategy so that we acquire more mononuclear cells by gating out granulocytes, so stay tuned! Note that CD11c and CD 22 have been added to the new trays. See your copy of the new trays handed out during the meeting. The issue of charges on confirmed CML cases will depend on whether the test is for clinical (charge) or research (no charge) – see Agnieska about charges.

   Also, we will begin using a two-stage DETECTION versus DIAGNOSIS approach: for the initial screening tests we will use new types of trays that have a fewer number of wells in order to be more cost-effective. Once preliminary screening data shows an abnormality, more specific antibodies will be run for a definitive diagnosis. ***

3. If a case for Hematopathology is received without any test requested, log in the sample and contact the ordering physician to initiate the proper test, but DO NOT process or submit charges until a specific test is ordered by the referring physician or institution. If you are unable to resolve the ordering problem, speak with one of the physicians in the scope room who will contact the physician who sent the sample to our department.

4. We should all have access to FCS express software for analyzing hematopathology data. DNA analysis will still be carried out using Modfit software. Training issues and analysis templates still need to be resolved for FCS express.

5. CML research patients and confirmed CML patients have a two-tube panel: CD11b/13/45/34 and CD15/33/45/DR . Those patients designated as research

cases will not be charged for these tests – we still need to work out the charge details with Agnieska(?). [See #2 above.]

6. Our new flow cytometer should be purchased soon after the July 1st fiscal year begins.

7. Please be careful to capture and cancel all appropriate charges on the charge sheet or order/cancel in PowerPath, e.g., iron stains, cytogenetics, mince & hold, etc.

8. Hold Analysis Station data for one month, i.e., on our hard drive, in addition to that being held on our group server.

9. Stem cell counts on thawed cord blood are to be sent to Jose at Hematology Associates.

10. We need to elaborate duties for routine cleaning up of old data on our hard discs by burning to CDs, printing, etc., as well as any other leveling out of duties to make our lab work more efficiently.

11. The holiday schedule was worked out for the technologists by volunteering for dates so plans can be made in advance.

12. Accomplishments for last year???  Goals for next year???