UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA <br> ex rel. DR. JAMES J. TIESINGA, <br><br> Plaintiffs, <br><br> v. <br><br> DIANON SYSTEMS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )   No. 3:02 CV 1573(MRK) <br> ) <br> )   February 16, 2007 <br> ) <br> ) <br> ) |

### GOVERNMENT'S PROPOSED SCHEDULE

Pursuant to the Court's January 29, 2007 Ruling and Order, the United States respectfully submits the following proposed schedule related to the trial of this matter, including a listing of anticipated witnesses and expected duration of trial.

Claims Data and Statistical Sample

There are two related issues that will have an important effect on the expected duration of the trial. These two issues are (1) the admission into evidence of the thousands of claims submitted by Dianon to the Government for flow cytometry services and (2) the use of a statistically valid sample to prove damages. During oral argument on its summary judgment motion, counsel for Dianon indicated that because there were thousands of claims at issue, the trial of this matter would take "months." The Government disagrees with this assessment, and requests the Court's guidance on these two issues.

First, during discovery in this matter the Government provided Dianon with CD's containing all of the clams data, in electronic form, submitted by Dianon during the relevant time-period. The electronic data includes, among other information, the date of the claim, the

claim number, the relevant billing code, the number of units billed, the beneficiary identification number, and the amount paid to Dianon by the Government for the claim. This claims data reflects, with precision, each of the thousands of claims that were submitted to the Government by Dianon for flow cytometry services.[1] It would be a complete waste of trial time for the Government to have to print out and introduce each claim into evidence, claim-by-claim. Dianon has the ability to verify the accuracy of its own claims data that the Government has provided. The Government has asked Dianon to consider entering into a stipulation regarding the admissibility of the claims data to reflect the claims submitted by Dianon in this matter. Dianon has indicated that it was still "inspecting" the data and would respond after the Court ruled on its summary judgment motion. If the parties can stipulate to the admissibility of the claims data as evidence of Dianon's submission of the claims in question, this will certainly reduce trial time.[2]

The second issue involves the use of the Government's statistical sample to prove damages. As noted above, there are thousands of claims at issue here. Obviously, it would have taken Dr. Flynn, the Government's medical expert, years to review each and every one of the thousands of claims at issue. In addition, introducing evidence and testimony as to each and every patient chart and each and every claim would take months of trial time. Accordingly, the

---

[1]  Most of the actual claims in question were submitted by Dianon electronically. Even where a claim was not submitted electronically, the claims data is a precise record of the paper claim that Dianon submitted.

[2]  During discovery in this action, the Government, pursuant to a formal document request, asked Dianon to produce all the claims and "electronic claims" at issue. Dianon made available for inspection and copying several hundred boxes of documents at its warehouse in Stratford, CT. However, a review of those boxes by the Government indicated that they contained "remittance" information reflecting the payments that Dianon received from the Government, not the claims themselves. Dianon employees indicated that the claims were kept in electronic form. However, despite repeated requests, Dianon has never produced these electronic claims.

Government retained Clifton Gunderson, LLP, a forensic accounting firm, to design a statistically valid random sample and to perform a damages assessment for use at trial. Dr. Flynn reviewed the patient records for the claims in the sample (over 400) and Clifton Gunderson then utilized the results of Dr. Flynn's review to extrapolate damages over the universe of claims. The Clifton Gunderson expert report, which sets forth the sampling methodology and damages analysis in detail, is attached as Exhibit 14 to the Government's memorandum of law submitted in opposition to Dianon's *Daubert* motion.

It is the Government's intention to utilize the results of the statistical sample to prove its damages at trial. Courts have approved the use of statistical sampling in Medicare and Medicaid overpayment and fraud cases. *See, e.g., Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 89-90 (2d Cir. 1991) (approving use of statistical sample to determine Medicaid overcharges against clinical lab and noting that to rule otherwise would "hamstring [the government's] attempts to eliminate fraud"); *Chaves Cty. Home Health Serv., Inc. v. Sullivan*, 931 F.2d 914, 917-19 (D.C. Cir. 1991) (affirming use of statistical sampling to determine Medicare overpayment); *United States v. Cabrera-Diaz*, 106 F.Supp.2d. 234, 240-42 (D. Puerto Rico 2000) (statistical sample used to prove damages in False Claims Act case).

Dianon has indicated that it will object to the Government's use of the statistical sample at trial to prove damages. Dianon's position is that the Government must prove each of the thousands of claims at issue here on a claim-by-claim basis. The Government respectfully requests that the parties be permitted to fully brief this issue and have it decided by the Court well in advance of trial. Such a decision will obviously have a critical impact on the expected duration of the trial.

Listing of Witnesses

The following is a list of the Government's potential witnesses for its case-in-chief, in alphabetical order, with an estimate of the approximate time for the direct examination of each witness[3]:

R. James Alerding-1 hr  
Dr. James Amberson-2hrs.  
Grant Carlson-1 hr.  
Steve Conway-30 min.  
Dr. Anne Marie Conner-1 hr.  
Dr. Frank Delli Carpini-2-3 hrs.  
Mark Florio-1 hr.  
Dr. Stuart Flynn-4-5 hrs.  
Dr. Richert Goyette-1 hr.  
William McDowell-1 hr.  
Special Agent David Mehring-1 hr.  
Dr. Suha Mishalani-1 hr.  
Valerie Palmieri-1 hr.  
Rose Sabo-1 hr.  
Serena Selzer-30 min.  
Jean Stone-1 hr.  
Dr. James Tiesinga-2-3 hrs.  
Constantin Yiannoutsos, PhD.-2-3 hrs.

Expected duration of trial and time limits on examination of witnesses

The Government estimates that its case-in-chief will take approximately 5-7 trial days, and that the total duration of the trial will take approximately 10-15 trial days. The Government has no objection to time limits being placed on the examination and cross-examination of witnesses. The Government suggests a general limit of two-hours for direct examination and one-hour for cross-examination. A few of the Government's key witnesses will take more than two hours on direct, as outlined above, but many of the Government witnesses will take substantially less time then two hours.

---

[3] This is the Government's list of potential witnesses at this time. The Government may need to add or subtract a few witnesses prior to trial.

4

Witnesses Availability

At oral argument on January 17, 2007, the Court indicated that its schedule was full until June 2007. Accordingly, the Government inquired as to the availability of its potential witnesses during the time period **June 1-Sept. 30, 2007**.[4]

- Dr. Stuart Flynn: Unavailable from July 1 through Aug. 15, with the exception of the week of July 16.

- Jean Stone: Unavailable June 7-12 and Aug. 17-24.

- Steve Conway: Unavailable last week of June and first week of July.

- Constantin Yiannoutsos, PhD: Unavailable July 15 until first week of September.

- Dr. Frank Delli Carpini: Unavailable Aug. 10-27.

- Serena Selzer: Unavailable June 18-22 and July 2-5

- Rose Sabo: Unavailable first week in June.

Proposed schedule for Joint Trial Memorandum and Trial

Because of witness schedules, as set forth above, the Government respectfully requests that the trail in this matter be scheduled for September 2007, with the parties' Joint Trial Memorandum due three weeks before trial.

>Respectfully submitted,
>
>PETER D. KEISLER
>Assistant Attorney General
>
>KEVIN J. O'CONNOR
>United States Attorney

---

[4] The Government has been unable to reach a few non-party witnesses and has not contacted the Dianon witnesses that it may call at trial.

5

[signature]

RICHARD M. MOLOT
Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
Richard.Molot2@usdoj.gov
(203) 821-3700


MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
MELISSA A. MEISTER
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0240
Facsimile: (202) 305-7797
Attorneys for the United States

## CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of February 2007, a true and correct copy of the Government's Proposed Schedule was served by first-class mail and electronic mail on:

Robert Salcido, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Bruce Parker, Esq.
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland 21201

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Richard M. Molot
Assistant U.S. Attorney