# EXHIBIT 25

COPY

1

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT
 2

 3   - - - - - - - - - - X
     UNITED STATES OF AMERICA,,      |
     ex rel. Dr. James J. Tiesinga, |
 4           Plaintiffs,             |   No. 3:02CV1573(MRK)
                                     |
 5                v.                 |
                                     |
 6   DIANON SYSTEMS, INC.,           |
             Defendant.              |   July 25, 2006
 7   - - - - - - - - - - X

 8

 9

10

11       VIDEOTAPE DEPOSITION OF SERENA SELZER

12

13       Taken before Kristine A. Paradis, LSR 338, a
         Court Reporter and Notary Public within and for
14       the State of Connecticut, pursuant to Notice
         and the Federal Rules of Civil Procedure, at
15       the offices of First Coast Service Options,
         Inc., 321 Research Parkway, Meriden,
16       Connecticut, on July 25, 2006, commencing at
         9:30 a.m.

17

18

19

20

21

22

23
                  FALZARANO COURT REPORTERS
24                 117 North Saddle Ridge
            West Simsbury, Connecticut 06092
25                    860.651.0258
```

1  conducted for responsive documents, when did that

2  begin?

3      A    When did I become involved?

4      Q    No.  When did the search for responsive

5  documents begin?

6      A    Well, my knowledge is I became involved in

7  September of '05.

8      Q    Do you know whether there were efforts

9  before that time?

10      A    I have seen documents that represent that,

11  yes.

12      Q    And when was the first search conducted

13  for documents responsive to CPT 88180 that are

14  relevant to this lawsuit?

15      A    I've seen records that indicate as far

16  back as 2003.

17      Q    Were any memorandum submitted to any of

18  the employees instructing them to hold onto

19  documents that are responsive to items -- to item 4

20  in Exhibit 1?

21              MR. MOLOT:  Object to the form of the

22          question.

23      A    Yeah, that's confusing to me.  I'm sorry.

24  BY MR. SALCIDO:

25      Q    Yeah.  Was at any time a memo or other

1  instruction issued to employees to retain documents

2  re -- relevant to this lawsuit?

3      A    Not that I'm aware of.

4      Q    In those documents that may go back as far

5  as '03, do you recollect how they related to item 4

6  in Exhibit 1?

7      A    The documents that I've seen were

8  predominantly correspondence between Delli Carpini

9  and Dianon.

10     Q    And do you know what the subject matter

11  related to?

12     A    Flow cytometry is my recollection.

13          MR. SALCIDO:  Okay.  That's all I have.

14     Thank you.

15          THE WITNESS:  Thank you.

16          MR. MOLOT:  Why don't I take two minutes

17     with her and I might have a couple questions

18     to clarify things.

19          MR. SALCIDO:  Sure.  Okay.

20          THE VIDEOGRAPHER:  Going off record.

21     The time is 9:42.

22

23          (Recess taken:  9:42 to 9:47 a.m.)

24

25

```
 1              THE VIDEOGRAPHER:  Back on record.  Time

 2         is 9:47.

 3

 4              CROSS-EXAMINATION

 5

 6    BY MR. MOLOT:

 7         Q    Ms. Selzer, Attorney Salcido asked you

 8    about checking with Dr. Toor for documents.  Do you

 9    know what company Dr. Toor worked for?

10         A    UHC.

11         Q    What's UHC?

12         A    United Healthcare.  It's the -- it was the

13    prior Medicare carrier prior to FCSO taking over in

14    2001.

15         Q    Prior to FCSO?

16         A    First Coast Service Options.  Sorry.

17         Q    And what efforts, if any, did you

18    undertake to search United Healthcare records for

19    relevant documents?

20         A    There were 14 banker boxes full of

21    documents related to medical policy, medical review,

22    in the office of the medical director.  And all 14

23    of those boxes were searched.

24         Q    And what were they searched for?

25         A    Anything related to Dianon, flow
```

13

1  cytometry, or CPT code 88180.

2      Q    Attorney Salcido also asked you about some

3  type of extraction program for data.  Do you recall

4  that?

5      A    I do.

6      Q    Did you understand that to be BESS data or

7  did you understand what that was?

8      A    No.

9      Q    What efforts, if any, were made to get

10  BESS data related to flow cytometry?

11      A    In response to a request from the office

12  of inspector general, we had our director of data

13  analysis pull all the BESS data for OIG.

14      Q    For flow cytometry?

15      A    For flow cytometry, yes.

16      Q    And that was for Connecticut?

17      A    Yes.

18      Q    Attorney Salcido also asked you about

19  whether or not you sent memos around to employees

20  about preserving documents.  Can you explain why you

21  didn't need to do that?

22      A    My practice is immediately upon request

23  that I distribute the document.  I scan it and PDF

24  it to all of the parties involved, send it to them,

25  and go ahead and start with the production.  So,

14

```
1    it's sort of an informal memo to go ahead and get

2    started in looking for the documents.

3        Q    And did you do that in this case?

4        A    I did.

5        Q    And is there any kind of CMS memo or

6    directive about retaining documents for the

7    carriers?

8        A    Yes.  We are -- all carriers and

9    intermediaries are under a do not destroy.  It's

10   from a JSM, a joint signature memorandum.

11       Q    And what does that mean?

12       A    That means you can't destroy any documents

13   for any reason.

14            MR. MOLOT:  That's all I have.  Thank

15        you.

16            THE WITNESS:  Okay.

17            MR. SALCIDO:  I had a few follow-up.

18

19            REDIRECT EXAMINATION

20

21   BY MR. SALCIDO:

22       Q    Where is the United Healthcare documents

23   maintained?

24       A    In Iron Mountain storage.

25       Q    And how long are they retained for?
```

Falzarano Court Reporters

```
 1        A     We're under a do-not-destroy memo from

 2   CMS.  So, until we're released from that we'll

 3   retain them.

 4        Q     Now, you said immediately upon request

 5   that the employees are, informally at least, advised

 6   not to destroy documents.  When did that occur in

 7   this case?

 8        A     Each request that I got, the -- when the

 9   request came in, the day it came in, it was scanned

10   and sent to the appropriate people to go ahead and

11   begin the search for the documents.

12        Q     So, if a request came in in August 2005

13   and you received it in August 2005, you would have

14   sent that out approximately in August 2005?

15        A     Absolutely.

16        Q     When was the earliest point in which you

17   did it in this case?

18        A     Me personally?

19        Q     Yes.

20        A     August of '05.  No, I'm sorry, September

21   of '05.

22        Q     September '05?

23        A     Was the first request that I was involved

24   in, yes.

25        Q     Do you know if someone was involved before
```