UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA,<br><br>    Plaintiffs,<br><br>v.<br><br>DIANON SYSTEMS, INC.,<br><br>    Defendant. | No. 3:02CV1573(MRK) |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF FALSE CLAIMS ACT LIABILITY**

I.  **INTRODUCTION**

In this motion, Dianon challenges the admissibility of:

- Dr. Flynn's testimony to establish False Claims Act liability because admission of his testimony for this purpose would violate Dianon's Constitutional Due Process rights. [1]

- Dr. Yiannoutsos' calculation of damages through statistical sampling because: (1) it sets a retroactive cap on reimbursement; (2) the sample used does not represent Dianon's patient population; and (3) the calculation does not take into account variability of the medical community or the variability of Dr. Flynn's flow cytometry panel designs thereby contradicting the Government's theory of liability.

---

[1] Notwithstanding the Court's denial of Dianon's Motion for Summary Judgment, this motion provides an independent, evidentiary basis to exclude Dr. Flynn's opinions to establish False Claims Act liability.

- Dianon's 1996 billing mistake as a basis for False Claim Act liability. This theory of liability was not included in the Government's Amended Complaint.

## II. FACTUAL BACKGROUND

Dr. Flynn reviewed two samples of Medicare patient flow cytometry results. *Exhibit 1*, Government Damage Disclosures at 1. He reviewed both samples to determine the medical necessity of Dianon's antibodies used in its flow cytometry test for each patient. *Id.* Dr. Flynn made test-by-test determinations of which antibodies were medically necessary depending upon the patient's presenting symptoms and medical history. *Exhibit 2*, Deposition of Stuart Flynn, M.D. at 140:6-14. The Government retained a statistician, Constantin Yiannoutsos, who: (1) selected a sample of claims based on Dianon's billing practices; (2) took Dr. Flynn's reviews of these claims and averaged them; and (3) calculated damages by taking the statistical mean or average of all of Dr. Flynn's review (approximately 16 antibodies for initial testing, 12 antibodies for repeat testing) and then subtracted that amount from every test. *Exhibit 3*, Deposition of Constantin Yiannoutsos at 119:14 – 121:5, *Exhibit 4*, Report of Constantin Yiannoutsos at 4-5.

The Government has admitted that the "definition of the term 'medically necessary' as it relates to flow cytometry antibody panel design and evaluation" is found in "publicly available statutes and regulations, as well as publicly available local medical review policies (and) ... available medical literature." *Exhibit 5*, United States Answer to Interrogatory No. 16. The Government has admitted that no such published standards exist. Neither the Government nor the Connecticut carrier ever notified Dianon that it

was going to adopt, as other carriers had, a limit on the number of antibodies it would consider medically necessary. The Government statistician's estimation of Dr. Flynn's opinions, that on average 12 to 16 antibodies are medically necessary, was never published or provided to Dianon prior to this litigation. *Exhibit 4* at 12, 15-16.

### III. DR. FLYNN'S OPINIONS AS REFLECTED IN HIS REVIEW OF 438 TESTS ARE NOT ADMISSIBLE TO ESTABLISH FALSE CLAIMS ACT LIABILITY

The Government may not introduce evidence that violates Dianon's constitutional rights. Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States …"), *Rock of Ages Corp. v. Secretary of Labor*, 170 F.3d 148 (2nd Cir. 1999) (citations omitted) (due process requires that regulations must be sufficiently specific to give ordinary person notice of what is prohibited). Dr. Flynn's opinions cannot be used to dictate the appropriate number of antibodies because neither Dianon, nor any other healthcare provider, was put on notice of Dr. Flynn's opinions or told that using more antibodies than what Dr. Flynn deems appropriate would subject a provider to massive civil penalties and treble damages.

Rather than provide notice and warning to the medical community of prohibited flow cytometry practices, the Government has defined the number of medically appropriate antibodies in this litigation. Rather than CMS or its fiscal intermediaries publishing regulations limiting flow cytometry reimbursement, the Government has attempted to establish such a limit in this litigation.

The current version of the False Claims Act "imposes damages that are essentially punitive in nature." *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784-85 (2000). Specifically, the current False Claims Act "imposes treble

damages and a civil penalty of up to ($11,000) per claim." *Id.* at 785, *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.").

Before the Government can impose civil penalties or punish alleged wrongdoers, constitutional due process requires adequate notice of acts that could trigger such penalties. Const. Amend. 5, *Lambert v. People of the State of California*, 355 U.S. 225, 228 (1958) ("Engrained in our concept of due process is the requirement of notice."), *County of Suffolk, New York v. First American Real Estate Services*, 261 F.3d 179, 195 (2d Cir. 2001) (due process requires "fair warning of the conduct prohibited" before significant civil penalties can be levied). Fair notice is <u>not</u> given if the regulation at issue "is so ambiguous that a regulated party cannot be expected to arrive at the correct interpretation, must therefore look to the agency for guidance, and the agency failed to articulate its interpretation before imposing a penalty." *U.S. v. Lachman*, 387 F.3d 42, 57 (1st Cir. 2004) *citing PMD Produce Brokerage Corp. v. USDA*, 234 F.3d 48, 53 (D.C.Cir. 2000). The Government did not give fair notice that the term "medically necessary," as applied to flow cytometry, precluded the use of a 26 antibody panel.

The Government's theory (and Dr. Flynn's opinions) that a laboratory must analyze each patient and determine antibodies necessary for that patient does not comport with due process standards. As long as two doctors would disagree as to the number of antibodies necessary for a particular patient, no set standard exists that a laboratory could follow. *See also,* Dianon's Memorandum to Support Motion for Summary Judgment at 7-11 and cases cited therein (False Claims Act liability cannot be imposed based upon a

disagreement of scientific opinion in the absence of set standards). The only "standard" the Government has created is the statistician's average of Dr. Flynn's opinions and estimation that 12 to 16 antibodies are medically necessary.

This standard, retroactively applied to 1996-2003 claims, runs counter to the Supreme Court's interpretation of the Government's power to create retroactive Medicare cost adjustments. *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212-13 (1988) (Medicare statutory provisions contain no authorization for retroactive rulemaking). Unlike *Bowen*, in this case the Government did not go through the process of rulemaking to place Dianon on notice of an antibody cap. Instead, Justice Department counsel hired litigation experts to create a heretofore nonexistent standard, applied it retroactively, and claimed Dianon committed fraud for failing to adhere to a standard that did not exist. *See, Bowen v. Georgetown University Hospital*, 488 U.S. at 212 (the court does not have to accept Government counsel's "interpretation of a statute where the agency itself has articulated no position on the question.").

Dr. Flynn's unpublished, unknown opinions concerning flow cytometry practice cannot be used to establish either liability or damages. In effect, the Government has replaced its inaction with Dr. Flynn's opinions and then retroactively applied those opinions to establish fraudulent overpayment. Courts have struck down both the imposition of penalties without notice of prohibited conduct and the retroactive application of reimbursement rules. These decisions are equally applicable in this case. Therefore, Dr. Flynn's opinions should not be admissible as a basis of liability or a measure of damages.

## IV. STATISTICAL ESTIMATES OF THE NUMBER OF MEDICALLY NECESSARY ANTIBODIES FOR FLOW CYTOMETRY TESTING ARE INADMISSIBLE TO ESTABLISH FALSE CLAIMS ACT LIABILITY OR DAMAGES

The Government's statistician averaged Dr. Flynn's patient review results and determined 12 to 16 antibodies are medically necessary. To compute damages, the statistician took these averages and subtracted them from the amount billed for each test Dr. Flynn did not review (*i.e.* the remaining 12,100 tests). *Exhibit 4* at 119:14 – 121:4. This use of statistical sampling is inadmissible to establish False Claims Act liability for three reasons. First, Dr. Yiannoutsos' methodology sets a retroactive cap on reimbursement without notice of the alleged prohibitive cap. Second, Dr. Yiannoutsos' sampling technique does not represent the presenting symptoms or diseases that allegedly should dictate flow cytometry panel design. Therefore there is no basis to conclude that the cases Dr. Flynn reviewed were representative of the entire population of claims. Third, Dr. Yiannoutsos did not account for any variability in Dr. Flynn's patient reviews or that there is variability among experts regarding which and/or how many antibodies should be used in a flow cytometry panel. His calculations do not fit the Government's theory of this case and therefore are irrelevant.

### A. Dr. Yiannoutsos' methodology retroactively caps Dianon's reimbursement at 16 antibodies, contradicting Dr. Flynn's stated opinions.

The Government's attempt to compute damages in this fashion is nothing more than a retroactive adoption of a cap on antibodies that is not allowed under Medicare law. *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212-213 (1988). Dr. Yiannoutsos recognizes that Dianon only billed for 18 antibodies for more than two years (September

1997 through December 2000). *Exhibit 4* at 8. As noted in the Daubert hearing, Dr. Flynn allowed 18 or more antibodies in many cases – including cases during the time Dianon billed 18 antibodies. *Exhibit 6,* Dr. Flynn reviews. Therefore, Dr. Yiannoutsos application of no more than 16 antibodies to every test necessarily overstates Dianon's liability.

The implementation of this antibody cap is also deficient because the Government failed to put Dianon on notice that if it billed more than 16 (or 12) antibodies, it was committing fraud. Dr. Yiannoutsos' calculation of damages is not admissible for the same reasons that Dr. Flynn's opinions are not admissible – the Government's failure to notify Dianon of prohibited conduct violates Dianon's Due Process rights.

**B.     Dr. Yiannoutsos' sampling technique did not ensure the sample Dr. Flynn reviewed was representative of different presenting symptoms – the most important variable in Dr. Flynn's review.**

The patient sample Dr. Flynn reviewed was not designed to represent the various presenting diseases of Dianon's patient population. In selecting the random sample for Dr. Flynn to review, Dr. Yiannoutsos stratified his sample around three time periods that roughly coincide with different Dianon billing practices. *Exhibit 4*, report of Dr. Yiannoutsos at 8, 10. However, Dr. Flynn did not conduct his review based on Dianon's billing practices. *Exhibit 2*, Deposition of Dr. Flynn at 258:9 – 259:13. Rather, Dr. Flynn's sole focus of his review was the number of medically necessary antibodies given a particular patient's presenting disease -- the Government's theory of the case. *Id.* at 140:6-14, Amended Complaint at ¶37. Dr. Yiannoutsos did NOT stratify his sample by presenting disease or patient condition because "it would have been difficult to stratify according to …the specific disease." *Exhibit 2* at 56:19 – 57:24. While Dr. Flynn alleges

that a laboratory can construct varying disease panels for a multitude of different presenting symptoms, the Government's statistician could not even construct a model to estimate this practice. *Id.* Dr. Yiannoutsos testified that the size of the sample population was dictated by "the number of samples that could be reasonably reviewed by the expert." *Exhibit 3* at 32:17 – 33:24.

Dr. Yiannoutsos admits that the reason he is able to make an estimation of a sample and apply it to a larger population is based on the presumption that "the random sample is representative of the population." *Exhibit 3* at 96:5 – 96:14. Yet Dr. Yiannoutsos did not assess whether the presenting disease profiles were similar in each of the three time periods he used to stratify the sample or representative of all of Dianon's patients. *Id.* at 58:5 – 58:9. Indeed, Dr. Yiannoutsos' sample could not represent the varying disease presentations *because the number of different diseases exceeds his stratified samples*. For example, Dr. Yiannoutsos selected 30 tests for the period 1/1/96 through 8/31/97 and only 60 for the period between 9/1/97 through 12/31/00. *Exhibit 3* at 10, compare with *Exhibit 7*, World Health Organization classification of lymphoma and leukemia, *Exhibit 8*, Connecticut LMRP at 5. The dozens of different diseases and symptoms for Dianon patients far exceeds Dr. Yiannoutsos' sample population.

Put simply, Dr. Yiannoutsos constructed his statistical sample to reflect Dianon's billing practices but Dr. Flynn did not consider those practices in making his determinations of medical necessity. Dr. Flynn focused his review on a patient's presenting symptoms, but Dr. Yiannoutsos made no effort to assure that the presenting symptoms Dr. Flynn reviewed were representative of the entire population. Therefore,

there is absolutely no assurance that the disease processes Dr. Flynn based his determination on were reflective of Dianon's patient mix – the small patient sample Dr. Flynn reviewed could very well be the most simplistic cases and the more complex cases were under-represented or excluded altogether.  By Dr. Yiannoutsos' own admission, the sample data does not represent the patient population and therefore cannot be applied to the entire population.  Therefore, Dr. Yiannoutsos' application of Dr. Flynn's review to the entire claim population is not admissible to establish either False Claims Act liability or damages.  Fed. R. Evid. 104(b), 401, 402, 703, *Boucher v. Suzuki Motors Corp.*, 73 F.3d 18, 21 (2nd Cir. 1996) (citations omitted) (expert testimony should be excluded when assumptions underlying opinion do not fit facts of case, creating an "apples to oranges comparison"), *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) (expert's opinions should be excluded when assumptions made by expert are not based in fact), *Pugliano v. U.S.*, 315 F.Supp.2d 197, 200-01 (D.Conn. 2004) (Data expert relied upon did not fit assumptions or conclusions of expert).

      C.      **Dr. Yiannoutsos did not consider the variability of opinions or Dr. Flynn's results regarding the appropriate number of antibodies for a particular patient.**

Dr. Yiannoutsos' review does not take into account variability of opinion concerning the number of medically necessary antibodies, i.e. if two doctors (or Dr. Flynn himself) reviewed the same patient and came up with two different results.  *Id.* at 35:14 – 36:13.  Since Dr. Yiannoutsos accepted Dr. Flynn's opinions as correct, his opinions are no more reliable than Dr. Flynn's opinions.  Even if this Court finds Dr. Flynn's opinions reliable and admissible, Dr. Yiannoutsos' calculations do not

conform with the Government's theory of the case and are therefore irrelevant. Fed. R. Evid. 401, 402.

Dr. Yiannoutsos does not know if experts agree or disagree on the correct number of antibodies. *Id.* at 37:3 – 37:12. Dr. Yiannoutsos assumed that Dr. Flynn's assessments as to the number of antibodies required in a particular case were correct. *Id.* at 38:22 – 39:6. Dr. Yiannoutsos could have constructed a statistical model that allowed variability for each patient review (that Dr. Flynn may have been off by 1, 2, 3, or more antibodies), but he did not do so. *Id.* at 39:7 – 39:16. The only variability Dr. Yiannoutsos took into account was applying the average of Dr. Flynn's reviews to the entire patient population of claims. *Id.* at 39:17 – 40:21.

Dr. Yiannoutsos could have constructed a model that anticipated some variability (or margin of error) between reviewers, but did not do so. *Id.* at 42:12 – 43:3. Had he created such a model, the confidence interval would have been wider and his point estimate or statistical mean would have been different. *Id.* at 40:22 – 42:9, 49:10 – 49:19. Dr. Yiannoutsos agrees that the wider the variability around the point estimate of average permissible tests, the less accurate the estimates are. *Id.* at 44:14 – 44:21. Dr. Yiannoutsos agrees that the medical literature has proposed larger panels than Dr. Flynn proposes. *Id.* at 55:5 – 55:12. Dr. Yiannoutsos also agrees there is no data to assess the accuracy or reliability of Dr. Flynn's opinions. *Id.* at 49:1 – 49:8.

Whether reliance upon one expert's opinion is good statistical practice is a function of whether the expert "can be considered to be more highly qualified … then (sic) the average experts or evaluators you have in the field." *Id.* at 50:21 – 51:5. Dr. Yiannoutsos agrees that his estimation of damages is only as accurate as the data upon

-10-

which it is based – Dr. Flynn's individual assessments of each patient. *Id.* at 130:7 – 130:15. Therefore, if this Court excludes Dr. Flynn's opinions based on Dianon's previously filed *Daubert* motion, Dr. Yiannoutsos' damage estimates must also be excluded as unreliable.

Should the Court find Dr. Flynn's methodology reliable, Dr. Yiannoutsos' statistical average and resulting damage estimate still should not be admissible because the calculations are the opposite of the Government's theory of liability and therefore irrelevant. Fed. R. Evid. 401, 402, 702. On the one hand, the Government alleges that each patient's unique presenting symptoms dictate the design of the panel and therefore determine whether Dianon fraudulently billed the Government. On the other, the statistician then treats every patient the same by applying the *average* of Dr. Flynn's review to *every* flow cytometry test. *Exhibit 4* at 14 ("To estimate the number of medically unnecessary units we subtract the mean number of units considered medically necessary from the number of units charged in each individual test.").

This contradiction is analogous to a class action predicated on a theory of liability that every patient in the class is different, yet there is still commonality to warrant a class action in the first place. *See*, Hall, Ralph and Robert J. Berlin, <u>When You Have a Hammer Everything Looks Like a Nail: Misapplication of the False Claims Act to Off-Label Promotion</u>, 61 *Food Drug L. J.* 653, 671-72 (2006) (citations omitted) (False Claims Act case for off-label prescription drug promotion would have to prove that drug was medically unreasonable on case-by-case basis if each patient different).

By treating all claims the same (each non-reviewed flow cytometry test is a member of the "class" of false claims) to compute damages, the Government has

-11-

contradicted the very premise of instituting liability in the first place – each patient is different and Dianon must design a panel for the patient. Not only does Dr. Yiannoutsos' calculations of the average number of medically necessary units fail to account for variability among experts in the field, the application of the average to every patient fails to account for the variability of Dr. Flynn's panel designs. Dr. Flynn's reviews, taken at face value, establish that each patient (even those with the same presenting disease) are different and require a different number of antibodies, but the statistician's damage calculations treat all non-reviewed claims the same. There is no "fit" between Dr. Flynn's opinions for liability for the claims he reviewed and Dr. Yiannoutsos' use of Dr. Flynn's opinions to establish false claims act liability for all other tests. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 591 (1993), *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 743 (3rd Cir. 1994) (relevance or fit of expert testimony depends upon the connection between opinion presented and the particular disputed factual issue).

Under the False Claims Act, the Government must prove all elements of a cause of action. 31 U.S.C. §3731(c). The Government cannot estimate this liability through statistical averages because an average does not take into account individual instances where Dr. Flynn found 18 or more antibodies medically necessary, yet Dianon billed for only 18 antibodies. *See, Exhibit 6.* Under the Government's theory *every* test Dianon performed violated the False Claims Act because it performed and billed more than 16 (or 12) antibodies for each test.

At most, the statistician's statistical average is a *post hac* attempt to institute a standard which the Government failed to provide to Dianon. The Government should not be able to introduce the statistician's extrapolation of the average of Dr. Flynn's opinions

to prove damages in all claims because it is inconsistent with its theory of liability, does not represent the population of tests, is an estimation based upon unreliable opinions, the estimation unfairly over-states Dianon's liability, and the Government did not provide Dianon notice of this *post hac* standard.

V.  **THE GOVERNMENT CANNOT INTRODUCE EVIDENCE THAT DIANON MISTAKENLY OVERBILLED THE GOVERNMENT FOR SOME CLAIMS IN 1996 BECAUSE SUCH EVIDENCE IS IRRELEVANT TO THE GOVERNMENT'S AMENDED COMPLAINT.**

In its May 1, 2006 Damage Disclosure, the Government – for the first time – alleged that Dianon over-billed the Government on 456 flow cytometry tests performed between January 1, 1996 and July 31, 1996. *Exhibit 1* at 3 (hereinafter referred to as the government's "mistaken billing claim").. The Government never articulated this theory in either its Complaint or Amended Complaint – despite the fact that this Court ordered the Government "to amend its complaint to provide further specifics regarding the operation of the alleged scheme ... with exemplars showing the manner in which the scheme worked." July 1, 2005 Ruling and Order. The new theory of liability is based on different facts which are irrelevant to the Government's stated cause of action in the Amended Complaint. Fed. R. Evid. 401, 402. Furthermore, the Government's allegations fall outside the False Claims Act's three year statute of limitations and ten year statute of repose and are therefore irrelevant to prove liability. 31 U.S.C. 3731(b)(2).

The Government filed its original Complaint on March 18, 2005. This Court ruled that the government complaint was deficient under Fed. R. Civ. P. 9(b) and ordered the government "...to amend its complaint to provide further specifics regarding the operation of the alleged (fraudlent) scheme, along with exemplars *showing the manner in*

BA2DOCS1\#314521

*which the scheme worked...*" July 1, 2005 Ruling and Order at 4 (emphasis supplied). This Court reasoned that the Government should provide "specific exemplars" of the alleged fraudulent practices "that would give Dianon and the Court details of the specific manner in which the Government alleges the scheme worked, what made it fraudulent in the specific examples provided, ... and why and specifically how the scheme fraudulently inflated billings in those examples. *Id.* at 3.

On July 14, 2005, the Government filed its Amended Complaint. The Government alleged that information provided to Dianon with each flow cytometry test request "allowed pathologists at Dianon to use their medical judgment to craft panels aimed at identifying the particular type of cancer suspected by the referring physician ...(b)y utilizing a standard panel of 26 antibodies in each and every case regardless of the patient's history, diagnosis or other information supplied by the requesting physician, Dianon did not exercise medical judgment as to whether each of the individual antibodies was medically necessary." *Id.* at ¶37.

Pursuant to the Court's July 1, 2005 Ruling and Order, the government provided 13 exemplar cases showing how the alleged scheme worked. Amended Complaint at ¶¶50-70. In none of these exemplar cases does the government allege that Dianon submitted false claims by billing for antibodies it did not perform. Rather, in all of the exemplar cases, the government alleged that Dianon's medical practice utilized medically unnecessary antibodies.

Accordingly, because the mistaken billing claims were never asserted in the government's complaint, the government should not be permitted to assert a separate theory of liability regarding those claims. Fed. R. Civ. Pro. 9(b), *Gold v. Morrison –*

-14-

*Knudsen Co.*, 68 F.3d 1475, 1476-77 (2nd Cir. 1995) (Complaint must allege with particularity the specific conduct giving rise to false claim liability), *United States ex rel RDC, Inc. v. Custer Battles, LLC,* 2007 U.S.Dist.LEXIS 8473 at *23-*26 (E.D. Va. Feb. 2, 2007) (rejecting plaintiff's attempt "to effect a constructive amendment of the complaint" by changing the allegation because prejudice "is especially pronounced" in False Claims Act cases). In addition, since all of the government's mistaken billing claims occurred more than 10 years ago, these claims are now time barred. 31 U.S.C. 3731(b)(2) (claims must be filed no later than 10 years from the date of violation).

## VI.   CONCLUSION

Neither Dr. Flynn's opinions nor the statistician's after-the-fact standard taken from Dr. Flynn's opinions provided Dianon notice of prohibited conduct. Retroactively applying the standards created by the statistician of limiting compensation to 16 antibodies for initial testing and 12 antibodies for repeat testing violates Dianon's Due Process rights and exceeds the Government's authority under the Medicare statutes to impose retroactive compensation adjustments. Retroactive application of this standard to every Dianon test also contradicts the Government's basis of liability and entire theory of the case. Finally, the Government attempts to articulate a new theory of liability not contained in its Amended Complaint. None of this evidence is admissible for the purpose of establishing False Claims Act liability.

BA2DOCS1\#314521

WHEREFORE, Dianon requests that this Court exclude: (1) the opinions of Stuart Flynn, M.D.; (2) the calculations of Constantin Yiannoutsos; and (3) any reference to the 1996 billing mistake for the purpose of establishing False Claims Act liability or estimating damages.

Respectfully submitted,

*/s/*

Bruce R. Parker, Admitted *Pro Hac Vice*
Bar No. PHV01015
William Piermattei, Admitted *Pro Hac Vice*
Bar No. PHV 01585
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland  21201
(410) 244-7400


Robert Salcido, Admitted *Pro Hac Vice*
Fed. Bar No. 447951
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036

Attorneys for Dianon Systems, Inc.

BA2DOCS1\#314521