UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA, | )<br>)<br>) | No. 3:02CV1573(MRK) |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| DIANON SYSTEMS, INC., | )<br>)<br>) | April 20, 2007 |
| Defendant. | )<br>) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE AS TO CLAIMS DATA AND MOTION TO COMPEL
DEFENDANT TO PROVIDE DISCOVERY**

The United States respectfully submits this Memorandum in Support of the Motion in Limine as to Claims Data and Motion to Compel Defendant to Provide Discovery. Despite numerous attempts to amicably resolve these outstanding discovery disputes, defendant has failed to produce its electronic claims, has produced documents after the close of discovery, thereby preventing any deposition testimony as to the history of how these documents came to be created, and has failed to make a complete production of documents related to an important medical conference.

For the purposes of this motion, the Government has three primary contentions. First, as part of the Government's Second Request for Production of Documents, the Government asked for "All claims (i.e. health insurance forms [CMS or HCFA 1500's] and electronic claims) submitted by Dianon to Medicare and Tricare for CPT 88180 flow cytometry services, rendered from January 1, 1996, to December 31, 2003, for which payment was received by Dianon from

Medicare or Tricare." (*See* Second Request for Production, attached to Declaration of Counsel for the Government, Patricia Davis, at Exh. 1) ("Davis Decl."). Instead of producing such electronic claims, Dianon allowed inspection at its warehouse of its documents that contained records of payment, and not claims data. During that inspection, Dianon employees informed an attorney for the Government that the claims were only kept in an electronic format. Despite repeated requests by the Government for this electronic claims data, as well as a request to stipulate to the Government's claims data produced during discovery, Dianon merely asserted on January 3, 2007 that it would inspect the Government's claims data and "will respond once the Court rules on the pending summary judgment motion." That date has now long passed. Dianon, however, has not responded.

Second, defendant produced a number of documents to the Government after the close of discovery, despite the fact that these documents were responsive to the Government's First Request for Production of Documents, dated July 27, 2005. (Davis Decl., Exh. 6). These documents appear to show the development of new Dianon flow cytometry test requisition forms. Despite a written request on September 5, 2006 for additional information as to these forms (Davis Decl., Exh. 8), as well information regarding additional documents produced after the close of discovery which appear to be parts of larger documents (*e.g.*, Dianon Doc. PP 17916), Dianon has continuously failed to provide information as to who created them and why, thereby prejudicing the Government's case.

Third, as to the Hemepath Consensus Conference ("Hemepath Conference") held in or about October/November 2005, defendant has failed to produce certain documents related to this conference and has, at different times, (1) ignored the Government's requests, (2) denied the

existence of the documents, and (3), now asserts that they are not relevant in order to avoid production. This evasion is despite the fact that the Government clearly requested these documents in its Second Request for Production of Documents dated May 15, 2006, as well as in a subpoena to Laboratory Corporation of America ("Lab Corp"), Dianon's parent corporation, on October 26, 2005. (Davis Decl., Exh. 9).

### A.     Motion in Limine Regarding Claims Data

As part of the Government's Second Request for Production of Documents, dated May 15, 2006, the Government asked for:

> 5.     All claims (i.e. health insurance claim forms [CMS or HCFA 1500's] and electronic claims) submitted by Dianon to Medicare and Tricare for CPT 88180 flow cytometry services, rendered from January 1, 1996, to December 31, 2003, for which payment was received by Dianon from Medicare or Tricare." Second Request for Production of Documents

(Davis Decl., Exh. 1).

In response to this Second Request for Documents, Dianon made available to the Government more than 800 boxes of documents, in which Dianon asserted there was claims data. However, when Department of Justice Attorney Ryan Fayhee went to review those boxes of documents, he found no claims data. Instead, Dianon employees informed him that Dianon only kept claims data in an electronic format. (Davis Decl., ¶ 3). Attorney Davis informed Dianon of this problem in a letter dated September 12, 2006:

> On another matter, the documents Dianon produced in Stratford last week were not what we expected. We understood that Dianon was producing both the claims submitted to CMS for CPT code 88180 and the records of payment. After reviewing several of the boxes, Ryan realized that the claims for payment were not included. Rather,

> the documents produced were records of payment and no claims data was produced. Dianon employees informed Ryan that Dianon only kept the claims in an electronic format. Further, the records of payment to CMS for 88180 were interspersed with records of payment with all records of payment for all CPT codes. Obviously, sorting through hundreds of boxes of documents to cull out records of payment from CMS for one CPT code would be prohibitively time-consuming and costly. Then trying to marry those records of payment to claims for payment kept in electronic form would be nearly impossible.

(Davis Decl., Exh. 2).

In an effort to resolve this problem, Attorney Davis suggested that the "parties stipulate to using the electronic records of payment obtained from HHS/CMS for purposes of proof at trial. We produced this data on three disks as the time of our original production in 2005." (*Id.*)

Dianon's counsel failed to address this contention in his letter of October 11, 2006 to Attorney Davis. (Davis Decl., Exh. 3). Instead, Attorney Davis had to ask about the issue again in a letter dated November 8, 2006 to Dianon Attorney Salcido. In that letter, Attorney Davis states:

> 2. Request #5 from our May 15 second request for documents, calls for production of claims and "electronic claims" submitted by Dianon to Medicare and Tricare for CPT Code 88180 services from Jan. 1, 1996 to Dec. 31, 2003. The documents you made available for inspection at Dianon's warehouse in Stratford were records of payment (which was our request #6), not claims. Dianon employees informed Ryan Fayhee that the claims were kept in electronic format, but those have not been produced.

(Davis Decl., Exh. 4). Attorney Davis then again sought to resolve the issue, by asking for Dianon to stipulate to claims data produced by the Government in electronic format. (*Id.*) Attorney Davis noted that Attorney Salcido's October 11, 2006 letter was "silent" as to the issue of producing the electronic claims and entering into a potential stipulation. (*Id.*)

In response to Attorney Davis' November 8, 2006 letter, Dianon Attorney Salcido replied on January 3, 2007. In that letter, he stated, "Pursuant to your request for claims, Dianon made available to you, at substantial expense, over 800 boxes of material. You have now inquired into whether Dianon would be willing to enter into a stipulation regarding the government's claims data. We are in the process of inspecting that data and will respond once the Court rules on the pending summary judgment motion." (Davis Decl., Exh. 5).

To date, even though the Court has ruled on Dianon's Motion for Summary Judgment, Dianon has still failed to respond to the question as to whether it will stipulate to the Government's claims data.

Based upon these facts, the Government requests that the Court exclude any evidence that Dianon would seek to introduce at trial regarding its own claims data, because Dianon has failed to produce such information to the Government. *See* Fed. R. Civ. P. 37( c)(1) ("A party that without substantial justification fails to . . . amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."). *See also Design Strategy Inc. v. Davis*, 469 F. 3d 284, 296 (2d Cir. 2006) ("[A]lthough a 'bad faith' violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply."); *Tomlison v. St. Paul Reinsurance Management, Corp.*, No. 96 Civ. 4760, 1998WL472057 (S.D.N.Y. Aug. 7, 1998) ("[I]f defendant should proffer evidence at the summary judgment or trial stages that it never disclosed during discovery, plaintiff will be free to move to preclude the use of such withheld data.").

### B. Documents Concerning the Development of New Dianon Flow Cytometry Test Requisition Forms

The Government has repeatedly asked Dianon to provide additional information as to certain documents produced by Dianon after the close of discovery that relate to the development by Dianon of flow cytometry test requisition forms. However, despite these repeated requests, Dianon has failed to provide any information as to these documents.

In the Government's First Request for Production of Documents, served on July 27, 2005, the Government asked Dianon to provide, "4. All documents concerning the number of antibodies in Dianon's flow cytometry panel, including but not limited to, any documents concerning the medical necessity of particular antibodies and/or the choice of particular antibodies." (Davis Decl., Exh. 6). Moreover, the Government also asked Dianon to provide "6. All documents concerning Dianon's Hematopathology Services Test Requisition forms (or similarly named requisition forms), that relate or refer to flow cytometry tests/studies, including, but not limited to, all documents relating to the creation, drafting or revision of all Hematopathology Services Test Requisition forms." (*Id.*)

Despite this request on July 27, 2005, it was not until more than a year later, in August 2006, **after the close of discovery on July 31, 2006,** that Dianon produced the following documents:

> PP 17934: labeled Dianon Systems "Hematopathology Services Test Requisition," with handwriting stating "5th Proof Form 1189 9/1/95";
> PP 17935: labeled at the top "Morphologic Interpretations";
> PP 17938: labeled Dianon Systems "Hematopathology Services Test Requisition," with handwriting indicating the

|  |  |
|---|---|
| PP 17939: | date of 8/3/95;<br>all handwritten and labeled "Morphologic Interpretation"; |
| PP 17945: | labeled Dianon Systems "Test Requisition" and showing handwritten sections of flow cytometry testing divided by the disease states of "Lymphoproliferative process"; "acute leukemia/blast crisis"; "plasma cell dyscrosia"; "myeloproliferateide/myelodysplastic process"; "morphologic interpretation"; and "transplant evaluation." |

(Davis Decl., Exh. 7).

While seemingly not directly related to these draft flow cytometry test requisition forms, Dianon also produced the following three documents after the close of Discovery:

|  |  |
|---|---|
| PP 19079: | labeled "Hematopathology Product Progress Report, Second Quarter 1996";[1] |
| PP 17915: | consisting of a handwritten note by Bill McDowell from "today's compliance meeting";[2] and |
| PP 17916: | consisting of a page of handwritten notes under the title "compliance, 14 May 1998." |

(*Id.*, Exh. 7).

Because Dianon produced these documents after the close of discovery, and after the Government had already deposed the witness Dianon produced under Fed. R. Civ. P. 30(b)(6), the Government has had no opportunity to learn about the origin of these documents. In the September 5, 2006 letter, Attorney Davis asked about the origin of these documents:

---

[1] In the Government's First Request for Production of Documents, served on July 27, 2005, the Government asked for "17. All sales and marketing documents concerning flow cytometry or CPT code 88180."

[2] In the Government's Second Request for Production of Documents, served on May 15, 2006, the Government asked for "8. All documents concerning Dianon's implementation of a formal compliance program in or about 1997."

> The production itself also raises a number of issues. It appears from the document index you provided that most of the documents are responsive to our first request (served in July of 2005), yet they are only now being produced - after the close of discovery. For example, PP17945 and several other draft requisition forms are responsive to Request #6 in the United States' first request for production. We do not believe that they were produced in response to that request. Another example is PP17859 which is responsive to both request #4 and 15, among others, in the July 2005 request. Also, this document appears to be taken from a larger document and is, therefore, produced out of context. PP17893 is a copy of a document already produced, but with different marginal and handwritten notes from those that have been produced and is responsive to request #2 of the July 2005 request. PP17915-16 is responsive to request #14 in the Government's July 2005 request. PP18266 is responsive to July 2005 request #17, and also appears to be part of a larger document. Had we received these documents before the close of discovery we could have used them in depositions, submitted interrogatories to identify them or included them in the 30(b)(6) deposition notice to obtain information about who created them and why. Now, because you have not produced these documents until after the close of discovery, we cannot do that.

(Davis Decl., Exh. 8).

In response to this September 5, 2006 request for information, Dianon Attorney Salcido stated the following:

> Finally, you inquired into why some documents were produced in response to your second request for production of documents. The answer, among other things, is that when the client searched the warehouse from the more than eight-hundred boxes of material that were made available by the government in responding to the government's second request for production of documents, I asked that it also search again for documents responsive to the first production. Most of the documents that were produced as part of the second production are duplicates or near duplicates of what had previously been produced.

(Davis Decl., Exh. 3).

However, notably, Attorney Salcido did not address the origin of these particular documents or the problem created by the fact that Dianon had produced these documents after the close of discovery and after the deposition of their Fed. R. Civ. P. 30(b)(6) witness. Since the dates of these letters, Dianon has continuously failed to answer these questions. Accordingly, the Government has had no opportunity to learn the origins of these important documents. The Government therefore requests that Dianon be compelled to provide a second witness pursuant to Fed. R. Civ. P. 30(b)(6) in order to address the history and creation of these documents. *Cf. Light Sources, Inc. et. al. v. Cosmedico Light, Inc.*, 360 F. Supp. 2d 432, 441 (D. Conn. 2005)(Kravitz, J.) (reopening discovery for a limited time prior to trial "[t]o ensure that a complete evidentiary record is available for the upcoming trial" where information had been requested prior to discovery, but was not received until after discovery closed, thereby preventing the party from deposing the individual).

### C. Hemepath Consensus Documents

As part of the Government's Second Request for Production of Documents to Dianon, which was served May 15, 2006, the Government submitted this request:

> 3. All documents concerning the Hemepath Consensus Conference held in or about October/November 2005 at Esoterix in Brentwood, Tennessee, as referenced in the 11/14/05 e-mail from Suha Mishalani to Glenn Segal, bates no. PP13798-PP13803. This request includes, but is not limited to, all notes, correspondence, presentation materials and summaries related to the meeting, as well as all documents created by, reviewed by or received by Dr. Raul Braylan (including any documents concerning payments made to Dr. Braylan related to the conference, by Dianon, Lab Corp., or any entity owned or controlled by Lab Corp).

(Davis Decl., Exh. 1).

Additionally, the Government served a subpoena on Lab Corp on October 26, 2005, which would have been mere weeks after the Hemepath Conference, asking for all documents "relating to how Lab Corp's panels of antibodies used in providing flow cytometry services were created or developed," and all documents "relating to any consideration, internal discussion, or decision by Lab Corp to change the number of antibodies in its panels when providing or conducting flow cytometry services." (Davis Decl., Exh. 9).

In August 2006, after the close of discovery, Dianon produced a mere 19 pages of documents relevant to the request. (Davis Decl., Exh. 10). One of these documents actually produced makes reference to the fact that each laboratory group participating in the Hemepath Conference was supposed to prepare a "brief presentation . . . for the purpose of informing our colleagues of current practices in each different operation," and that if individual presenters did not have a laptop for making the presentation, he or she should email it to the conference organizer Greg Stelzer or bring it on a CD. (Exh. 10 at Doc. PP 22641). Similarly, another of the produced documents states that each laboratory group should "come armed with data to demonstrate the importance of staining patterns, and their use in developing a diagnosis . . . . data can take the form of either histogram printouts, PowerPoint slides with embedded histograms, or actual raw list mode files . . . once again, either email ahead of time, or bring files on CD." (Exh. 10 at Doc. PP 22642). A third Dianon document states that, "[i]n preparation for the upcoming consensus conference in Brentwood next weekend, Dr. Braylan asked that each operational site send a proposal for what should be considered as a candidate 5-color panel of markers for use in the initial analysis of a bone marrow for hematologic malignancy . . . these proposed panels will be the starting point of discussion at the conference. Bruce Davis has provided the attached as an

example." (Exh. 10 at Doc. PP 22644).

However, none of the 19 pages produced after the close of discovery by Dianon actually contains the presentations that the laboratory groups were supposed to create in preparation for the conference. Nor do those 19 pages contain the example produced by Bruce Davis that was supposed to be attached to PP 22644. And, despite the fact that this conference lasted for two days and had 17 participants, Dianon produced only one page of notes from the conference. (Exh. 10 at Doc. PP 22645).

Based upon this lack of production, Attorney Davis sent a letter to Dianon Attorney Salcido and Attorney Parker on September 5, 2006. In that letter, Attorney Davis asked the following:

> Documents PP22629-PP22645, which relate to the Hemepath Consensus Conference, and are responsive to request #3, do not contain any presentation materials, even though our request clearly asked for presentation materials and the documents themselves reference presentation materials. When can we expect to receive these? Also, our request asks for all 'notes' related to the conference, but we only received one page of notes. We assume more notes exist.

(Davis Decl., Exh. 8).

In response to the September 5, 2006 letter, Dianon Attorney Salcido wrote his own letter on October 11, 2006. This letter, while purporting to respond to Davis' letters of September 5, 12, and 20th, addressed other matters raised in past communications, but made no reference to the missing Hemepath Consensus documents. Instead, Salcido's letter broadly asserted that "Dianon has made full production of all responsive documents." (Davis Decl., Exh. 3).

In response to Mr. Salcido, Ms. Davis wrote again on November 8, 2006. In this letter,

Ms. Davis again asks for the further production of documents related to the Hemepath Conference.

> 3. Request #3 from our May 15 second request for documents, calls for production of documents concerning the Hemepath Consensus Conference. Some responsive documents were produced by Sarah Ford on August 25, 2006. The request specifically calls for the production of notes and "presentation materials." However, there is only one page of notes (it's actually only about 2 sentences). As important, however, is the fact that the documents do not contain any presentation materials. See 10/27/2005 email (PP22641) ("The meeting will start with a brief presentation by each laboratory group. . . If you will not have a laptop for making your presentation, please make sure to email it to me tomorrow or bring it on a CD."). Also, our request calls for documents relating to any payments made to Dr. Braylan for his services at the conference, but nothing has been produced. Moreover, there are several emails that reference attachments, which were not produced (eg. PP22643 & PP22644). It is improper to produce only some documents from the conference, but not to produce other documents that clearly exist. When can we expect a complete production in response to this request?

(Davis Decl, Exh. 4).

Counsel for Dianon waited to respond to Ms. Davis' letter of November 8, 2006 until January 3, 2007. In that letter, Mr. Salcido finally addressed Ms. Davis' concerns regarding the additional Hemepath Conference documents: "3. You inquired into documents from the Hemepath Consensus Conference. Dianon produced those documents that it possessed. There are no additional documents." (Davis Decl., Exh. 5).[3]

On April 6, 2007, in an e-mail, Assistant United States Attorney Richard Molot again asked Dianon for documents related to the Hemepath Conference in order to get a resolution to this issue. Mr. Molot wrote to Dianon Counsel William Piermattei the following message:

---

[3] Notably, Attorney Salcido did not also state that Dianon's parent company, Lab Corp, had no further documents in its possession.

> Also, I know we briefly spoke a few weeks ago about our outstanding request for production of documents related to the Hemepath Consensus Conference. As we've mentioned in the past, including in Pat's Nov. 8, 2006 letter to Robert, our request called for the production of notes and presentation materials, but none of that has been produced (it is clear from some of the emails you did produce that each laboratory group made presentations at the meeting). Also, several of the emails indicated that they contained attachments, which were not produced. Please let me know if you intend to make a complete production of documents/notes/presentation materials related to the Hemepath Consensus Conference.

(Davis Decl., Exh. 11).

In response, on April 16, 2007, Mr. Piermattei wrote back the following e-mail message: "First, could you please explain the relevance of documents regarding a meeting held in November 2005 to this case (1996-2003)? Second, could you identify those documents you believe are in the custody and control of Dianon that we have not produced?" (Davis Decl., Exh. 12). Thus, while Dianon's initial answer to this same question was to ignore it, and Dianon's second response was to assert that there were "no additional documents," Dianon's third response was to question their relevance to the case, even though the Government had requested these documents as of May 15, 2006.

The Government believes these documents not only exist, as exemplified by e-mails requiring each of the laboratory groups to create such presentations, but also believes that Dianon or Lab Corp has these documents or should have these documents based upon the requirement that Dianon retain such materials because of this litigation. Moreover, the Government believes these documents are highly relevant to the primary issue in this case, that being, medical necessity. Any documents produced by Dianon employees concerning which antibodies should be included in a panel or the utility/medical necessity of any particular antibody would be directly

relevant to the question of whether Dianon actually believed that its 26-antibody panels were medically necessary. And, unless the medical literature radically changed between 2005 and 2003, a conference held by Dianon to discuss the make-up of its flow cytometry panels in 2005 would be relevant to the earlier time period.

Based upon the foregoing, the Government asks that Dianon be ordered to produce all documents related to the Hemepath Consensus Conference of 2005, including all notes, correspondence, presentation materials and summaries related to the meeting, as well as all documents created by, reviewed by or received by Dr. Raul Braylan (one of Dianon's experts). Absent that production, the Government requests an affidavit confirming that such materials were not kept as required under the Federal Rules of Civil Procedure.

## Conclusion

Based upon the foregoing, the Government respectfully requests that the Court enter an Order (1) restricting Dianon's use of any claims data at trial except for the data produced by the Government that was obtained from HHS/CMS; (2) compelling Dianon to produce a witness to testify on behalf of Dianon regarding draft flow cytometry requisition forms and other documents produced after the close of discovery, and (3) compelling Dianon to produce all documents concerning the Hemepath Consensus Conference, or absent their production, produce an affidavit asserting that no such documents exist.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

RICHARD MOLOT
Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700

_____
JOYCE R. BRANDA
PATRICIA R. DAVIS
JENNIFER CHORPENING
Fed. Bar No.
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0240
Facsimile: (202) 305-7797
Email: Jennifer.Chorpening@usdoj.gov


Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, I caused a true copy of the foregoing **UNITED STATES' MOTION IN LIMINE AS TO CLAIMS DATA AND MOTION TO COMPEL DEFENDANT TO PROVIDE DISCOVERY** to be served by mail and electronic mail to:

>Bryan T. Carmody, Esq.
>Maya & Associates, P.C.
>266 Post Road East
>Westport, CT 06880
>bcarmody@mayalaw.com
>
>Robert Salcido, Esq.
>Akin Gump Strauss Hauer & Feld, LLP
>Robert Strauss Building
>1333 New Hampshire Ave, NW
>Washington, D.C. 20036
>rsalcido@akingump.com
>
>Bruce R. Parker
>Venable LLP
>1800 Mercantile Bank & Trust Bldg.
>2 Hopkins Plaza
>Baltimore, Md. 21201
>brparker@venable.com

Jennifer Chorpening
Trial Attorney
U.S. Department of Justice

-16-