UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA <br> ex rel. DR. JAMES J. TIESINGA, <br><br> Plaintiffs, <br><br> v. <br><br> DIANON SYSTEMS, INC., <br><br> Defendant. | No. 3:02CV1573(MRK) <br><br><br> Declaration of Patricia Davis <br><br> April 20, 2007 |

### DECLARATION OF COUNSEL FOR THE UNITED STATES

1.  I am one of the counsel representing the United States in this action. I have on several occasions consulted with counsel for Dianon in an attempt to obtain complete discovery from Dianon on several issues. Despite repeated requests for Dianon to complete such discovery, Dianon has not provided discovery as requested.

**Claims Data**

2.  The Government served a document production request on Dianon seeking claims data for payment submitted to Medicare and Tricare. In the document request the Government asked for:

> 5.  All claims (i.e. health insurance claim forms [CMS or HCFA 1500's] **and electronic claims**) submitted by Dianon to Medicare and Tricare for CPT 88180 flow cytometry services, rendered from January 1, 1996, to December 31, 2003, for which payment was received by Dianon from Medicare or Tricare. (emphasis added).

(Second Request for Production, Exhibit 1). Dianon failed to provide that data.

3.  In response to this second request for documents, Dianon made available to the Government more than 800 boxes of documents, in which Dianon asserted there was claims data.

However, when Department of Justice Attorney Ryan Fayhee went to review those boxes of documents, he found no claims data. Instead, Dianon employees informed him that Dianon only kept claims data in an electronic format.

4.  I informed Dianon of this problem in a letter dated September 12, 2006:

> On another matter, the documents Dianon produced in Stratford last week were not what we expected. We understood that Dianon was producing both the claims submitted to CMS for CPT code 88180 and the records of payment. After reviewing several of the boxes, Ryan realized that the claims for payment were not included. Rather, the documents produced were records of payment and no claims data was produced. Dianon employees informed Ryan that Dianon only kept the claims in an electronic format. Further, the records of payment to CMS for 88180 were interspersed with records of payment with all records of payment for all CPT codes. Obviously, sorting through hundreds of boxes of documents to cull out records of payment from CMS for one CPT code would be prohibitively time-consuming and costly. Then trying to marry those records of payment to claims for payment kept in electronic form would be nearly impossible.

(Sept. 12, 2006 letter, Exhibit 2).

5.  In an effort to resolve this problem, I suggested that the "parties stipulate to using the electronic records of payment obtained from HHS/CMS for purposes of proof at trial. We produced this data on three disks as the time of our original production in 2005." (*Id.*).

6.  Dianon Counsel failed to address this issue in his letter of October 11, 2006 to me regarding various discovery issues. (Oct. 11, 2006 letter, Exhibit 3). Instead, I again had to raise the issue in a letter dated November 8, 2006 to Mr. Salcido:

> 2. Request #5 from our May 15 second request for documents, calls for production of claims and "electronic claims" submitted by Dianon to Medicare and Tricare for CPT Code 88180 services from Jan. 1, 1996 to Dec. 31, 2003. The documents you made available for

2

> inspection at Dianon's warehouse in Stratford were records of payment (which was our request #6), not claims. Dianon employees informed Ryan Fayhee that the claims were kept in electronic format, but those have not been produced.

I again sought to resolve the issue, by asking for Dianon to stipulate to claims data produced by the Government in electronic format. (Exhibit 4).

7. Dianon Counsel replied on January 3, 2007 and stated that, "Pursuant to your request for claims, Dianon made available to you, at substantial expense, over 800 boxes of material. You have now inquired into whether Dianon would be willing to enter into a stipulation regarding the government's claims data. We are in the process of inspecting that data and will respond once the Court rules on the pending summary judgment motion." (Exhibit 5).

8. As of this date, counsel for Dianon has not produced Dianon's data, nor have they agreed to stipulate to the claims data produced in this case by the Government.

### Documents Produced After the Close of Discovery

9. In the Government's First Request for Production of Documents, served on July 27, 2005, the Government asked Dianon to provide, "4. All documents concerning the number of antibodies in Dianon's flow cytometry panel, including but not limited to, any documents concerning the medical necessity of particular antibodies and/or the choice of particular antibodies." The Government also asked Dianon to provide "6. All documents concerning Dianon's Hematopathology Services Test Requisition forms (or similarly named requisition forms), that relate or refer to flow cytometry tests/studies, including, but not limited to, all documents relating to the creation, drafting or revision of all Hematopathology Services Test Requisition forms." "17. All sales and marketing documents concerning flow cytometry or CPT code 88180." (First Request for Production, Exhibit 6). In the Government's Second

Request for Production of Documents, served on May 15, 2006, the Government asked for "8. All documents concerning Dianon's implementation of a formal compliance program in or about 1997." (Exhibit 1).

10. In August 2006, **after the close of discovery on July 31, 2006**, Dianon produced the following documents responsive to these requests:

| | |
|---|---|
| PP 17934: | labeled Dianon Systems "Hematopathology Services Test Requisition," with handwriting stating "5th Proof Form 1189 9/1/95"; |
| PP 17935: | labeled at the top "Morphologic Interpretations"; |
| PP 17938: | labeled Dianon Systems "Hematopathology Services Test Requisition," with handwriting indicating the date of 8/3/95; |
| PP 17939: | all handwritten and labeled "Morphologic Interpretation"; |
| PP 17945: | labeled Dianon Systems "Test Requisition" and showing handwritten sections of flow cytometry testing divided by the disease states of "Lymphoproliferative process"; "acute leukemia/blast crisis"; "plasma cell dyscrosia"; "myeloproliferateide/myelodysplastic process"; "morphologic interpretation"; and "transplant evaluation." |
| PP 19079: | labeled "Hematopathology Product Progress Report, Second Quarter 1996"; |
| PP 17915: | consisting of a handwritten note by Bill McDowell from "today's compliance meeting"; and |
| PP 17916: | consisting of a page of handwritten notes under the title "compliance, 14 May 1998." |

(Exhibit 7).

11. In a letter of September 5, 2006, I asked counsel for Dianon about the origin of these documents. (Exhibit 8).

12. To date, Dianon has not provided any information from about the origin of the documents listed.

**Hemepath Consensus Documents**

13. As part of the Government's Second Request for Production of Documents to Dianon,

which was served May 15, 2006, the Government submitted this request:

> 3.  All documents concerning the Hemepath Consensus Conference held in or about October/November 2005 at Esoterix in Brentwood, Tennessee, as referenced in the 11/14/05 e-mail from Suha Mishalani to Glenn Segal, bates no. PP13798-PP13803. This request includes, but is not limited to, all notes, correspondence, presentation materials and summaries related to the meeting, as well as all documents created by, reviewed by or received by Dr. Raul Braylan (including any documents concerning payments made to Dr. Braylan related to the conference, by Dianon, Lab Corp., or any entity owned or controlled by Lab Corp).

(Exhibit 1).

14. Additionally, the Government served a subpoena on Lab Corp, Dianon's parent company, on October 26, 2005, asking for all documents "relating to how Lab Corp's panels of antibodies used in providing flow cytometry services were created or developed," and all documents "relating to any consideration, internal discussion, or decision by Lab Corp to change the number of antibodies in its panels when providing or conducting flow cytometry services." Lab Corp is defined in the subpoena as Lab Corp and any of its subsidiaries or affiliates. (LabCorp Subpoena, Exhibit 9).

15. On August 25, 2006, almost a month after the close of discovery, Dianon produced 19 pages of documents relevant to the request. (*See* August 25, 2006 letter and attached documents, Exhibit 10). To the best of my knowledge, Lab Corp has produced no such documents other than those produced by Dianon.

16. On September 5, 2006, I sent a letter to counsel for Dianon and raised issues relating to the completeness of this production:

> Documents PP22629-PP22645, which relate to the Hemepath Consensus Conference, and are responsive to request #3, do not

5

> contain any presentation materials, even though our request clearly asked for presentation materials and the documents themselves reference presentation materials. When can we expect to receive these? Also, our request asks for all 'notes' related to the conference, but we only received one page of notes. We assume more notes exist.

(Sept. 5, 2006 letter, Exhibit 8). In response, Dianon counsel wrote on October 11, 2006 that "Dianon has made full production of all responsive documents." (Exhibit 3). I wrote another letter on November 8, 2006 again asking for the further production of documents related to the Hemepath Conference (Exhibit 4). Counsel for Dianon responded to this letter on January 3, 2007 again asserted that it had produced all documents that it possessed and said: " There are no additional documents." (Exhibit 5).

17.     On April 6, 2007, at my request, Assistant United States Attorney Richard Molot again asked Dianon for documents related to the Hemepath Conference in order to get a resolution to this issue. Mr. Molot wrote to Dianon Counsel William Piermattei the following message:

> Also, I know we briefly spoke a few weeks ago about our outstanding request for production of documents related to the Hemepath Consensus Conference. As we've mentioned in the past, including in Pat's Nov. 8, 2006 letter to Robert, our request called for the production of notes and presentation materials, but none of that has been produced (it is clear from some of the emails you did produce that each laboratory group made presentations at the meeting). Also, several of the emails indicated that they contained attachments, which were not produced. Please let me know if you intend to make a complete production of documents/notes/presentation materials related to the Hemepath Consensus Conference.

(Exhibit 11). In response, on April 16, 2007, Mr. Piermattei wrote back the following e-mail message:

"First, could you please explain the relevance of documents regarding a meeting held in November 2005 to this case (1996-2003)? Second, could you identify those documents you believe are in the custody and control of Dianon that we have not produced?" (Exhibit 12).

18.     As of this date, neither Lab Corp or Dianon has produced any documents relating to this conference other than the 19 pages produced in August 2006.

   I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

                   _____
                   PATRICIA DAVIS
                   Trial Attorney
                   Civil Division
                   Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, I caused a true copy of the foregoing **DECLARATION OF COUNSEL FOR THE UNITED STATES** to be served by mail and electronic mail to:

>Bryan T. Carmody, Esq.
>Maya & Associates, P.C.
>266 Post Road East
>Westport, CT 06880
>bcarmody@mayalaw.com
>
>Robert Salcido, Esq.
>Akin Gump Strauss Hauer & Feld, LLP
>Robert Strauss Building
>1333 New Hampshire Ave, NW
>Washington, D.C. 20036
>rsalcido@akingump.com
>
>Bruce R. Parker
>Venable LLP
>1800 Mercantile Bank & Trust Bldg.
>2 Hopkins Plaza
>Baltimore, Md. 21201
>brparker@venable.com

/s/ Richard M. Molot
Richard M. Molot
Assistant U.S. Attorney