# EXHIBIT 2



**U.S. Department of Justice**

Civil Division

MFH:JRB:PDavis
DJ No. 46-14-751

Pat Davis
202-307-0238

*Washington, D.C. 20530*

September 12, 2006

Mr. Robert Salcido
Akin, Gump, Strauss, Hauer
 & Feld LLP
1333 New Hampshire Ave. N.W.
Washington, DC 20036-1564
rsalcido@akingump.com

Dear Robert:

You state in your September 5th email to me that the bulk of the documents you recently produced are responsive to the government's second request for production and relate to the formation of Dianon's compliance program. The compliance program was formed in 1997, yet many of the documents you recently produced are from 2001 and 2002. They clearly are responsive to our July 2005 request number 6, which called for production of "[a]ll documents concerning Dianon's billing compliance plan." It is unclear why these documents were produced after the close of discovery other than to prejudice the Government's ability to take discovery in this case.

As to your request that I respond to your letter of July 25th, I responded to a part of that letter - the issue of whether we would oppose a motion to unseal. As to the other issues, I will respond now. First, on the issue of alleged "spoliation," you did not indicate what relevant documents you claim are missing. As you know, the government relies, in part, on the document retention policies of the various agencies. For example, as you know, the document custodian from the Connecticut Carrier testified at her deposition (p. 14), as follows:

> Q: And is there any kind of CMS memo or directive about retaining documents for the carriers?
> A: Yes. We are -- all carriers and intermediaries are under a do not destroy. It's from a JSM, a joint signature memorandum.
> Q: What does that mean?
> A: That means you can't destroy any documents for any reason.

-2-

It appears from the exhibits to your July 25th letter that Dianon waited until it received a request for documents from the government before it sent out a memo asking employees to retain documents and to search their files, despite learning about the pendency of the case before then. Thom Kossl's memo of May 12, 2003 states that: "Dianon Systems has received a records request from the Department of Justice in connection with an investigation of immunophenotyping flow cytometry studies...." However, the government moved to have this case partially unsealed in September 2002 and provided Dianon with a copy of the complaint in Oct./Nov. 2002, in connection with settlement discussions regarding the prior *qui tam*. Dianon appears to have waited 6-7 months until it received a document request before alerting its employees to retain/retrieve documents. Further, it does not appear that you asked Dianon to search all emails as you keep insisting that the United States should do for federal offices all over the country and for agencies not a party to this lawsuit.

As you know, the federal government is quite large. It would be logistically difficult to send out memos to retain documents to every federal agency for each of the numerous *qui tam* cases we investigate. Considering that your document requests involved collecting documents from Medicare carriers and VA facilities throughout the country, and required communications with hundreds of people, I believe the government's document production in this matter was quite thorough.

Next, you falsely accused the government of "altering" an Impath ALJ decision document. In a March 2004 settlement meeting (before you were retained on this case) Thom Kossl indicated that he had a decision from an ALJ in the Impath matter and that the decision was favorable to Dianon's position. After learning of this decision from Thom, we retrieved a copy of the decision from HHS in April of 2004. We did not produce a copy of the decision at the time of our original production, because we understood that Thom already had the decision and your document request appeared to be seeking the underlying documents related to the decision, such as correspondence and exhibits. Although the relevant Medicare carrier in California, NHIC, initially had trouble locating responsive documents, it eventually did produce approximately 3,500 pages related to the Impath appeal. As part of that production, NHIC produced a copy of the ALJ decision. Thus, the two ALJ decision documents attached to your letter came from two different sources and, of course, were not "altered" in any way. Even a cursory review of the two documents would have told you that, as one is stamped "COPY" and the other is not. Furthermore, since you had the 3,500 page NHIC production well before the close of discovery, it is difficult to understand how Dianon was "hampered" in its ability to conduct discovery.

In addition, you claim that our production fails to conform to Rule 34. Rule 34 states that the party producing documents shall produce them "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." (emphasis added). First, we have bates-stamped our production to correspond to the documents received from each agency. For example, the documents from the VA were stamped with a VA prefix, NIH an NIH prefix, etc. This is more than Dianon has done, as all Dianon's documents were labeled with a PP prefix, which does not indicate which documents came from Dianon and which came from LabCorp. We have asked you to indicate the source of your documents, but you have not done so. Second, we produced the documents as they were kept in the normal

-3-

course of business. For example, when a carrier sent us its production, we grouped the production together, just as the documents were provided to us. When the NIH sent us its panels, we grouped them together, etc. Thus, we have clearly complied with Rule 34.

On another matter, the documents Dianon produced in Stratford last week were not what we expected. We understood that Dianon was producing both the claims submitted to CMS for CPT code 88180 and the records of payment. After reviewing several of the boxes, Ryan realized that the claims for payment were not included. Rather, the documents produced were records of payment and no claims data was produced. Dianon employees informed Ryan that Dianon only kept the claims in an electronic format. Further, the records of payment to CMS for 88180 were interspersed with records of payment with all records of payment for all CPT codes. Obviously, sorting through hundreds of boxes of documents to cull out records of payment from CMS for one CPT code would be prohibitively time-consuming and costly. Then trying to marry those records of payment to claims for payment kept in electronic form would be nearly impossible. We would like to suggest that the parties stipulate to using the electronic records of payment obtained from HHS/CMS for purposes of proof at trial. We produced this data on three disks at the time of our original production in 2005 (Bates # OIG 00004, 00005, 00006). Please let me know whether this will be acceptable.

Finally, I look forward to receiving your response to my September 5, 2006 letter regarding the deficiencies in your privilege log and your recent document production.

                                      Sincerely,

                                      Patricia Davis
                                      Assistant Director
                                      Commercial Litigation Branch
                                      Civil Division

cc:    AUSA Rick Molot
        Bruce R. Parker