# EXHIBIT 5

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

January 3, 2007

Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

Dear Pat:

This is a response to your letter of November 8, 2006, which is a partial response to my letter of October 11, 2006. There you stated that you would not respond "point-by-point" to my October 11, 2006 letter because you considered that to be a "waste of time."

You should, however, respond to the points raised in the letter. We both have duties under the Federal Rules of Civil Procedure and Local Rules to meet and confer regarding disputed issues and we cannot simply flaunt these Rules because you consider a response to be inconvenient or a "waste to time." *See* Fed. R. Civ. P. 37; Local Rule 37(a)(2). The Court is entitled to know the issues that are in dispute and that we embarked in good faith to resolve or narrow those issues absent Court intervention. *Id.*

The following is a list of questions to which you refused to respond and additional issues that arose as a result of the summary judgment briefing:

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Pat Davis
January 3, 2007
Page 2

1. Based upon Dr. Stetler-Stevenson's deposition, we understand that NIH was never asked to hold its electronic documents. *See* Dep. of Dr. Maryalice Stetler-Stevenson at 53:13 – 54:16. If we have misunderstood her testimony or the facts regarding that matter, please provide us with any communication you made to NIH to retain these documents so that we can reduce the number of issues that the Court will need to address.

2. We inquired into whether, during discovery, the Department of Justice ever produced the attached Administrative Law Judge decision authorizing the use of a 26-antibody panel and, if not, why not? (That is, the copy that has fax tails on it proving that you were in possession of the ALJ decision since April 8, 2004.) *See* Ex. 1.[1] Also, we inquired into why, if you had possession of this document, you did not produce it in December 2005, when you were obligated to produce it, but instead produced a *different* version of this document (which omits the fax tails on the document proving that you were in possession of the document in December 2005 when it was due to be produced)? We also inquired into why you did not even produce the non-identical copy of the decision (the version that hides the fax tails) until the very end of discovery when you had possession of the document even before discovery commenced in this action? If you could answer these questions, it would also reduce the number of issues that the Court will need to address.

---

[1] We believe that the only reason we obtained the document is because it was mistakenly handed to us during Dr. Rogan's deposition, on July 6, 2006, but that the government never produced the document in response to any Request for the Production of Document – such as the one we served in August 2005 requesting that the government "[p]roduce all documents relating to . . . appeals by Impath . . . by Medicare carriers in California" that was due to be produced in December 2005.

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━ Attorneys at Law

Pat Davis
January 3, 2007
Page 3

    3.    The government, in its opposition to our motion for Summary Judgment, identified witnesses that you believe have relevant evidence concerning this case but, contrary to Fed. R. Civ. P. 26, you had never previously identified these individuals. Assuming the case survives Summary Judgment, we would like to depose the following previously undisclosed individuals: Georgina Aguilar, David Mehring, and Dr. Srinivas Mandavilli. In addition, we request the deposition of a CMS designee competent to discuss CMS policies regarding 5% databases for CPT codes as well as the information contained in the 5% database you produced pursuant to our previous requests. Please let us know when you will be producing these previously undisclosed witnesses for deposition during the next phase of the litigation.

    4.    You produced the carrier files concerning CPT code 88180 – not in December 2005 when they were due – but on July 17, 2006 – two weeks prior to document discovery cut-off. Why were those files not produced in response to our August 2005 Request for Production of Documents which clearly requests these documents? The only information we have concerning your initial document requests from the carriers are your numerous instructions <u>to produce only</u> the LMRPs and LCDs (which are available to the public), and any appeals regarding 88180 (which you did not produce) despite requests for <u>all</u> documents related to reimbursement of CPT 88180 and despite specific requests for the Impath appeal documents. Please address whether you instructed your California carrier, which had custody and control over the Impath appeal, to limit its response to only publicly available material such as the LMRPs and LCDs and CPT code 88180 appeals, or whether you instructed it to search for

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Pat Davis
January 3, 2007
Page 4

electronic files relevant to the response to our discovery requests. The inadequacy of your instructions to the carriers and subsequent production of document only became apparent in July – at the close of discovery – when you made a more complete document production.

5. We have received hundreds of pages of additional documents through Mr. O'Neill, who has shared information he received pursuant to his Freedom of Information Act request to the Illinois/Wisconsin Medicare carrier. Rather than provide us a copy of *all* documents in your possession that were produced to Mr. O'Neill (and should have been produced to us in December 2005), you assert, without any basis, that we already have *all* of these documents. Why is it that a private citizen, acting under FOIA, was able to obtain several hundred more pages of carrier material related to CPT 88180, then a defendant in a governmental lawsuit in which the government claims more than $100 million in damages and penalties? Also, please provide a full set of all Illinois/Wisconsin carrier documents in your possession responsive to our request – which should have been produced in December 2005 but have been withheld.

6. We have repeatedly requested information concerning the archival of CMS data, such as, how much would it cost to retrieve from on-line, near-line and off-line storage and when data is placed into each category as described by your CMS designee? Without that information, we cannot assess whether we will request 100% of the 88180 data and, if so, the Court will not have sufficient information to determine how costs attributable to that data could or should be split.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Pat Davis
January 3, 2007
Page 5

These questions have been pending for several months. Please either respond to them or confirm that you still consider any response to be a "waste of time" so that in either event the Court will have a record from which to rule on these issues.

As to responses to your inquiries:

1. After receipt of your letter, Dianon again searched for all documents relating to Dr. Braylan's potential employment at Dianon or LabCorp. The documents attached at Ex. 2 are responsive to your request.

2. Pursuant to your request for claims, Dianon made available to you, at substantial expense, over 800 boxes of material. You have now inquired into whether Dianon would be willing to enter into a stipulation regarding the government's claims data. We are in the process of inspecting that data and will respond once the Court rules on the pending summary judgment motion.

3. You inquired into documents from the Hemepath Consensus Conference. Dianon produced those documents that it possessed. There are no additional documents.

4. You inquired into Dianon's Responses to Document Requests for Antibody costs pre-2003 and for the list price LabCorp pays for flow cytometry as requested at Valerie Palmieri's deposition. As you know, as part of your Rule 30(b)(6) deposition, you inquired into the cost of antibodies "used per unit billed." Because your request was unlimited in terms of time period, and because Dianon does not have pre-2003 documentation regarding those costs, a detailed summary of costs was provided to you regarding 2005 costs. *See* Dep. of Valerie

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

Pat Davis
January 3, 2007
Page 6

Palmieri at 50:20-68:12; *see also* Dep. Ex. 6. These costs are not especially pertinent because they did not fall within the time period alleged in the complaint (1997-2003) and were based upon LabCorp's purchasing power, not Dianon's. Hence, we objected to your requests on both relevance and burdensome grounds.[2] Moreover, because no cost data exists, for purposes of summary judgment, we relied upon, as you know, CMS' own cost data which is more representative because it overlaps with the time period alleged in the complaint and, since it is based upon the average lab's costs, is more representative of Dianon's costs than are LabCorp's costs.

Please notify us if you will continue to refuse to answer our questions because you deem it to be a "waste of time" so at least we know that the meet and confer process has been exhausted and we can convene a hearing with the Court.

Sincerely,

*Robert Salcido*

Robert Salcido

---

[2] Notwithstanding the objection, I have attached, as Ex. 3, a spread sheet listing the prices of individual antibodies per test per your request. *See* Palmieri at Dep. 55:15-25.