# EXHIBIT  6

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:02CV1573(MRK) |
| ex rel. DR. JAMES J. TIESINGA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | July 27, 2005 |
| DIANON SYSTEMS, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF UNITED STATES OF AMERICA'S
### FIRST SET OF INTERROGATORIES AND
### REQUEST FOR PRODUCTION OF DOCUMENTS
### DIRECTED TO DEFENDANT DIANON SYSTEMS, INC.

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, plaintiff United

States of America, through its undersigned counsel, hereby propounds its First Set of

Interrogatories and Requests for Production of Documents to defendant Dianon Systems, Inc.

(Dianon).

Plaintiff requests that defendant answer the following interrogatories, in writing and

under oath, and produce, within thirty (30) days of the date of service hereof, at the office of and

by arrangement with the undersigned, all documents responsive to the following request for

production of documents.

- 2 -

## DEFINITIONS

Please refer to Rule 26(a), (c) and (d) of the Local Rules of Civil Procedure for the District of Connecticut for the applicable definitions. In addition, the following specific definitions apply to these discovery requests in accordance with Local Rule 26(a):

A. **"Dianon"** means Dianon Systems, Inc., and any and all predecessors, successors, parent organizations, subsidiaries, affiliates, branches, divisions, units or offices of said entity. Where knowledge, information, or documents in Dianon's custody, control, or possession are requested or referred to, such request or reference includes knowledge, information, or documents in the custody, control, or possession of Dianon's its agents, representatives and any affiliated entities.

B. **"Tiesinga"** refers to the relator, James Tiesinga, M.D.

C. **"LabCorp"** refers to Laboratory Corporation of America.

D. **"Date"** shall mean the exact day, month, and year, if ascertainable, or, if not ascertainable, the best approximation, including relationships to other venues.

E. **" Document"** means all recorded material in any form, including but not limited to: electronic mail, reports, correspondence, notes, memoranda, calendars, diaries, minutes of meetings, working papers, directives, manuals, contracts, charts, graphs, drawings, voicemail messages, facsimiles, telegrams, videotapes, audiotapes, photographs, magnetic tapes, computer discs (including floppy discs), all programming instructions, record layouts, and other material necessary for the retrieval of all electronic or word processing material, and printouts of data or information stored or maintained by electronic means. Documents also include preliminary

- 3 -

drafts or revisions, any attachments or enclosures, as well as copies or duplicates that are not identical to the original because of additions, deletions, alterations or notations.

F. **Organization of Documents Produced.** All documents produced should be organized in such a manner that documents related to a specific interrogatory or document request are grouped together and identified as being responsive to that particular interrogatory or document request.

G. **Claim of Privilege.** Where a claim of privilege is asserted, the attorney asserting the privilege shall provide the information required by Fed. R. Civ. P. 26(b)(5).

H. **Continuing Obligation.** Plaintiff's interrogatories and request for production of documents are continuing. Defendant must promptly supply, by means of supplemental answers or document production, all additional responsive information or documents that may become known to defendant or its attorneys prior to the trial of this action, including, but not limited to, the identity of each person defendant expects to call as a witness or expert witness at trial.

I. **Time Period.** Unless otherwise stated, these interrogatories and request for production of documents refer to the time period January 1, 1995, through the present.

***

- 4 -

## INTERROGATORIES

1.      Identify all individuals involved in the decision to change Dianon's flow cytometry panel from approximately 9 antibodies to approximately 26 antibodies in or about 1996.

2.      Identify all documents concerning the decision to change Dianon's flow cytometry panel from approximately 9 antibodies to approximately 26 antibodies in or about 1996.

3.      Identify all individuals involved in the decision to bill for only 18 of the 26 antibodies in Dianon's flow cytometry panel, rather than all 26 antibodies, in or about 1997-1998.

4.      Identify all documents concerning the decision to bill for only 18 of the 26 antibodies in Dianon's flow cytometry panel, rather than all 26 antibodies, in or about 1997-1998.

5.      Identify all individuals involved in the decision to resume billing for all 26 antibodies in Dianon's flow cytometry panel in or about 2001.

6.      Identify all documents concerning the decision to resume billing for all 26 antibodies in Dianon's flow cytometry panel in or about 2001.

7.      Identify all Dianon compliance officers and all members of any compliance committee.

- 5 -

8.    Identify all individuals who had any role in creating, drafting, designing or revising
      Dianon's Hematopathology Services Test Requisition forms or similar forms relating
      flow cytometry services/testing.

9.    Identify all persons who signed or initialed document bates number 600000.

10.   Identify the person or persons who authored or created document bates numbered
      500234.

11.   Identify the person or persons who authored or created document bates numbered
      900317.

12.    Identify the person or persons who authored or created document bates numbered
      500189.

13.   Identify the person or persons who authored or created document bates numbered
      200060-67.

14.   Identify the person or persons who authored or created document bates numbered
      300004-05.

- 6 -

15. Identify the person or persons who authored or created document bates numbered 400208-10.

16. Identify the person or persons who authored or created document bates numbered 400480.

17. Identify the person or persons who authored or created document bates numbered 900000-03.

18. Identify the person or persons who authored or created document bates numbered 600051.

- 7 -

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following:

1.    All documents concerning the furnishing of any services by Dianon to each of the
beneficiaries identified in Attachments A and B. This request includes, but is not limited
to, all patient records and files, requisition forms, test results and reports, correspondence,
notes, documents provided by referring physicians, and billing records.

2.    All documents identified in response to any of the above interrogatory requests
(indicating the number of the interrogatory to which the documents refer).

3.    All email in which flow cytometry testing or billing is discussed.

4.    All documents concerning the number of antibodies in Dianon's flow cytometry panel,
including but not limited to, any documents concerning the medical necessity of
particular antibodies and/or the choice of particular antibodies.

5.    All documents concerning the medical necessity of flow cytometry tests performed by
Dianon.

6.    All documents concerning Dianon's Hematopathology Services Test Requisition forms
(or similarly named requisition forms), that relate or refer to flow cytometry tests/studies,

- 8 -

including, but not limited to, all documents relating to the creation, drafting or revision of all Hematopathology Services Test Requisition forms.

7.   All documents concerning communications between Dianon and any Government agency, contractor, carrier, or fiscal intermediary, regarding flow cytometry or CPT code 88180 (this request does not include communications related to the routine submission of claims for flow cytometry services).

8.   All documents concerning communications between Dianon and any private insurance carrier regarding flow cytometry or CPT code 88180 (this request does not include communications related to the routine submission of claims for flow cytometry services).

9.   All documents concerning the length of time patient samples remain viable for flow cytometry testing, including but not limited to, any studies conducted by Dianon or Tiesinga related to the viability of patient samples.

10.   All documents concerning Dianon's billing compliance plan.

11.   All documents concerning the compensation of Dianon pathologists.

12.   All documents concerning any complaints from patients or referring doctors to Dianon regarding flow cytometry testing or CPT code 88180.

- 9 -

13.     All communications between Dianon and Lab Corp concerning flow cytometry testing or
        CPT code 88180.

14.     All minutes or notes of any meetings at which billing for, or performance of, flow
        cytometry or CPT code 88180 was discussed, including but not limited to, any
        compliance committee meetings, any board of director meetings, any executive
        committee meetings or any sales or marketing meetings.

15.     All documents concerning procedures and practices within Dianon for handling of
        samples upon which flow cytometry tests are performed.

16.     All documents concerning the "turn around time" for flow cytometry testing at Dianon.

17.     All sales and marketing documents concerning flow cytometry or CPT code 88180.

18.     All training materials concerning flow cytometry or CPT code 88180.

19.     All Department of Pathology Monthly Updates.

- 10 -

20. All documents concerning "Dianon's decision to provide full service anatomic pathology, including hematopathology," as referenced in Part II(b) of the Initial Disclosure of Defendant Dianon Systems, Inc., dated June 1, 2005 ("Initial Disclosure").

21. All documents concerning any memoranda "authored by Dr. Goyette regarding the medical necessity of a comprehensive panel," as referenced in Part II(c) of Dianon's Initial Disclosure.

22. All documents concerning "[c]orrespondence from Dianon to Medicare regarding flow cytometry services under CPT code 88180," as referenced in Part II(d) of Dianon's Initial Disclosure.

23. All documents concerning "academic literature advocating and recommending the use of comprehensive flow cytometry panels," as referenced in Part II(e) of Dianon's Initial Disclosure.

24. All documents concerning "Connecticut Local Medical Review Policies regarding flow cytometry and governmental rules and regulations governing medical necessity," as referenced in Part II(f) of Dianon's Initial Disclosure.

- 11 -

25.    All documents concerning "Dianon's Standard Operating Procedures regarding flow
       cytometry and any related documents describing the preparation of hematopathology
       specimens," as referenced in Part II(g) of Dianon's Initial Disclosure.

26.    All documents concerning Dianon's "design and implementation of its comprehensive
       flow cytometry panel," as referenced in Part I(1) of Dianon's Initial Disclosure.

27.    All documents concerning the "basis for Dianon's use of its comprehensive flow
       cytometry panel," as referenced in Part I(2)-(4) of Dianon's Initial Disclosure.

28.    All documents concerning Dianon's "communications with governmental representatives
       regarding its flow cytometry panel," as referenced in Part I(4) of Dianon's initial
       disclosure.

29.    All documents concerning "management's role in the provision of flow cytometry
       services," as referenced in Part I(4)-(5) of Dianon's Initial Disclosure.

30.    All documents authored by, or received by, Richert Edgar Goyette, M.D. concerning
       Dianon's flow cytometry panels or antibodies, billing for flow cytometry services, or the
       medical necessity of Dianon's flow cytometry services (this request does not include
       communications related to the routine submission of claims for flow cytometry services).

- 12 -

31.    All documents authored by, or received by, Glenn H. Segal, D.O. concerning Dianon's
flow cytometry panels or antibodies, billing for flow cytometry services, or the medical
necessity of Dianon's flow cytometry services (this request does not include
communications related to the routine submission of claims for flow cytometry services).

32.    All documents authored by, or received by, Suha Mishalani, M.D. concerning Dianon's
flow cytometry panels or antibodies, billing for flow cytometry services or the medical
necessity of Dianon's flow cytometry services (this request does not include
communications related to the routine submission of claims for flow cytometry services).

33.    All documents authored by, or received by, James B. Amberson, M.D. concerning
Dianon's flow cytometry panels or antibodies, billing for flow cytometry services or the
medical necessity of Dianon's flow cytometry services (this request does not include
communications related to the routine submission of claims for flow cytometry services).

34.    All documents authored by, or received by, Valeri Palmieri concerning Dianon's flow
cytometry panels or antibodies, billing for flow cytometry services or the medical
necessity of Dianon's flow cytometry services (this request does not include
communications related to the routine submission of claims for flow cytometry services).

35.    All documents authored by, or received by, Tiesinga, concerning Dianon's flow
cytometry panels or antibodies, billing for flow cytometry services or the medical

- 13 -

necessity of Dianon's flow cytometry services (this request does not include
communications related to the routine submission of claims for flow cytometry services).

36.    All documents concerning any communication between Dianon and Dr. Russell Maiese
since Dr. Maiese left employment with Dianon, including, but not limited to,
communications between Glenn H. Segal and Dr. Maiese.

37.    All documents concerning Dianon's decision to open or not open a lab in Oklahoma that
would conduct flow cytometry tests.

38.    All documents created by Steve Gerson concerning any analysis or review of the number
or percentage of business of flow cytometry services provided by Dianon to Medicare
beneficiaries.

39.    All recorded conversations or videos concerning any aspect of liability or damages
relative to this action.

40.    All documents concerning any statistical data or information kept or compiled by Dianon
regarding its flow cytometry services, including, but not limited to data or information
regarding the different types of cases sent to Dianon for flow cytometry testing (e.g.
amount/percentage of acute leukemia cases, chronic leukemia cases, non-Hodgkin's

- 14 -

lymphoma cases, etc.).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

RICHARD M. MOLOT
Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700 (phone)
(203) 773-5373 (fax)
Richard.Molot2@usdoj.gov

MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
RYAN FAYHEE
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0238

Attorneys for the United States