# Exhibit 7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA, | )    No. 3:02CV1573(MRK)<br>)<br>) |
| | )<br>) |
| Plaintiff, | ) |
| v. | ) |
| | )    December 7, 2005 |
| DIANON SYSTEMS, INC., | ) |
| | )<br>) |
| | ) |
| Defendant. | ) |

## PLAINTIFF UNITED STATES OF AMERICA'S OBJECTIONS AND RESPONSES TO DEFENDANT DIANON SYSTEMS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, United States of America submits the following responses and objections to

Defendant Dianon Systems' First Set of Interrogatories and Request for Production of

Documents:

### Introductory Statement and General Objections

1.      The objections and responses set forth herein are based on information now

known to the United States and its attorneys and are made without prejudice to the United States'

right to assert additional objections should grounds for objection be discovered at a later time.

2.      The United States will respond to unobjectionable interrogatories and document

requests or portions of these requests to the best of its present ability. Because the United States

has not completed discovery of the facts pertaining to this action or its preparation for trial, the

United States reserves the right to rely on any facts, documents, or other evidence that may

develop or come to its attention at a later time.

3.      The United States reserves the right to object to the introduction into evidence in this or any other action of any of the responses or objections set forth in response to these interrogatories or document requests. The fact that the United States has answered any part or all of any particular interrogatory or document request is not intended to and shall not be construed to be a waiver by the United States of any objection to the relevance or admissibility of any evidence in this or any other action.

4.      The United States objects to each definition, instruction, and request to the extent that those definitions, instructions, and requests purport to impose on the United States obligations that are broader in scope or more burdensome than those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of this Court. For example, Local Rule 26 defines certain discovery terms, such as "communication," "document," and "identify."

5.      The United States objects to each interrogatory or document request to the extent that they call for the production of information or documents protected from disclosure by privilege or doctrine, including the attorney-client privilege, the investigative file privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the law enforcement privilege or any other applicable basis for invoking privilege. The United States will screen all materials and information to be released to Defendant to remove privileged materials; however, there is a possibility that privileged documents or information may be inadvertently disclosed. By accepting production, Defendant agrees that, to the extent there is any inadvertent disclosure of privileged information, it shall not constitute any waiver of the privileges and all such material shall be immediately returned to the United States. The United States reserves the right to object to the introduction into evidence

2

before the Court at any time before or at trial of information that is privileged under law and that has been revealed or produced inadvertently. The United States does not, by responding to these document requests, waive any claim of privilege or the protection of any doctrine.

6.       The United States objects to these document requests to the extent they require the United States to draw legal conclusions or otherwise seek to impose upon the United States any requirements beyond those established by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Connecticut.

7.       The United States objects to these document requests to the extent that responding would require it to violate any seal imposed by a Court, by statute, or by the Federal Rules of Civil or Criminal Procedure, the False Claims Act, a grand jury proceeding, a criminal sentencing or other disposition, or any other matter. The United States will not separately object to any specific request to assert this ground where doing so would itself implicate the seal at issue.

8.       These general objections apply to each interrogatory or document request and thus, for convenience, are not repeated after each request, but rather are set forth herein and hereby incorporated into each response. The assertion of the same, similar, or additional objections or the provision of partial responses to individual interrogatories or document requests does not and should not be construed to waive or modify any of the United States' general objections.

9.       Documents produced in response to Defendants' document requests that fall within the protections set forth in the Protective Order Governing the Disclosure of Health Information filed with the Court on December 5, 2005, are so designated on the documents

3

themselves as required by the Protective Order.

      10.    The United States objects to Defendants' definitions of the terms "You," "Your,"

and as vague, ambiguous and overly broad. The United States objects to these definitions as

overly broad insofar as they encompass any agency, office, employee, agent, representative,

officer or contractor of either the Legislative Branch or the Judicial Branch of the United States

government. Subject to and without waiving the foregoing objections, the United States will

interpret "You," and "Your" to mean the offices and agencies of the Executive Branch of the

United States government, that are reasonably likely to possess responsive documents or

information, and the employees of those offices and agencies.

4

## I. INTERROGATORY RESPONSES

### INTERROGATORY NO. 1

State the basis for your contention in paragraph 24 of your amended complaint that Dianon acted with actual knowledge, deliberate ignorance or reckless disregard of the laws, regulations and guidance applicable to federal healthcare programs when submitting claims for various flow cytometry procedures billed under CPT Code 88180.

### RESPONSE TO INTERROGATORY NO. 1

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, this contention interrogatory is premature at this preliminary stage of discovery.

Subject to and without waiving these objections, the United States responds as follows: Medicare and Tricare providers, including laboratories such as Dianon, must comply with applicable statutes, regulations and guidelines in order to be reimbursed by the government. A provider has a duty to have knowledge of the statutes, regulations and guidelines regarding coverage for Medicare services, including, but not limited to, the following: Medicare only covers reasonable and necessary medical services, 42 U.S.C. § 1395y(a)(1)(A), and providers should provide economical medical services, and then, only when, and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1). In addition, each time a provider signs a CMS 1500 claim form the provider certifies that the services in question "were medically indicated and necessary for the health of the patient." Moreover, pursuant to 42 C.F.R. § 411.406, a Medicare provider, such as Dianon, is on notice that the services it provided were not reasonable and necessary based on, among other things, its receipt of CMS notices, including manual issuances, bulletins or other written guides or directives from carriers, as well as a provider's knowledge of what are

5

considered acceptable standards of practice in the local medical community. See also Tricare

regulations at 32 C.F.R. § 199. In addition, a May 21, 1997 internal Dianon memo prepared by

Dianon pathologists indicated that only 18 antibodies in its flow cytometry panels were "essential

for the accurate and complete initial workup of flow cytometry specimens" and "their routine

usage can be justified to insurance carriers." Yet for various time periods after May 21, 1997,

Dianon billed federal healthcare programs for more than 18 antibodies for its flow cytometry

services. Finally, Dianon's own test requisition forms indicate that Dianon was on notice of the

relevant rules and regulations related to billing for only medically necessary services.

### INTERROGATORY NO. 2

State the basis for your contention in paragraph 36 that from 1996 to the present when
Dianon billed for flow cytometry tests, a significant portion of the antibodies billed to federal
healthcare programs were not medically necessary. For each such claim, identify which
antibodies were medically unnecessary.

### RESPONSE TO INTERROGATORY NO. 2

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, this contention

interrogatory is premature at this preliminary stage of discovery. Third, the United States objects

to this interrogatory to the extent it prematurely calls for the production of expert disclosure

under Rule 26(a)(2). Fourth, the United States objects to this interrogatory pursuant to Fed. R.

Civ. P. 33(d), because the answer to this interrogatory can be derived or ascertained from the

documents being produced pursuant to document requests below. Fifth, this request is overly

broad and burdensome, as Dianon submitted over 13,000 claims for flow cytometry services to

the government during the relevant time period.

6

Subject to and without waiving these objections, the United States responds as follows:

The United States has provided specific examples of which antibodies were not medically necessary in its amended complaint. In addition, the Dianon claims data and the patient sheets from the government's initial sample, being produced in response to the document requests below, contain detailed information that is responsive to this interrogatory. Finally, the United States will provide additional responsive information in its expert disclosure.

## INTERROGATORY NO. 3

List all instances when the United States reimbursed laboratories or medical professionals, other than Dianon, for flow cytometry antibody testing for leukemia and lymphoma where the laboratory or medical professional used a panel of 26 or more antibodies from 1997 through March 31, 2004. Include the date, number of antibodies reimbursed, and the total amount of reimbursement. Also include the total number of medical and/or laboratory service providers so reimbursed.

## RESPONSE TO INTERROGATORY NO. 3

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the United States objects to this interrogatory because it is overly broad and unduly burdensome. This interrogatory appears to call for a review of claims data for every single provider of flow cytometry services in the United States that submitted a claim to any federal healthcare program for flow cytometry services for a seven year period. To collect, review and report on this data, which involves thousands of claims, would be unduly burdensome. The United States invites Dianon to meet and confer pursuant to Local Rule of

7

Civil Procedure 37(a)(2) concerning the scope of this interrogatory.

### INTERROGATORY NO. 4

Describe, in detail, the content of any and all written policies or standards issued or adopted by the United States governing the number of antibodies used in flow cytometry antibody panel testing for leukemia and lymphoma during the period 1996 through 2004. Include the date of publication and where the standard or policy was published.

### RESPONSE TO INTERROGATORY NO. 4

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, this request is vague because it does not indicate which agency or agencies of the United States it refers to. Third, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Fourth, the United States objects to this interrogatory pursuant to Fed. R. Civ. P. 33(d), because the answer to this interrogatory can be derived or ascertained from the documents being produced pursuant to document requests below and/or from publicly available sources.

Subject to and without waiving these objections, the United States responds as follows: Please see the Local Medical Review Policies, Local Coverage Determinations and other documents/guidance from Medicare produced in response to the requests for production of documents, below.

### INTERROGATORY NO. 5

Provide the name, business address, and telephone number for all laboratories, medical professionals, and/or hematopathologists who conducted flow cytometry antibody panel testing

8

for leukemia and lymphoma at Veteran Affairs facilities or at the request of doctors at Veterans Affairs facilities during the period 1997 through 2004. For each person listed, indicate whether the professional is currently employed by the United States Government.

### RESPONSE TO INTERROGATORY NO. 5

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this interrogatory is unduly broad and burdensome. There are approximately 170 U.S. Department of Veterans Affairs (VA) medical centers in the United States. The VA does not keep a centralized list of the number of "laboratories" that perform flow cytometry testing. In addition, there is no centralized list of "medical professionals, and/or hematopathologists" who conducted flow cytometry testing during the time period in question. Moreover, some VA facilities ask outside labs to conduct flow cytometry tests. Fourth, the phrase "at the request of VA doctors" is vague and ambiguous in the context of this interrogatory.

Subject to and without waiving these objections, the United States answers as follows: A list of the names, addresses and phone numbers of VA medical centers and facilities is available at the VA's publically available website, www.va.gov. The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

### INTERROGATORY NO. 6

List all damages, penalties, or other monetary awards you contend you are entitled to in

9

this matter and the factual basis for each such contention.

## RESPONSE TO INTERROGATORY NO. 6

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, this interrogatory

calls for a damages analysis, which is premature at this stage of discovery.

Subject to and without waiving these objections, the United States responds as follows:

The United States will provide its damages analysis on or before May 1, 2006, as agreed to by the

parties.

## INTERROGATORY NO. 7

List all publications, scientific opinions, articles, or learned treatises you contend
establishes the standard of care for the design of flow cytometry antibody panel testing for
leukemia and lymphoma during the period 1997 to the present. Include in your answer the author,
title, publication information and date of publication for each article or treatise.

## RESPONSE TO INTERROGATORY NO. 7

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this interrogatory because it is overly broad and unduly burdensome. This interrogatory

appears to call for the production of any and all medical literature, text books, treatises, articles

and abstracts relating to flow cytometry and medical necessity. Third, the United States objects

to this interrogatory to the extent it prematurely calls for the production of expert disclosure

under Rule 26(a)(2). The United States invites Dianon to meet and confer in accordance with

Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

10

### INTERROGATORY NO. 8

List all publications, scientific opinions, articles, or learned treatises you contend establishes that a 13 to 15 antibody panel as described in your Amended Complaint paragraphs 50 through 69 is the standard of care for the design of flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 to the present. Include in your answer the author, title, publication information and date of publication for each article or treatise.

### RESPONSE TO INTERROGATORY NO. 8

See objections and response to Interrogatory number 7.

### INTERROGATORY NO. 9

Describe all facts and information that would be relevant to a hematopathologist in crafting or designing an antibody panel for a patient.

### RESPONSE TO INTERROGATORY NO. 9

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, this interrogatory

is vague because it does not define what the "antibody panel" in question would be used for.

Third, the United States objects to this interrogatory to the extent it prematurely calls for the

production of expert disclosure under Rule 26(a)(2). The United States invites Dianon to meet

and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this

interrogatory.

### INTERROGATORY NO. 10

Provide all facts and information that would be relevant for a reference laboratory, such as Dianon, to consider in designing antibody panel(s) for the diagnosis of leukemia and lymphoma.

### RESPONSE TO INTERROGATORY NO. 10

The United States objects to this interrogatory on the following grounds. First, the United

11

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this interrogatory to the extent it prematurely calls for the production of expert

disclosure under Rule 26(a)(2). Third, this interrogatory is vague and ambiguous, as the term

"reference laboratory" is not defined, except as it relates to Dianon, and the terms "relevant" and

"to consider" are unclear and undefined in the context of this interrogatory.

The United States invites Dianon to meet and confer in accordance with Local Rule of

Civil Procedure 37(a)(2) to discuss this interrogatory.

## INTERROGATORY NO. 11

Describe all relevant facts and information concerning the differences between an on-site
hematopathology laboratory and its practice of medicine and a reference laboratory, such as
Dianon, and its practice of medicine in relation to the design and evaluation of flow cytometry
antibody panel for the diagnosis and classification of leukemia and lymphoma.

## RESPONSE TO INTERROGATORY NO. 11

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this interrogatory to the extent it prematurely calls for the production of expert

disclosure under Rule 26(a)(2). Third, this interrogatory is vague and ambiguous, as the term

"on-site hematopathology laboratory" is not defined, and the term "reference laboratory" is not

defined except as it relates to Dianon. Also, the term "and its practice of medicine" is ambiguous

in the context of "the design and evaluation of flow cytometry panel." The United States invites

Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss

this interrogatory.

## INTERROGATORY NO. 12

12

Describe in detail any and all changes to Medicare billing and reimbursement policies and procedures for CPT Codes 88180, 88184, 88185, 88187, 88188, and 88189 during the period 1997 to the present. For each such change in policy or procedure given in response to this interrogatory, provide the factual basis and reasons for instituting the changes made, if any.

## RESPONSE TO INTERROGATORY NO. 12

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the United States objects to this interrogatory to the extent the answer is contained in publically available sources, such as the Federal Register.

Subject to and without waiving these objections, the United States responds as follows: From 1997 until January 1, 2005, there were no changes to how Medicare paid for flow cytometry. The CPT (Current Procedural Terminology) code 88180 was used by providers and suppliers to report and receive payment for flow cytometry services. Effective January 1, 2005, CPT code 88180 was replaced by CPT codes 88184, 88185, 88187, 88188 and 88189. *See* 2005 Medicare Physician Fee Schedule final rule published on November 15, 2004 (69 Fed. Reg. 66236). As indicated on page 66367 of the 2005 final rule, CMS accepted the work relative value units recommended by the AMA Relative Value Update Committee (RUC) for codes 88184, 88185, 88187, 88188, and 88189. CMS also accepted the practice expense inputs for clinical labor, medical supplies and medical equipment recommended by the RUC for CPT codes 88184 to 88189. These inputs and their prices were used to create the practice expense relative value units. The change to a different coding system for flow cytometry had been contemplated

13

in the August 15, 2003 proposed physician fee schedule rule, where CMS expressed concern

with the CPT coding system for flow cytometry, stating that "The current coding system

(payment on a per marker basis) may encourage the performance of more markers than may be

medically necessary because the pathologist determines what markers to perform and when to

perform them." 68 Fed. Reg. 49030, 49048. For further information on the issues CMS

identified with the coding of flow cytometry under CPT Code 88180, see p. 49047 – 49048 of the

August 15, 2003 proposed rule.

### INTERROGATORY NO. 13

Describe all reasons, if any, why Medicare did not establish a flat fee for conducting flow cytometry antibody panel testing for leukemia and lymphoma, rather than charging on a per antibody basis, during the period 1997 through 2004.

### RESPONSE TO INTERROGATORY NO. 13

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the term "flat fee"

is vague and undefined. Third, the United States objects to this interrogatory on the grounds that

it seeks information not relevant to the claims or defenses of any party and is not reasonably

calculated to lead to the discovery of admissible evidence. Fourth, the United States objects to

this interrogatory to the extent the answer is contained in publically available sources, such as the

Federal Register.

Subject to and without waiving these objections, the United States responds as follows:

In most cases, CMS relies on the AMA's CPT codes and coding guidelines. Physicians follow

the CPT conventions in reporting the code that most appropriately describes the service provided.

Physician fee schedule payment allowances are established based on the CPT descriptor. From

1997 through 2004, the descriptor for CPT code 88180 was "Flow Cytometry; each cell surface,

cytoplasmic or nuclear marker quantifies cell surface, cytoplasmic or nuclear antigens."

According to the CPT descriptor, this code was reported by the marker. Therefore, Medicare

relied on the AMA's CPT "per marker" description to pay for flow cytometry.

### INTERROGATORY NO. 14

In each instance you contend that Dianon submitted a claim to you for medically
unnecessary flow cytometry antibody panel testing for leukemia and lymphoma during the period
1997 through March 31, 2004, describe in detail the reasons why the claim was not denied.

### RESPONSE TO INTERROGATORY NO. 14

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this interrogatory on the grounds that it seeks information not relevant to the claims or

defenses of any party and is not reasonably calculated to lead to the discovery of admissible

evidence.

Subject to and without waiving these objections, the United States responds as follows:

Medicare and Tricare expect providers to have knowledge of the statutes, regulations and

guidelines regarding coverage for Medicare and Tricare services, including, but not limited to,

the following: Medicare only covers reasonable and necessary medical services, 42 U.S.C. §

1395y(a)(1)(A), and providers should provide economical medical services, and then, only when,

and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1). See also Tricare regulations

at 32 C.F.R. § 199. In addition, each time a provider submits a claim, it certifies on the CMS

15

1500 claim form that the services in question "were medically indicated and necessary for the health of the patient." Thus, Medicare and Tricare do not generally review claims for medical necessity prior to paying claims.

### INTERROGATORY NO. 15

List all instances in which you declined to reimburse Dianon for a claim submitted to you for flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 through March 31, 2004 and state the reasons for declining to reimburse Dianon.

### RESPONSE TO INTERROGATORY NO. 15

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the United States objects to this interrogatory to the extent that it seeks documents and information that is in the control, custody or possession of Dianon. Fourth, the interrogatory is overly broad and unduly burdensome.

Subject to and without waiving these objections, the United States responds as follows: Each time a claim is denied a Remittance Advice containing a denial code (formerly called an "Action Code" and currently called a "Reason Code") and/or a Remark Code is sent to the Medicare provider who submitted the claim. Thus, for each instance where a flow cytometry claim was denied by Medicare, Dianon already has in its possession the reason for the denial.

### INTERROGATORY NO. 16

Provide a definition of the term "medically necessary" as it relates to flow cytometry antibody panel design and evaluation.

16

## RESPONSE TO INTERROGATORY NO. 16

The United States objects to this interrogatory on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request to the extent that it seeks documents and information that is in the control, custody or possession of Dianon. Third, the request is overly broad and unduly burdensome. For example, this interrogatory appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fourth, the United States objects to this interrogatory to the extent it seeks information that is publically available, such as Medicare's regulations related to medical necessity, as well as publically available Local Medical Review Policies and Local Coverage Determinations that discuss flow cytometry and medical necessity. Fifth, the United States objects to this interrogatory pursuant to Fed. R. Civ. P. 33(d), because the answer to this interrogatory can be derived or ascertained from the documents being produced pursuant to document requests below.

Subject to and without waiving these objections, the United States responds as follows: The medical necessity definitions are contained in publicly available statutes and regulations, as well as publicly available Local Medical Review Policies and Local Coverage Determinations related to flow cytometry (which are being produced in response to Dianon's document requests, below), as well as the publicly available medical literature related to flow cytometry.

## INTERROGATORY NO. 17

Describe all efforts you made to notify Dianon that you believed its 26 antibody panel, or portions thereof, used in leukemia and lymphoma testing was medically unnecessary.

17

## RESPONSE TO INTERROGATORY NO. 17

The United States objects to this interrogatory on the following grounds. The United States incorporates by reference its General Objections, stated above.

Subject to and without waiving these objections, the United States responds as follows: A Medicare and Tricare provider, such as Dianon, has a duty to know the statutes, regulations and guidelines regarding coverage for Medicare and Tricare services, including, but not limited to, the following: Medicare only covers reasonable and necessary medical services, 42 U.S.C. § 1395y(a)(1)(A), and providers should provide economical medical services, and then, only when, and to the extent, medically necessary. 42 U.S.C. § 1320c-5(a)(1). See also Tricare regulations at 32 C.F.R. § 199. In addition, each time a provider submits a CMS 1500 claim form the provider certifies that the services in question "were medically indicated and necessary for the health of the patient." Moreover, pursuant to 42 C.F.R. § 411.406, a Medicare provider is on notice that services it provided were not reasonable and necessary based on, among other things, its receipt of CMS notices, including manual issuances, bulletins or other written guides or directives from carriers, as well as a provider's knowledge of what are considered acceptable standards of practice in the local medical community.

## INTERROGATORY NO. 18

Do you agree that training hematopathologists to use one standard antibody panel as opposed to numerous different antibody panels will, to a reasonable degree of medical certainty, decrease the error rate in diagnosing and classifying leukemias and lymphomas. If you do not agree, state the reasons and factual basis for your disagreement.

## RESPONSE TO INTERROGATORY NO. 18

The United States objects to this interrogatory on the following grounds. First, the United

18

States incorporates by reference its General Objections, stated above. Second, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2). Third, this interrogatory is vague and ambiguous, as the number of antibodies in the referenced "standard antibody panel" is not defined. In addition, the term "numerous different antibody panels" is ambiguous. For example, it is unclear whether "numerous" means, for example, four or five different antibody panels, ten or eleven different antibody panels, or some higher number of different panels. Furthermore, the phrase "decrease the error rate" is vague and undefined. The United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss this interrogatory.

## II. REQUESTS FOR PRODUCTION

1. Produce each document supporting the contention in paragraph 25 of the amended complaint that Dianon significantly increased the number of antibodies it used to test patient specimens from 1996 to the present.

**RESPONSE:** The United States objects to this request on the following grounds.

First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents that discuss the number of antibodies in its panel. Fourth, the request is overly broad and unduly burdensome. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

2. Produce each document supporting the contention in paragraph 27 of the amended

20

complaint that Dianon's "standard" flow cytometry panel consisted of 8 antibodies in 1995.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents that discuss the number of antibodies in its panel. Fourth, the request is overly broad and unduly burdensome. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

3.    Produce each document supporting the contention in paragraph 30 of the amended complaint that Dianon prepared an internal memo purporting to justify the company's standard panel of 26 antibodies.

**RESPONSE:** The United States objects to this request on the following grounds.

21

First, the United States incorporates by reference its General Objections, stated above. Second,

to the extent that the purpose of this request is to obtain the factual and legal conclusions

supporting the allegations contained in the United States' amended complaint, then this request

for the production of documents constitutes a contention interrogatory that is premature at this

preliminary stage of discovery and that is improperly framed as a request for production. Third,

the United States objects to this request to the extent that it seeks documents that are in the

control, custody or possession of Dianon. For example, this request appears to call for

production of Dianon's own internal memo purporting to justify the company's standard panel of

26 antibodies. Fourth, the United States objects to this request to the extent that it calls for the

production of documents and information protected from disclosure by privilege and doctrine,

including specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's

privilege, the investigative file privilege and the law enforcement privilege.

                Subject to and without waiving these objections, the United States responds as

follows: There are no non-privileged documents, with the exception of Dianon's own documents,

that are responsive to this request.

      4.     Produce each document supporting the contention in paragraph 31 of the
amended complaint that Dianon pathologists indicated that 18 antibodies were essential.

          **RESPONSE:** The United States objects to this request on the following grounds.

First, the United States incorporates by reference its General Objections, stated above. Second,

to the extent that the purpose of this request is to obtain the factual and legal conclusions

supporting the allegations contained in the United States' amended complaint, then this request

22

for the production of documents constitutes a contention interrogatory that is premature at this

preliminary stage of discovery and that is improperly framed as a request for production. Third,

the United States objects to this request to the extent that it seeks documents that are in the

control, custody or possession of Dianon. For example, this request appears to call for

production of Dianon's own internal memo indicating that only 18 antibodies were essential.

Fourth, the United States objects to this request to the extent that it calls for the production of

documents and information protected from disclosure by privilege and doctrine, including

specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's

privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States responds as follows:

There are no non-privileged documents, with the exception of Dianon's own documents, that are

responsive to this request.

5. Produce each document supporting the contention in paragraph 32 of the amended complaint that Dianon only billed for 18 antibodies from 1998 to 2000 because it "knew that only 18 antibodies were medically necessary."

**RESPONSE:** The United States objects to this request on the following grounds.

First, the United States incorporates by reference its General Objections, stated above. Second,

to the extent that the purpose of this request is to obtain the factual and legal conclusions

supporting the allegations contained in the United States' amended complaint, then this request

for the production of documents constitutes a contention interrogatory that is premature at this

preliminary stage of discovery and that is improperly framed as a request for production. Third,

the United States objects to this request to the extent that it seeks documents that are in the

23

control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own internal memo indicating that only 18 antibodies were essential. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States responds as follows: There are no non-privileged documents, with the exception of Dianon's own documents, that are responsive to this request.

6.    Produce each document supporting the contention in paragraph 33 that Dianon billed federal healthcare programs "for the 8 antibodies that its own pathologists had found were not 'essential' in the June 17, 1997 memo."

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product

24

doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

7.    Produce each document supporting the contention in paragraph 34 of the amended complaint that Dianon billed federal healthcare programs for 26 antibodies in most cases from on or about 2001 to the first quarter of 2004.

**RESPONSE:** The United States objects to this request on the following grounds.

First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

25

8. Produce each document supporting the contention in paragraph 35 of the amended complaint that not "all of the 26 antibodies in Dianon's standard panel are necessary, or appropriately used, to evaluate all types of cancer."

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents related to flow cytometry, as well as patient medical records containing the patients' clinical history and other relevant test results. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

26

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

9.     Produce each document supporting the contention in paragraph 36 of the amended complaint that "when Dianon billed for flow cytometry tests, a significant portion of antibodies billed to federal healthcare programs were not medically necessary."

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents related to flow cytometry, as well as patient medical records containing the patients' clinical history and other relevant test results. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth,

27

the United States objects to this request to the extent it prematurely calls for the production of

expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States will make available for

inspection and copying non-privileged documents, if any, that are responsive to this request.

10.    Produce each document supporting the contentions in paragraph 37 of the
amended complaint that the information "received by Dianon ... provided information which
would have allowed pathologists at Dianon to use their medical judgment to craft panels aimed at
identifying the particular type of cancer suspected by the referring physician, to determine
whether cancer had recurred or to stage a particular type of cancer," each document supporting
the contention that "Dianon did not exercise medical judgment as to whether each of the
individual antibodies was medically necessary," and each document supporting the contention
that "Dianon's pathologists should have used their medical judgment to limit the panel size to
those antibodies medically necessary to the already diagnosed, or suspected, type of cancer."

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, to the

extent that the purpose of this request is to obtain the factual and legal conclusions supporting the

allegations contained in the United States' amended complaint, then this request for the

production of documents constitutes a contention interrogatory that is premature at this

preliminary stage of discovery and that is improperly framed as a request for production. Third,

the United States objects to this request to the extent that it seeks documents that are in the

control, custody or possession of Dianon. For example, this request appears to call for

production of Dianon's own documents related to flow cytometry, as well as patient medical

records containing the patients' clinical history and other relevant test results. Fourth, the request

is overly broad and unduly burdensome. For example, this request appears to call for the

production of any and all medical literature, text books, treatises, articles and abstracts relating to

28

flow cytometry and medical necessity. Fifth, the United States objects to this request to the

extent that it calls for the production of documents and information protected from disclosure by

privilege and doctrine, including specifically the attorney-client privilege, the work product

doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the

informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth,

the United States objects to this request to the extent it prematurely calls for the production of

expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States will make available for

inspection and copying non-privileged documents, if any, that are responsive to this request.

11.     Produce each document supporting the contention in paragraph 38 of the amended
complaint that "for a significant portion of the patients for whom Dianon conducted flow
cytometry tests during the relevant time period, Dianon performed multiple tests, over time, on
the same patient, each time using a full panel of 26 antibodies" and each document supporting
the contention that "where a prior Dianon flow cytometry test had already been used to evaluate a
particular type of cancer, the pathologist knew of the results of the prior test, or should have
known by reviewing Dianon's own records, it was not medically necessary to test for those
antibodies which were not useful to evaluate the type of cancer in question."

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, to the

extent that the purpose of this request is to obtain the factual and legal conclusions supporting the

allegations contained in the United States' amended complaint, then this request for the

production of documents constitutes a contention interrogatory that is premature at this

preliminary stage of discovery and that is improperly framed as a request for production. Third,

the United States objects to this request to the extent that it seeks documents that are in the

control, custody or possession of Dianon. For example, this request appears to call for

29

production of Dianon's own documents related to flow cytometry, as well as patient medical records containing the patients' clinical history and other relevant test results. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

12.    Produce each document supporting the contention in paragraph 39 of the amended complaint that physicians "who refer patient samples to Dianon for testing rely on the medical judgment of the Dianon pathologist as to the number and type of antibodies to use in performing flow cytometry tests."

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third,

30

the United States objects to this request to the extent that it seeks documents that are in the

control, custody or possession of Dianon. For example, this request appears to call for

production of Dianon's own documents related to flow cytometry, such as Dianon's own flow

cytometry requisition forms. Fourth, the request is overly broad and unduly burdensome. For

example, this request appears to call for the production of any and all medical literature, text

books, treatises, articles and abstracts relating to the role of hematopathologists in flow

cytometry testing. Fifth, the United States objects to this request to the extent that it calls for the

production of documents and information protected from disclosure by privilege and doctrine,

including specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's

privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United

States objects to this request to the extent it prematurely calls for the production of expert

disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States responds as follows:

There are no non-privileged documents, with the exception of Dianon's own documents, that are

responsive to this request

13. Produce each document supporting the contention in paragraph 40 of the
amended complaint that by "limiting the ordering choice of 18-26 antibodies, Dianon ensured
that in many cases medically unnecessary antibodies would be used and billed to federal
healthcare programs."

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, to the

extent that the purpose of this request is to obtain the factual and legal conclusions supporting the

31

allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents related to flow cytometry, such as Dianon's own flow cytometry requisition forms. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the joint prosecution/common interest doctrine, the work product doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States responds as follows: There are no non-privileged documents, with the exception of Dianon's own documents, that are responsive to this request

14. Produce each document that relates to whether services furnished under former Code 88180 were medically necessary and indicated.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, this

32

request is vague and ambiguous, as it does not indicate whether the "services furnished" refer to flow cytometry services furnished by Dianon that have been reviewed by the United States in relation to this case, or to flow cytometry services furnished by all providers across the country from 1995 to the present. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents related to flow cytometry, such as the requisition forms and patient medical records. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

15. Produce each document that relates to how Medicare set reimbursement under former CPT Code 88180.

**RESPONSE**: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the

33

United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is ambiguous, because it is unclear whether this refers to the general concept of reimbursing providers per antibody used, or whether it refers to the amount reimbursed per antibody. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Fifth, the United States objects to this request to the extent it calls for documents or information that are contained in publically available sources, such as the Federal Register.

Subject to and without waiving these objections, the United States responds as follows: The payment rate for CPT code 88180 was established through the final physician fee schedule regulations, which can be found in the Federal Register, as follows: 1996 Medicare Physician Fee Schedule-final rule was published in the Federal Register on December 8, 1995 (60 Fed. Reg. 63124); 1997 Medicare Physician Fee Schedule-final rule was published in the Federal Register on November 22, 1996 (61 Fed. Reg. 59490); 1998 Medicare Physician Fee Schedule-final rule was published in the Federal Register on October 31, 1997 (62 Fed. Reg. 59048); 1999 Medicare Physician Fee Schedule-final rule was published in the Federal Register on November 2, 1998 (63 Fed. Reg. 58814); 2000 Medicare Physician Fee Schedule-final rule was published in the Federal Register on November 2, 1999 (64 Fed. Reg. 59380); 2001 Medicare Physician Fee Schedule-final rule was published in the Federal Register on November 1, 2000 (65 Fed. Reg.

34

65376); 2002 Medicare Physician Fee Schedule-final rule was published in the Federal Register

on November 1, 2001 (66 Fed. Reg. 55246); 2003 Medicare Physician Fee Schedule-final rule

was published in the Federal Register on December 31, 2002 (67 Fed. Reg. 79966); 2004

Medicare Physician Fee Schedule-final rule was published in the Federal Register on November

7, 2003 (68 Fed. Reg. 63196); 2005 Medicare Physician Fee Schedule-final rule was published in

the Federal Register on November 15, 2004 (69 Fed. Reg. 66236). See also, responses to request

for production # 16-23 and 45.

      16.    Produce each document that relates to any change in the reimbursement methodology for flow cytometry testing for Medicare beneficiaries.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, this request is ambiguous, because it is unclear whether this refers to

the general concept of reimbursing providers per antibody used, or whether it refers to the

amount reimbursed per antibody. Fourth, the United States objects to this request to the extent

that it calls for the production of documents and information protected from disclosure by

privilege and doctrine, including specifically the attorney-client privilege, the work product

doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the

informant's privilege, the investigative file privilege and the law enforcement privilege. Fifth,

the United States objects to this request to the extent it calls for documents or information that

are contained in publically available sources, such as the Federal Register.

35

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request; see also, the 2005 Medicare Physician Fee Schedule final rule published on November 15, 2004. 69 Fed. Reg. 66236, and responses to requests for production #15, 17-23, and 45.

      17.    Produce each document that relates to how CMS established the relative value of work units for interpreting flow results under CPT Codes 88187, 88188 and 88189.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is ambiguous. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Fifth, the United States objects to this request to the extent it calls for documents or information that are contained in publically available sources, such as the Federal Register.

Subject to and without waiving these objections, the United States responds as follows: For CPT Codes 88187, 88188 and 88189, CMS accepted the recommendations from the AMA Relative Value Update Committee on the work relative value units. The establishment of the work relative value units for CPT codes 88187, 88188 and 88189 is described in the table on page 66367 of the final physician fee schedule rule published on November 15, 2004. (69 Fed.

Reg. 66236).

18.    Produce each document that relates to how CMS established the relative value of practice expenses for furnishing flow cytometry under CPT Codes 88184 and 88185.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is ambiguous. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Fifth, the United States objects to this request to the extent it calls for documents or information that are contained in publically available sources, such as the Federal Register.

Subject to and without waiving these objections, the United States responds as follows: The practice expense relative value units for CPT codes 88184 and 88185 were established through the physician fee schedule rule published on November 15, 2004. 69 Fed. Reg. 66236, 66428. In addition, for the specific practice expense inputs see supporting data files at: http://www.cms.hhs.gov/physicians/pfs/.

19.    Produce each document that relates to data provided to CMS by the Relative Value Update Committee related to setting reimbursement rates for flow cytometry services under former CPT Code 88180 and CPT Codes 88184, 88185, 88187, 88188, 88189.

37

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, the United States objects to this request to the extent that it calls for

the production of documents and information protected from disclosure by privilege and

doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's

privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make available for

inspection and copying non-privileged documents, if any, that are responsive to this request.

20.    Produce each document that relates to the number of markers (antibody
reagents) used or billed by providers and suppliers when performing flow cytometry under
former CPT Code 88180 or CPT Codes 88184, 88185, 88187, 88188, 88189 or that otherwise
reflects or relates to utilization of CPT codes 88180, 88184, 88185, 88187, 88188, 88189 for
claims processed by Medicare.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, this request is vague, ambiguous and unintelligible.

Subject to and without waiving these objections, the United States responds as follows:

The meaning of this request is unclear. The United States invites Dianon to meet and confer

38

pursuant to Local Rule of Civil Procedure 37(a)(2) to discuss the meaning of this request.

21.    Produce each document that relates to how CMS set or modified the payment rate for the technical component codes for flow cytometry, CPT Codes 88184 and 88185.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is ambiguous. Fourth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Fifth, the United States objects to this request to the extent it calls for documents or information that are contained in publically available sources, such as the Federal Register.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request; see also, 69 Fed. Reg. 66236, specifically Addendum B on p.66630 of the physician fee schedule final rule published on November 15, 2004. This is the source for the establishment of the technical component and the professional component for CPT codes 88184 to 88189.

22.    Produce each document that relates to how CMS set the payment rate for the professional component codes for flow cytometry, CPT Codes 88187, 88188, and 88189.

39

**RESPONSE:** See objections and responses to request for production # 21, above.

23.    Produce each document related to the American Clinical Laboratory Association's April 15, 2005 letter to CMS, including communications related to its survey findings that the typical number of markers reported for a myeloid/lymphoid panel was 26 markers.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this interrogatory on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

24.    Produce each document related to the flow cytometry panels used by Veteran Affairs facilities.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is unduly broad and burdensome. There are approximately 170 U.S. Department of Veterans Affairs (VA) facilities in the United States. The VA does not keep a centralized list of the number of facilities that perform flow cytometry testing. Thus, to comply with this request, the VA would have to canvas each separate facility,

40

run data from each facility, and then pull thousands of medical charts from storage going back to 1995. This would take hundreds of hours at a substantial cost to the VA. In addition, to the extent this request seeks documents "used by" the VA, this would also involve flow cytometry tests done by outside labs.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request. In addition, the United States invites Dianon to meet and confer in accordance with Local Rule of Civil Procedure 37(a)(2) to discuss the scope of this request.

25.     Produce each document related to the flow cytometry panels used by the National Institute of Health.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is unduly broad and burdensome, as it appears to request the production of all documents related to each and every flow cytometry test performed by the National Institute of Health over a 10 year period. Fourth, United States also objects to this request on the grounds that services rendered by pathology lab at the National Cancer Institute are for patients in clinical trials pursuant to clinical protocols. The patients volunteer to be treated for research purposes and their costs are covered.

Subject to and without waiving these objections, the United States will make available for

41

inspection and copying non-privileged documents, if any, that are responsive to this request.

26.    Produce each document that relates to the panels or correct number of antibodies that the government believes laboratories should use to perform flow cytometry.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents related to flow cytometry, such as the requisition forms and patient medical records. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

27.    Produce each audit or review of Dianon's claims.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is vague and ambiguous, as it does not define the terms "audit or review." The United States will assume for the purposes of this request that Dianon is referring to an audit or review by the relevant Medicare carrier related to CPT code 88180. In addition, the request is vague and ambiguous because it does not specify which types of "claims" the request is referring to. The United States will assume for the purposes of this request that Dianon is referring to its flow cytometry claims submitted to the relevant Medicare carrier.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

28.    Produce each document that relates to the statistical sample referenced in paragraph 44 of the amended complaint.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Third, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

43

Subject to and without waiving these objections, the United States will make

available for inspection and copying non-privileged documents, if any, that are responsive to this

request.

29.    Produce each document that relates to the 200 patients that, according to
paragraph 48 of the amended complaint, were reviewed "by an expert pathologist from the Yale
University School of Medicine."

**RESPONSE:** The United States objects to this request on the following grounds.  First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request to the extent that it seeks documents that are in the control,

custody or possession of Dianon.   For example, this request appears to call for production of

Dianon's own documents related to flow cytometry, such as the requisition forms and patient

medical records. Third, the United States objects to this request to the extent that it calls for the

production of documents and information protected from disclosure by privilege and doctrine,

including specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege,

the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make

available for inspection and copying non-privileged documents, if any, that are responsive to this

request.

30.    Produce each document that relates to the expert's findings referenced in
paragraph 49 of the amended complaint.

**RESPONSE:** The United States objects to this request on the following grounds.  First,

the United States incorporates by reference its General Objections, stated above. Second, the

44

United States objects to this request to the extent that it seeks documents that are in the control,

custody or possession of Dianon.  For example, this request appears to call for production of

Dianon's own documents related to flow cytometry, such as the requisition forms and patient

medical records. Third, the United States objects to this request to the extent that it calls for the

production of documents and information protected from disclosure by privilege and doctrine,

including specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege,

the investigative file privilege and the law enforcement privilege.

> Subject to and without waiving these objections, the United States will make

available for inspection and copying non-privileged documents, if any, that are responsive to this

request.

> 31.    Produce each document that supports your contention in paragraph 53 of the
amended complaint that a "review by the Government's expert of claims submitted in 2001 and
2002 found that Dianon billed for an even greater number of medically unnecessary antibodies
during the time period."

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, to the

extent that the purpose of this request is to obtain the factual and legal conclusions supporting the

allegations contained in the United States' amended complaint, then this request for the production

of documents constitutes a contention interrogatory that is premature at this preliminary stage of

discovery and that is improperly framed as a request for production. Third, the United States

objects to this request to the extent that it seeks documents that are in the control, custody or

possession of Dianon.  For example, this request appears to call for production of Dianon's own

documents, such as patient medical records containing the patients' clinical history and other relevant test results. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

32.    Produce each document that supports the contentions in paragraphs 50 - 59, and 61 to 70.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents, such as patient medical records containing the patients' clinical history and other

46

relevant test results. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2). Seventh, this request if vague and ambiguous, as it refers to paragraphs in a document that is not named. The United States assumes Dianon is referring to paragraphs in the United States' amended complaint.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

33.    Produce each document that supports the contention in paragraph 60 of the amended complaint that "the Government's expert found during his review that Dianon was utilizing a full panel of 26 antibodies even when conducting repeat tests..." and that "when doing a repeat test on the same patient it is not medically necessary to do a full panel of 26 antibodies."

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States

47

objects to this request to the extent that it seeks documents that are in the control, custody or possession of Dianon. For example, this request appears to call for production of Dianon's own documents, such as patient medical records containing the patients' clinical history and other relevant test results. Fourth, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fifth, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Sixth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

34.    Produce each document supporting the contentions in paragraphs 71-72.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, to the extent that the purpose of this request is to obtain the factual and legal conclusions supporting the allegations contained in the United States' amended complaint, then this request for the production of documents constitutes a contention interrogatory that is premature at this preliminary stage of discovery and that is improperly framed as a request for production. Third, the United States objects to this request to the extent that it calls for the production of documents and information

48

protected from disclosure by privilege and doctrine, including specifically the attorney-client

privilege, the work product doctrine, the joint prosecution/common interest doctrine, the

deliberative process privilege, the informant's privilege, the investigative file privilege and the law

enforcement privilege. Fourth, this request is vague and ambiguous, as it refers to paragraphs in a

document that is not named. The United States assumes Dianon is referring to paragraphs in the

United States' amended complaint. Fifth, the United States objects to this request to the extent that

it calls for publically available information, such as the physician's fee schedule, which is

published in the Federal Register.

Subject to and without waiving these objections, the United States will make available for

inspection and copying non-privileged documents, if any, that are responsive to this request. See

also, response to Request for Production # 15, above.

35.    Produce each document supporting the contention in paragraph 74.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, to the

extent that the purpose of this request is to obtain the factual and legal conclusions supporting the

allegations contained in the United States' amended complaint, then this request for the production

of documents constitutes a contention interrogatory that is premature at this preliminary stage of

discovery and that is improperly framed as a request for production. Third, the United States

objects to this request to the extent that it calls for the production of documents and information

protected from disclosure by privilege and doctrine, including specifically the attorney-client

privilege, the work product doctrine, the joint prosecution/common interest doctrine, the

deliberative process privilege, the informant's privilege, the investigative file privilege and the law

49

enforcement privilege. Fourth, this request if vague and ambiguous, as it refers to paragraphs in a

document that is not named. The United States assumes Dianon is referring to paragraphs in the

United States' amended complaint. Fifth, this request is impossible to answer because it seeks

documents related to a negative inference.

For the above-mentioned reasons, the United States is unable to respond to this request.

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure

37(a)(2) concerning the scope of this request.

36.     Produce each document regarding any communication with relator James Tiesinga
regarding the allegations in the relator's or government's complaints.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request to the extent that it calls for the production of documents and

information protected from disclosure by privilege and doctrine, including specifically the

attorney-client privilege, the work product doctrine, the joint prosecution/common interest

doctrine, the deliberative process privilege, the informant's privilege, the investigative file

privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States responds as follows:

There are no non-privileged documents responsive to this request. The United States will produce

a privilege log in accordance with Fed. R. Civ. P. 26(b) and Local Rule of Civil Procedure

37(a)(1).

37.     Produce each document related to the government's investigative files in this case,
including but not limited to reports of interviews, notes, correspondence, and/or memoranda.

**RESPONSE:** The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Second, the United

States objects to this request to the extent that it calls for the production of documents and

information protected from disclosure by privilege and doctrine, including specifically the

attorney-client privilege, the work product doctrine, the joint prosecution/common interest

doctrine, the deliberative process privilege, the informant's privilege, the investigative file

privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States responds as follows:

There are no non-privileged documents responsive to this request. The United States is not

required to produce a privilege log for these documents, as Local Rule of Civil Procedure 37(a)(1)

provides that a privilege log is not required for "written communications between a party and its

trial counsel after commencement of the action and work product material created after

commencement of the action." The government's investigative files in this case, including but not

limited to, reports of interviews, notes, correspondence, analysis of evidence and/or memoranda

constitute "written communications between a party and its trial counsel after commencement of

the action [and/or] work product material created after commencement of the action."

Accordingly, a privilege log is not required under Local Rule of Civil Procedure 37(a)(1).

38.    Produce each document related to requests made by the United States to the United

States District Court for extensions of the 60-day sealing period.

**RESPONSE:** The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Second, the United

States objects to this request to the extent that it calls for the production of documents and

information protected from disclosure by privilege and doctrine, including specifically the

51

attorney-client privilege, the work product doctrine, the joint prosecution/common interest
doctrine, the deliberative process privilege, the informant's privilege, the investigative file
privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States responds as follows:
There are no non-privileged documents responsive to this request. The motions made by the
United States in support of extensions of the 60-day sealing period have been unsealed. The
United States' memoranda in support of those motions remain under seal pursuant to Court order.

39.    Produce each document that the government contends constitutes a false statement
made to the United States as alleged in the amended complaint.

**RESPONSE:** The United States objects to this request on the following grounds. First,
the United States incorporates by reference its General Objections, stated above. Second, the
United States objects to this request to the extent that it seeks documents that are in the control,
custody or possession of Dianon. For example, this request appears to call for production of all
HCFA/CMS 1500 forms submitted by Dianon to the government to be paid for its flow cytometry
services. Each of these HCFA or CMS 1500 forms, copies of which are presumably in Dianon's
possession, contain a certification, signed by the physician, that the services shown on the form
were "medically indicated and necessary."

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil
Procedure 37(a)(2) concerning the scope of this request. In addition, please see the claims data
produced in response to various other requests for production, above.

40.    Produce each document that the government contends constitutes a false claim
made to the United States as alleged in the amended complaint.

**RESPONSE:** See objections and response to Request for Production number 39.

52

41.   Produce each document referring or relating to the sums the United States claims in its amended complaint were paid by mistake.

**RESPONSE:**  The United States objects to this request on the following grounds.  First, the United States incorporates by reference its General Objections, stated above.  Second, to the extent that the purpose of this request is to obtain the government's damages analysis, this request for the production of documents is premature at this preliminary stage of discovery.  Third, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the investigative file privilege and the law enforcement privilege. Fourth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

For the above-mentioned reasons, the United States is unable to respond to this request at this time.  Also, the parties have agreed to exchange damages analysis by May 1, 2006.  The United States invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure 37(a)(2) concerning the scope and timing of this request.

42.   Produce all documents referring to the claims made by the government that constitute unjust enrichment.

**RESPONSE:** See objections and response to Request for Production number 41.

43.   Produce all documents referring or relating to the United States' computation of damages, including, but not limited to all documentation relied on by the United States to calculate its damages and such sums that the United States asserts constitutes a false claim.

**RESPONSE:**  See objections and response to Request for Production number 41

53

44.    Produce each document relating to communications between the Connecticut Medicare carrier, including without limitation Drs. Toor and Deli Carpini, the carrier Medical Directors, and Dianon regarding Dianon's flow cytometry testing and any analysis of overpayments or underpayments (or denials of claims) by Medicare for such testing.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, this

request seeks documents that are in the possession, custody or control of Dianon. Third, this

request is vague and ambiguous, as it is unclear what is meant by any analysis of

overpayments/underpayment/denials of claims. Fourth, the request is overly broad and unduly

burdensome, as appears to call for production of documents relating to the thousands of claims

Dianon submitted to the Medicare carrier during the time period in question.

Subject to and without waiving these objections, the United States will make available for

inspection and copying non-privileged documents, if any, that are responsive to this request.

45.    Produce all commentary, submissions, data used or received by CMS from all sources, including without limitation the College of American Pathologists and from the American Medical Association, relating to any changes, proposed, discussed or actually made, concerning the reimbursement methodology or payment for flow cytometry testing by federal health care programs.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, the United States objects to this request to the extent that it calls for

the production of documents and information protected from disclosure by privilege and doctrine,

including specifically the attorney-client privilege, the work product doctrine, the joint

prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege,

the investigative file privilege and the law enforcement privilege. Fourth, the request is overly

54

broad and unduly burdensome, as it requests data and other information received by CMS over a 10 year period from "all sources" concerning "payment" for flow cytometry testing. Fifth, the request if vague and ambiguous. Sixth, the United States objects to this request to the extend that it calls for documents that are publically available.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents, if any, that are responsive to this request.

46.    Produce each document relating to the merits or disadvantages or acceptance or rejection in the medical community of comprehensive or targeted flow cytometry panels for the diagnosis of leukemia or lymphoma.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fourth, this request is vague, ambiguous and unintelligible, as terms such as "comprehensive or targeted flow cytometry panels" are not defined, and the phrase "the merits or disadvantages or acceptance or rejection" is unclear in the context of this request. Fifth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure 37(a)(2) concerning the scope of this request.

47.    Produce all documents related to the optimal, preferred or acceptable number of antibodies to be used in flow cytometry panels for leukemia and lymphoma diagnoses.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the request is overly broad and unduly burdensome. For example, this request appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity. Fourth, this request is vague and ambiguous, as it lumps together such undefined terms as "optimal, preferred or acceptable" when referencing the number of antibodies to be used in a flow cytometry panel. Fifth, the United States objects to this request to the extent it prematurely calls for the production of expert disclosure under Rule 26(a)(2).

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure 37(a)(2) concerning the scope of this request.

48.    Produce each document relating to any concerns, limitations, restrictions or guidelines regarding the potential interference with the practice of medicine by governmental agencies, officials, or representatives.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, this request is vague and ambiguous, as it is unclear what is meant by "any concerns, restrictions or guidelines regarding the potential interference with the practice of medicine" by government agencies, etc.

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil

Procedure 37(a)(2) concerning the scope of this request.

49.     Produce each document relating to the rate or frequency of denial of claims by
Medicare, and specifically without limitation the Connecticut Medicare carrier, for flow cytometry
testing, including specifically and without limitation, those performed by Dianon.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, the request is overly broad and unduly burdensome. For example, this

request appears to call for the production of documents related to any and all providers of flow

cytometry services who submitted claims to Medicare over a 10 year period. Fourth, this request is

vague and ambiguous, as it does not define the terms "rate" or "frequency" when referring to denial

of claims by Medicare.

Subject to and without waiving these objections, the United States will make available for

inspection and copying non-privileged documents related to Dianon, if any, that are responsive to

this request.

50.     Produce all documents relating to any appeal or challenge of any payment policy by a
Medicare carrier limiting the number of antibodies reimbursed, including without limitation appeals
by ImPath and Genzyme to denials by Medicare carriers in California.

**RESPONSE:** The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Second, the United

States objects to this request on the grounds that it seeks information not relevant to the claims or

defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence.

57

Third, this request is vague and ambiguous, as it does not clear whether this request seeks documents related to an appeal or challenge to a payment policy or if it seeks appeals of particular claims that have been denied. Fourth, the request is overly broad and unduly burdensome. For example, many of the Medicare carriers have reported that in order to comply with this request it would cost them tens of thousands of dollars and hundreds of hours of time. This is because in many cases it is impossible to tell whether an appeal of a denial of a flow cytometry service is based on the number of antibodies at issue, or if it involves a different issue, such as the failure to use the proper diagnosis code or some other reason. In addition, to the extent this request seeks appeals of claims from every Medicare provider of flow cytometry services across the country for a 10 year period, it would call for the production of thousands of claims. This would involve carriers using their resources to pull files from warehouses around the country at an extremely significant cost.

Subject to and without waiving these objections, the United States will make available for inspection and copying non-privileged documents that carriers could produce without expending significant amounts of time and money, that are responsive to this request. The United States invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure 37(a)(2) concerning the scope of this request.

51.     Produce all documents relating to the government's investigation of Dianon's flow cytometry panels prior to September 5, 2002.

**RESPONSE:** The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the United States objects to this request to the extent that it calls for the production of documents and information protected from disclosure by privilege and doctrine, including specifically the

58

attorney-client privilege, the work product doctrine, the joint prosecution/common interest

doctrine, the deliberative process privilege, the informant's privilege, the investigative file

privilege and the law enforcement privilege.

Subject to and without waiving these objections, the United States responds as follows:

There are no response documents.

52.    Produce each document related to the viability of bone marrow, blood, tissue and
other specimens upon which flow cytometry analyses are performed for the diagnosis of leukemia
or lymphoma.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, the request is overly broad and unduly burdensome. For example, this

request appears to call for the production of any and all medical literature, text books, treatises,

articles and abstracts relating to flow cytometry and viability. Fourth, the United States objects to

this request to the extent it prematurely calls for the production of expert disclosure under Rule

26(a)(2).

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil

Procedure 37(a)(2) concerning the scope of this request.

53.    Produce all documents relating to any actual or potential missed diagnosis of any
leukemia or lymphoma in any government operated or funded facility.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

59

United States objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Third, the request is overly broad and unduly burdensome to the extent it requests documents from "any governmental operated or funded facility." Fourth, this request is vague and ambiguous, as it is unclear what documents are being sought by this request.

The United States invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure 37(a)(2) concerning the scope of this request.

60

**AS TO THE OBJECTIONS**:

_1-/7/ə5_

DATE

RICHARD M. MOLOT

UNITED STATES ATTORNEY'S OFFICE

ASSISTANT U.S. ATTORNEY

FED. BAR # ct21676

157 CHURCH STREET

P.O. BOX 1824

NEW HAVEN, CT 06508

61

Respectfully submitted,

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

RICHARD M. MOLOT
UNITED STATES ATTORNEY'S OFFICE
ASSISTANT U.S. ATTORNEY
FED. BAR # ct21676
157 CHURCH STREET
P.O. BOX 1824
NEW HAVEN, CT 06508
(203) 821-3700 (phone)
(203) 773-5373 (fax)
Richard.Molot@usdoj.gov

MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
RYAN FAYHEE
ATTORNEYS, CIVIL DIVISION
COMMERCIAL LITIGATION BRANCH
P.O.BOX 261, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
Telephone:  (202) 307-0238

Attorneys for the United States

62

**AS TO THE RESPONSES:**

James Menas, Health Insurance Specialist in the Division of Practitioner Services, Hospital & Ambulatory Policy Group, in the Centers for Medicare & Medicaid Services, being duly sworn, deposes and says:

1. I have read the Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' First Set of Interrogatories.

2. The factual information sought by the Dianon's First Set of Interrogatories that relate to CMS is not within the personal knowledge of any one employee or several employees of CMS.

3. Information necessary to answer questions related to CMS was based on information collected from various sources within CMS.

4. To the best of my information and belief, the factual information contained in the United States' response to Dianon's First Set of Interrogatories No. 12 and No. 13 that relate to CMS is true and correct.

12/6/2005
Date

James Menas

**AS TO THE RESPONSES:**

John Warren, Director of the Division of Medical Review & Education, in the Office of Financial Management in the Centers for Medicare & Medicaid Services, being duly sworn, deposes and says:

1. I have read the Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' First Set of Interrogatories.

2. The factual information sought by the Dianon's First Set of Interrogatories that relate to CMS is not within the personal knowledge of any one employee or several employees of CMS.

3. Information necessary to answer questions related to CMS was based on information collected from various sources within CMS.

4. To the best of my information and belief, the factual information contained in the United States' response to Dianon's First Set of Interrogatories No. 14 through 17 that relate to CMS is true and correct.

6 DECEMBER 2005
        Date

NAME

## AS TO THE RESPONSES:

Maureen T. Regan, Esq., Counselor to the Inspector General for the Department of Veterans Affairs (VA), being duly sworn, deposes and says:

1. I have read the Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' First Set of Interrogatories.

2. The factual information sought by the Dianon's First Set of Interrogatories that relate to the VA is not within the personal knowledge of any one employee or several employees of the VA.

3. Information necessary to answer questions related to the VA was based on information collected from various sources within the VA.

4. I have no first hand knowledge of the facts, but to the best of my information and belief, the factual information contained in the United States' response to Dianon's First Set of Interrogatories that relate to the VA is true and correct.

_11/30/05_
Date

_Maureen T. Regan_
Maureen T. Regan, Esq.

## CERTIFICATION OF SERVICE

I hereby certify that on this 7th day of December 2005, a true and correct copy of the Plaintiff United States' Responses and Objections to Defendant Dianon Systems' First Set of Interrogatories and Request for Production of Documents, was served by first-class mail on:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Robert Salcido, Esq.
Akin Gump Strauss Hauer & Field, LLP
Robert Strauss Building
1333 New Hampshire Ave, NW
Washington, D.C. 20036

RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY