# Exhibit 8

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

Robert Salcido
202.887.4095/fax: 202.887.4288
rsalcido@akingump.com

March 22, 2006

VIA E-MAIL

Richard M. Molot
Assistant United States Attorney
Office of U.S. Attorney, District of Connecticut
Connecticut Financial Center
U.S. Department of Justice
157 Church Street
New Haven, Connecticut 06510

Patricia R. Davis
Civil Division
Commercial Litigation Branch
601 D Street, N.W.
Washington, DC 20004

Re: The Government's Responses to Dianon's Discovery Requests

Dear Rick and Pat:

As is set forth below, we found several responses to our discovery requests to be inadequate and incomplete. Accordingly pursuant to Local Rule 37(a)(2), we request that you promptly clarify and supplement your prior responses.

**A.   Government's Interrogatory Responses**

In Interrogatory No. 1, we requested that the government "state the basis" for its contention that Dianon acted with actual knowledge, deliberate ignorance or reckless disregard of the laws, regulations and guidance applicable to federal healthcare programs when submitting claims for various flow cytometry procedures billed under CPT Code 88180. Further, we

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 2
March 22, 2006

requested that when an Interrogatory asked the government to "state the basis" for its allegation that the government would:

    a.    state each and every fact, with particularity and in detail, which you contend supports the contention or response;

    b.    state each and every fact, with particularity and in detail, that tends to refute, negate or in any way contradict the contention or response;

    c.    identify each document and communication relied upon by you in making the contention or response, and in formulating the particular interrogatory response; and

    d.    identify each person who has knowledge of or information as to the facts referred to in the response.

However, in response to our Interrogatory, you stated that Dianon "is on notice that the services it provided were not reasonable and necessary based on, among other things, its receipt of CMS notices, including manual issuances, bulletins or other written guides or directives from carriers." If, in fact, the basis for your contention is that Dianon is on notice of such communications, please state the "CMS notices," the "manual issuances, bulletins or other written guides or directives" that you contend demonstrate that Dianon acted with actual knowledge, deliberate ignorance or reckless disregard of the law. We believe no such communications occurred. Thus, if you believe they exist, we must receive that information from you so that we can prepare our defense. If no such communications occurred, simply state that.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 3
March 22, 2006

As to Interrogatory No. 2, Dianon requested that you state the basis for your contention in paragraph 36 that from 1996 to the present when Dianon billed for flow cytometry tests, a significant portion of the antibodies billed to federal healthcare programs were not medically necessary. You responded by stating that the United States will provide additional responsive information in its expert disclosure.

However, we are still unclear regarding the precise claims the government believes are false. Is it every claim that Dianon submitted under CPT 88180 during the time period covered in the complaint? If so, which antibodies does the government claim are false? Alternatively, is it the government's position that it will prove a sample of claims and then request the Court to extrapolate the results of that sample to a universe and then request that the Court assess treble damages and substantial civil penalties based upon claims never proven? Obviously, to conduct discovery, we need to know which precise claims the government contends are false and why specifically the government believes the claims are false (which are the medically unnecessary antibodies?). The case cannot be defended without knowing this information.

As to Interrogatory No. 3, Dianon requested that you list all instances when the United States reimbursed laboratories or medical professionals, other than Dianon, for flow cytometry antibody testing for leukemia and lymphoma where the laboratory or medical professional used a panel of 26 or more antibodies from 1997 through March 31, 2004 and to identify the number of antibodies reimbursed.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 4
March 22, 2006

You refused to produce any information on the grounds that "it seeks information not relevant to the claims or defenses of any party." However, such information is clearly relevant to the lawsuit. You have accused Dianon of committing fraud because it uses a panel of 26 antibodies. As you know, multiple False Claims Act cases have stated that when a company's conduct or interpretation of rules conforms to industry standards, there is no violation of the FCA. *See, e.g., United States ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 768-69 (8th Cir. 2002) (no violation of FCA intent standard because, even though administrators refrained from obtaining guidance regarding the questioned practice, they considered the billing practice to be an "acceptable standard procedure" and the relator did not produce any evidence "suggest[ing] anyone was lying to the Government" or "suspected something wrong"); *United States v. Data Translation, Inc.*, 984 F.2d 1256 (1st Cir. 1992) (when supplier's actions conformed with industry practice and were otherwise reasonable, the Government could not state a cause of action under the FCA); *United States ex rel. Perales v. St. Margaret's Hosp.*, 243 F. Supp. 2d 843, 866 (C.D. Ill. 2003) (defendant hospital did not bury "its head in the sand and wilfully [sic] ignore[] the law" when, among other things, there was "evidence that [it] received and considered relevant publications in this area of the law"). Thus, consistent with this line of cases, the information we request is relevant to the development of our defenses because it would demonstrate what other companies used to diagnose leukemia and lymphoma. Moreover, you

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 5
March 22, 2006

have contended that Dianon's panel was medically unnecessary because it breached the standard of care. Knowing the size of other's panels may be relevant to defining the standard of care.

In Interrogatory No. 7, Dianon requested that you list all publications, scientific opinions, articles, or learned treatises you contend establishes the standard of care for the design of flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 to the present. You responded that this Interrogatory "appears to call for the production of any all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity." This response mischaracterizes the Interrogatory. The Interrogatory, on its face, did not request that you identify **all** publications that ever addressed flow cytometry and medical necessity. Instead, it simply requests that you list those publications that you believe establish the standard of care for the design of a flow cytometry antibody panel relevant to the complaint. If you believe that no such publications exist, then simply state that. If some do exist about which you are aware, then list those. The request is as simple as that.

Similarly, your response to Interrogatory number 8, which adopts by reference your response to Interrogatory number 7, is inadequate. Interrogatory 8 asks which publications support your contention that Dianon breached the standard of care in its provision of flow cytometry services and inquired into what support exists for your specific contentions in the complaint at paragraphs 50 to 69 that a 13 to 15 antibody panel should have been used. If you

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 6
March 22, 2006

believe that no such publications exist, then simply state that. If some do exist about which you are aware, then list those.

In Interrogatory 16, Dianon requested that the government provide a definition of the phrase "medically necessary" as it relates to flow cytometry antibody panel design and evaluation. In response, the United States asserted that "medical necessity definitions are contained in publicly available statutes and regulations, as well as publically [sic] available Local Medical Review Policies and Local Coverage Determinations related to flow cytometry ... as well as publically [sic] available medical literature related to flow cytometry." However, Dianon, in its request, did not ask **where** such definitions exist, but **what** is the government's definition of medical necessity given the allegations in its complaint? The government has asserted that apparently all flow cytometry claims Dianon submitted under CPT 88180 are not medically necessary and seeks treble damages and massive civil penalties. At a minimum, Dianon is entitled to know what the government's definition of medical necessity is that permits it to conclude why the claim is false. Alternatively, if the government cannot articulate a definition of medical necessity given the allegations in its complaint, it should supply state that.

In Interrogatory 17, Dianon requested that you describe all efforts you made to notify Dianon that you believed its 26 antibody panel, or portions thereof, used in leukemia and lymphoma testing was medically unnecessary. In your response, you stated that "Dianon has a duty to know the statutes, regulations and guidelines regarding coverage for Medicare ...."

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 7
March 22, 2006

However, Dianon, in its request, did not ask what duties you believe the law imposed upon it. Instead, the question concerned what efforts you undertook **to notify** Dianon that you believe that its 26 antibody panel was medically unnecessary. If you did undertake such efforts, please describe them. If you undertook no efforts, then simply state you undertook none. If your only effort was simply to publish laws and guidelines and nothing more, which appears to be your answer, then simply confirm that that is your response.

### B. Government Responses to Dianon's Request for Production of Documents

Under Fed. R. Civ. P. 34, in responding to document requests, the government must produce the documents "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Here, the government did not produce the documents as they are maintained in the usual course of business and hence was obligated to "organize and label them to correspond with the categories in the request." However, to the best I could discern in reviewing the production, the government did not organize and label the documents to correspond with the categories in the request.

For example, as to Requests for Production 1-2, 6-11, 14, 26-34, 44-45 – relating to, among other things, documents that support specific allegations in the government's complaint – the government asserts that it would "make available for inspection and copying non-privileged documents, if any, that are responsive to this request." Consistent with Rule 34, please identify by bates number which documents are specifically responsive to Request for Production 1-2, 6-

AKIN GUMP
STRAUSS HAUER & FELD LLP
—————— Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 8
March 22, 2006

11, 14, 26-34, 44-45. If there are no responsive documents for a specific request, please so state. Inasmuch as discovery is not intended to be a contest of hide-and-seek, Dianon is entitled to know which documents the government believes support each allegation contained in the complaint.

As to Requests for Production 3-5, 12-13 – which also relate to, among other things, documents that support specific allegations in the government's complaint – the government asserts that there "are no non-privileged documents, with the exception of Dianon's own documents, that are responsive to this request." This response is inadequate under Rule 34. Dianon is not required to read the government's mind to determine which document out of every document Dianon has ever possessed the government believes supports the government's allegations in its complaint. If you believe that such a document exists that supports the allegation referenced in the specific document request, identify the document by bates number. If no document supports the government's allegation, then state that.

In Requests 15-22, Dianon requested governmental information related to how the government set reimbursement for and estimated the costs associated with providing services under CPT 88180 and related successor CPT Codes. This is relevant because, among other things, the government contends that the use of 26 markers was medically unnecessary and breached the standard of care while data submitted to the government regarding these CPT

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 9
March 22, 2006

Codes stated the opposite – that is, that "the typical number of markers reported for a myeloid/lymphoid panel was [in fact] 26 markers."

Obviously, the government's internal documents regarding whether it agreed or disagreed with this data and how it responded to similar data is relevant to Dianon's defenses in this action. First, this is relevant to Dianon's medical necessity defense because, as noted, Courts have ruled that conformance with industry standards negates the contention that one has "knowingly" submitted a false claim. *See Madonna Towers, Inc.*, 278 F.3d at 768-69; *Data Translation, Inc.*, 984 F.2d 1256; *St. Margaret's Hosp.*, 243 F. Supp. 2d at 866. Second, it is relevant because if the government's data shows that others typically used panels larger than 13-15 markers, it would demonstrate that contrary to the government's contention that Dianon's use of comprehensive panels exceeding 13-15 markers breached the standard of care, the opposite is true – that is, that its panel easily fell within the standard of care. Third, if the data reveals that other companies routinely used comprehensive panels exceeding 13-15 markers, then it would show that the government's interpretation of what constitutes the standard of care is, at most, a disputed legal issue, which, as you know, Courts have also routinely held proves that the claims are not false and negates the government's contention that defendant acted knowingly. *See, e.g., United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (holding that "errors based simply on faulty calculations or flawed reasoning are not false under the FCA ... [a]nd imprecise statements or differences in interpretation growing out of a disputed legal

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 10
March 22, 2006

question are similarly not false under the FCA") (citations omitted); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996) ("How precise and how current the cost allocation needed to be in light of the [Water Supply Act's] imprecise and discretionary language was a disputed question within the [government]. Even viewing [relator's] evidence in the most favorable light, that evidence shows only a disputed legal issue; that is not enough to support a reasonable inference that the allocation was *false* within the meaning of the False Claims Act"); *United States ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810, 815-16 (9th Cir. 1995); *United States ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619, 625 (S.D. Ohio 2000) ("At a minimum, the FCA requires proof of an objective falsehood . . . . Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false"); *United States ex rel. Boisjoly v. Morton Thiokol*, 706 F. Supp. 795, 810 (N.D.Utah 1988) ("[the certification] reflects an engineering judgment . . . . It is clearly not a statement of fact that can be said to be either true or false, and thus cannot form the basis of an FCA claim"); *see generally, Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 731 (7th Cir. 1999); *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992) ("Proof of one's mistakes or inabilities is not evidence that one is a cheat. . . . Without more, the common failings of engineers and other scientists are not culpable under the Act. . . . The weakest account of the Act's 'requisite intent' is the 'knowing presentation of what is known to be false.' The phrase 'known to be false' in that sentence does not mean 'scientifically untrue'; it means 'a lie.' The

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 11
March 22, 2006

act is concerned with ferreting out 'wrongdoing,' not scientific errors. What is false as a matter of science is not, by that very fact, wrong as a matter of morals. The Act would not put either Ptolemy or Copernicus on trial") (citations omitted); *United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 831-32 (W.D. Mich. 2000) (where the regulatory terms were undefined and ambiguous and the plaintiff's position "devolves to a dispute over the meaning of the terms governing the delivery of the professional component of physicians services . . . " there was no violation of the FCA because a "legal dispute is ... insufficient" to establish FCA liability), *aff'd,* 24 Fed. Appx. 491 (6th Cir. 2001); *United States v. Krizek,* 859 F. Supp. 5, 9–10 (D.D.C. 1994) (ruling that because the key term in the CPT code was undefined and hence "ambiguous," the government could not state a FCA cause of action), *aff'd in part, rev'd in part,* 111 F.3d 934 (D.C. Cir. 1997); *United States v. Napco Intern., Inc.,* 835 F. Supp. 493, 498 (D. Minn. 1993) (because underlying regulation was ambiguous, the court would not permit the government to apply "an interpretative afterthought by the agency" against the contractor in a FCA action); *cf. In Re Genesis Health Ventures, Inc.,* 272 B.R. 558, 570 (Bkrtcy. D. Del. 2002) ("In this murky area in which no specificity exists in the statutory, regulatory or contractual scheme regarding the provision of credits, with no quest by either the state or federal Government for unpaid credit, either by way of the filing of proofs of claim or otherwise, there is insufficient basis to charge the debtors with the requisite scienter required to establish a factually false certification").

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━ Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 12
March 22, 2006

     As to your specific responses, the government's response to Request 15 is inadequate because it simply cites to the *Federal Register*. What we request are the actual documents that served as the basis for the government's statements in the *Federal Register*. As to Request 16, identify those documents responsive to that request by bates number. As to Requests 17-18, produce the documents in the government's custody, control or possession responsive to those Requests. As to Request 19 and 21-22, identify by bates number the documents the government has produced. As to Request 20, Dianon requests documents in the government's possession related to how many markers companies used in billing for flow cytometry under CPT Code 88180 and successor Codes. You objected on the basis that the request is unclear. What is unclear about that request?

     In Requests 24 and 25, Dianon requested documents related to the flow cytometry panels Veterans Affairs and the National Institute of Health used. The government's response appears unclear. On the one hand, the government indicates that it is unwilling to try to produce responsive material because it believes that this information is not relevant and it would be unduly burdensome to comply with our request, but, then, the government responds that it will produce responsive, non-privileged documents. As to the government's objection, the relevance is obvious. First, it is relevant to Dianon's medical necessity defenses because, as noted, Courts have ruled that conformance with industry standards negates the contention that one has "knowingly" submitted a false claim. *See Madonna Towers, Inc.*, 278 F.3d at 768-69; *Data*

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
━━━━━━━━━━ Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 13
March 22, 2006

*Translation, Inc.*, 984 F.2d 1256; *St. Margaret's Hosp.*, 243 F. Supp. 2d at 866. Second, it is relevant because, as the government's responses to our Request for Admissions indicate, these agencies apparently routinely used panels that the government contends are fraudulent in this lawsuit. If the government's data shows that its own agencies typically used panels larger than 13-15 markers, it would demonstrate that contrary to the government's contention that Dianon's use of comprehensive panels exceeding 13-15 markers breached the standard of care that, in fact, the opposite is true -- its use of a comprehensive panel was consistent with the standard of care. Third, if the data reveals that the government's own agencies routinely used comprehensive panels exceeding 13-15 markers, then it would show that the government's interpretation of what constitutes the standard of care, at most, is a disputed legal issue, which, as you know, Courts have routinely held proves that the claim is not false in the first instance and negates the government's contention that defendant acted knowingly under the FCA. *Lamers,* 168 F.3d at 1018; *Hagood,* 81 F.3d at 1477; *Northern Telecom, Inc.*, 52 F.3d at 815-16; *Boeing Co.*, 100 F. Supp. 2d at 625; *Morton Thiokol*, 706 F. Supp. at 810; *see generally, Baxter Healthcare Corp.*, 183 F.3d at 731; *Wang*, 975 F.2d 1412 at 1421; *Borgess Med. Ctr.*, 98 F. Supp. 2d at 831-32; *Krizek,* 859 F. Supp. at 9–10; *Napco Intern., Inc.*, 835 F. Supp. at 498; *cf. In Re Genesis Health Ventures, Inc.*, 272 B.R. at 570.

As to Requests 39-40, we requested all documents that the government claims is a false statement or claim as alleged in the complaint under which the government seeks treble damages

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
─────────────── Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 14
March 22, 2006

and civil penalties of up to $11,000 per violation. The government, in its response, refuses to produce responsive material and instead "invites Dianon to meet and confer pursuant to Local Rule of Civil Procedure 37(a)(2)." Obviously, Dianon is entitled to receive every statement and claim that the government asserts permits it to recover under the FCA. Your position certainly cannot be that you are entitled to treble damages and substantial civil penalties related to statements and claims that you never have to identify or produce. If the alleged false statement or claim is too burdensome to produce, the government should drop its allegation as to those allegedly false statements or claims, but it cannot both assert that it is entitled to recover on the statement or claim but then not produce that statement or claim as part of discovery.

As to Requests 41-43, please confirm that Dianon will receive all responsive documents by May 1, 2006.

As to Request 47, Dianon requested that the government produce all documents it has related an acceptable number of antibodies to be used for the diagnosis of leukemia and lymphoma. The government objected on the grounds that the request allegedly was unclear and that it "appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity." Dianon is certainly not requesting the production of every medical treatise ever published nor can this conclusion be reasonably inferred from its request. Instead, the government should simply produce those documents in its custody, control or possession that it claims sets forth the acceptable number of

AKIN GUMP
STRAUSS HAUER & FELD LLP
——————— Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 15
March 22, 2006

markers for the diagnosis of leukemia and lymphoma. Dianon needs such information to evaluate the government's assertion that Dianon committed fraud by breaching the standard of care in its provision of services. If no such documents exist, simply state that.

As to Request 50, Dianon requested that the government produce all documents relating to any appeal or challenge of any payment policy by a Medicare carrier limiting the number of antibodies reimbursed, including appeals by ImPath and Genzyme to denials by Medicare carriers in California. You objected on the grounds that the material was not relevant but added that you would "make available ... documents that carriers could produce without expending significant amounts of time and money."

As an initial matter, the request is clearly relevant. First, the government contends that Dianon's claims were medically unnecessary because it breached the standard of care. The appeal information is relevant to Dianon's medical necessity defenses because if other carriers permitted, after appeal, the use of comprehensive panels like those Dianon used, the government could not contend that Dianon's panel breached the standard of care. Indeed, at worst, it would demonstrate that the correct number of markers constituted a disputed legal issue, which, from an FCA perspective, as you know, would result in the dismissal of the government's action. *See Lamers*, 168 F.3d at 1018; *Hagood*, 81 F.3d at 1477; *Northern Telecom, Inc.*, 52 F.3d at 815-16; *Boeing Co.*, 100 F. Supp. 2d at 625; *Morton Thiokol*, 706 F. Supp. at 810; *see generally, Baxter Healthcare Corp.*, 183 F.3d at 731; *Wang*, 975 F.2d 1412 at 1421; *Borgess Med. Ctr.*, 98 F. Supp.

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
─────────────
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 16
March 22, 2006

2d at 831-32; *Krizek*, 859 F. Supp. at 9–10; *Napco Intern., Inc.*, 835 F. Supp. at 498; *cf. In Re Genesis Health Ventures, Inc.*, 272 B.R. at 570. However, to the extent that you claim that you undertook good faith efforts to comply with our request, please provide the names of those who participated in the effort to make partial production, estimate the cost of the partial production made to date and how much more cost would need to be incurred to comply with the request.

    As to Request 52, Dianon requested that the government produce each document related to the viability of bone marrow, blood, tissue and other specimens upon which flow cytometry analyses are performed for the diagnosis of leukemia or lymphoma. The government provided its pattern objection that somehow this request "appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity." Once again, the government can rest assured that the request does not call for the production of every medical treatise ever published nor can this conclusion be reasonably inferred from the request. Moreover, the request is clearly relevant. Indeed, on more than one occasion, the government has requested the same information from Dianon and rather than object and refuse to produce on the basis that the request "appears to call for the production of any and all medical literature, text books, treatises, articles and abstracts relating to flow cytometry and medical necessity," Dianon, to date, has produced all responsive documents in its custody, control and possession, which is all that it requests that the government do.

\* \* \*

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Richard M. Molot
Patricia R. Davis
Page 17
March 22, 2006

     We intend to start scheduling depositions in early April. Hence, we would like to hear from you before March 27, 2006 whether you will provide the information we requested in our discovery requests as described above or whether we will need to seek Court intervention. Thank you for your attention to this matter.

                                                Sincerely,

                                                Robert Salcido

cc:   Thomas Kossl
       Kathryn Kyle
       Bruce Parker