# Exhibit 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> ex rel. Dr. James J. Tiesinga, <br><br> Plaintiffs, <br> v. <br><br> DIANON SYSTEMS, INC., <br><br> Defendant. | ) <br> ) <br> ) No. 3:02CV1573(MRK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**SUPPLEMENTAL INTERROGATORIES, REQUESTS
FOR ADMISSION AND REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:   United States of America

Dianon Systems, Inc., by and through its undersigned attorneys, hereby request the government to provide the following information:

**DEFINITIONS**

1. <u>CMS</u> – Centers for Medicare and Medicaid Services.

2. "<u>Regularly Reimbursed</u>" or "<u>Regularly Submitted</u>" – Reimbursements or submission, on average, of one flow cytometry test per day or 365 tests per calendar year.

3. "<u>Flow Cytometry Testing</u>" or "<u>Flow Cytometry Test</u>" – Those tests used for immunophenotyping a patient or beneficiary's blood, bone marrow, or tissue specimen for the detection of lymphoma, leukemia, or hematopoietic disease using flow cytometry and billing code 88180.

**SUPPLEMENTAL INTERROGATORIES**

1. For the period January 1, 1996 through January 1, 2004 with regard to the Yale Department of Laboratory Medicine flow cytometry testing submissions for reimbursement,

please provide the following information for each calendar year: (a) the number of patient or beneficiary claims submitted to Connecticut Medicare carrier for CPT code 88180; (b) the number of denied patient or beneficiary claims for CPT Code 88180; (c) the total number of CPT 88180 test codes reimbursed and denied; and (d) the number of appeals instituted by the Yale Flow Cytometry Laboratory for any denials of patient claims or accessions.

2. Provide the name of all doctors who interpreted flow cytometry testing at the National Institute of Health (NIH) during the period 1995 through 2005. Please indicate whether the doctor or medical professional is still employed at the NIH, the job responsibilities of each person listed, and educational degree of each person listed, such as M.D. or Ph.D.

## REQUESTS FOR ADMISSION

1. Admit that the Connecticut Medicare carrier has never issued any notice, regulation, Local Medical Review Policy (LMRP), Local Coverage Determination (LCD) or other publication limiting the number of times CPT Code 88180 could be billed to Medicare for each flow cytometry test performed for a beneficiary.

2. Admit that CMS never issued any notice, regulation, local medical regional plan, local coverage determination or other publication limiting the number of times CPT Code 88180 could be billed to Medicare during the period 1996 through 2004.

3. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1996.

4. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18

2

markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1997.

5. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1998.

6. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1999.

7. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2000.

8. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2001.

9. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2002.

10. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2003.

11. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2004.

12. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 18 markers for CPT Code 88180 for claims submitted during the calendar year 1996.

13. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 18 markers for CPT Code 88180 for claims submitted during the calendar year 1997.

14. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 1998.

15. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 1999.

16. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 2000.

17. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 2001.

18. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 2002.

19. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 2003.

20. Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 2004.

21. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 1996.

22. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 1997.

23. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 1998.

24. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 1999.

25. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2000.

26. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2001.

27. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2002.

28. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2003.

29. Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2004.

30. Admit CMS knew that in 1996 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

31.     Admit CMS knew that in 1997 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

32.     Admit CMS knew that in 1998 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

33.     Admit CMS knew that in 1999 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

34.     Admit CMS knew that in 2000 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

35.     Admit CMS knew that in 2001 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

36.     Admit CMS knew that in 2002 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

37.     Admit CMS knew that in 2003 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

38. Admit CMS knew that in 2004 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

39. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 1996.

40. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 1997.

41. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 1998.

42. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 1999.

43. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2000.

44. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2001.

45. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2002.

46. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2003.

47. Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2004.

48. Admit CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for

CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1996.

49. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1997.

50. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1998.

51. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1999.

52. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2000.

53. Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2001.

54.  Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2002.

55.  Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2003.

56.  Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2004.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.  Any and all documents the United States, its employees, agents, or counsel reviewed, referenced or prepared to respond to the supplemental interrogatories or requests for admission.

2.  Forty randomly selected, reimbursed, flow cytometry test, patient or beneficiary claims submitted by the Yale Department of Laboratory Medicine to the Connecticut Medicare carrier for each calendar year from January 1, 1996 through December 31, 2003 (total of 320 patient claims). Include with each randomly selected paid claim

    (a)  the amount of money reimbursed;

    (b)  the ICD9 code submitted for payment;

    (c)  the accession or beneficiary number;

    (d) the number of antibodies for CPT Code 88180 submitted for each claim or beneficiary number; and

    (e) the date the claim was submitted and the date the claim was paid.

  3. Any and all documents relating to the expert reports submitted by the United States including but not limited to any working papers, correspondence, bills, invoices, payments, documents relied upon by each expert in drafting their report and published or scholarly material each expert relied upon or that forms the basis of each expert's opinions.

  4. Any and all documents regarding or supporting Local Medical Review Policies (LMRP), and Local Coverage Determinations (LCD) for flow cytometry and/or CPT Code 88180, including but not limited to, all documents found in local or regional carrier files for the creation or amendment of flow cytometry LMRPs or LCDs, BESS data showing the total number of CPT Code 88180 per 1000 patients, Carrier Advisory Committee (CAC) notes, local carrier data analysis, CPEP data, or any other documents relied upon by CMS or local or regional Medicare carriers in the creation, change of amendment of LMRPs and LCDs, for flow cytometry or flow cytometry reimbursement.

            */s/ Bruce Parker*
            Bruce R. Parker, admitted pro hac vice
            Venable LLP
            1800 Mercantile Bank & Trust Bldg.
            2 Hopkins Plaza
            Baltimore, Maryland 21201
            (410) 244-7400

            */s/ Robert Salcido*
            Robert Salcido, admitted pro hac vice
            Akin Gump Strauss Hauer & Feld, LLP
            1333 New Hampshire Avenue, NW
            Washington, DC 20036

            Attorneys for Dianon Systems, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23th day of May, 2006, a copy of the foregoing Supplemental Interrogatories, Requests for Admission and Requests for Production of Documents was sent via, electronic mail and via first class mail, postage prepaid to:

>   Richard Molot, Esq.
>   U.S. Attorney General's Office
>   District of Connecticut
>   175 Church Street
>   New Haven, CT 06510

>   Patricia R. Davis
>   Civil Division
>   Commercial Litigation Branch
>   P.O. Box 261
>   Ben Franklin Station
>   Washington, DC 20044

_____
Robert Salcido