# Exhibit 14



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*
*157 Church Street*                                      *(203) 821-3700*
*P.O. Box 1824*                                    *Fax (203) 773-5376*
*New Haven, Connecticut  06510*            *www.usdoj.gov/usao/ct*

June 30, 2006

BY FED EX

Robert Salcido, Esq.
Akin Gump Strauss Hauer & Feld, LLP
Robert Strauss Building
1333 New Hampshire Ave, NW
Washington, D.C. 20036

> Re:    United States ex rel. Tiesinga  v. Dianon Systems, Inc., 3:02CV1573 (MRK)

Dear Robert:

Enclosed please find Plaintiff United States of America's Objections and Responses to Defendant Dianon Systems' Supplemental Interrogatories, Requests for Admission and Request for Production of Documents. Also, enclosed is a CD containing the Yale data responsive to some of the requests. Because the CD contains protected health information, it is password protected. Please contact our health care fraud auditor, Kevin Saunders, at 203-821-3700, to obtain the password.

Please contact Brenda Barnes at Pat Davis' office to make arrangements to pick up the documents we are producing in response to your requests.

Please contact me if you have any questions.

Very truly yours,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY

Encl.
cc: (w/encl)

Pat Davis, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA,<br><br><br>      Plaintiff,<br>       v.<br><br>DIANON SYSTEMS, INC.,<br><br><br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 3:02CV1573(MRK)

June 30, 2006

### PLAINTIFF UNITED STATES OF AMERICA'S OBJECTIONS AND RESPONSES TO DEFENDANT DIANON SYSTEMS' SUPPLEMENTAL INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, United States of America submits the following responses and objections to

Defendant Dianon Systems' Supplemental Interrogatories, Requests for Admission and Request

for Production of Documents:

### General Objections Regarding Interrogatories and Document Requests

1. The objections and responses set forth herein are based on information now

known to the United States and its attorneys and are made without prejudice to the United States'

right to assert additional objections should grounds for objection be discovered at a later time.

2. The United States will respond to unobjectionable interrogatories and document

requests or portions of these requests to the best of its present ability. Because the United States

has not completed discovery of the facts pertaining to this action or its preparation for trial, the

United States reserves the right to rely on any facts, documents, or other evidence that may

1

develop or come to its attention at a later time.

3.     The United States reserves the right to object to the introduction into evidence in this or any other action of any of the responses or objections set forth in response to these interrogatories or document requests. The fact that the United States has answered any part or all of any particular interrogatory or document request is not intended to and shall not be construed to be a waiver by the United States of any objection to the relevance or admissibility of any evidence in this or any other action.

4.     The United States objects to each definition, instruction, and request to the extent that those definitions, instructions, and requests purport to impose on the United States obligations that are broader in scope or more burdensome than those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of this Court.

5.     The United States objects to each interrogatory or document request to the extent that they call for the production of information or documents protected from disclosure by privilege or doctrine, including the attorney-client privilege, the investigative file privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the informant's privilege, the law enforcement privilege or any other applicable basis for invoking privilege. The United States will screen all materials and information to be released to Defendant to remove privileged materials; however, there is a possibility that privileged documents or information may be inadvertently disclosed. By accepting production, Defendant agrees that, to the extent there is any inadvertent disclosure of privileged information, it shall not constitute any waiver of the privileges and all such material shall be immediately returned to the United States. The United States reserves the right to object to the introduction into evidence

2

before the Court at any time before or at trial of information that is privileged under law and that has been revealed or produced inadvertently. The United States does not, by responding to these document requests, waive any claim of privilege or the protection of any doctrine.

6.     The United States objects to these document requests to the extent they require the United States to draw legal conclusions or otherwise seek to impose upon the United States any requirements beyond those established by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Connecticut.

7.     The United States objects to these document requests to the extent that responding would require it to violate any seal imposed by a Court, by statute, or by the Federal Rules of Civil or Criminal Procedure, the False Claims Act, a grand jury proceeding, a criminal sentencing or other disposition, or any other matter. The United States will not separately object to any specific request to assert this ground where doing so would itself implicate the seal at issue.

8.     These general objections apply to each interrogatory or document request and thus, for convenience, are not repeated after each request, but rather are set forth herein and hereby incorporated into each response. The assertion of the same, similar, or additional objections or the provision of partial responses to individual interrogatories or document requests does not and should not be construed to waive or modify any of the United States' general objections.

9.     Documents produced in response to Defendants' document requests that fall within the protections set forth in the Protective Order Governing the Disclosure of Health Information filed with the Court on December 5, 2005, are so designated on the documents

3

themselves as required by the Protective Order.

## General Objections Regarding Requests for Admission (RFA)

1.    The objections set forth herein are based on information now known to the United States and its attorneys and are made without prejudice to the United States' right to assert additional objections should grounds for objection be discovered at a later time.

2.    The United States will respond to unobjectionable RFAs or portions of these RFAs to the best of its present ability. Because the United States has not completed its discovery of the facts pertaining to this action or its preparation for trial, however, the United States reserves the right to rely on any facts, documents, or other evidence that may develop or come to its attention at a later time.

3.    The United States reserves the right to object to the introduction into evidence in this or any other action of any of the responses or objections set forth in response to these RFAs. The fact that the United States has answered any part or all of any particular RFA is not intended to and shall not be construed to be a waiver by the United States of any objection to the relevance or admissibility of any evidence in this or any other action.

4.    The United States objects to each RFA request to the extent that it seeks information or documents protected from disclosure by privilege or doctrine, including the attorney-client privilege, the investigative file privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the law enforcement privilege or any other applicable basis for invoking privilege.

5.    The United States objects to these RFA requests to the extent they require the United States to draw legal conclusions or otherwise seek to impose upon the United States any

4

requirements beyond those established by the Federal Rules of Civil Procedure or the Local

Rules of the United States District Court for the District of Connecticut.

     6.    The United States objects to the RFAs to the extent they are vague and

ambiguous, such that the United States is unable to discern the meaning of a particular RFA or

phrases or words used therein. Where possible, the United States will respond based upon its

understanding of the RFA.

     7.    The general objections apply to each RFA and thus, for convenience, are

not repeated after each request, but rather are set forth herein and hereby incorporated into each

response. The assertion of the same, similar, or additional objections or the provision of partial

responses to individual RFAs does not waive or modify any of the United States' general

objections.

5

## I. INTERROGATORY RESPONSES

1. For the period January 1, 1996 through January 1, 2004 with regard to the Yale Department of Laboratory Medicine flow cytometry testing submissions for reimbursement, please provide the following information for each calendar year: (a) the number of patient or beneficiary claims submitted to Connecticut Medicare carrier for CPT code 88180; (b) the number of denied patient or beneficiary claims for CPT Code 88180; (c) the total number of CPT 88180 test codes reimbursed and denied; and (d) the number of appeals instituted by the Yale Flow Cytometry Laboratory for any denials of patient claims or accessions.

### Response to Interrogatory No. 1:

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this interrogatory on the grounds that it seeks information not relevant to the claims or

defenses of any party and is not reasonably calculated to lead to the discovery of admissible

evidence. Third, it is unclear what the "Yale Flow Cytometry Laboratory" refers to. Fourth, the

United States objects to this interrogatory pursuant to Fed. R. Civ. P. 33(d), because the answer

to this interrogatory can be derived or ascertained from the data being produced pursuant to

document requests below. Fifth, this request is overly burdensome. Subject to and without

waiving these objections, the United States responds as follows: See data being produced.

2. Provide the name of all doctors who interpreted flow cytometry testing at the National Institute of Health (NIH) during the period 1995 through 2005. Please indicate whether the doctor or medical professional is still employed at the NIH, the job responsibilities of each person listed, and educational degree of each person listed, such as M.D. or Ph.D.

### Response to Interrogatory No. 2:

The United States objects to this interrogatory on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

6

objects to this request on the grounds that it seeks information not relevant to the claims or

defenses of any party and is not reasonably calculated to lead to the discovery of admissible

evidence. Third, the United States also objects to this request on the grounds that services

rendered by the pathology laboratory at the National Cancer Institute are for patients in clinical

trials pursuant to clinical protocols. The patients volunteer to be treated for research purposes

and their costs are covered. Subject to and without waiving these objections, the United States

responds as follows: Maryalice Stetler-Stevenson, M.D., Ph.D., is currently the doctor at the NIH

who signs out flow cytometry cases for leukemia and lymphoma. Doctors who are no longer

employed by the NIH, but who signed out flow cytometry cases for leukemia and lymphoma

during the time period in question, were Douglas Kingma, M.D. and Jeffrey Schraeger, M.D.

Ejaz Ahmed, M.D., a fellow, who is also no longer employed by the NIH, reviewed flow

cytometry cases during the time period in question but was not the primary physician responsible

for the cases.

## II.    **Requests for Admission**

1.    Admit that the Connecticut Medicare carrier has never issued any notice,
regulation, Local Medical Review Policy (LMRP), Local Coverage Determination
(LCD) or other publication limiting the number of times CPT Code 88180 could
be billed to Medicare for each flow cytometry test performed for a beneficiary.

Answer: The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Second, the request

is ambiguous, as the phrase "limiting the number of times CPT Code 88180 could be billed to

Medicare for each flow cytometry test performed" is unclear. It is unclear whether this means

the frequency with which the test can be billed or the number of units that can be billed. Also,

the Connecticut carriers did set some frequency limits based on the diagnosis code.

Subject to and without waiving the above-objections, the United States answers as follows: If the request refers to the frequency that the test can be billed, the request is denied. If the request refers to the number of markers that can be billed, the request is admitted.

2.    Admit that CMS never issued any notice, regulation, local medical regional plan, local coverage determination or other publication limiting the number of times CPT Code 88180 could be billed to Medicare during the period 1996 through 2004.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the request is ambiguous, as the definition of CMS does not acknowledge that CMS acts, in part, through its contractors (i.e. its Medicare Carriers). It appears that the question assumes that CMS does act through its carriers, as it refers to "local coverage determinations." Also, as noted above, the phrase "limiting the number of times CPT Code 88180 could be billed to Medicare" is unclear. It is unclear whether this means the frequency with which the test can be billed or the number of units that can be billed. Also, some carriers set frequency limits based on the diagnosis code.

Subject to and without waiving the above-objections, the United States answers as follows: Assuming that CMS acts, in part, by and through its Medicare Carriers throughout the country, the request is denied. The Government does admit that CMS did not issue a National Coverage Decision regarding flow cytometry which limited the number of markers that could be billed during the time period in question.

3.    Admit that CMS, through its local or regional carriers, regularly reimbursed

8

healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1996.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the request is ambiguous, as "regularly reimbursed", even as defined, is unclear. Third, this request would require an analysis of all CPT Code 88180 claims paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. Although the Government could try to attempt to answer this request from the CMS 5% data file in its possession, that data file does not contain data for the year 1996.

Subject to and without waiving the above-objections, the United States answers as follows: The Government cannot admit or deny the request, for the reasons stated above.

4.    Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1997.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the request is ambiguous, as "regularly reimbursed", even as defined, is unclear. Third, this request would require an analysis of all CPT Code 88180 claims billed by every provider in the country and paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. The Government will attempt to answer this request from the CMS 5% data file in its possession.

Subject to and without waiving the above-objections, the United States answers as

9

follows: Based only on the CMS 5% data file related to CPT Code 88180, and assuming that the

request relates to at least 365 88180 claims for the year in question, the Government admits the

request.

     5.     Admit that CMS, through its local or regional carriers, regularly reimbursed
healthcare providers, other than Dianon, for flow cytometry testing that included
more than 18 markers for CPT Code 88180 per beneficiary or patient claim for
claims submitted during the calendar year 1998.

Answer: See objections and answer to # 4 above; it is the same for 1998.

     6.     Admit that CMS, through its local or regional carriers, regularly reimbursed
healthcare providers, other than Dianon, for flow cytometry testing that included
more than 18 markers for CPT Code 88180 per beneficiary or patient claim for
claims submitted during the calendar year 1999.

Answer: See objections and answer to # 4 above; it is the same for 1999.

     7.     Admit that CMS, through its local or regional carriers, regularly reimbursed
healthcare providers, other than Dianon, for flow cytometry testing that included
more than 18 markers for CPT Code 88180 per beneficiary or patient claim for
claims submitted during the calendar year 2000.

Answer: See objections and answer to # 4 above; it is the same for 2000.

     8.     Admit that CMS, through its local or regional carriers, regularly reimbursed
healthcare providers, other than Dianon, for flow cytometry testing that included
more than 18 markers for CPT Code 88180 per beneficiary or patient claim for
claims submitted during the calendar year 2001.

Answer: See objections and answer to # 4 above; it is the same for 2001.

     9.     Admit that CMS, through its local or regional carriers, regularly reimbursed
healthcare providers, other than Dianon, for flow cytometry testing that included
more than 18 markers for CPT Code 88180 per beneficiary or patient claim for
claims submitted during the calendar year 2002.

Answer: See objections and answer to # 4 above; it is the same for 2002.

     10.    Admit that CMS, through its local or regional carriers, regularly reimbursed

healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2003.

Answer: See objections and answer to # 4 above; it is the same for 2003.

11.    Admit that CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 18 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 2004.

Answer: See objections and answer to # 4 above; it is the same for 2004.

12.    Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 18 markers for CPT Code 88180 for claims submitted during the calendar year 1996.

Answer: The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Second, this

request would require an analysis of all CPT Code 88180 claims paid by Medicare for the year in

question. The Government has not collected such data, and to do so would be overly

burdensome. Although the Government could try to attempt to answer this request from the

CMS 5% data file in its possession, that data file does not contain data for the year 1996.

Subject to and without waiving the above-objections, the United States answers as

follows: The Government cannot admit or deny the request, for the reasons stated above.

13.    Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 18 markers for CPT Code 88180 for claims submitted during the calendar year 1997.

Answer: The United States objects to this request on the following grounds. First, the

11

United States incorporates by reference its General Objections, stated above. Second, this request would require an analysis of all CPT Code 88180 claims billed by every provider in the country and paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. The Government will attempt to answer this request from the CMS 5% data file in its possession.

Subject to and without waiving the above-objections, the United States answers as follows: Based only on the CMS 5% data file related to CPT Code 88180, and assuming that the request relates to reimbursement for at least one flow cytometry service with more than 18 markers for each of the 10 or more providers for the year in question, the Government admits the request.

14.    Admit that CMS, through its local or regional carriers, reimbursed ten or more healthcare providers for flow cytometry testing that included more than 25 markers for CPT Code 88180 for claims submitted during the calendar year 1998.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, this request would require an analysis of all CPT Code 88180 claims billed by every provider in the country and paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. The Government will attempt to answer this request from the CMS 5% data file in its possession.

Subject to and without waiving the above-objections, the United States answers as follows: Based only on the CMS 5% data file related to CPT Code 88180, and assuming that the request relates to reimbursement for at least one flow cytometry service with more than 25

12

markers for each of the 10 or more providers for the year in question, the Government admits the

request.

15.  Admit that CMS, through its local or regional carriers, reimbursed ten or more
     healthcare providers for flow cytometry testing that included more than 25
     markers for CPT Code 88180 for claims submitted during the calendar year 1999.

Answer: See objections and answer to # 14 above; it is the same for 1999.

16.  Admit that CMS, through its local or regional carriers, reimbursed ten or more
     healthcare providers for flow cytometry testing that included more than 25
     markers for CPT Code 88180 for claims submitted during the calendar year 2000.

Answer: See objections and answer to # 14 above; it is the same for 2000.

17.  Admit that CMS, through its local or regional carriers, reimbursed ten or more
     healthcare providers for flow cytometry testing that included more than 25
     markers for CPT Code 88180 for claims submitted during the calendar year 2001.

Answer: See objections and answer to # 14 above; it is the same for 2001.

18.  Admit that CMS, through its local or regional carriers, reimbursed ten or more
     healthcare providers for flow cytometry testing that included more than 25
     markers for CPT Code 88180 for claims submitted during the calendar year 2002.

Answer: See objections and answer to # 14 above; it is the same for 2002.

19.  Admit that CMS, through its local or regional carriers, reimbursed ten or more
     healthcare providers for flow cytometry testing that included more than 25
     markers for CPT Code 88180 for claims submitted during the calendar year 2003.

Answer: See objections and answer to # 14 above; it is the same for 2003.

20.  Admit that CMS, through its local or regional carriers, reimbursed ten or more
     healthcare providers for flow cytometry testing that included more than 25
     markers for CPT Code 88180 for claims submitted during the calendar year 2004.

Answer: See objections and answer to # 14 above; it is the same for 2004.

21.  Admit that CMS had actual notice or notice through its local or regional carriers

13

that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 1996.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the request is ambiguous, as "actual notice" to CMS is confusing as used in this request. CMS acts, in part, through its contractors. Also, "regularly submitted", even as defined, is unclear. Third, CPT Code 88180 is only one of thousands of codes submitted to Medicare each year. Fourth, this request would require an analysis of all CPT Code 88180 claims billed by every provider in the country and paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. Although the Government could try to attempt to answer this request from the CMS 5% data file in its possession, that data file does not contain data for the year 1996.

Subject to and without waiving the above-objections, the United States answers as follows: The Government cannot admit or deny the request, for the reasons stated above.

22.    Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 1997.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above.    Second, the request is ambiguous, as "actual notice" to CMS is confusing as used in this request. CMS acts, in part, through its contractors. Also, regularly submitted, even as defined, is unclear. Third, CPT Code 88180 is only one of thousands of codes submitted to Medicare each year. Fourth,

14

this request would require an analysis of all CPT Code 88180 claims billed by every provider in
the country and paid by Medicare for the year in question. The Government has not collected
such data, and to do so would be overly burdensome. The Government will attempt to answer
this request from the CMS 5% data file in its possession.

Subject to and without waiving the above-objections, the United States answers as

follows: Based on the CMS 5% data file, assuming that CMS acts, in part, through its

contractors, and assuming that the request relates to at least 365 88180 claims for the year in

question, the Government admits the request.

23.    Admit that CMS had actual notice or notice through its local or regional carriers
       that healthcare providers regularly submitted for reimbursement patient or
       beneficiary claims that included more than 25 markers for CPT Code 88180
       during the calendar year 1998.

Answer: See objections and answer to #22 above; it is the same for 1998.

24.    Admit that CMS had actual notice or notice through its local or regional carriers
       that healthcare providers regularly submitted for reimbursement patient or
       beneficiary claims that included more than 25 markers for CPT Code 88180
       during the calendar year 1999.

Answer: See objections and answer to #22 above; it is the same for 1999.

25.    Admit that CMS had actual notice or notice through its local or regional carriers
       that healthcare providers regularly submitted for reimbursement patient or
       beneficiary claims that included more than 25 markers for CPT Code 88180
       during the calendar year 2000.

Answer: See objections and answer to #22 above; it is the same for 2000.

26.    Admit that CMS had actual notice or notice through its local or regional carriers
       that healthcare providers regularly submitted for reimbursement patient or
       beneficiary claims that included more than 25 markers for CPT Code 88180
       during the calendar year 2001.

15

Answer: See objections and answer to #22 above; it is the same for 2001.

27.   Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2002.

Answer: See objections and answer to #22 above; it is the same for 2002.

28.   Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2003.

Answer: See objections and answer to #22 above; it is the same for 2003.

29.   Admit that CMS had actual notice or notice through its local or regional carriers that healthcare providers regularly submitted for reimbursement patient or beneficiary claims that included more than 25 markers for CPT Code 88180 during the calendar year 2004.

Answer: See objections and answer to #22 above; it is the same for 2004.

30.   Admit CMS knew that in 1996 local or regional Medicare carriers, other than the Connecticut Medicare carrier, limited the number of antibodies for CPT Code 88180 that would be considered medically necessary or reimbursable per claim.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above.   Second, the request is ambiguous, as it is unclear whether the phrase "CMS knew" refers to just CMS (e.g. CMS central office), or CMS and its carriers. Third, this request is overly burdensome. Subject to and without waiving the above-objections, the United States answers as follows: Medicare carriers are the entities which create and issue local policies related to flow cytometry. Those local policies are not reviewed or approved by CMS central office. For any local policies related to flow cytometry issued during the year in question, some may have been brought to the

16

attention of someone at CMS central office (for example, by a provider), but there may have been

policies that were not brought to the attention of anyone at CMS central office. Accordingly, the

request cannot be admitted or denied.

31.     Admit CMS knew that in 1997 local or regional Medicare carriers, other than the
        Connecticut Medicare carrier, limited the number of antibodies for CPT Code
        88180 that would be considered medically necessary or reimbursable per claim.

Answer: See objections and answer to #30 above; the answer is the same for 1997.

32.     Admit CMS knew that in 1998 local or regional Medicare carriers, other than the
        Connecticut Medicare carrier, limited the number of antibodies for CPT Code
        88180 that would be considered medically necessary or reimbursable per claim.

Answer:  See objections and answer to #30 above; the answer is the same for 1998.

33.     Admit CMS knew that in 1999 local or regional Medicare carriers, other than the
        Connecticut Medicare carrier, limited the number of antibodies for CPT Code
        88180 that would be considered medically necessary or reimbursable per claim.

Answer: See objections and answer to #30 above; the answer is the same for 1999.

34.     Admit CMS knew that in 2000 local or regional Medicare carriers, other than the
        Connecticut Medicare carrier, limited the number of antibodies for CPT Code
        88180 that would be considered medically necessary or reimbursable per claim.

Answer:  See objections and answer to #30 above; the answer is the same for 2000.

35.     Admit CMS knew that in 2001 local or regional Medicare carriers, other than the
        Connecticut Medicare carrier, limited the number of antibodies for CPT Code
        88180 that would be considered medically necessary or reimbursable per claim.

Answer:  See objections and answer to #30 above; the answer is the same for 2001.

36.     Admit CMS knew that in 2002 local or regional Medicare carriers, other than the
        Connecticut Medicare carrier, limited the number of antibodies for CPT Code
        88180 that would be considered medically necessary or reimbursable per claim.

Answer:  See objections and answer to #30 above; the answer is the same for 2002.

37.    Admit CMS knew that in 2003 local or regional Medicare carriers, other than the
       Connecticut Medicare carrier, limited the number of antibodies  for CPT Code
       88180 that would be considered medically necessary or reimbursable per claim.

Answer:  See objections and answer to #30 above; the answer is the same for 2003.

38.    Admit CMS knew that in 2004 local or regional Medicare carriers, other than the
       Connecticut Medicare carrier, limited the number of antibodies  for CPT Code
       88180 that would be considered medically necessary or reimbursable per claim.

Answer:  See objections and answer to #30 above; the answer is the same for 2004.

39.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number
       of markers for CPT Code 88180 per claim in 1996.

Answer:  See objections and answer to #30 above.

40.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number
       of markers for CPT Code 88180 per claim in 1997.

Answer:  See objections and answer to #30 above; the answer is the same for 1997.

41.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number
       of markers for CPT Code 88180 per claim in 1998.

Answer:  See objections and answer to #30 above; the answer is the same for 1998.

42.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number
       of markers for CPT Code 88180 per claim in 1999.

Answer:  See objections and answer to #30 above; the answer is the same for 1999.

43.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2000.

Answer:  See objections and answer to #30 above; the answer is the same for 2000.

44.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2001.

Answer:  See objections and answer to #30 above; the answer is the same for 2001.

45.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2002.

Answer:  See objections and answer to #30 above; the answer is the same for 2002.

46.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2003.

Answer:  See objections and answer to #30 above; the answer is the same for 2003.

47.    Admit CMS knew that the Connecticut Medicare carrier did not limit the number of markers for CPT Code 88180 per claim in 2004.

Answer:  See objections and answer to #30 above; the answer is the same for 2004

48.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1996.

Answer:  The United States objects to this request on the following grounds.  First, the

United States incorporates by reference its General Objections, stated above.  Second, the request

is ambiguous, as "regularly reimbursed", even as defined, is unclear.  Third, this request would

19

require an analysis of all CPT Code 88180 claims paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. Although the Government could try to attempt to answer this request from the CMS 5% data file in its possession, that data file does not contain data for the year 1996.

Subject to and without waiving the above-objections, the United States answers as follows: The Government cannot admit or deny the request, for the reasons stated above.

49.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1997.

Answer: The United States objects to this request on the following grounds. First, the United States incorporates by reference its General Objections, stated above. Second, the request is ambiguous, as "regularly reimbursed", even as defined, is unclear. Third, this request would require an analysis of all CPT Code 88180 claims billed by every provider in the country and paid by Medicare for the year in question. The Government has not collected such data, and to do so would be overly burdensome. The Government will attempt to answer this request from the CMS 5% data file in its possession.

Subject to and without waiving the above-objections, the United States answers as follows: Based only on the CMS 5% data file related to CPT Code 88180, and assuming that the request relates to at least 365 88180 claims for the year in question, the Government admits the request.

50.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare providers, other than Dianon, for flow cytometry testing that included more than 26 markers for CPT Code 88180 per beneficiary or patient claim for claims submitted during the calendar year 1998.

20

Answer: See objections and answer to # 49 above; it is the same for 1998.

51.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare
       providers, other than Dianon, for flow cytometry testing that included more than
       26 markers for CPT Code 88180 per beneficiary or patient claim for claims
       submitted during the calendar year 1999.

Answer: See objections and answer to # 49 above; it is the same for 1999.

52.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare
       providers, other than Dianon, for flow cytometry testing that included more than
       26 markers for CPT Code 88180 per beneficiary or patient claim for claims
       submitted during the calendar year 2000.

Answer: See objections and answer to # 49 above; it is the same for 2000.

53.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare
       providers, other than Dianon, for flow cytometry testing that included more than
       26 markers for CPT Code 88180 per beneficiary or patient claim for claims
       submitted during the calendar year 2001.

Answer:  See objections and answer to # 49 above; it is the same for 2001.

54.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare
       providers, other than Dianon, for flow cytometry testing that included more than
       26 markers for CPT Code 88180 per beneficiary or patient claim for claims
       submitted during the calendar year 2002.

Answer:  See objections and answer to # 49 above; it is the same for 2002.

55.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare
       providers, other than Dianon, for flow cytometry testing that included more than
       26 markers for CPT Code 88180 per beneficiary or patient claim for claims
       submitted during the calendar year 2003.

Answer: See objections and answer to # 49 above; it is the same for 2003.

56.    Admit CMS, through its local or regional carriers, regularly reimbursed healthcare
       providers, other than Dianon, for flow cytometry testing that included more than
       26 markers for CPT Code 88180 per beneficiary or patient claim for claims
       submitted during the calendar year 2004.

21

Answer: See objections and answer to # 49 above; it is the same for 2004.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Any and all documents the United States, its employees, agents, or counsel reviewed, referenced or prepared to respond to the supplemental interrogatories or requests for admission.

**RESPONSE:** The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Second, the United

States objects to this request to the extent that it calls for the production of documents and

information protected from disclosure by privilege and doctrine, including specifically the attorney-

client privilege and the work product doctrine. Subject to and without waiving these objections, the

United States responds as follows: There are no non-privileged documents responsive to this request.

2.    Forty randomly selected, reimbursed, flow cytometry test, patient or beneficiary claims submitted by the Yale Department of Laboratory Medicine to the Connecticut Medicare carrier for each calendar year from January 1, 1996 through December 31, 2003 (total of 320 patient claims). Include with each randomly selected paid claim
     (a)    the amount of money reimbursed;
     (b)    the ICD9 code submitted for payment;
     (c)    the accession or beneficiary number;
     (d)    the number of antibodies for CPT Code 88180 submitted for each claim or beneficiary number; and
     (e)    the date the claim was submitted and the date the claim was paid

**RESPONSE:** The United States objects to this request on the following grounds. First, the United

States incorporates by reference its General Objections, stated above. Second, the United States

objects to this document request to the extent it call for the Government to create a random sample

of claims. Third, this request is overly burdensome. Subject to and without waiving these

objections, the United States responds as follows: See data being produced.

3.    Any and all documents relating to the expert reports submitted by the United States

22

> including but not limited to any working papers, correspondence, bills, invoices, payments, documents relied upon by each expert in drafting their report and published or scholarly material each expert relied upon or that forms the basis of each expert's opinions.

**RESPONSE:** The United States objects to this request on the following grounds. First, the

United States incorporates by reference its General Objections, stated above. Subject to and without

waiving these objections, the United States responds as follows: Responsive documents have

previously been produced pursuant to the notices of deposition for the Government's experts.

4.    Any and all documents regarding or supporting Local Medical Review Policies (LMRP), and Local Coverage Determinations (LCD) for flow cytometry and/or CPT Code 88180, including but not limited to, all documents found in local or regional carrier files for the creation or amendment of flow cytometry LMRPs or LCDs, BESS data showing the total number f CPT Code 88180 per 1000 patients, Carrier Advisory Committee (CAC) notes, local carrier data analysis, CPEP data, or any other documents relied upon by CMS or local or regional Medicare carriers in the creation, change of amendment of LMRPs an LCDs, for flow cytometry or flow cytometry reimbursement.

**RESPONSE:** The United States objects to this request on the following grounds. First,

the United States incorporates by reference its General Objections, stated above. Second, the

United States objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party and is not reasonably calculated to lead to the discovery of

admissible evidence. Third, the request is overly broad and unduly burdensome. Fourth, the

United States objects to this request to the extent that it calls for the production of documents and

information protected from disclosure by privilege and doctrine, including specifically the

attorney-client privilege, the work product doctrine, the joint prosecution/common interest

doctrine, the deliberative process privilege, the informant's privilege, the investigative file

privilege and the law enforcement privilege. Subject to and without waiving these objections,

23

the United States responds as follows: The United States will make available for inspection and

copying non-privileged documents that are responsive to this request.

Respectfully submitted,

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL


KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

RICHARD M. MOLOT
UNITED STATES ATTORNEY'S OFFICE
ASSISTANT U.S. ATTORNEY
FED. BAR # ct21676
157 CHURCH STREET
P.O. BOX 1824
NEW HAVEN, CT 06508
(203) 821-3700 (phone)
(203) 773-5373 (fax)
Richard.Molot@usdoj.gov


MICHAEL F. HERTZ
JOYCE R. BRANDA
PATRICIA R. DAVIS
RYAN FAYHEE
ATTORNEYS, CIVIL DIVISION
COMMERCIAL LITIGATION BRANCH
P.O.BOX 261, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
Telephone:  (202) 307-0238

Attorneys for the United States

25

**As to Interrogatory Response Number 2:**

1. I have read the Plaintiff United States of America's Response to Interrogatory Number 2, above.

2. To the best of my information and belief, the factual information contained in the United States' Response to Interrogatory Number 2, above, is true and correct.

6/23/06
Date

Dr. Maryalice Stetler-Stevenson
National Institute of Health

## CERTIFICATION OF SERVICE

I hereby certify that on this 30th day of June 2006, a true and correct copy of the Plaintiff United States' Responses and Objections to Defendant Dianon Systems' Supplemental Interrogatories, Requests for Admission and Request for Production of Documents, was served by Fed Ex on:

> Robert Salcido, Esq.
> Akin Gump Strauss Hauer & Feld, LLP
> Robert Strauss Building
> 1333 New Hampshire Ave, NW
> Washington, D.C. 20036

RICHARD M. MOLOT
ASSISTANT U.S. ATTORNEY