UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:02CV1573(MRK) |
| ex rel. DR. JAMES J. TIESINGA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIANON SYSTEMS, INC. , | ) | |
| | ) | |
| | ) | May 21, 2007 |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION IN LIMINE AS TO CLAIMS DATA AND MOTION TO COMPEL DEFENDANT TO PROVIDE DISCOVERY

In its opposition brief, Dianon does not deny that it failed to produce *any* of its electronic

claims. Instead, Dianon argues that the "process" prior to trial will allow Dianon to stipulate to

some claims and "single out the objectionable claims" for discussion with the Government.

Dianon opposition at 4-5. However, this so-called "process" will prejudice the Government,

because the Government will have lost the opportunity to request additional documents (such as

medical records) or to take a 30(b)(6) deposition regarding the claims that Dianon now finds

"objectionable." That is why the Government requested claims information over a year ago,

*prior to the close of discovery*. Because Dianon failed to produce any electronic claims

information (or hard copy claims information for that matter), it should be precluded at trial from

introducing any evidence regarding the "objectionable" claims that it may raise at or before trial.

In addition, Dianon argues that the draft requisition forms and other documents it

produced in August 2006, after the close of discovery, are somehow not relevant, and so the

Government is not entitled to any depositions regarding these documents. These documents are, however, relevant to the Government's case, as they show that Dianon sought to educate referring physicians about what types of tests would be recommended for certain diseases. Thus, the draft requisition forms indicate that myeloproliferative disorders (such as CML), should not involve testing by flow cytometry. In other words, it would not be *medically necessary* to order flow cytometry tests for such disorders. This is one of the central arguments that the Government has made in this case. In addition, some of the late-produced documents indicate that over $56,000 of tests were billed to Medicare, but never performed by Dianon, which is another claim that the Government will seek to prove at trial. Because Dianon did not produce these documents until after the close of discovery, the Government did not have a chance to depose the individuals with knowledge of these key documents. The Government is simply asking for a 30(b)(6) deposition to cure the prejudice created by Dianon's belated disclosure.

Finally, Dianon argues that part of the Government's motion is "moot" because after the motion was filed, Dianon finally produced *some* of the documents related to the Hemepath Consensus Conference. However, Dianon failed to produce any documents related to Dr. Raul Braylan, one of Dianon's retained experts who actually ran the conference. In addition, Dianon did not produce any documents relating to the results of the conference, which, according to the deposition testimony of Dr. Braylan, was the creation of a screening panel followed by a secondary panel (as opposed to one standard panel). Dianon should be compelled to produce these documents.

Accordingly, the Government's motions should be granted.[1]

## A.    Motion in Limine Regarding Claims Data

Almost all of the claims at issue were submitted by Dianon electronically. That is why

the Government specifically requested, on May 15, 2006, over two months prior to the close of

discovery, "[a]ll claims . . . and *electronic claims*" submitted by Dianon. *(Davis Decl., Exh. 1,*

*Request No. 5)* (emphasis added). The purpose of requesting this information prior to the close

of discovery was to ensure that if Dianon's electronic claims information was different than the

Government's electronic information, the Government could request follow-up discovery (e.g.

medical records, correspondence, billing records) and/or take appropriate depositions. Yet

Dianon never produced any electronic claims or electronic claims data to the Government.

Accordingly, the Government has not had the opportunity to analyze Dianon's electronic data to

determine if it is different, in any material way, from the Government's information.[2]

In its opposition brief, Dianon writes that it is

> currently working on cross-checking the government's database with its own
> information. Dianon expects that it will be able to work with the government's

---

[1] Dianon claims that the Government failed to bring these discovery issues to Dianon's attention prior to filing this motion. However, the Government did raise these issues on multiple occasions. For example, counsel for the Government spoke on the phone with Dianon's counsel about the lack of production relating to the Hemepath conference documents and sent Dianon several letters and emails regarding this issue. *(See Davis Decl., Exh. 8, at 2; Exh. 4, at 2; Exh. 11).* The Government also outlined the belated production of the requisition forms and related documents. *(Davis Decl., Exh. 8, at 2).* Finally, the Government raised Dianon's failure to produce its electronic claims data on several occasions. *(Davis Decl., Exh. 2, at 3; Exh. 4, at 1-2).*

[2] In fact, Dianon did not produce any claims to the Government, even in hard copy. Dianon only made available for inspection "Remittance Advice" documents, which are sent by CMS to Dianon, not the electronic claims submitted by Dianon. Not surprisingly, Dianon does not even argue in its opposition papers that it produced any of its flow cytometry claims.

>       counsel and the data provided, stipulate to many of the claims therein and *single*
>       *out objectionable claims*. The pre-trial schedule and the process the Court has
>       created is designed to address these issues.

Dianon's opposition, at 4-5 (emphasis added). The "process" outlined by Dianon, however, will

prejudice the Government. While the Government would be happy to stipulate to the claims data

it has provided and has asked Dianon to do so for months, Dianon has not done so. The problem

with the process unilaterally imposed by Dianon is that if Dianon singles out the "objectionable"

claims prior to trial, as it now suggests, the Government will have lost its opportunity to request

follow-up documentation or depositions relating to those "objectionable" claims.[3]

The Government requested the electronic claims information over two months prior to the

close of discovery to allow the Government adequate time for follow-up discovery. Dianon's

failure to produce this information, not only during discovery, but right up to the present time, is

the basis for the instant motion. At this late date, it would be improper for Dianon to object to

particular claims, when it violated its discovery obligations and never produced its electronic

claims information to the Government. Accordingly, any evidence at trial Dianon seeks to admit

regarding "objectionable" claims should be excluded because Dianon failed to produce any of its

---

[3] For example, in its opposition brief, Dianon argues that "Dianon should also be able to introduce any documentary evidence connected with the claims at issue that the government did not request, such as medical records associated with specific tests." Dianon's opposition at 5 (emphasis in original). However, the reason that the Government did not request such documents (e.g. medical records) for specific claims that Dianon may find "objectionable," is that the Government was not given the opportunity, during discovery, to review Dianon's electronic claims and compare them to the Government's database. Thus, because of Dianon's conduct, the Government lost the opportunity to request appropriate follow-up documents. The Government should not be penalized for Dianon's discovery violations.

-4-

claims to the Government.[4]

## B.    Documents Concerning the Development of New Dianon
## Flow Cytometry Test Requisition Forms and Tests Billed
## But Not Performed

Dianon produced important documents related to its flow cytometry requisition forms and

other related documents after the close of discovery.  In its opposition, Dianon argues that the

Government has "failed to articulate how any of the disclosed documents are relevant or

important to its case."  Dianon opposition at 6.  However, these documents are clearly both

relevant and important.  The Government's central argument in this case is that Dianon

submitted claims for medically unnecessary flow cytometry services.  One key example of this is

Dianon's submission of claims for flow cytometry services for patients with myeloproliferative

disorders, such as Chronic Myelogenous Leukemia (CML).  *See United States' Local Rule*

*56(a)(2) Statement, Disputed Issues of Material Fact Section, ¶ 8.*  The draft requisition forms

supplied after the close of discovery indicate that Dianon contemplated setting up its forms to

provide guidance to the referring physicians as to the types of tests that would be appropriate for

certain types of diseases.  *(See Davis Decl., Exh. 7, at PP17945, 17939, 17935).*  These draft

forms indicate that  flow cytometry was not recommended for meyloproliferative diseases (such

as CML).  *Id.*[5]

---

[4] We note that Dianon does not submit an affidavit or any testimony from an individual with knowledge of Dianon's electronic claims to discuss the existence of Dianon's electronic database, or the alleged burden or expense that would be involved in producing Dianon's electronic database.

[5] Dianon argues in its opposition brief that the Government has not produced any evidence that the "structure of Dianon's test requisition form led to medically unnecessary testing."  Opposition at 7.  However, this is precisely the point that these draft requisition forms make.  Dianon contemplated educating doctors that certain diseases should not be tested using

-5-

Moreover, another of the late-produced documents, a handwritten note from a compliance meeting in 1998, states: "Ran programs back to '95 looking for tests we billed but didn't perform: $56k in Medicare for 95 & 96, $28k in [words cut off]." *(Id. at PP17916)*. The Government contends that Dianon billed for services that it never performed, which is the most basic example of billing for services that are not medically necessary. Dianon is actually trying to preclude all mention of this at trial in its own *in limine* motion. This belatedly produced document raises a question as to why Dianon failed to pay this entire $56,000 amount back to the Government, when the company knew back in 1998 that it had improperly received payments from the Government for tests it had never performed. Instead, Dianon only paid back approximately $26,000 in 1997, but waited until June of 2006, after it had been sued by the Government, to pay back the additional amounts owed. *(See Exh. 9 to Plaintiff's Memorandum in Opposition to Defendant's Motions In Limine to Exclude Evidence of False Claims Act Liability)*.

Thus, far from being irrelevant or unimportant as Dianon contends, these documents are clearly relevant to some of the central arguments the Government will be making at trial. However, because Dianon produced these important documents after the close of discovery, the Government did not get to depose any Dianon witnesses regarding these documents. Unlike Dianon, the Government is not asking for preclusion of evidence or any other discovery sanction related to the late production. Instead, the Government is simply trying to cure the prejudice caused by Dianon's late disclosure and is asking for a 30(b)(6) deposition regarding these

---

flow cytometry. However, Dianon ultimately did not use these forms and, therefore, medically unnecessary tests for diseases such as CML were ordered by the referring physicians, billed by Dianon, and paid by the Government.

documents.

## C. Hemepath Consensus Documents

Dianon claims that due to an "oversight," documents related to the Hemepath conference

were not produced until last week. Dianon opposition at 9 n.5. It further claims that because it

has now produced some additional documents relating to the conference, the Government's

motion is "moot." *Id.* at 8. However, Dianon ignores the fact that it has not produced any

documents relating to Dr. Raul Braylan's participation in the conference. Dianon has also not

produced any documents relating to the results of the conference.

As part of the Government's Second Request for Production of Documents to Dianon,

which was served May 15, 2006, the Government submitted this request:

> 3.    All documents concerning the Hemepath Consensus
> Conference held in or about October/November 2005 at
> Esoterix in Brentwood, Tennessee, as referenced in the
> 11/14/05 e-mail from Suha Mishalani to Glenn Segal, bates
> no. PP13798-PP13803. This request includes, but is not
> limited to, all notes, correspondence, presentation materials
> and summaries related to the meeting, **as well as all
> documents created by, reviewed by or received by Dr.
> Raul Braylan (including any documents concerning
> payments made to Dr. Braylan related to the conference,
> by Dianon, Lab Corp., or any entity owned or controlled
> by Lab Corp)**.

*(Davis Decl., Exh. 1)* (emphasis added)

Dr. Braylan is one of Dianon's retained experts. Dr. Braylan also helped to run the

Hemepath Consensus conference. *(See Exh. 1 attached hereto, listing Dr. Braylan as the*

*"Conference Facilitator").* If Dr. Braylan was paid to run the conference or sent correspondence

or other information to Dianon regarding the conference, that is relevant information that should

-7-

be produced. It is clear from other documents produced by Dianon that LabCorp, Dianon's

parent company, offered Dr. Braylan a full-time job (which he ultimately turned-down). *(See

Exh. 2 attached hereto)*. The amount of Dr. Braylan's compensation for running the conference,

as well as other documents that he may have generated, are clearly relevant to the cross-

examination of Dr. Braylan at trial. However, none of this information has been produced.

Finally, Dianon has still failed to produce documents relating to the results of the

conference. Dr. Braylan testified at his deposition that one of the results of the conference was to

develop a screening panel followed by a secondary panel. *(Braylan Deposition, 132:21-133:24,

Exh. 3 attached hereto)*. However, Dr. Braylan could not remember the number of antibodies in

each of the proposed panels. *(Id., 133:10-24)*. That is why it is important to produce any and all

documents regarding the results of the conference, including any documents related to the

screening panel and secondary panel that Dr. Braylan testified about. Those documents have not

been produced.[6]

## Conclusion

Accordingly, the Government respectfully requests that the Court (1) prohibit Dianon

from introducing any evidence at trial relating to claims not produced to the Government during

discovery; (2) order Dianon to produce a witness to testify on behalf of Dianon regarding the

draft flow cytometry requisition forms and other documents produced after the close of

_____

[6] We note that Dianon did not submit an affidavit from any of the participants it sent to
the conference, or from Dr. Braylan, indicating that no further documents exist. *(See Exh. 1
hereto, listing the names of the three Dianon conference participants and Dr. Braylan)*. We also
note that the Government's document request regarding the conference defined Dianon to include
its "parent" organization. *(Davis Decl., Exh. 1 at 1-2)*. Thus, if LabCorp has additional
documents related to the conference, and Dianon has access to these documents from LabCorp,
the documents should be produced.

discovery; and (3) order Dianon to produce all documents concerning the Hemepath Consensus

Conference, including documents related to Dr. Braylan and the outcome of the conference, or

absent their production, produce an affidavit asserting that no such documents exist.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

RICHARD MOLOT
Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700

/S/

JOYCE R. BRANDA
PATRICIA R. DAVIS
JENNIFER CHORPENING
Fed. Bar No.
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-0240
Facsimile:  (202) 305-7797
Email: Jennifer.Chorpening@usdoj.gov

Attorneys for the United States

-9-

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2007, I caused a true copy of the foregoing

**UNITED STATES' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION IN**

**LIMINE AS TO CLAIMS DATA AND MOTION TO COMPEL DEFENDANT TO**

**PROVIDE DISCOVERY** to be served by mail and electronic mail on:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880
bcarmody@mayalaw.com

Robert Salcido, Esq.
Akin Gump Strauss Hauer & Feld, LLP
Robert Strauss Building
1333 New Hampshire Ave, NW
Washington, D.C. 20036
rsalcido@akingump.com

Bruce R. Parker
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Md. 21201
brparker@venable.com

Richard M. Molot
Assistant U.S. Attorney