# EXHIBIT 8

# AKIN GUMP
## STRAUSS HAUER & FELD L.L.P

■■■■■■ Attorneys at Law

ROBERT SALCIDO
202.887.4095/fax: 202.887.4288
rsalcido@akingump.com

July 25, 2006

Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

Dear Pat:

Thank you for your July 3, 2006 letter. There, without citing any evidence, you broadly asserted that Dianon has been deficient in producing e-mails and asked that we provide an explanation to you prior to your scheduling a telephonic conference with the Judge regarding the issue.

I have previously described to you Dianon's process in collecting e-mails and will now repeat it again. Beginning at least in May 2003, when Dianon received a Department of Justice record request, Dianon's General Counsel and Chief Compliance Officer directed all Dianon employees that were likely to have responsive documents to identify and produce all responsive documents. They were further notified that "document" should be "construed in its broadest possible context" to include, among other things, "emails, electronically stored documents, voice and video documents, as well as pertinent data." *See* Memorandum from Thomas Kossl, Esq. to Twenty-Eight Dianon employees dated May 12, 2003 (attached hereto as Ex. 1). Employees were questioned if they appeared to produce less than a complete file. They were also reminded about their duty to preserve responsive documents and not discard any potentially relevant documents or erase any pertinent electronically stored documents or data. *Id.*

When the government expressed dissatisfaction with Dianon's initial production, in November 2003, Dianon's General Counsel and Chief Compliance Officer again transmitted a memorandum to those employees that would possibly have information relevant to the government's request. *See* Memorandum from Thomas Kossl, Esq. to Eleven Dianon employees dated November 5, 2003 (attached hereto as Ex. 2). They were again instructed to make a thorough search through their electronic files and emails and questioned to ensure that they conducted a thorough search.

AKIN GUMP
STRAUSS HAUER & FELD L.L.P
━━━━ Attorneys at Law

Patricia R. Davis
July 25, 2006
Page 2

Similarly, prior to making its production response to the government in December 2005, Dianon employees were again directed to assemble all responsive documents, they were instructed to comply with the government's extremely broad requests, they were specifically instructed to produce all emails, and they were again directed to preserve all responsive documents. *See* Memorandum from Thomas Kossl, Esq. to Twenty-Five Dianon employees dated October 7, 2005 (attached hereto as Ex. 3).

As a result of these practices, Dianon, a small reference lab, in its December production, produced substantially more emails regarding flow cytometry than all of CMS, the Medicare carriers, the NIH, and the VA combined (as amazing as that sounds).

While witnesses have stated the undeniable truth that Dianon had the capacity to send e-mails during the relevant time period, I am unaware of any instance in which a witness testified that they possessed e-mails responsive to any of the subject areas the government has inquired into that was not produced. And, again, you do not cite any specific instance of that in your letter. If there were such an instance, given Dianon's efforts in the past, you can rest assured that the company would inquire of the person why he or she had falsely represented to it that a thorough search had been conducted when, in fact, one had not and it would promptly provide to you any responsive information.

In any event, we are available to discuss this issue with the court whenever you like. We will also be prepared to address the following issues with the Court at that time:

1.    **Spoilation**

I understand that, unlike Dianon, the government did not notify CMS, its carriers, the NIH, and the VA to retain documents relevant to this lawsuit until far after the date in which the lawsuit was filed. If my understanding is incorrect please provide, as I have to you, your correspondence to your clients and agents instructing them to retain and not destroy documents relevant to this litigation from the time the relator filed this lawsuit in 2002. As you know, this is a significant issue in this litigation because I understand the government is now claiming that it no longer possesses a number of responsive documents. If you, in fact, have never instructed governmental agents regarding their minimal duty to retain documents relevant to this litigation and believe that the government in fact has no duty to even undertake minimal efforts to safeguard documents responsive to litigation, please indicate that to us in writing.

AKIN GUMP
STRAUSS HAUER & FELD L.L.P.
━━━━━━━━━━ Attorneys at Law

Patricia R. Davis
July 25, 2006
Page 3

2.    **Document Alteration**

As you know on numerous occasions we have inquired into the Administrative Law Judge's decision in the Impath case. The Judge's ruling is important to us because it demonstrates, among other things, that (1) despite the government's contention that Dianon's bills for 18-markers are on their face fraudulent, a company had no apprehension in a public forum asserting entitlement to payment for a 26-marker panel because the test is medically necessary and appropriate to treat the patient's condition; (2) after an evidentiary hearing, an Administrative Law Judge agreed that not only was the practice not fraudulent but the company was entitled to full payment for a 26-marker panel because (a) the company's practice was entirely consistent with the peer reviewed medical literature; (b) the company's practice was consistent with the viewpoint of recognized experts in the field; (c) the company's concern about the viability of the samples was an appropriate one; (d) reference labs have less information than hospital labs to act upon; and (e) the carrier's LMRP limiting a panel to 20 markers (whereas the government here considers 18 to be fraudulent) was "inconsistent with the general consensus in the medical community regarding the possible number of markers in a flow cytometry study which are necessary to make an accurate diagnosis" and that almost all international experts participating in a consensus conference "believed that the appropriate number of markers for the complete characterization of acute leukemia would average 20-24."

Notwithstanding the clear relevance of the Judge's opinion to this lawsuit, we were informed in December that the government did not have this decision and only recently received it. Moreover, the copy we received (bates numbered NHIC00005-NHIC000011) contained no fax tails on the document. *See* Ex. 4.

However, during Dr. Rogan's deposition, the government (perhaps inadvertently) produced another version of the Judge's Order with several fax tails on it. *See* Ex. 5. This version was not produced to us in discovery. Moreover, the fax tails appear to indicate that Rick Molot's office received the Judge's opinion – right around the time we were initially inquiring into the Judge's ruling – in April 2004 (i.e., more than 2 years ago). Why did we not receive this version of the Judge's opinion as part in the government's document production responses? And why did we not receive the Judge's ruling last December during the government's initial production? Purposefully holding back this Order until the close of discovery has hampered our ability to conduct discovery.

3.    **Failure to Conform to Rule 34**

In May, I requested that the government comply with Rule 34 by "labeling [your documents] to correspond with the categories" in the document requests. To date I have not

**AKIN GUMP**
**STRAUSS HAUER & FELD** L.L.P
━━━━━━━━━ Attorneys at Law

Patricia R. Davis
July 25, 2006
Page 4

received any response, notwithstanding the fact that we have carefully identified which governmental document requests our discovery responses correspond to. Please indicate whether you intend to comply with Rule 34 or whether you believe that you are exempt from that Rule.

Also during our last telephonic conference with the Judge, we indicated that we are about to file a motion to have the seal lifted on those document that remain sealed in this litigation. The Court stated that it prefers Court records be public unless the government could demonstrate a compelling need to cloak the documents in secrecy other than that the documents were required to be filed under seal at one time. Please inform me by Wednesday what your position is on this issue so that we can file our motion to have the seal lifted if needed.

Thank you for your attention to this matter.

Sincerely,

Robert Salcido

**EXHIBIT 1**

# M E M O R A N D U M

## C O N F I D E N T I A L

Memo To:

| | | |
|---|---|---|
| Jay Amberson | John Hazard | Mark Rabin |
| Leon Bailey | Todd Homan | Chris Rausch |
| Steve Clayton | Cathy Lewis | Glenn Segal |
| Maria Conte | Dee McKoy | Marty Stefanelli |
| Cyndy Dawkins | Bob McNamee | Stephanie Swenson |
| Donna DeMattia | Suha Mishalani | Bill Tilton |
| Fred Ferrara | Valerie Palmieri | Pat Torre |
| Rose Flyntz | Sherry Peery | Bob Tucciarone |
| Steve Gersen | Matt Plamkoodan | Earlvin Young |
| Dave Hanak | | |

From:        Thomas Kossl, Esq.

Dated:       May 12, 2003

Subject:     Collection of Documents re XL3/XL4

DIANON *Systems* has received a records request from the Department of Justice in connection with an investigation of immunophenotyping flow cytometry studies (XL3 and XL4). A description of the documents being sought is attached (see *'Documents to be Produced'*). All of you are being asked to thoroughly search your files and those under your control for responsive records. **These must be returned to Tina Monaco or me by Thursday, May 22.**

The term "documents" should be construed in its broadest possible context. Besides written documents, including handwritten documents and personal notes, the term includes emails, electronically stored documents, voice and video documents, as well as pertinent data. Unless a document request expressly relates to a time period before 1997, only documents that were created, received or dated on or after January 1, 1997 need to be produced. Copies of documents must include copies of all handwritten or marginal notes, as well as anything written or printed on the reverse side of the document. Do not write on any documents or highlight any passages. If you want to point out something important (and we would appreciate your doing so), please use a Post It note. If you want to submit originals, you can, but please designate them as originals on a *'Document Source'* form submitted with the documents.

Each of you will be required to certify in writing that a thorough search has been made. When documents are submitted, we would appreciate your completing the accompanying *'Document Source'* form and attaching one to

each file submitted. That way we can identify the source of the documents should there be any questions or a need to go back to the original file.

We have a legal obligation to preserve documents that may pertain to the investigation. Please do not discard any potentially relevant documents or erase any pertinent electronically stored documents or data. Failure to adhere to this mandate may be construed as obstruction of an investigation subjecting you or the company to criminal fines or penalties.

If you have any questions, please call me. My phone numbers are 203-381-4959 and 973-492-1509. Tina Monaco can be reached at extension 4990 in Stratford.

Thanks everybody for your cooperation.

cc:        David King, Esq.
           Tina Monaco

5/12/2003                                                    **CONFIDENTIAL**

## DOCUMENTS TO BE PRODUCED

**1.      Creation of XL3/XL4 Profile**

Please provide all documents related to the creation of the 26 antibody flow cytometric immunophentyping profiles (XL3 and XL4). In particular, provide documents concerning the number or type of antibodies to be included and the reasons for their inclusion. Documents pre-dating 1997 will need to be reviewed.

All documents showing or justifying changes in the components of the XL3 and XL4 profiles should also be provided. In particular, provide documents concerning the reduction in the number of antibodies to 22 on or about August 1, 1996 and the reversion to 26 antibodies on March 24, 1997. Please also provide pertinent internal or published studies and medical literature.

**2.      Specimen Viability**

Please provide all documents relating to the viability of specimens (bone marrow, peripheral blood, whole blood) used to perform the flow cytometric immunophenotyping studies conducted for the XL3 and XL4 profiles. In particular, include all internal studies and available published studies and pertinent medical literature.

**3.      Billing for XL3/XL4 Antibodies**

Please provide all documents related to the number of units billed under CPT 88180 for XL3 and XL4 profiles from 1997 to the present. In particular, but without limitation, this should include documents, including CPT Coding Committee minutes and notes, relating to the decision to bill for 18 antibodies effective September 1, 1997 and the decision to bill for 26 antibodies effective January 1, 2000.

In addition to the specific request above, please also provide all documents that concern or refer to a billing procedure, policy or practice used to document, prepare or submit claims to Medicare, Medicaid or TriCare for flow cytometric immunophenotyping studies. This would include any pertinent written instructions to data entry or billing staff, manuals, policy statements, training materials, memos, bulletins, letters instructions, handbooks, notes, meeting minutes, notes of phone calls, as well as any pertinent information or materials provided by Medicare or other payors.

**4.      Communications with Medicare**

Please provide all documents concerning or related to any discussions, communications or disputes with a Medicare carrier concerning flow cytometric immunophenotyping studies, the number of antibodies to be performed or billed, CPT code 88180, diagnoses

**CONFIDENTIAL**                                                **5/12/2003**

covered for immunophenotyping profiles and the medical necessity of antibodies included in those profiles.

Documents concerning the overpayment refund made in June 1997 should also be included.

### 5.    Oklahoma HemPath Lab

Please provide all documents concerning the decision to open a hematopathology laboratory in Oklahoma that would conduct flow cytometric immunophenotyping studies.

### 6.    Revenue Projections

Please provide all documents relating to any projected revenue for flow cytometric immunophenotyping services from 1997 to the present.

### 7.    Patient Sample

We must provide all documents related to a 200 patient sample. This request will be separately directed to Donna DeMattia, Pat Torre, Dee McKoy and Cyndy Dawkins.

**FACSIMILE COVER SHEET**

**To:**          PAT NOLAND
**Company:**    LABORATORY CORPORATION OF AMERICA
**Phone:**      800-328-2666 ext. 4523
**Fax:**        (203) 381-4017

<u>Fax to 919-572-7423</u>

          **From:**       THOMAS KOSSL
          **Company:**    DIANON Systems, Inc.
          **Phone:**      (973) 492-1509 or 203-381-4959
          **Fax:**        (973) 492-9763 or 203-381-4958

**Date:**       11/3/03
**Pages:**      5 (including cover)

**COMMENTS**

Pat-

The company needs to address this.  I would suggest the following:

1.  Another memo from me, or perhaps you and me, asking people to go through their files and computers again and to identify where else relevant files might be;
2.  There is no warehouse list per Marty Phillips. I will need to go to the WH and begin to identify potentially relevant boxes;
3.  Require people to certify that they've done a thorough search and produced everything responsive;
4.  Have IS scan old emails for key words;
5.  Some of this is going to require deployment of personnel and a shift in priorities, but we can't ignore this either.

*This communication may be covered by the Attorney/Client Privilege or Work Products Doctrine. In order to protect these privileges, this communication should not be disclosed to any third parties or employees not authorized to see it.*

# EXHIBIT 2

ATTORNEY/CLIENT PRIVILEGE & WORK PRODUCT DOCTRINE

# DIANON *Systems*
*Delivering the Difference in Diagnostics*

# INTERNAL MEMO

To:   **Signatories to November 2000 XL3 Test Code Change**
Valerie Palmieri
Robert Tucciarone
Maria Conte
Earlvin Young

**Members of the 2000 Test Code Committee**
Robert McNamee
Pat Torre
Fred Ferrara
David Hanak
Matt Plamkoodan
Heather Hulford
Donna Demattia

From:   Thomas Kossl
Date:   November 5, 2003

Re:    **U.S. Attorney Document Production Demand re XL3/XL4**

In May, the U.S. Attorney for the District of Connecticut asked DIANON to produce all documents relating to its decision to bill for a 26 antibody panel for XL3 and XL4 instead of the 18 antibodies that were previously billed. This billing change went into effect on January 1, 2001.

We have received a somewhat pointed letter from the U.S. Attorney by certified mail (see attached letter dated October 17, 2003) questioning the small number of documents that the company has produced discussing or explaining this decision. The letter notes that the decision was approved at some of the highest levels of the company and had a significant impact on patient fees. The memo reiterates the request for all documents related to this decision, including memos, emails, notes, meeting minutes, reports, correspondence, calendars, diaries, working papers, directives, manuals, contracts, charts, graphs, drawings and facsimiles, whether in electronic form or hard copy.

In light of the U.S. Attorney's letter and our agreement to treat the document production requests in the same manner as a subpoena, I must ask each of you to go back again and do a *thorough* review of your electronic files, emails, Test Code Committee meeting files and all other files within your control that may have documents that are responsive to the U.S. Attorney's request. You will also need to seek documents from people under your supervision who may have responsive documents or electronic files. **Each of you must sign the attached certification indicating that you have made a thorough search, have produced all responsive documents under your control and have made diligent inquiries for responsive records of persons you supervise.**

At a minimum, XL3/XL4 seems to have been discussed at the following Test Code meetings: May 8, 2000; May 22; 2000; June 6, 2000; June 12, 2000; June 19, 2000; June 26, 2000; July 17, 2000; July 31, 2000; August 14, 2000; September 11, 2000; November 27, 2000; December 4, 2000; and January 8, 2001. The meeting memoranda refer to a billing audit of XL3/XL4, including reports and requisitions, which also is required. Without limiting your search, we would expect to see your copies of the meeting minutes, memoranda, emails and notes from those meetings.

The due date for the documents and signed certifications is Thursday, November 13, 2003. Please give them to Donna Demattia. Please use the "Document Source" form for all documents that you are producing, so that we will know from whom and what file it came. If you have any questions, I can be reached at extension 4959.

cc:    Pat Noland
David King

CONNECTICUT     FLORIDA     NEW YORK     OHIO     OKLAHOMA     TEXAS

**Production Demand of October 27, 2003**
**Issued by the**
**UNITED STATES ATTORNEY'S OFFICE, NEW HAVEN, CONN.**

**Certification**

By signing this form, you confirm that you have read and understood the October 27, 2003 *Request for Information to Dianon Systems, Inc.* from the United States Attorney for the District of Connecticut that accompanies this acknowledgement, have made a thorough search for potentially responsive records, including documents under your control, have made diligent inquiries of persons under your supervision for responsive records, and have provided and/or identified all such records about which you are aware. You understand that DIANON will rely on this acknowledgment to ensure that its document production obligation has been met.

_____
**(Signature)**

**Name:** _____

**Date:** _____

**Phone:** _____

## Other Sources of Documents

If you are aware of any persons who may reasonably be expected to have documents of the type that have been requested of you, or if you know of places where such documents may reside, please note those names and places below.

**Category of Document**                    **Name or Place**

_____          _____

_____          _____

_____          _____

**DIANON** *Systems,* **Inc.**

**DOCUMENT SOURCE**
**for**
**Production Demand of May 5, 2003**
*Issued by the*
**UNITED STATES ATTORNEY'S OFFICE, NEW HAVEN, CONN.**

| These documents are the *Originals* | | These documents are *Copies* | |
|---|---|---|---|

The **SOURCE** of the documents is:

Who gathered this document?    _____

When?    _____

From whom obtained:    _____

From what location obtained:    200 Watson Blvd., Stratford, Conn.    ☐

Bldg. 300, Stratford, Conn.    ☐

1895 Stratford Ave. Warehouse    ☐

Oklahoma City    ☐

Other:_____

_____

Whose file is/was it?    _____

File name and number    _____

_____    _____

Subfile name and number    _____

_____    _____

Box Number    _____

Box Label    _____

_____    _____

Check here if the documents are known or believed to be subject to a claim of privilege

☐



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

| | |
|---|---|
| *Connecticut Financial Center* | *(203) 821-3700* |
| *157 Church Street* | |
| *P.O. Box 1824* | |
| *New Haven, Connecticut  06510* | *Fax (203) 773-5373* |

October 27, 2003

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Tom Kossl, Esq.
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615

          Re:    <u>Request for Information to Dianon Systems, Inc.</u>

Dear Tom:

      One of the documents Dianon has produced (#600000-600002), indicates that 9 individuals signed-off on Dianon's decision, in November 2000, to bill for all 26 markers when performing test code XL3.  I enclose a copy of this document for your reference.  The individuals who signed-off on this decision were at some of the highest levels of the company, including the Chief Medical Officer, the Vice President, the Corporate Controller and the Vice President of Marketing.  In addition, this decision was significant, as it increased the patient fee from $1,260 to $1,950.  Yet Dianon has not produced any emails, memos, notes, or similar documents discussing or explaining this decision.  Knowing how most corporations work, it is difficult to believe that 9 people at the company signed-off on an important decision without generating some documentation discussing or explaining the reasoning behind the decision.  Accordingly, we once again request that Dianon produce **all** documents related to this decision, including but not limited to, memoranda, emails, notes, meeting minutes, reports, correspondence, calendars, diaries, working papers, directives, manuals, contracts, charts, graphs, drawings, and facsimiles, whether in electronic form or otherwise.  Please call me to discuss this issue.

          Very truly yours,

          KEVIN J. O'CONNOR
          UNITED STATES ATTORNEY

          RICHARD M. MOLOT
          ASSISTANT U.S. ATTORNEY

Encl.

# Ap Test Code Creation Form

**Test Code  XL3**
max 6 char

INITIATORS NAME:   Kim Hade

DATE: 11/14/00

DESCRIPTION:
max 255 char.      Need to bill for all 26 markers performed and reported

## LIS Data Entry Fields:

UPDATE/NEW     Update          WORKSHEET          REPORT TYPE:   Hemepath
                               max 6 char          final printed report

MAX TUBES      1    SHORT NAME              LONG NAME
max 2 char          max 13 char             max 24 char

PRODUCT LINE   S    GREEN BAR        COLUMN #          COLUMN TITLE
alpha accession     max 3 char       max 5 char        max 14 char (two rows)

## Billing Information:

| DESCRIPTION (max 25 char) | CPT CODE | MODIFIER | EVENTS | FEE/EVENT | PATIENT FEE | CLIENT FEE |
|---|---|---|---|---|---|---|
| Cell Surface Marker | 88180 | | 26 | $75.00 | $1,950.0 | $1,300.0 |

Modifier codes:   GL - Global    TC - Technical Component    PC - Professional Component    SO - Send Outs

BILLING COMMENTS:      *SEE ATTACHED for Details*

PROFILE NAME                          PROFILE TEST CODE
max 25 char                           max 6 char

## Approvals:

*Jack W. Snyder* 11-27-00
Chief Medical Officer        Date

*[signature]*  11/27/00
Vice President              Date

*[signature]*
Corporate Controller

*[signature]*
Vice President, Marketing

1/Sept
Date

11/27/00
Date

Departmental
Approvals:

Lab      *[signature]*
Billing  *[signature]*
Info Sys *[signature]* MJC
Mktg     1611

## Signatures:

LIS Data Entered: _____        Signature: _____ N/A
                     Date

Billing Data Entered: 12/4/00          Signature: _____
                        Date

Laboratory Data Entered: _____   Signature: _____ N/A
                           Date

Testing Complete: _____        Signature: _____
                     Date                          Laboratory

                                       Signature: _____
                                                   Billing

600000

## XL 3 Patient Bill
Need to bill for all 26 Antibodies

| Antibody | CPT | Patient Fee |
|---|---|---|
| CD2 | 88180 | $75.00 |
| CD3 | 88180 | $75.00 |
| CD4 | 88180 | $75.00 |
| CD5 | 88180 | $75.00 |
| CD7 | 88180 | $75.00 |
| CD8 | 88180 | $75.00 |
| CD10 | 88180 | $75.00 |
| CD19 | 88180 | $75.00 |
| CD20 | 88180 | $75.00 |
| CD22 | 88180 | $75.00 |
| CD23 | 88180 | $75.00 |
| CD11C | 88180 | $75.00 |
| CD13 | 88180 | $75.00 |
| CD14 | 88180 | $75.00 |
| CD33 | 88180 | $75.00 |
| CD103 | 88180 | $75.00 |
| CD15 | 88180 | $75.00 |
| CD16 | 88180 | $75.00 |
| CD34 | 88180 | $75.00 |
| CD38 | 88180 | $75.00 |
| CD25 | 88180 | $75.00 |
| CD45 | 88180 | $75.00 |
| CD56 | 88180 | $75.00 |
| CD57 | 88180 | $75.00 |
| HLA-DR | 88180 | $75.00 |
| KAPPA | 88180 | $75.00 |
| LAMBDA | 88180 | $75.00 |
| | | $1,950.00 |

NEW

CURRENT

800001

FEE FILE MAINTENANCE          Fee Schedule          13:15:49 Nov 12 2000

TEST/PROFILE: XL3 - IMMENOTYPING
BILL TYPE: CL
NEXT REVIEW: /5/

97

CURRENT

EFFECTIVE                      LAST MODIFIED:
EXPIRATION     Fee             TECH ID:
Description:                   CPT Code

LEUKEMIA,LYMPH    850.00
IMMUNOPHENOTYP      0.00
                 ---------
FEES             850.00

EFFECTIVE                      LAST MODIFIED:
EXPIRATION                     TECH ID:
Description:                   CPT Code

LEUKEMIA, LYMPH    350.00
IMMUNOPHENOTYP       0.00
                 ---------
TOTALS           350.00

EFFECTIVE                      LAST MODIFIED:
EXPIRATION     Fee             TECH ID:         No Reimburse
Description:                   CPT Code

LEUKEMIA,LYMPH    400.00
IMMUNOPHENOTY       0.00
                 ---------
TOTALS           400.00

NEW

300002

## NEW FEES

### XL 3 Client Bill
Need to bill for all 26 Antibodies

|    | Antibody | CPT   | Client Fee |
|----|----------|-------|------------|
| 1  | CD2      | 88180 | $50.00     |
| 2  | CD3      | 88180 | $50.00     |
| 3  | CD4      | 88180 | $50.00     |
| 4  | CD5      | 88180 | $50.00     |
| 5  | CD7      | 88180 | $50.00     |
| 6  | CD8      | 88180 | $50.00     |
| 7  | CD10     | 88180 | $50.00     |
| 8  | CD19     | 88180 | $50.00     |
| 9  | CD20     | 88180 | $50.00     |
| 10 | CD22     | 88180 | $50.00     |
| 11 | CD23     | 88180 | $50.00     |
| 12 | CD11C    | 88180 | $50.00     |
| 13 | CD13     | 88180 | $50.00     |
| 14 | CD14     | 88180 | $50.00     |
| 15 | CD33     | 88180 | $50.00     |
| 16 | CD103    | 88180 | $50.00     |
| 17 | CD16     | 88180 | $50.00     |
| 18 | CD34     | 88180 | $50.00     |
| 19 | CD38     | 88180 | $50.00     |
| 20 | CD25     | 88180 | $50.00     |
| 21 | CD45     | 88180 | $50.00     |
| 22 | CD56     | 88180 | $50.00     |
| 23 | CD57     | 88180 | $50.00     |
| 24 | HLA-DR   | 88180 | $50.00     |
| 25 | KAPPA    | 88180 | $50.00     |
| 26 | LAMBDA   | 88180 | $50.00     |
|    |          |       | $1,300.00  |

**EXHIBIT 3**



**DIANON** *Systems*

A **LabCorp** Company

*200 Watson Blvd*
*Stratford, CT 06615*

*PRIVILEGED AND CONFIDENTIAL*

**MEMORANDUM**

**TO:**        Distribution List (attached)

**FROM:**    Thomas Kossl
            Senior Vice President, General Counsel & Chief Compliance Officer

**DATE:**     October 7, 2005

**RE:**        <u>*US ex rel. Dr. James J. Tiesinga v. Dianon Systems, Inc.*</u>

**THIS MEMORANDUM REQUIRES YOUR IMMEDIATE CONSIDERATION**

Recently, the Department of Justice served Dianon Systems, Inc. ("Dianon") with a Request for Production of Documents ("Request for Production") in the referenced lawsuit. Over the last month, I have spoken to several of you regarding compliance with the government's Request for Production. Because the documents are due on December 7, I ask that all of you carefully review this memorandum to ensure that we can assemble all responsive documents in a timely fashion.

**I.        STEPS TO ENSURE PROMPT COMPLIANCE**

In order to respond appropriately to the Request for Production, Dianon requests that you engage in each of the following steps:

**<u>First, it is absolutely critical that you preserve and do not destroy all documents within your control or possession that are responsive to the Request for Production.</u>** Set forth below is a summary of the Request for Production. It is for your assistance as a guide in interpreting and simplifying the Request for Production because it is written in a manner that is difficult to understand. Nevertheless, Dianon's obligation to preserve records at this stage is based on the Request for Production, which, as literally worded, is extremely broad. If you are in doubt concerning a particular document, you must error on the side of caution and preserve

1



the document. Please note also that the Request for Production covers not just hard copy documents but also computer records.

**Second, if there is anyone who works for you who may have documents called for in the Request for Production, meet with him or her immediately and discuss the need to preserve documents.** You may share a copy of this memo with people with whom you will be meeting.

**Third, do not discuss with anyone else the underlying issues that the investigation seems to be addressing.** Such conversations probably will not be covered by attorney-client privilege, and may be subject to future governmental inquiry. You may and should discuss, as necessary, the need to preserve documents. Your discussions should go no further.

Provided you take necessary measures to preserve the documents in your possession or control, you do not need at this point to collect your documents in one place. In the near future, it is likely that I will contact you to collect and make copies of your documents, and the documents of people in your department, that are called for in the Request for Production.

Finally, please review the Distribution List. If you believe that I have omitted anyone who should receive this memorandum because he or she may have relevant documents, please let me know.

## II.    DOCUMENTS RESPONSIVE TO THE REQUEST FOR PRODUCTION OF DOCUMENTS

As noted, the government's Request for Production is extraordinarily broad. If you would like to review a copy, please contact me and I will provide a copy to you. Boiled down, the Request for Production essentially calls for:

- All email in which flow cytometry testing or billing is discussed.

2

# DIANON *Systems*
### A **LabCorp** Company

- All documents concerning the number of antibodies in Dianon's flow cytometry panel, including the choice of particular antibodies or changes in the number of antibodies.

- All documents concerning the medical necessity of flow cytometry tests.

- All documents concerning Dianon's Hematopathology Services Test Requisition forms relating to flow cytometry tests.

- All documents concerning communications between Dianon and the carrier or CMS regarding flow cytometry or CPT code 88180 (this request does not include communications related to the routine submission of claims for flow cytometry services).

- All documents concerning communications between Dianon and any private insurance carrier regarding flow cytometry or CPT code 88180 (this request does not include communications related to the routine submission of claims for flow cytometry services).

- All documents concerning the length of time patient samples remain viable for flow cytometry testing.

- All documents concerning the compensation of Dianon pathologists.

- All documents concerning any complaints from patients or referring doctors to Dianon regarding flow cytometry testing or CPT code 88180.

- All communications between Dianon and LabCorp concerning flow cytometry testing or CPT code 88180.

- All documents concerning procedures and practices within Dianon for handling of samples upon which flow cytometry tests are performed.

- All documents concerning the "turn around time" for flow cytometry testing at Dianon.

- All sales and marketing documents concerning flow cytometry or CPT code 88180.

- All training materials concerning flow cytometry or CPT code 88180.

- All Department of Pathology Monthly Updates.

- All documents concerning Dianon's decision whether to open a lab in Oklahoma that would conduct flow cytometry tests.

- All documents concerning Dianon's decision to develop a full-service AP lab in Connecticut, including hematopathology

3

# DIANON *Systems*
### A **LabCorp** Company

- All documents concerning any statistical data or information compiled by Dianon regarding its flow cytometry services such as the different types of cases sent to Dianon for flow cytometry testing (e.g. amount/percentage of acute leukemia cases, chronic leukemia cases, non-Hodgkin's lymphoma cases, etc.).

*    *    *

As noted, our response to the government is due on December 7, 2005. In order to ensure that all responsive documents are compiled and reviewed prior to that date, I request that you inform me whether you have responsive documents by October 21.

# DIANON *Systems*
### A **LabCorp** Company

DISTRIBUTION LIST

| | | |
|---|---|---|
| Jay Amberson | Deb Klembara | Martin Phillips |
| Paula Berry | Michelle Lourenco | Matt Plamkoodan |
| John Boyle (OKC) | Dee McKoy | Mark Rabin |
| Hilary Buckley | Bob McNamee | Glenn Segal |
| Maria Conte | Suha Mishalani | Michelle Smith (OKC) |
| Sue Cowan | Patrick Noland | Pat Torre |
| Fred Ferrara | Valerie Palmieri | Bob Tucciarone |
| Joe Hurley | Justine Patchkofsky | Earlvin Young |
| Karen Kennedy | | |

cc:    Sam Eberts
       Kathryn Kyle
       Patricia Merchant
       Robert Salcido

5