# EXHIBIT 10

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAMES T. O'NEILL** )<br>)<br>**PLAINTIFF** )<br>)<br>v. )<br>)<br>**CENTERS FOR MEDICARE** )<br>**& MEDICAID SERVICES** )<br>**DEPARTMENT OF HEALTH** )<br>**AND HUMAN SERVICES** )<br>)<br>**DEFENDANTS** )<br>) | **Civil Action No. 06-C-2498** |

**DECLARATION OF MICHAEL S. MARQUIS**

I, Michael S. Marquis, hereby make the following declaration:

1. I am the Director of the Freedom of Information Group (FIG), Office of Strategic Operations and Regulatory Affairs, Centers for Medicare & Medicaid Services (CMS), U.S. Department of Health and Human Services (HHS). In this capacity, I am the Records Access Officer for CMS. My duties include responding to requests under the Freedom of Information Act (FOIA) for records of CMS. My duties also include determining whether to release or withhold records or portions of records in accordance with the FOIA and HHS regulations implementing the FOIA, and overseeing all FOIA activities within CMS. FIG is the CMS central office component responsible for administering the Freedom of Information Act.

2. I make this declaration based upon my personal knowledge and information available to me in my official capacity.

1

3.  This declaration will detail the search performed in CMS for CMS records responsive to the plaintiff's FOIA requests.

4.  There are six FOIA requests at issue in this litigation. Each request was addressed to FIG. One of those six requests was dated August 29, 2005; four requests were dated August 30, 2005, and the remaining request was dated June 7, 2006.

5.  CMS's procedures for processing FOIA requests are set forth in guidelines published in 55 Fed. Reg. 51,342 (Dec. 13, 1990).

### Plaintiff's August 29, 2005 FOIA Request Regarding "Flow Cytometry"

6.  Plaintiff's FOIA request, dated August 29, 2005, was logged into my office's tracking system on September 7, 2005 and assigned case control number C05FOI2250. This request sought:

(1) All records included in the "review of flow cytometry reports" referenced by CMS at page 49,048 (daily ed.) of the August 15, 2003 *Federal Register*; and

(2) All records other than rulemaking comments received from outside CMS considered by CMS in arriving at the position on flow cytometry set forth at page 63,216 (daily ed.) of the November 3, 2003 Federal Register.

7.  By letter, dated September 9, 2005, FIG acknowledged receipt of plaintiff's request; advised plaintiff that because of our receipt of a very heavy volume of FOIA requests, we process cases on a "first in, first out" basis, and invited plaintiff to notify us in writing if he believed his request should be processed on an expedited basis. Plaintiff did not request expedited processing.

2

8. On September 9, 2005, FIG referred plaintiff's request to CMS's Office of Clinical Standards and Quality (OCSQ) for the document search. This referral was made to OCSQ based on the belief that OCSQ was the component responsible for handling flow cytometry matters.

**Item One of Plaintiff's August 29, 2005 FOIA Request**

9. By transmittal, dated November 04, 2005, OCSQ formally stated that records responsive to plaintiff's request were not housed within its files. That office recommended that FIG refer plaintiff's request to CMS's Center for Medicare Management (CMM) for search. On November 04, 2005, FIG referred plaintiff's request to CMM for search.

10. On December 8, 2005, FIG inquired regarding the status of CMM's search effort. By E-mail, dated December 13, 2005, and transmittal, dated December 20, 2005, CMM stated that it did not house any responsive records within its files, and recommended that my office refer plaintiff's request to Dr. Niles Rosen at Anthem Blue Cross and Blue Shield (BCBS) for search.

11. On December 30, 2005, FIG referred plaintiff's request to CMS's Chicago Regional Office (Region V) and to the Office of Strategic Operations and Regulatory Affairs (OSORA). The referral to Region V was made because CMS's Regional Offices serve as the points of contact between FIG and the Medicare intermediaries and carriers within their respective jurisdictions. Anthem Blue Cross and Blue Shield is located in Region V's jurisdiction. The request was referred to OSORA for search because OSORA is responsible for maintenance of CMS's official regulations files.

3

12. On January 23, 2006 and February 1, 2006, FIG requested status reports from both Region V and OSORA relative to their search efforts.

13. By E-mail, dated February 1, 2006, Region V responded to FIG's status request. However, this response did not specifically address the search of Dr. Rosen's files. Therefore, FIG determined to contact Dr. Rosen directly.

14. On May 23, 2006, OSORA advised FIG that the only responsive documents within its files would be those responsive to item number two of plaintiff's request. OSORA also stated its belief that CMM would have other responsive records.

15. In attempting to contact Dr. Rosen, FIG learned that he was no longer employed by Anthem BCBS. Ultimately, FIG was referred to Ms. Linda Dietz, Dr. Rosen's assistant at the National Correct Coding Initiative (NCCI) contractor. The NCCI contractor is responsible for maintaining, refining, and developing correct coding solutions.

16. On May 25, 2006, FIG referred plaintiff's request to Ms. Dietz for review and search. In an E-mail, dated May 25, 2006, Ms. Dietz clarified that Dr. Rosen served as Medical Director for the NCCI contractor from November 1998 to August 2000 as an employee of AdminaStar Federal, Inc., when AdminaStar was the only NCCI contractor, and as an employee of AdminaStar Federal, Inc., when AdminaStar was an NCCI subcontractor to the prime contractor. Ms. Dietz stated that Dr. Rosen has not worked directly for Anthem BCBS, although AdminaStar Federal, Inc., is a subsidiary of Anthem for government business.

17. Ms. Dietz further explained that NCCI did not have any specific documents that were reviewed for the proposed rule. She stated her belief that responsive records would be within CMM's possession.

18. On May 25, 2006, FIG re-referred plaintiff's request to CMM for search based upon the information provided by OSORA and NCCI concerning CMM's role in preparing the proposed rule.

19. In FIG's follow-up communications with CMM, CMM confirmed that it did not possess any records responsive to plaintiff's request. Specifically, in an E-mail dated June 6, 2006, CMM provided the following explanation to support its finding: "... the August 15, 2003 preamble language regarding flow cytometry markers ...was drafted by Dr. Rudolf, the former Medical Officer for the Hospital and Ambulatory Policy Group, based on his discussions with Dr. Niles Rosen, a former pathologist and now the Medical Officer for the Medicare contractor in charge of the CCI edits. The preamble refers to a "review of flow cytometry reports." This refers to examples of flow cytometry reports forwarded by Dr. Rosen to Dr. Rudolf and reviewed by Dr. Rudolf. Dr Rudolph left CMS shortly after the August 2003 NPRM was published and we do not have any of [t]his prior records on flow cytometry."

20. In addition, by memorandum dated July 21, 2006 from John Warren, Acting Director, Division of Practitioner Services, Hospital and Ambulatory Policy Group, CMM, Mr. Warren advised that "...the documents being requested were shared between Dr. Paul Rudolf, the former Medical Officer for the Hospital and Ambulatory Policy Group and Dr. Niles Rosen, Medical Officer for the National Correct Coding Initiative contractor, AdminaStar, during development of the August 2003 Notice of Proposed Rulemaking for the Medicare Physician Fee Schedule. Dr. Rudolf has since left CMS' employment. We do not have any records that he may have kept regarding this issue."

21. Having referred plaintiff's request to CMM, OSORA, OCSQ, Region V, and the NCCI contractor, FIG concluded that all reasonably likely locations in CMS for responsive records had been searched.

22. Based upon the search results of CMM, OSORA, OCSQ, Region V, and the NCCI contractor, FIG's finding was that no responsive records exist within CMS's files responsive to item number one of plaintiff's request.

### Item Two of Plaintiff's August 29, 2005 FOIA Request

23. On May 25, 2006, OSORA provided a compact disc (CD) to FIG, consisting of over 8,000 pages, that comprised the regulations review file for the proposed and final rule entitled "Medicare Programs; Revisions to Payment Policies Under the Physicians Fee Schedule for the Year 2004." OSORA did not identify the specific pages within this file that were responsive to plaintiff's request.

24. In order to identify those records specifically related to "flow cytometry," FIG performed a computer search of the records contained on the OSORA CD, looking for any page containing the words "flow cytometry." When any such page was identified, FIG downloaded the entire document related to that page and identified that document as being responsive to item number two of plaintiff's request. A total of 1,127 pages was identified in this way as being responsive to plaintiff's FOIA request. These pages were reviewed by FIG in order to make the required disclosure determinations.

25. Because FOIA specifically provides that any reasonably segregable portion of a record be provided to a requester after deletion of the portions that are exempt, my office's review and analysis of these 1,127 pages of records encompassed a line by line, page by page

examination of the text of the document against the FOIA exemptions, as interpreted by FOIA case law, and in consideration of disclosure concerns raised by our program offices.

26. FIG's initial review found that the 1,127 pages consisted of numerous internal drafts and revisions of the rules cited in plaintiff's request, as well as other documents reflective of the clearance process for the proposed and final rules. FIG determined that these pages were protected by the deliberative process privilege of Exemption 5 of the FOIA (5 U.S.C. 552(b)(5)). Exemption 5 protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The deliberative process privilege of this exemption protects advice, recommendations and opinions that are part of the deliberative, consultative, decision-making process of the agency.

27. By letter, dated July 24, 2006, Melodye L. Hardy, acting on my behalf, advised plaintiff that CMS was unable to locate documents responsive to item number one of his request. She further advised plaintiff that the 1,127 pages responsive to item two of his request were being withheld in full under the deliberative process privilege of Exemption 5. Ms. Hardy also advised plaintiff of his right to appeal this decision to the Deputy Administrator of CMS.

28. By letter, dated August 23, 2006, plaintiff appealed CMS's July 24, 2006 response to his August 29, 2005 FOIA request. CMS processed plaintiff's appeal in accordance with the review process set forth at 45 C.F.R. § 5.34(c) of HHS's Freedom of Information regulations. This process requires consultation with HHS's General Counsel to ensure that the rights and interests of all parties affected by the request are protected. It also requires the concurrence of the Assistant Secretary for Public Affairs in the appeal decision.

29.  By letter, dated October 26, 2006, the Deputy Administrator of CMS upheld the FIG's original decision in part, and released a one-page document in full that contained segregable factual information.

**Plaintiff's August 30, 2005 FOIA Requests Regarding ALJ Decisions**

30.  Plaintiff submitted four FOIA requests, dated August 30, 2005. These requests were logged into my office's tracking system on September 8, 2005, and assigned case control numbers C05FOI2263, C05FOI2264, C05FOI2265 and C04FOI2265.

31.  All four of these requests were similar in that each one sought all ALJ decisions deciding appeals with regard (in whole or in part) to coverage of Procedure Code 88180 under Medicare Part B, and stated plaintiff's agreement to pay up to $100.00 in processing fees. The requests were different only in that each one sought such decisions issued from a different field office. Specifically:

(1) C05FOI2263 sought identified decisions issued from the Mid-Atlantic Field office;

(2) C05FOI2264 sought identified decisions issued from the Mid-West Field Office;

(3) C05FOI2265 sought identified decisions issued from the Southern Field Office; and

(4) C05FOI2266 sought identified decisions issued from the Western Field Office.

32.  By four separate letters, dated September 12, 2006, FIG individually acknowledged receipt of C05FOI2263, C05FOI2264, C05FOI2265 and C05FOI2266. By these letters FIG also advised plaintiff that because of our receipt of a very heavy volume of FOIA requests, we process cases on a "first in, first out" basis, and invited plaintiff to notify us in writing if he believed his request should be processed on an expedited basis. Plaintiff did not request expedited processing.

33. FIG determined that all documents responsive to plaintiff's request would be received and reviewed in FIG to assure that beneficiary identifiers within the responsive records were redacted pursuant to Exemption 6 of the FOIA (5 U.S.C. 552 (b)(6)). Exemption 6 protects information about individuals in "personnel and medical files and similar files," when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

34. By memorandum, dated September 12, 2005, FIG referred C05FOI2263, C05FOI2264, C05FOI2265 and C05FOI2266 to the Center for Medicaid and State Operations (CMSO), instructing that Center to search for responsive records and to forward such records to FIG for disposition. By transmittal, dated October 26, 2005, CMSO advised FIG that it did not house records responsive to C05FOI2265, and recommended referral of the request to CMM.

35. On November 2, 2005, FIG referred C05FOI2265 to CMM. By transmittal, dated November 28, 2005, CMM advised FIG that it did not house the requested records.

36. On December 15, 2005, FIG referred C05FOI2263, C05FOI2264, C05FOI2265 and C05FOI2266 to the New York Regional Office (Region II), CMS for search. The referral was made to Region II based upon the belief that Region II had lead responsibility for reviewing ALJ dispositions for CMS's Boston, New York, Philadelphia, Chicago, Kansas City, Denver, San Francisco and Seattle Regional Offices.

37. On December 15, 2005, FIG also referred C05FOI2265 to the Dallas Regional Office (Region VI) of CMS. This referral was made based on the belief that Region VI was responsible for reviewing ALJ dispositions for the Dallas and Atlanta Regional Offices.

38. By memorandum, dated January 4, 2006, Region II advised FIG that the "ALJ" clearinghouse function had been transferred to the Administrative Qualified Independent Contractor (AdQIC) and that plaintiff's request should be referred to the AdQIC in Columbia, South Carolina.

39. Upon receipt of plaintiff's request, Mary Jane Collard, FOIA Coordinator, Region VI further referred the request to the following Region VI Medicare Part B carriers: TrailBlazer Health Enterprises, LLC; Pinnacle Business Solutions (Louisiana Medicare Part B Carrier), and Palmetto GBA.

40. By E-mail, dated February 20, 2006, to Jacqueline Russell of my office, Palmetto GBA requested that my office contact plaintiff to ask for the specific time frame covered by his request. By E-mail, dated February 21, 2006, Jacqueline Russell sought information from plaintiff regarding the specific date range covered by his request.

41. In a letter, dated March 9, 2006, and received via facsimile transmission, plaintiff responded to Ms. Russell's E-mail by limiting C05FOI2265 and its three sister requests to the period 1994 through 2004. Plaintiff, thus, amended his original request.

42. By letter, dated March 21, 2006, TrailBlazer advised Ms. Collard to contact the Office of Hearings and Appeals, Southern Field Office for the requested information.

43. By letter, dated March 22, 2006, Pinnacle directly advised plaintiff that additional information such as a provider's name or case file number would need to be provided in order for that carrier to conduct its search.

44. By memorandum, dated April 19, 2006, Mary Jane Collard, FOIA Coordinator, Region VI, advised FIG to contact the Hearing Officer, Southern Field Office, for the requested

records. On this same date, Ms. Collard sent a letter to plaintiff advising him that she had referred his request to CMS's Baltimore office for response. This latter action was done in error.

45. By letter, dated June 8, 2006, plaintiff submitted a follow-up letter to his correspondence of March 9, urging CMS to release the requested records without delay.

46. By letter, dated August 24, 2006, plaintiff filed an administrative appeal for requests C05FOI2263 - 2266 stating that he considered CMS's failure to respond to these FOIA requests within the statute's time limits to be constructive denials of the requests.

47. On September 1, 2006, FIG referred plaintiff's request to the Center for Beneficiary Choices (CBC) for search. This was done because CBC administers the AdQIC contracts. CBC forwarded plaintiff's request to $Q^2$Adminstrators, LLC, a CMS-contracted Qualified Independent Contractor (QIC), instructing the QIC to provide an estimate of the costs involved in fulfilling the requests.

48. By memorandum dated September 15, 2006, $Q^2$Adminstrators advised FIG of the estimated costs for fulfilling plaintiff's original request. Ultimately, FIG was not able to use this estimate because it covered the period July 2005 and on, i.e., the date $Q^2$ Administrators began its contract with CMS. The estimate did not cover the time period associated with plaintiff's amended request.

49. Upon further review of plaintiff's request, CBC advised FIG that ALJ decisions are not issued by CMS's central or regional offices; but that such decisions are issued by the Office of Medicare Hearings and Appeals (OMHA), HHS.

50. Prior to July 1, 2005, the Office of Hearings and Appeals (OHA) at the Social Security Administration (SSA) performed ALJ hearings on Medicare claim denials. Decisions

11

issued prior to 2005 were forwarded to CMS's Medicare carriers and fiscal intermediaries by the OHA/SSA. Decisions issued after the cited date were/are forwarded to the AdQIC for retention. Therefore, FIG determined that, within CMS, the decisions sought by plaintiff's amended request would be housed in the Medicare appeal files -- those on and off-site, for each Medicare carrier.

51. In an E-mail, dated November 7, 2006, CBC further advised that roughly 70,000 ALJ hearings are conducted each year, with the vast majority of these cases involving Medicare Part B issues. CBC further informed FIG that each appeals case file varies between 25 and 400 pages in length.

52. My office has since surveyed every Part B carrier and has determined that the appeals units at the Medicare carriers do not track appeals by procedure code. Instead, carriers use a variety of record-keeping techniques, including tracking appeals by case number, beneficiary name, provider name, beneficiary number, and/or independent document control number. In addition, although some files may be kept on-site for a limited period of time, eventually all carriers ship completed case documents and files to off-site storage.

53. In order to respond to plaintiff's request, each carrier would need to retrieve all ALJ case files from the applicable storage facilities and manually search each file to determine whether the appeal dealt with the identified procedure code.

54. Since plaintiff's requests cover a ten year period of time, I determined that the search effort to locate appeals involving Procedure Code 88180 would be extremely time consuming, unduly burdensome, and very costly (far exceeding the $100.00 minimum set forth in each of plaintiff's requests).

55. By letter, dated November 16, 2006, I informed plaintiff that CMS would not comply with his requests because it would require this agency to conduct a wide-ranging, unreasonably burdensome search to uncover the requested records.

**Plaintiff's June 7, 2006 FOIA Request Regarding Administrative Appeals Data**

56. Plaintiff's FOIA request, dated June 7, 2006, was logged into my office's tracking system on June 9, 2006 and assigned case control number C06FOI1850. This request sought:

(1) For each of the 24 appeals of initial denials of FOIA/PA requests that CMS claims to have "processed" during Fiscal Year 2005, records sufficient to show (a) the identities of the persons making the requests; (b) the dates that the appeals were made to CMS; (c) the reason(s) for decision, closure, or other resolution of the appeals; and

(2) For all appeals of initial denials of FOIA/PA requests that CMS has not yet processed, records sufficient to show (a) the identities of the persons making the requests and (b) the dates that the appeals were made to CMS.

57. By letter, dated June 21, 2006, FIG acknowledged receipt of plaintiff's request, advised him that because of our receipt of a very heavy volume of requests, FIG processes cases on a "first in, first out" basis, and invited him to submit documentation to FIG if he believed his request should be processed on an expedited basis. Plaintiff did not request expedited processing.

58. FIG is the repository for the administrative record related to CMS's processing of FOIA administrative appeals. Within FIG, one analyst is responsible for the total appeals workload. On June 20, 2006, that analyst was assigned plaintiff's request for search and processing.

59. By letter, dated August 28, 2006, plaintiff filed an administrative appeal for C06FOI1850 because he considered CMS's failure to respond to his FOIA request within the statute's time limits to be a denial of his request.

60. On November 16, 2006, FIG responded to plaintiff's request by fully releasing two spreadsheets of information, totaling 61 pages, that satisfied the two items of his June 7, 2006 request.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 21st day of March, 2007.

_____
Michael S. Marquis