# EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Dr. James J. Tiesinga,<br><br>Plaintiffs,<br>v.<br><br>DIANON SYSTEMS, INC.,<br><br>Defendant. | No. 3:02CV1573(MRK)<br><br><br><br>August 12, 2005 |

## DEFENDANT DIANON SYSTEMS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES

Pursuant to Federal Rules of Civil Procedure 33 and 34, Dianon Systems, Inc., ("Dianon") propounds its first set of interrogatories and first request for production to the United States and requests that the United States answer each of the interrogatories separately under oath and produce originals or copies of all responsive documents at the offices of Akin Gump Strauss Hauer & Feld, 1333 New Hampshire Ave., Washington, D.C., 20036, within thirty days of the date of service of these requests.

### DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to all interrogatories and requests for production:

1.   The United States or "you" or "your" means plaintiff United States of America.

2.   "Document" or "Documents" mean each of the following that is in the possession, custody, or control of a party or that can be obtained by a party through the exercise of a superior right to compel production from a third person: the original (or a duplicate if the original is not available) and each non-identical copy (whether different from the original or another copy by virtue of notes made or otherwise), regardless of origin or location, of any handwritten,

typewritten, printed, recorded, transcribed, punched, taped, photocopied, photostatic, telecopied, filmed, microfilmed, or otherwise prepared matter, including without limitation drafts, however produced or reproduced, and further including without limitation any papers, books, accounts, drawings, graphs, charts, photographs, phono-records, plans, blueprints, telexes, telegrams, electronic or videotaped or mechanical recordings, magnetic impulses, and any other data compilation whether written, stored in a computer or otherwise stored or maintained and from which information can be obtained or translated into reasonably usable form.

3. "Relates to" means any materials that refer to, discuss, describe, deal with, comment on, respond to, describe, analyze, constitute, contain, embody, comprise, reflect, identify, state, or are in any way pertinent to the subject matter.

4. The word "communication" refers to every manner or means of disclosure or transfer or exchange of information whether orally or by document and whether face to face, by telephone, mail, telexes, meetings, discussions, releases, personal delivery or any other means of imparting or exchanging information.

If the reference is to a communication, please:

    a. state the communication's medium (*e.g.*, telephone conversation, letter, telegram, telecopy, written memorandum, face to face communication, *etc.*);

    b. state the date of the communication;

    c. describe in detail and with particularity the substance of the communication;

    d. identify each person involved or participating in the communication; and

    e. identify the person who initiated the communication.

5. "Each" shall include the term "each and every."

6.  When an interrogatory asks you to "state the basis" for or explain a particular contention, please:

   a.  state each and every fact, with particularity and in detail, which you contend supports the contention or response;

   b.  state each and every fact, with particularity and in detail, that tends to refute, negate or in any way contradict the contention or response;

   c.  identify each document and communication relied upon by you in making the contention or response, and in formulating the particular interrogatory response; and

   d.  identify each person who has knowledge of or information as to the facts referred to in the response.

7.  The words "or" and "and" should be read in either the conjunctive or the disjunctive so as to give these interrogatories and requests for production the broadest scope. The singular form of a word should be interpreted in the plural as well.

8.  If you elect to withhold any information on the grounds that such information is protected from disclosure by any privilege or immunity (*e.g.*, the attorney-client privilege or the work-product doctrine) identify (sufficiently to evaluate the applicability of each element of the invoked privilege or immunity) the withheld information (*e.g.* type of information, author, date, topic) and the privilege or immunity pursuant to which the information is withheld.

9.  "Identify" when referring to a natural person requires that the following information be given:

   a.  the name of the person;

      b.    the person's title or position at the time of the matters inquired into, and the person's employer at that time;

      c    the identity of the present employer of the person and the position currently held;

      d.    the present or last-known address of the person; and

      e.    the phone number of the person.

10. "Identify" when referring to a firm, partnership, corporation, office or other entity requires that the following information be given:

      a.    full name and present or last-known address;

      b.    telephone number.

11. When applied to a document, "identify" requires that the following information be given:

      a.    the date appearing on the face of the document;

      b.    the name of the person or persons who authored, originated or sent it;

      c.    the type of document (e.g., letter, memo, contract, etc.);

      d.    any descriptive designation or number used by the custodian to locate or maintain such document;

      e.    the name of the addressee or person(s) who received such document; and

      f.    any document production number.

12. These interrogatories and requests for production shall be deemed continuing, and require timely supplemental responses when you acquire responsive information.

13. Except where otherwise indicated, the time period for which information and documents are requested is from January 1, 1995 up to and including the date upon which you serve

your answers to these interrogatories, except to the extent that another time period is indicated or that supplementation is required under Fed. R. Civ. P. Rule 26.

14.  Each interrogatory shall be accorded a separate answer, and each subpart of an interrogatory shall be accorded a separate answer.

15.  Estimates or approximations should be given, when, but only when, precise data cannot be supplied. Any estimates or approximations should be designated as such and a statement made as to why precise data cannot be supplied.

16.  The source, sources, or derivation of each answer should be separately set forth and identified, unless the person signing the answers to these interrogatories under oath knows of his own personal and direct knowledge of the facts or information forming the basis of all answers given.

17.  All documents identified in answering these interrogatories and produced in accordance with Defendant's Rule 34 Request, First Set, accompanying these interrogatories, should be marked both with the number of the particular document request to which they are responsive, and with the number of the Interrogatory to which they relate.

## INTERROGATORIES

### INTERROGATORY NO. 1

State the basis for your contention in paragraph 24 of your amended complaint that Dianon acted with actual knowledge, deliberate ignorance or reckless disregard of the laws, regulations and guidance applicable to federal healthcare programs when submitting claims for various flow cytometry procedures billed under CPT Code 88180.

### INTERROGATORY NO. 2

State the basis for your contention in paragraph 36 that from 1996 to the present when Dianon billed for flow cytometry tests, a significant portion of the antibodies billed to federal healthcare programs were not medically necessary. For each such claim, identify which antibodies were medically unnecessary.

**INERROGATORY NO. 3**

List all instances when the United States reimbursed laboratories or medical professionals, other than Dianon, for flow cytometry antibody testing for leukemia and lymphoma where the laboratory or medical professional used a panel of 26 or more antibodies from 1997 through March 31, 2004. Include the date, number of antibodies reimbursed, and the total amount of reimbursement. Also include the total number of medical and/ or laboratory service providers so reimbursed.

**INTERROGATORY NO. 4**

Describe, in detail, the content of any and all written policies or standards issued or adopted by the United States governing the number of antibodies used in flow cytometry antibody panel testing for leukemia and lymphoma during the period 1996 through 2004. Include the date of publication and where the standard or policy was published.

**INTERROGATORY NO. 5**

Provide the name, business address, and telephone number for all laboratories, medical professionals, and/or hematopathologists who conducted flow cytometry antibody panel testing for leukemia and lymphoma at Veteran Affairs facilities or at the request of doctors at Veterans Affairs facilities during the period 1997 through 2004. For each person listed, indicate whether the professional is currently employed by the United States Government.

**INTERROGATORY NO. 6**

List all damages, penalties, or other monetary awards you contend you are entitled to in this matter and the factual basis for each such contention.

### INTERROGATORY NO. 7

List all publications, scientific opinions, articles, or learned treatises you contend establishes the standard of care for the design of flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 to the present. Include in your answer the author, title, publication information and date of publication for each article or treatise.

### INTERROGATORY NO. 8

List all publications, scientific opinions, articles, or learned treatises you contend establishes that a 13 to 15 antibody panel as described in your Amended Complaint paragraphs 50 through 69 is the standard of care for the design of flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 to the present. Include in your answer the author, title, publication information and date of publication for each article or treatise.

### INTERROGATORY NO. 9

Describe all facts and information that would be relevant to a hematopathologist in crafting or designing an antibody panel for a patient.

### INTERROGATORY NO. 10

Provide all facts and information that would be relevant for a reference laboratory, such as Dianon, to consider in designing antibody panel(s) for the diagnosis of leukemia and lymphoma.

### INTERROGATORY NO. 11

Describe all relevant facts and information concerning the differences between an on-site hematopathology laboratory and its practice of medicine and a reference laboratory, such as

Dianon, and its practice of medicine in relation to the design and evaluation of flow cytometry antibody panel for the diagnosis and classification of leukemia and lymphoma.

**INTERROGATORY NO. 12**

Describe in detail any and all changes to Medicare billing and reimbursement policies and procedures for CPT Codes 88180, 88184, 88185, 88187, 88188, and 88189 during the period 1997 to the present. For each such change in policy or procedure given in response to this interrogatory, provide the factual basis and reasons for instituting the changes made, if any.

**INTERROGATORY NO. 13**

Describe all reasons, if any, why Medicare did not establish a flat fee for conducting flow cytometry antibody panel testing for leukemia and lymphoma, rather than charging on a per antibody basis, during the period 1997 through 2004.

**INTERROGATORY NO. 14**

In each instance you contend that Dianon submitted a claim to you for medically unnecessary flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 through March 31, 2004, describe in detail the reasons why the claim was not denied.

**INTERROGATORY NO. 15**

List all instances in which you declined to reimburse Dianon for a claim submitted to you for flow cytometry antibody panel testing for leukemia and lymphoma during the period 1997 through March 31, 2004 and state the reasons for declining to reimburse Dianon.

**INTERROGATORY NO. 16**

Provide a definition of the term "medically necessary" as it relates to flow cytometry antibody panel design and evaluation.

**INTERROGATORY NO. 17**

Describe all efforts you made to notify Dianon that you believed its 26 antibody panel, or portions thereof, used in leukemia and lymphoma testing was medically unnecessary.

**INTERROGATORY NO. 18**

Do you agree that training hematopathologists to use one standard antibody panel as opposed to numerous different antibody panels will, to a reasonable degree of medical certainty, decrease the error rate in diagnosing and classifying leukemias and lymphomas. If you do not agree, state the reasons and factual basis for your disagreement.

## REQUEST FOR PRODUCTION

1. Produce each document supporting the contention in paragraph 25 of the amended complaint that Dianon significantly increased the number of antibodies it used to test patient specimens from 1996 to the present.

2. Produce each document supporting the contention in paragraph 27 of the amended complaint that Dianon's "standard" flow cytometry panel consisted of 8 antibodies in 1995.

3. Produce each document supporting the contention in paragraph 30 of the amended complaint that Dianon prepared an internal memo purporting to justify the company's standard panel of 26 antibodies.

4. Produce each document supporting the contention in paragraph 31 of the amended complaint that Dianon pathologists indicated that 18 antibodies were essential.

5. Produce each document supporting the contention in paragraph 32 of the amended complaint that Dianon only billed for 18 antibodies from 1998 to 2000 because it "knew that only 18 antibodies were medically necessary."

6. Produce each document supporting the contention in paragraph 33 that Dianon billed federal healthcare programs "for the 8 antibodies that its own pathologists had found were not 'essential' in the June 17, 1997 memo."

7. Produce each document supporting the contention in paragraph 34 of the amended complaint that Dianon billed federal healthcare programs for 26 antibodies in most cases from on or about 2001 to the first quarter of 2004.

8. Produce each document supporting the contention in paragraph 35 of the amended complaint that not "all of the 26 antibodies in Dianon's standard panel are necessary, or appropriately used, to evaluate all types of cancer."

9. Produce each document supporting the contention in paragraph 36 of the amended complaint that "when Dianon billed for flow cytometry tests, a significant portion of antibodies billed to federal healthcare programs were not medically necessary."

10. Produce each document supporting the contentions in paragraph 37 of the amended complaint that the information "received by Dianon ... provided information which would have allowed pathologists at Dianon to use their medical judgment to craft panels aimed at identifying the particular type of cancer suspected by the referring physician, to determine whether cancer had recurred or to stage a particular type of cancer," each document supporting the contention that "Dianon did not exercise medical judgment as to whether each of the individual antibodies was medically necessary," and each document supporting the contention that "Dianon's pathologists should have used their medical judgment to limit the panel size to those antibodies medically necessary to the already diagnosed, or suspected, type of cancer."

11. Produce each document supporting the contention in paragraph 38 of the amended complaint that "for a significant portion of the patients for whom Dianon conducted flow

cytometry tests during the relevant time period, Dianon performed multiple tests, over time, on the same patient, each time using a full panel of 26 antibodies" and each document supporting the contention that "where a prior Dianon flow cytometry test had already been used to evaluate a particular type of cancer, the pathologist knew of the results of the prior test, or should have known by reviewing Dianon's own records, it was not medically necessary to test for those antibodies which were not useful to evaluate the type of cancer in question."

12. Produce each document supporting the contention in paragraph 39 of the amended complaint that physicians "who refer patient samples to Dianon for testing rely on the medical judgment of the Dianon pathologist as to the number and type of antibodies to use in performing flow cytometry tests."

13. Produce each document supporting the contention in paragraph 40 of the amended complaint that by "limiting the ordering choice of 18-26 antibodies, Dianon ensured that in many cases medically unnecessary antibodies would be used and billed to federal healthcare programs."

14. Produce each document that relates to whether services furnished under former Code 88180 were medically necessary and indicated.

15. Produce each document that relates to how Medicare set reimbursement under former CPT Code 88180.

16. Produce each document that relates to any change in the reimbursement methodology for flow cytometry testing for Medicare beneficiaries.

17. Produce each document that relates to how CMS established the relative value of work units for interpreting flow results under CPT Codes 88187, 88188 and 88189.

11

18.  Produce each document that relates to how CMS established the relative value of practice expenses for furnishing flow cytometry under CPT Codes 88184 and 88185.

19.  Produce each document that relates to data provided to CMS by the Relative Value Update Committee related to setting reimbursement rates for flow cytometry services under former CPT Code 88180 and CPT Codes 88184, 88185, 88187, 88188, 88189.

20.  Produce each document that relates to the number of makers (antibody reagents) used or billed by providers and suppliers when performing flow cytometry under former CPT Code 88180 or CPT Codes 88184, 88185, 88187, 88188, 88189 or that otherwise reflects or relates to utilization of CPT codes 88180, 88184, 88185, 88187, 88188, 88189 for claims processed by Medicare.

21.  Produce each document that relates to how CMS set or modified the payment rate for the technical component codes for flow cytometry, CPT Codes 88184 and 88185.

22.  Produce each document that relates to how CMS set the payment rate for the professional component codes for flow cytometry, CPT Codes 88187, 88188, and 88189.

23.  Produce each document related to the American Clinical Laboratory Association's April 15, 2005 letter to CMS, including communications related to its survey findings that the typical number of markers reported for a myeloid/lymphoid panel was 26 markers.

24.  Produce each document related to the flow cytometry panels used by Veteran Affairs facilities.

25.  Produce each document related to the flow cytometry panels used by the National Institute of Health.

26.  Produce each document that relates to the panels or correct number of antibodies that the government believes laboratories should use to perform flow cytometry.

27. Produce each audit or review of Dianon's claims.

28. Produce each document that relates to the statistical sample referenced in paragraph 44 of the amended complaint.

29. Produce each document that relates to the 200 patients that, according to paragraph 48 of the amended complaint, were reviewed "by an expert pathologist from the Yale University School of Medicine."

30. Produce each document that relates to the expert's findings referenced in paragraph 49 of the amended complaint.

31. Produce each document that supports your contention in paragraph 53 of the amended complaint that a "review by the Government's expert of claims submitted in 2001 and 2002 found that Dianon billed for an even greater number of medically unnecessary antibodies during the time period."

32. Produce each document that supports the contentions in paragraphs 50 – 59, and 61 to 70.

33. Produce each document that supports the contention in paragraph 60 of the amended complaint that "the Government's expert found during his review that Dianon was utilizing a full panel of 26 antibodies even when conducting repeat tests ..." and that "when doing a repeat test on the same patient it is not medically necessary to do a full panel of 26 antibodies."

34. Produce each document supporting the contentions in paragraphs 71-72.

35. Produce each document supporting the contention in paragraph 74.

36. Produce each document regarding any communication with relator James Tiesinga regarding the allegations in the relator's or government's complaints.

37. Produce each document related to the government's investigative files in this case, including but not limited to reports of interviews, notes, correspondence, and/or memoranda.

38. Produce each document related to requests made by the United States to the United States District Court for extensions of the 60-day sealing period.

39. Produce each document that the government contends constitutes a false statement made to the United States as alleged in the amended complaint.

40. Produce each document that the government contends constitutes a false claim made to the United States as alleged in the amended complaint.

41. Produce each document referring or relating to the sums the United States claims in its amended complaint were paid by mistake.

42. Produce all documents referring to the claims made by the government that constitute unjust enrichment.

43. Produce all documents referring or relating to the United States' computation of damages, including, but not limited to all documentation relied on by the United States to calculate its damages and such sums that the United States asserts constitutes a false claim.

44. Produce each document relating to communications between the Connecticut Medicare carrier, including without limitation Drs. Toor and Deli Carpini, the carrier Medical Directors, and Dianon regarding Dianon's flow cytometry testing and any analysis of overpayments or underpayments (or denials of claims) by Medicare for such testing.

45. Produce all commentary, submissions, data used or received by CMS from all sources, including without limitation the College of American Pathologists and from the American Medical Association, relating to any changes, proposed, discussed or actually made,

concerning the reimbursement methodology or payment for flow cytometry testing by federal health care programs.

46. Produce each document relating to the merits or disadvantages or acceptance or rejection in the medical community of comprehensive or targeted flow cytometry panels for the diagnosis of leukemia or lymphoma.

47. Produce all documents related to the optimal, preferred or acceptable number of antibodies to be used in flow cytometry panels for leukemia and lymphoma diagnoses.

48. Produce each document relating to any concerns, limitations, restrictions or guidelines regarding the potential interference with the practice of medicine by governmental agencies, officials, or representatives.

49. Produce each document relating to the rate or frequency of denial of claims by Medicare, and specifically without limitation the Connecticut Medicare carrier, for flow cytometry testing, including specifically and without limitation, those performed by Dianon.

50. Produce all documents relating to any appeal or challenge of any payment policy by a Medicare carrier limiting the number of antibodies reimbursed, including without limitation appeals by ImPath and Genzyme to denials by Medicare carriers in California.

51. Produce all documents relating to the government's investigation of Dianon's flow cytometry panels prior to September 5, 2002.

52. Produce each document related to the viability of bone marrow, blood, tissue and other specimens upon which flow cytometry analyses are performed for the diagnosis of leukemia or lymphoma.

53. Produce all documents relating to any actual or potential missed diagnosis of any leukemia or lymphoma in any government operated or funded facility.

Respectfully submitted,

By: _____
Robert Salcido
Fed. Bar No. 447951
(admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4095

Mary A. Gambardella (ct #05386)
Kerry M. Parker (ct # 26388)
Michael D. Thompson (ct # 26389)
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601
Telephone: (203) 348-3737

Thomas Kossl
Dianon Systems, Inc.
200 Watson Boulevard
Stratford, CT 06615
Telephone: (973) 492-1509

Bruce R. Parker
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244-7400
Attorneys for Defendant Dianon Systems, Inc.

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was sent via United States first class mail, postage prepaid, this ____ day of August, 2005 to:

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

Richard Molot, Esq.
U.S. Attorney General's Office
District of Connecticut
157 Church Street
New Haven, CT 06510

Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

_____
Penney Hughes