# EXHIBIT 18

# AKIN GUMP
## STRAUSS HAUER & FELD LLP
Attorneys at Law

**ROBERT SALCIDO**
202.887.4095/fax: 202.887.4288
rsalcido@akingump.com

October 11, 2006

Patricia R. Davis
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

Dear Pat:

This letter is a response to your September 20 and September 12 letters. This is also a supplemental response to your September 5 letter, which I responded to via e-mail on September 5.

In your September 20, 2006 letter, you stated that Dr. Tiesinga had represented during his deposition that he used a "template/worksheet" when he reviewed specimens. You mentioned that you "do not recall" seeing these documents in Dianon's document production and inquired into whether they had been produced.

First, I frankly do not know what Dr. Tiesinga is referring to and have not had the opportunity to ask him personally. Second, we have made production of all documents responsive to the government's requests. Third, I would suggest that if you are genuinely confused regarding whether the documents have been produced that you make available to Dr. Tiesinga all the documents we have made available to you and ask him to identify the "template/worksheet" since he, not me, would be in the best position to know what he is referring to.

In your September 12 letter you asked why documents responsive to the government's second request for production – which requested documents related to the formation of the compliance department and documents related to the designation of a compliance officer – were not produced in response to the government's first request when you asked for documents related to billing compliance.

We produced documents responsive to "billing compliance" in the first production. All documents related to the origination of the compliance department and designation of a compliance officer were produced in the second production. Your request for billing compliance documents did not call for the production of *all* compliance documents. You must

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Patricia R. Davis
October 11, 2006
Page 2

be aware of this because if you thought that your request for billing compliance documents covered all compliance related documents then your second request for documents related to the origination of the compliance department or designation of a compliance officer would have been unnecessary.

Also, in your September 12 letter, you stated that the government's spoliation of documents was justified because allegedly Dianon did not place a hold on documents until May 12, 2003. But how does that excuse the government for not making *any* communication to hold documents until more than *two years later* – late in 2005? As a result, important documents – such as the Carrier Advisory Committee file in Connecticut, utilization data other carriers had, and information related to CMS' consideration of an NCD regarding flow cytometry among others were destroyed. Further, the NIH was never asked to hold documents, which is simply unconscionable. See Dep. of Dr. Maryalice Stetler-Stevenson at 53:13 – 54:16.[1] As Dr. Stetler-Stevenson testified, whatever document retention guidelines the government had in place obviously did not apply to electronic files. As I previously indicated to Rick, we will address the spoliation issue with the Judge during the next phase of the case.

---

[1]   Q. And, Doctor at any time before today have you ever been instructed by counsel to save those e-mail transmissions?
A. No.
Q. What is the government's destruction policy of e-mails from your computer?
A. I believe that NIH saves e-mails for seven days.
Q. So after seven days anything that you may have discussed with a colleague regarding the design of the panels, large, small, or in between are destroyed by the government within seven days?
A. Unless I were to save them, yes.
Q. At no point before coming here today were ever instructed and your department was ever instructed by counsel representing the government to save all of those type of e-mail transmissions; is that correct?
A. I don't remember any instruction to save any e-mails pertaining to flow cytometry, or should I say, all e-mails pertaining to flow cytometry.
Q. Have you ever been instructed to save any particular type of e-mail that you have engaged – e-mail traffic in which you have engaged regarding flow cytometry?
A. I don't remember receiving instruction.

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
Attorneys at Law

Patricia R. Davis
October 11, 2006
Page 3

Next, you state that the reason you did not produce the ALJ's decision in Impath – authorizing its use of a 26-antibody panel – is that you "understand that Thom already had the decision" – and hence you did not produce the ALJ's decision to us until essentially the close of discovery. Also, you state that you did not alter the ALJ's decision because you simply produced a non-identical version of the document (which, among other things, did not have the fax tails on it proving that you had possession of the document in December 2005, but failed to produce it).

I take from your response that the Department of Justice believes that we are *not* obligated to produce in discovery documents if we "understand" you already possess the document. Also, I take from your response that the Department of Justice believes that a party is *not* obligated to produce non-identical copies of a document that covers the same subject matter as a produced copy. If so, you should clearly state your view in writing. Of course, you will not do that because you know that those views are wrong because anyone who has been doing this as long as we have knows that those views are wrong. The only reason you would have for withholding a document that was clearly requested – as Dianon requested: "Produce all documents relating to . . . appeals by Impath . . . by Medicare carriers in California" – is because you did not want us to take discovery on the issue – for obvious reasons.

Moreover, in your September 5 letter, you ask why the documents listed on the supplemental privilege log were not listed on the initial privilege log. The reason is that the documents listed as privileged on the supplemental log only relate to the government's second request for production of documents, and not its first. We did not include them on the initial log because they were not responsive to any documents requested as part of the initial production. Also, as to your request for the "type" of document, read under our "description" of the document for the "type" of document. As to the October 3, 2005 letter you inquired into, we claim attorney-client privilege.

Finally, you inquired into why some documents were produced in response to your second request for production of documents that were responsive to your first request for production of documents. The answer, among other things, is that when the client searched the warehouse from the more than eight-hundred boxes of material that were made available to the government in responding to the government's second request for production of documents, I asked that it also search again for documents responsive to the first production. Most of the documents that were produced as part of the second production are duplicates or near duplicates of what had previously been produced. However, I do not follow the same rule of production that you do – *i.e.*, that non-identical copies of produced documents need not be produced – so Dianon produced those documents in abundance of caution. These

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Patricia R. Davis
October 11, 2006
Page 4

documents comprise fewer than ten-percent of documents that were due to be produced in December 2005 while more than ninety percent of the government's production has been made after December 2005 when they should have been produced.

Dianon has made full production of all responsive documents. As Bill has pointed out to Rick and as we have already indicated to the Judge, we will be addressing all these issues (in addition to those Bill has raised) after the Court rules on our summary judgment briefs.

Thank you for your attention to this matter.

Sincerely,

Robert Salcido