UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA,<br><br>　　　Plaintiffs,<br><br>v.<br><br>DIANON SYSTEMS, INC.,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)    No. 3:02CV1573(MRK)<br>)<br>)<br>)<br>) |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE TO
EXCLUDE EVIDENCE OF FALSE CLAIMS ACT LIABILITY**

Dianon Systems, Inc., by and through its undersigned counsel, submit this Reply to Plaintiff's Opposition to Motion in Limine to Exclude Evidence of False Claims Act Liability ("Opposition") and states as follows in support of its Memorandum in Support of its Motion in Limine to Exclude Evidence of False Claims Act Liability ("Memorandum").

I. **THE TERM "MEDICALLY NECESSARY" AS APPLIED TO FLOW CYTOMETRY IS TOO VAGUE AND DID NOT PROVIDE DIANON NOTICE OF PROHIBITED CONDUCT**

The government's "medically necessary" definition for flow cytometry, provided in the context of this lawsuit, was never provided to Dianon during the period 1996 to 2003. The government has attempted to define "medically necessary" for flow cytometry through the opinions of its witnesses. This evidence should be excluded for the purpose of defining the "medically necessary" standard because it was never provided to Dianon prior to this litigation and because the evidence does not provide a set standard to allow Dianon or any other healthcare provider to conform its conduct accordingly.

The government cites to the wrong due process standard. Opposition at 10-11, n.6. The Supreme Court defined the "void for vagueness" doctrine:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (internal citations omitted). Under the due process clause, a statute imposing civil penalties is unconstitutionally vague if it "commands compliance in terms so vague and indefinite as really to be no rule or standard at all." *Advance Pharmaceutical, Inc. v. United States*, 391 F.3d 377, 396 (2nd Cir. 2004) (internal quotations and citations omitted). When a civil statute imposes penalties and has a "stigmatizing effect," it warrants a "relatively strict test" in analyzing whether the statute is void for vagueness. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499-500 (1982).[1] In this case, not only is Dianon subject to civil penalties and treble damages because its flow cytometry test allegedly violated the "medically necessary" requirement, but Dianon is also potentially subject to the "stigmatizing effect" of being excluded from Medicare participation altogether. *See,* 42 U.S.C. § 1320a-7(b).

---

[1] The government incorrectly asserts that the False Claims Act trebling of damages "does not change the due process concerns involved." Opposition at 13, n.9 relying on, *inter alia, Cook County, Ill. V. U.S. ex rel. Chandler*, 538 U.S. 119, 131 n.9 (2003). Contrary to the government's assertion, the Supreme Court has ruled, in *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784-85 (2000) that "the current version of the FCA imposes damages that are essentially punitive in nature . . ." (Scalia, J.). The *Cook* Court reaffirmed the ruling. *Id.,* 538 U.S. at 130.

The government asserts its claim does not violate the due process clause because the term "medically necessary" is not vague and CMS has not given "differing public interpretations of the medical necessity requirement ... (but) gave specific guidance that all tests in a panel had to be medically necessary." Opposition at 8-9. This assertion is incorrect – various carriers throughout the country provided different definitions of "medically necessary" through limiting the medical conditions or the number of antibodies it would reimburse. *See* Defendant's Local Rule 56(a)(1) Statement, ¶ 33 (describing the wide variance in how carriers across the country covered flow cytometry); *see also id.* ¶ 40 (describing *Impath* decision). The government now attempts to specifically define the "medically necessary" requirement for flow cytometry: "medically necessary" means a doctor must "determine which antibodies were necessary to treat a patient" through a "review the records for that patient" and then determine what antibodies are necessary "for that patient." Opposition at 6. The government never provided Dianon such a specific (and medically inappropriate[2]) definition either through the Center for Medicare and Medicaid Services (CMS) or the Connecticut carrier Local Medical Review Policy (LMRP) or Local Coverage Determination (LCD). *Exhibits 1 and 2.*

According to CMS "A Local Coverage Determination (LCD) ... is a decision by a fiscal intermediary or carrier whether to cover a particular service ... (i.e., *a determination as to whether the service is reasonable and necessary*)." *Exhibit 3* (emphasis supplied). Thus according to CMS, LMRPs and LCDs give healthcare

---

[2] As stated in Dianon's Motion to Exclude Dr. Flynn and Reply briefs, laboratories do not construct an individualized test for each patient. Memorandum in Support of Motion to Exclude Opinions of Dr. Flynn at 2, 6, Reply to Government's Opposition to Exclude Opinions of Dr. Flynn at 3-4. Rather, the laboratory constructs set, validated tests to ensure that all patients receive effective medical testing.

BA2DOCS1\#317666

providers the definition of medical necessity and, specifically, defined the term "medically necessary" for flow cytometry services. *See, e.g., Exhibit 1* at 1 ("Policy type: Local Medical necessity policy"). The government has not alleged that Dianon violated the published, written medical necessity policy for flow cytometry. Instead, the government now defines flow cytometry as a series of tests where "each of the tests (antibodies) performed must be medically necessary for the treatment of the patient and should not be performed in the absence of signs and symptoms of disease." Opposition at 5, 8-9 ("all tests" in a panel have to be medically necessary).

The government's current view that a flow cytometry test is a series or panel of individual tests each requiring a medical necessity determination fails for several reasons. First, flow cytometry is not a series of tests. CMS acknowledged:

> When flow cytometry is performed to diagnose lymphoma or leukemia, there is a single interpretation based on the quantification of all markers tested. There is not an interpretation of each marker individually... Our review of flow cytometry reports confirms that markers are interpreted (and reported) on a panel basis....

68 Fed. Reg. 49,030, 49,047-48. Flow cytometry is performed and interpreted as one test.

Second, whether or not a flow cytometry test could be considered a "screening test" is whether the test was ordered absent any signs or symptoms. Opposition at 3. The government has put forward no evidence that any doctor ordered a flow cytometry test without signs and symptoms of a blood disorder. In fact, the government acknowledges the opposite: in "all cases" Dr. Flynn reviewed, the ordering physician "suspected" a "blood related disease." Opposition at 18, *See, Mikes v. Straus*, 274 F.3d 687, 699 (2nd Cir. 2001) ("Inasmuch as (Plaintiff) challenges only the quality of defendants' ... tests

and not the decisions to order this procedure for patients, she fails to support her contention that the tests were not medically necessary").

Finally, the case law the government relies upon to assert that a laboratory can be liable under the FCA when a "panel of tests" are utilized but not all the tests in the panel are medically necessary is inapposite. Opposition at 5, n. 4. In *U.S. ex rel. Johnson v. MacNeal Health Services Corp.*, 2003 WL 1627815 (N.D.Ill. March 27, 2003), the relator claimed that the defendant laboratory's "requisition form improperly bundled tests together thus encouraging physicians to order tests that were not medically necessary." *Id.* at *2. First, as explained above, flow cytometry is one service and the physician requesting Dianon to perform flow cytometry requested one service, not "bundled tests." Second, the government admits that Dianon pathologists, not the referring physician, dictated the composition of the single flow cytometry service ordered. Amended Complaint at ¶39. Thus the scant analysis in the unpublished *MacNeal* case is inapposite to this case. *See also, United States v. Shaw*, 113 F.Supp. 2d 152, 157 (D.Mass. 2000) (anti-kickback case involving allegations that laboratory improperly bundled tests through requisition forms that "discouraged physicians from ordering only those tests that were medically necessary"). *Harris v. Benard*, 275 F.Supp. 2d 1 (D.D.C. 2003) does not even involve allegedly bundled tests, but "upcoded" claims, i.e. false representations of a higher level of medical care than what was actually performed. *Id.* at 7.[3]

---

[3] The *Harris* Court agreed that "mere disagreements over scientific opinion, methodology or judgment do not amount to claims under the FCA." 275 F.Supp. at 7. However, in *Harris*, the government alleged more – that the doctor over-billed Medicare for Evaluation and Management care he did not perform. *Id.* at 4. Though *Harris* was only at the initial pleading stage, presumably the government could make an FCA case because of the detailed information it provides doctors concerning billing for evaluation and management care at issue in the suit. *Exhibit 4*, Medicare Evaluation and Management Guidelines at 4, 10-11 (detailing the time spent and services provided for each level of care billed to Medicare along with additional reference materials). In this case, CMS provided no specific guidance to Dianon regarding how it should

BA2DOCS1\#317666

The government must provide Dianon "a reasonable opportunity to know what is prohibited, so that (it) may act accordingly." *Advance Pharmaceutical, Inc. v. United States*, 391 F.3d at 396. The law must "provide explicit standards" to ensure that the statute or regulation is not enforced indiscriminately. *Grayned v. City of Rockford*, 408 U.S. at 108-09. Dianon has presented evidence that the "medically necessary" standard is enforced indiscriminately. Though the government accuses Dianon of fraud for using a 26 antibody panel, a California Administrative law decision upheld the use of a 26 antibody panel as medically necessary. *Exhibit 5* at NHIC 000011. Similarly, in New York, medical providers routinely used panels with 26 or more antibodies during the relevant time period, with no allegation of fraud. *Exhibit 6*.

There are also uncertainties concerning what "medically necessary" means in the context of flow cytometry. *Compare Exhibit 7,* Dr. Flynn's report at 3 (certain antibodies are not medically necessary to diagnose a patient) with *Exhibit 8,* Dr. Stetler-Stevenson deposition at 96:7 – 99:2, 103:1-16 (same antibodies are medically necessary to diagnose a patient). Put simply, there was no set flow cytometry standard, uniformly enforced which provided Dianon notice of prohibited conduct and therefore evidence to create a "medically necessary" standard for flow cytometry put forward in this litigation should be excluded as such evidence violates Dianon's due process rights.

## II. THE GOVERNMENT CANNOT USE STATISTICAL SAMPLING TO ESTABLISH FALSE CLAIMS ACT LIABILITY

For each alleged false claim, the government must prove the "falsity" of the claim. *Mikes v. Straus*, 274 F.3d 687, 695 (2nd Cir. 2001). The government's theory in this case is that each patient requires an individualized review to determine what

---

design or bill its flow cytometry panel or that it must make an antibody by antibody determination of medical necessity for every patient.

antibodies were medically necessary. Opposition at 6. The government only produced evidence that Dianon performed medically unnecessary testing for those tests Dr. Flynn reviewed. The government admits that FCA <u>liability</u> can not be proven through statistical estimates. Opposition at 21 (statistical analysis used to prove damages not liability). Without evidence of liability or "falsity" for non-reviewed claims, evidence of damages should not be admitted.

The government does not dispute that:

- Its statistical sample was selected based on how many tests Dr. Flynn could review and stratified based on Dianon billing practices.

- Dr. Flynn reviewed the selected sample and based his determinations of medical necessity on the patient's suspected disease.

- No test or calculation was performed to ensure that the sample accurately reflected the different diseases present in the claim population.

- The only reason a statistician can apply the results from a sample to a larger population is based on the assumption that the random sample is representative of the entire population.

Given these undisputed facts, the government asserts "that the purpose of generating a random sample is to make the sample representative of the population." Opposition at 17. The government's reasoning is circular – a random sample must be representative of the entire population in order to apply analysis of the sample to the entire population. The government concludes that because the sample is random, it must be representative of the population. By the government's logic, all random samples are representative of the larger population.[4] The government cites to Dr. Yiannoutsos' calculations of the

---

[4] The fallacy of this logic is easily illustrated – a random sample of 30 coin tosses from a population of 2,000 could have 25 heads and 5 tails or vice versa. A statistician must test to ensure that the sample accurately reflects the population – particularly the variable that is being measured. In this case, Dr. Flynn's review measured the varying complexities of a patient's clinical presentation through the number of

-7-

standard error or confidence interval of Dr. Flynn's reviews as evidence that the sample is representative of the population. Opposition at 17, n. 14, *Exhibit 9* at 12. This calculation is irrelevant as it only measures the standard deviation of Dr. Flynn's review, not whether the sample represents the population.

The government claims, without support, that no test is needed to ensure the sample represents the claim population because: (1) the variability in disease presentation "is somewhat limited;" and (2) Dr. Flynn's panels "do not significantly vary in the number of antibodies considered medically necessary." Opposition at 18. The government further alleges that Dianon has not produced any evidence to show that the randomly generated sample is not representative of the population. *Id.* First, Dianon does not have the burden to establish the predicate for admissibility, the government does. Fed. R. Evid. 104(b). In fact, Dianon provided the court the dozens of different blood diseases that CMS recognizes as reimbursable – a number that exceeds the sample size for the first strata. Second, there were a large number of different presenting diseases which is why the statistician found it "difficult" to stratify on this basis. Memorandum at 7-8. Third, the number of antibodies Dr. Flynn allowed varied considerably by presenting disease. Dr. Yiannoutsos notes that Dr. Flynn found between 8 and 24 antibodies medically necessary. *Exhibit 9,* Report of Dr. Yiannoutsos at 13, Figure 2. There is no evidence to establish that those presenting symptoms that led to fewer (8 to 12) antibodies allowed versus those presenting symptoms that led to more (20 to 24) are represented in the appropriate proportions in the sample as in the entire population.

---

markers he would assign to each patient yet no test was performed to ensure that the sample accurately reflects the varying diseases or clinical presentations.

As the government notes, the "district court has discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." Opposition at 19 quoting *Boucher v. Suzuki Motors Corp.*, 73 F.3d 18, 21 (2nd Cir. 1996). In this instance, there is no reason given for assuming the sample is representative of the population and therefore no basis to admit calculations applying Dr. Flynn's results to the entire claim population.

The government cites numerous cases that purportedly establish the admissibility of statistical estimates for FCA damages – only one case supports this claim. Nearly all the cases establish that CMS may use statistical sampling to show <u>overpayment</u> in administrative proceedings. See Opposition at 11-13, *Exhibit 10,* Medicare Program Integrity Manual at §3.6.4, *State of Georgia v. Califano*, 446 F.Supp. 404 (N.D. Ga. 1977) (CMS use of statistical sampling to determine overpayment upheld) *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 (2nd Cir. 1991) (statistical sampling used to determine "restitution" sum); *Ratanasen v. State of California Dept. of Health Services*, 11 F.3d 1467, 1469 (same); *Chaves County Home Health Services v. Sullivan*, 931 F.2d 914, 922 (D.C. Cir. 1991) (CMS fiscal intermediaries may use statistical sampling to determine estimated overpayment); *Illinois Physicians Union v. Miller*, 675 F.2d 151, 155 (same); *Webb v. Shalaza*, 49 F.Supp. 2d 1114, 1123 (W.D. Ark. 1999); *Michigan Dept. of Ed. v. U.S. Dept. of Ed.*, 875 F.2d 1196, 1205-06 (6th Cir. 1989) (not an abuse of discretion for Dept. of Education to employ statistical sampling to determine overpayment).

The only case cited by the government that used statistical sampling in an FCA case is *U.S. v. Cabrera-Diaz*, 106 F. Supp. 2d 234 (D. Puerto Rico 2000). Opposition at

13. In *Cabrera-Diaz*, the government filed common law (overpayment) and FCA claims against defendants. *Id.* at 235. On Motion for Judgment by Default, the Court found that the statistical sampling evidence supported triple damages, but refused to impose civil penalties. *Id.* at 242-43. In that case, unlike this one, CMS could determine <u>exactly</u> how much time it paid through false billing compared with how much time it should have paid through medical record review. *Id.* at 240. In this case, there is a large discrepancy or variability over the "medically necessary" practice of flow cytometry – even the government's own experts disagree on this point. *See, e.g., Exhibits 7* and *8* (Dr. Stetler-Stevenson and Dr. Flynn disagree over the appropriate antibodies **needed to diagnose** a patient with suspected lymphoma).[5]

Given that no authority exists to use statistical estimates to establish FCA liability, the government asserts that it "will exercise its discretion and only ask for penalties on the claims associated with medical records actually reviewed by Dr. Flynn, not on extrapolated claims." Opposition at 13, n.9. This concession cannot save the government's claims for triple damages through extrapolated statistical estimates. The government's novel use of proving FCA damages through statistical sampling fails for several reasons. First, by the government's own admission there is no evidence of FCA liability to predicate an award of damages for the population of non-reviewed claims, i.e., no evidence of falsity. Second, subtracting the mean or average of Dr. Flynn's reviews from non-reviewed tests is, in effect, a retroactive cap on the number of medically

---

[5] The government incorrectly asserts that "(t)here is no evidence in the record that experts differ as to the utility of particular antibodies for particular patients." Opposition at 20-21. Dianon has put forward a large number of exhibits in its Motion for Summary Judgment and Motion to Exclude the Opinions of Dr. Flynn including testimony from experts that particular antibodies Dr. Flynn excludes are useful for particular diseases and particular specimens. *See, e.g., Defendant's Rule 56(a)(1) Statement* at ¶¶ 17-20 and exhibits attached (making determinations of antibody selection based on clinical presentation dangerous); ¶¶40-49 (use of large, comprehensive panels for entire patient population or specimen type accepted).

necessary antibodies allowed and therefore should be barred under *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212-213 (1988). The reimbursement cap in this case is the statistical mean the statistician subtracted from every Dianon test. Had Dianon consistently billed less than this retroactive cap, no damages would accrue. If it always billed more, the government is entitled to triple damages.

Third, the government claims that "there is no mismatch between the government's theory of the case and the method of Dr. Flynn's review." Opposition at 21. In its motion, Dianon asserts that the extrapolation of the estimated average of Dr. Flynn's review to all non-reviewed claims does not fit the government's theory of the case. Memorandum at 10-11. The government does not address this argument at all. The application of a "one-size-fits-all" panel of approximately 16 antibodies (or 12 antibodies in repeat cases) to all non-reviewed claims contradicts the government's definition of medical necessity – that a doctor must review each patient's clinical information and select only those antibodies that would detect the suspected disease. Opposition at 5, 8-9.

### III. THE GOVERNMENT'S AMENDED COMPLAINT FAILS TO ASSERT A CLAIM FOR DIANON'S BILLING MISTAKE AND CANNOT AMEND NOW

The government's entire theory of this case as articulated from its Amended Complaint through summary judgment is that Dianon submitted false claims for flow cytometry tests because it used a "one-size-fits-all" panel and failed to craft its antibody panel based on each individual patient's suspected disease or symptoms. Amended Complaint at ¶37. The government now claims that either the FCA allegations in its Amended Complaint are sufficiently broad to encompass Dianon's 1996 billing mistake

-11-

or the Court "can deem the complaint amended to conform to the evidence pursuant to Fed. R. Civ. P. 15(b)." Opposition at 25-26. The government's position ignores this Court's Order, its obligation to plead with particularity the basis of any alleged fraud, and its duties to amend its complaint promptly.

This Court's Order required the government "to amend its complaint to provide further specifics regarding the operation of the alleged scheme ... with exemplars showing the manner in which the scheme worked" to satisfy the Fed. R. Civ. P. 9(b). Both this Court's Order and Fed. R. Civ. P. 9(b) is designed to place the defendant on notice "of the specific fraudulent conduct against which they must defend." *In re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. 318, 332-37 (D.Conn. 2004) (Plaintiff must explain why and how the statements were false or fraudulent), *rev'd other grounds*, 469 F.3d 263 (2d Cir. 2006); *see also* Bly-*Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). The government's general allegations which it relies to state a claim ("when Dianon billed for flow cytometry a significant portion of the antibodies billed to Federal healthcare programs were not medically necessary") does not provide Dianon sufficient notice of the government's specific claims. Amended Complaint at ¶36.

The government claims that, if it is required to amend its complaint, the Court can deem the complaint amended pursuant to F. R. Civ. P. 15(b). First, Rule 15(b) only applies to cases that have been "tried by express or implied consent of the parties." *Id.* The government only cites cases where final judgment was entered based upon a factual record. *See, Clomon v. Jackson*, 988 F.2d 1314, 1316 (2nd Cir. 1993), *Bail v. Ramirez*, 2007 WL 959045 (S.D.N.Y. Mar. 29, 2007) at *1. This case has not been tried either through summary judgment or trial. In order to amend a complaint prior to judgment, a

party must request leave of Court through a motion to amend the complaint. Fed. R. Civ. P. 15(a). To the extent the government's Opposition can be construed as a motion to amend the complaint, the motion should be denied.

A court may deny a party's request to amend its complaint if, *inter alia*: (1) the amendment would be futile; (2) the amendment would cause undue prejudice; (3) the amendment was made in bad faith; or (4) the request was made with undue delay. *Stiller v. Colangelo,* 221 F.R.D. 316, 317 (D.Conn. 2004). The government admits it has known of its new claim for more than a year. Opposition at 23-24 (the government discovered Dianon's billing mistake after Dr. Flynn completed his review – no later than February 10, 2006). The government never moved to amend its complaint to conform with this Court's Order or Fed. R. Civ. Pro. 9(b) and does not provide good cause to do so now.

Though the government claims that Dianon was not prejudiced by its failure to amend the complaint, the assertion lacks merit. First, Dianon relied on this Court's Order and Rule 9(b) in constructing its defense. Dianon's entire litigation strategy, investigation, and defense were focused on the government's allegations specified in its Amended Complaint – that Dianon's use of the same, comprehensive panel of antibodies for every patient was not medically necessary. The error in Dianon's billing department was just a fact, among many, uncovered during the discovery process.

Had Dianon been placed on notice of this claim through a motion to amend the complaint it could have objected to such an amendment, and if allowed, conducted its investigation of the government's allegations, interviewed witnesses, reviewed documents, retained experts, and conducted depositions to defend the claim. On its face, this process prejudiced Dianon. *United States ex rel. RDC, Inc. v. Custer Battles, LLC,*

472 F.Supp.2d 787, 795-96 (E.D.Va. 2007) (rejecting plaintiff's attempt to "effect a constructive amendment of the complaint" because it "would seriously undermine the fairness of the litigation and unfairly prejudice defendants").

Finally, the government's belated request to amend its complaint would be futile. The government claim that arises out of Dianon's 1996 billing mistake is based on different facts, performed by different persons, with different knowledge than the claims asserted in the Amended Complaint and therefore would not relate back pursuant to Fed. R. Civ. P. 15(c)(2). The facts, occurrences, and knowledge involving Dianon's 1996 change in billing practices, billing error, 1997 investigation into the billing error, and partial reimbursement are completely different from whether Dianon's standard, comprehensive flow cytometry panel satisfies the "medical necessity" requirement. The government's claim based on Dianon's billing error is time barred because the proposed amendment occurred more than 10 years after the conduct occurred (1996). *See* 31 U.S.C. § 3731(b); *see generally United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263 (2d Cir. 2006) (dismissing government's FCA action on statute of limitation grounds). If the proposed amendment fails to state a claim upon which relief can be granted, it is a futile amendment and can be denied. *Marx v. Centran Corp.*, 747 F.2d 1536, 1551 (6th Cir. 1984) (upholding district court denial of request to amend complaint because claim time barred), *SmithKline Beecham v. Geneva Pharmaceuticals,* 287 F.Supp. 2d 576, 581 (E.D.Pa. 2002).

## IV.   CONCLUSION

The government alleges that "(d)ue process has been satisfied in this case because Dianon has been afforded the opportunity to challenge the government's (statistical)

sample or to offer its own sample." Opposition at 21. The government misconstrues Dianon's due process argument and the legal standard controlling it. The government's evidence of a medically necessary standard and Dianon's alleged violation of this standard is inadmissible because it is too vague and was provided too late to allow Dianon to avoid massive civil penalties, treble damages, and potential exclusion from Medicare participation. Attempts to rectify the vagueness of this definition in this litigation could not provide Dianon fair warning. Therefore, the government's evidence attempting to establish or define the "medically necessary" standard should be excluded as it violates Dianon's due process rights.

The government's attempt to use statistical evidence fares no better. The extrapolation of an estimated average of those opinions to the entire claim population should not be admissible because: (1) the government produced no evidence of falsity; (2) the government has failed to lay a proper foundation that the statistical sample represents the entire claim population; and (3) application of an estimated, average antibody panel to every test is the exact opposite of the government's theory of liability – a laboratory must review medical necessity for each patient.

Finally, the government provides no reason why it never amended its complaint and offers no reason why the Court should allow an amendment now. The only basis the government provides is that the specific fraudulent scheme (it never articulated) fits within the sweeping allegation that Dianon billed for medically unnecessary flow cytometry testing. This justification completely ignores the requirements imposed by Fed. R. Civ. P. 9(b) and this Court's Order as well as Dianon's right to know what alleged "fraudulent scheme" it must defend against. Moreover, the government's claim is

also time barred. See 31 U.S.C. § 3731(b); *see also Baylor Univ.*, 469 F.3d at 267-70. Therefore, the government should not be able to introduce the 1996 billing mistake as a new, alleged fraudulent scheme entitling recovery on its own. To the extent the government can lay a proper foundation to establish the relevancy of the billing mistake to the allegations made in the Amended Complaint, it may be admissible for that purpose alone.

Respectfully submitted,

_____
Bruce R. Parker, Admitted *Pro Hac Vice*
Bar No. PHV01015
William Piermattei, Admitted *Pro Hac Vice*
Bar No. PHV 01585
Venable LLP
1800 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400

_____
Mary A. Gambardella (ct #05386)
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601
Telephone (203) 348-3737

Robert Salcido, Admitted *Pro Hac Vice*
Fed. Bar No. 447951
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036

Attorneys for Dianon Systems, Inc.

-17-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May, 2007, a copy of the foregoing Reply to the Plaintiff's Opposition to Motion in Limine to Exclude Evidence of False Claims Act Liability was sent via U.S. mail, postage prepaid, to:

Richard M. Molot, Esq.
Assistant United States Attorney
U.S. Department of Justice
Connecticut Financial Center
157 Church Street
P.O. Box 1824
New Haven CT 06510

Bryan T. Carmody, Esq.
Maya & Associates, P.C.
266 Post Road East
Westport, CT 06880

_____
Dean R. Singewald II

BA2DOCS1\#317666