# EXHIBIT 5

 SOCIAL SECURITY ADMINISTRATION

Refer To: 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, et al.

Office of Hearings and Appeals
11000 Wilshire Boulevard, Room 8200
West Los Angeles, CA 90024

Date: AUG 27 2003

Impath
5300 McConnell Avenue
Los Angeles, CA 90066

## NOTICE OF DECISION – FULLY FAVORABLE

Enclosed is the Administrative Law Judge's decision on your claim. Please read this notice and the decision carefully.

### This Decision is Fully Favorable To You

Your Medicare contractor will process the decision and send you a letter about your benefits. If you do not hear anything about this decision for 60 days, contact your Medicare contractor or local Social Security office.

### The Medicare Appeals Council May Review the Decision on Its Own Motion

The Medicare Appeals Council may decide to review the Administrative Law Judge's decision on its own motion within 60 days from the date shown above. Review at the Medicare Appeals Council's initiative could make the decision less favorable or unfavorable to you.

### If You Disagree With the Decision

If you do not agree with the Administrative Law Judge's decision, you may file an appeal with the Medicare Appeals Council of the Department Appeals Board, DHHS.

### How to File an Appeal

To file an appeal, you must request the Medicare Appeals Council to review the decision in writing. You may use our Request for Review form (HA-520) or write a letter. You may file a request at any local Social Security office or mail it to Department Appeals Board, Medicare Operations Division, DHHS, Hubert H. Humphrey Building, Room 633F, 200 Independence Ave. S.W., Washington, DC 20201. Please include the Health Insurance Claim Number (HICN) (and Medicare Part B Docket Number, if applicable) shown above on any appeal you [illegible]

**CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER**

See Next Page

Impath (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, et al.)

Page 2 of 3

### Time to File an Appeal

If you wish to appeal the decision, you must file your request for review **within 60 days** from the date you receive this notice. The Medicare Appeals Council will assume that you received the notice within five days after the date shown above unless you show you received it later. If you file a request for review after the 60-day period, the Medicare Appeals Council will dismiss the request unless you show you had a good reason for not filing it on time.

### Time to Submit Any Additional Evidence

If you have any evidence you wish the Medicare Appeals Council to consider, you should submit it with your request for review.

### Medicare Appeals Council Action On Your Appeal

The Medicare Appeals Council may deny or grant your request for review. The Medicare Appeals Council will review the hearing decision only if one of the bases for review listed in regulation 20 CFR § 404.970 is present.

Your request for review places the entire record of your case before the Medicare Appeals Council. If the Medicare Appeals Council decides to review your case, it will review the parts of the decision with which you disagree and the parts with which you agree. The Medicare Appeals Council may make any part of the decision fully favorable, partially favorable or unfavorable to you.

The Medicare Appeals Council will send you a notice explaining its action. If the Medicare Appeals Council finds no reason to change the decision, the notice will explain why and tell you about your right to file a civil action in Federal district court. If the Medicare Appeals Council issues a fully favorable decision, the notice will enclose the decision. If the Medicare Appeals Council decides to limit the issues in your case, the notice will identify those issues and provide you an opportunity to comment. If the Medicare Appeals Council sends your case back to an Administrative Law Judge, the notice will enclose a remand order that explains why the case is being returned and what actions the Administrative Law Judge will take on your claim.

### If No Appeal and No Review on the Medicare Appeal Council's Own Motion

The Medicare Appeals Council may decide to review the decision on its own motion within 60 days of the date of this notice. If the Medicare Appeals Council does not review the decision on its own motion and you do not appeal the decision within the time permitted, you will lose your right to ask a Federal court to review the decision. This decision will become a final decision that cannot be revised, at your request or our initiative, except in certain circumstances.

**CONFIDENTIAL HEALTH INFORMATION -
SUBJECT TO PROTECTIVE ORDER**

See Next Page                                                                  NHIC000003

case 3:02-cv-01573-MRK Document 254-5 Filed 05/25/2007 Page 4 of 16

Impath (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, et al.)

Page 3 of 3



### Your Right to Representation

You may appoint an attorney or other qualified person to represent you in any appeal you may file with the Medicare Appeals Council.

### Disclosure and Privacy Act Notice

Any identifying information (including the name, address, Health Insurance Claim Number (HICN) or any other personal identifiers) relating to the named beneficiary(ies) in this decision is protected from disclosure to anyone other than the appellant or the named beneficiary(ies) by the Social Security Act and the Privacy Act. Disclosure of such identifying information without the express written consent of the named beneficiary(ies) is a violation of section 1106(a) of the Social Security Act, punishable by a $1,000 fine and/or one year imprisonment.

### Do You Have Any Questions

If you have any questions regarding the implementation of this decision, please contact the Medicare Carrier for your area.

Sally C. Reason
Administrative Law Judge

Enclosure

cc: National Heritage Insurance Company
   Medicare Hearing Department
   P.O. Box 515300
   Los Angeles, CA 90051-6600

**CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER**

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings and Appeals**

**DECISION**

**IN THE CASE OF** | **CLAIM FOR**

COPY

Impath
(Appellant)

Supplemental Medical Insurance Benefits (Part B)

Multiple
(Beneficiaries)

Multiple
(HICN)

National Heritage Insurance Company
(Carrier)

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, et al.
(Docket Numbers)

This matter is before the undersigned Administrative Law Judge pursuant to a request for hearing filed by the appellant on January 28, 2003. A hearing in this matter was held before the undersigned in West Los Angeles, California on August 13, 2003. The appellant was represented at the hearing by Moacyr Da Silva, M.D., medical director. Also appearing and testifying on behalf of the appellant were Lawrence Hertzberg, M.D. (director of hematology and oncology), and Joel Chan, M.D. (staff hematopathologist). The carrier was represented at the hearing by Maria Reyes, Supervisor of Medicare review, and Jessica Eugenio, R.N.

The undersigned has carefully considered all of the documents identified in the Master File and in the individual beneficiary files as exhibits, the testimony at the hearing, and the arguments presented.

THIS MATTER CONCERNS SERVICES FURNISHED BY THE APPELLANT TO A TOTAL OF 281 BENEFICIARIES AS SPECIFIED IN THE DECISIONS BY THE CARRIER HEARING OFFICERS DATED NOVEMBER 20, 2002, NOVEMBER 21, 2002 AND DECEMBER 4, 2002. THE TOTAL AMOUNT IN CONTROVERSY FOR THE SERVICES IN QUESTION IS $379.618.74. THE INDIVIDUAL CASES IN THIS MATTER ARE IDENTIFIED BY DOCKET NUMBERS 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 TO 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, 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 TO 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, 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 TO 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, AND 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, AND ARE INCLUDED IN THIS DECISION. THE MASTER FILE IS 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. A COMPLETE LIST OF THE INDIVIDUAL BENEFICIARIES IN THIS MATTER IS APPENDED TO THIS DECISION AS ATTACHMENT "A," AND IS INCORPORATED HEREIN BY REFERENCE.

**CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER**

Impath (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, et al.)

Page 2 of 7



## ISSUES

The general issue is whether payment may be made under Part B of title XVIII of the Social Security Act (the Medicare program) for services furnished by the appellant to various beneficiaries during the period January 2000 to August 2001.

The specific issues are whether the services in question are excluded from coverage under section 1862(a)(1)(A) of the Act and Centers for Medicare and Medicaid Services (CMS) regulation 42 CFR section 411.15(k) because the services were not reasonable and necessary for the diagnosis or treatment of the beneficiaries' illness or injury or to improve the functioning of a malformed body member.

If it is found that the services in question are excluded from coverage, a further issue is whether the beneficiaries and/or the appellant knew or could reasonably have been expected to know that the services were excluded from coverage, and whether Medicare payment may nevertheless be made for the excluded services pursuant to section 1879 of the Act.

## APPLICABLE LAWS AND REGULATIONS

Section 1832 of the Act establishes the scope of the benefits provided under the Medicare Part B supplementary medical insurance program. Section 1861 of the Act and CMS regulation 42 CFR section 410.3 define the types of services, including "medical and other health services," which are covered under Medicare, subject to various conditions, limitations and exclusions. Section 1861(s)(3) of the Act and 42 CFR 410.10(e) provide that "medical and other health services" include diagnostic laboratory tests and other diagnostic tests.

Section 1862(a)(1)A) of the Act and 42 CFR 411.15(k) provide that no payment shall be made under the Medicare program for items or services which are not medically reasonable and necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member.

Section 1879 of the Act and 42 CFR 411.400 provide that payment may still be made for services which have been found to be not medically reasonable and necessary under section 1862(a)(1)(A) of the Act, if the services were furnished by a provider who has accepted assignment of benefits for the services, and neither the provider nor the beneficiary knew or could reasonably have been expected to know that the services were excluded from coverage.

## PROCEDURAL HISTORY

The record shows that the appellant is an independent clinical laboratory that specializes in the performance of flow cytometry and immunocytochemistry testing for the purpose of determining the exact diagnosis and/or prognosis of various cancer cell types (primarily lymphoma and leukemia, as well as myeloma, myelodysplasia, carcinoma, and others). Specifically, flow cytometry is a technique which analyzes single cell suspensions from blood, bone marrow,

CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER

NHIC000006

Impath (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, et al.)   Page 3 of 7

spleen, body fluids, lymph nodes, and other fresh tissues by quantifying cell surface, cytoplasmic and nuclear antigens.

During the period January 2000 to August 2001 the appellant submitted assigned requests for payment to the Medicare carrier for flow cytometry tests rendered to numerous beneficiaries under Procedure Code 88180. In initial determinations the carrier allowed payment for 8 to 25 tests for each beneficiary. At the review level of the appeals process, the carrier allowed only 15 tests (antibodies) for each beneficiary. Thereafter, three (3) separate decisions were rendered by the carrier's hearing officers (Exhibits 3, 107 and 108). The decision dated November 20, 2002 involved 100 beneficiaries with a total billed amount of $138,675.00. The decision dated November 21, 2002 involved 100 benefiaries with a billed amount of $355,925.00. The decision dated December 4, 2002 involved 81 beneficiaries with a billed amount of $293,800.00. The total billed amount was $788,400.00.

In each decision the hearing officer held (with some exceptions as discussed below) that the appellant was now entitled to payment for up to 20 tests for each beneficiary, based on the opinion of the carrier's medical director, as well as the opinion of various medical advisors and advisory groups. Thus, the hearing officers determined that the following amounts were remaining in controversy:

November 20, 2002 decision - $84,055.26
November 21, 2002 decision - $217,404.68
December 4, 2002 decision - $78,158.80

Total remaining amount in controversy - $379,618.74

The appellant filed a request for an Administrative Law Judge hearing on January 28, 2003.

## DISCUSSION

After a thorough review of the documentary evidence and testimony, the undersigned finds that the flow cytometry studies performed by the appellant beyond the 20 markers or tests allowed by the carrier (up to 26 markers) were medically reasonable and necessary.

At the outset, the undersigned emphasizes that the carrier did not have a Final Local Medical Review Policy (LMRP) explaining it's criteria for coverage of flow cytometry tests at the time the services in question were rendered. Effective January 15, 2003 the carrier issued a LMRP that stated it's criteria for coverage of flow cytometry studies and immunocytochemical studies (Exhibit 113).

The LMRP provides that: the carrier will normally reimburse for a maximum of 20 flow cytometry studies that when billing under Procedure Code 88180, if more than 20 separate units are billed, medical necessity must accompany the claim and there will be an equal to claim more than 20 units to be billed; and that if additional units are necessary, the carrier will expect an explanation of this to be inserted in the electronic comment field of the claim, or a paper copy

CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER

Impath (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, et al.)

Page 4 of 7

of the lab sheet to be submitted with the claim.

Although the hearing officer decisions referred to above appear to have used the same criteria as in the subsequently adopted LMRP, the undersigned finds that since the LMRP was not in effect at the time the services in question were rendered, the carrier may not specifically apply the LMRP in this matter.

Moreover, based on the testimony by the physicians representing the appellant at the hearing, as well as additionally submitted documentation, the undersigned finds that the carrier has not provided a compelling justification for generally limiting the number of reimbursable markers to 20 in flow cytometry studies.

The physicians representing the appellant testified that they feel that the carrier should allow up to 26 markers for each of the flow cytometry studies in question. They stated that in 60% of the cases in their practice, they need to expand the number of antibodies in order to be medically effective. They need a more extensive evaluation than the carrier is allowing, in order to give a more precise diagnosis. They noted that many of these markers compliment each other. Based on the clinical information or body cite in 40% of their cases, they use less than 20 markers. They explained that in flow cytometry, as opposed to immunocytochemistry, they are working with fresh or live tissue. They stated that cases where in excess of 20 markers are tested primarily involve samples of peripheral blood, bone marrow or spleen. They also emphasized that bone marrow and spleen tissue samples require invasive procedures. Thus, the possible differential diagnoses are greater than those in fixed tissue samples. They stated that there is a brief window of time in flow cytometry, as the tissue cannot be fixed. They indicated that many of the cases they receive, as a reference lab, do not have an established diagnosis (as opposed to cases received in a hospital lab). The tests that they perform are used to establish a diagnosis.

Additionally, the physicians representing the appellant testified that they believe that the advisory committee which helped to formulate the carrier's policy on flow cytometry tests was primarily made up of pathologists from hospital affiliated labs, who usually work from an established diagnosis. Thus, they felt that the LMRP was based on standards which should not be applicable to a reference lab. They observed that the International and Canadian standards on flow cytometry were formulated by experts in this field, and have been incorporated into their practice (see Exhibit 112). They stated that they are a nationwide company, and that NHIC is the only carrier who has limited them to 20 markers in a flow cytometry study. They indicated that in New York, they have been very successful in appealing to the hearing officer level allowances for more than 20 markers (see Exhibit 109). They stated that they are prepared to defend each of the 26 markers in the case of each beneficiary. They emphasized that they performed up to 26 markers (the combinations of which vary from case to case) based on the medical history supplied by the treating or referring physician (a pathologist), as well as on the number of antibodies listed by the physician on the requisition form (see Exhibit 114). They noted that many hospitals do not have flow cytometry equipment.

The undersigned finds that the testimony by the physicians who represented the appellant is extremely persuasive, and is well supported by the overwhelming weight of the documentation in the record. The representatives from the carrier at the hearing did not offer any testimony or

CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER

NHIC000008

Impath (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, et al.)                                          Page 5 of 7

documentation which refuted or specifically responded to the appellant's well detailed position. In response to the undersigned's request, the carrier submitted (subsequent to the hearing) documentation showing the LMRPs for other carriers in the Medicare program regarding coverage of flow cytometry studies (Exhibit 117). This documentation establishes (consistent with the testimony of the appellant's representatives) that no other carrier has formulated a LMRP which allows only 20 markers or tests per study. The LMRPs from the other carriers appear to generally provide that flow cytometry studies will be reimbursed as long as the appropriate diagnosis codes supporting medical necessity are utilized, and provided that medical records supporting the medical necessity and frequency of the procedure are submitted. None of the LMRPs from the other carriers require that extra documentation demonstrating medical necessity be submitted in cases where more than 20 markers were performed, or that it would be unusual to expect a clinical laboratory to submit more than 20 markers in a given study. The carrier in this matter has yet to provide a specific and logical explanation stating why only 20 markers should be allowed without the provider submitting further documentation. Thus, the LMRP by the carrier in this matter appears to be significantly and unduly more burdensome to providers of flow cytometry studies than those of the other carriers, and would also appear to be inconsistent with the general consensus in the medical community regarding the possible number of markers in a flow cytometry study which are necessary to make an accurate diagnosis.

In this regard, the undersigned notes the following language published in the Federal Register pertaining to coverage of flow cytometry studies under Procedure Code 88180 (Exhibit 115):

> "Moreover, for a given clinical indication (for example, diagnosis of lymphoma based on lymph node examination) there is variation in the number of markers performed. The number of markers that are necessary depends, in part, on the pathologic information available to the pathologist at the time he/she orders flow cytometry. Therefore, for a given clinical indication (for example, diagnosis of lymphoma from a lymph node) a pathologist who chooses to perform flow cytometry before performing a microscopic examination of the tissue specimen (for example, a lymph node) may order more markers than a a pathologist who orders flow cytometry after performing a microscopic examination of the tissue specimen."

As indicated above, the hearing officer decisions dated November 21, 2002 and December 4, 2002 affirmed the carrier's allowance for 20 or more flow cytometry tests in the cases of approximately sixteen (16) beneficiaries in this matter (Exhibit 107, p. 3 and Exhibit 108, p. 5). However, neither the carrier nor the hearing officer provided any rationale stating why 20 or more flow cytometry tests were allowed for these particular beneficiaries but not for any of the others. Thus, the carrier has applied it's own policy regarding coverage of these studies in a vague and inconsistent manner. The undersigned emphasizes that neither the determinations from the carrier nor the hearing officer decisions cite or discuss what medical evidence was reviewed in making their findings to either allow or deny coverage for the tests in question. In this regard the undersigned does note that the appellant submitted voluminous documentation prior to the hearing which was not in the files sent to this office (and which has now been entered into the individual beneficiary files), but which the appellant maintained had been submitted to the

CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER

NHIC000009

Impath (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, et al.)  Page 6 of 7

carrier. Thus, as the files which were sent to this office were apparently incomplete, the undersigned cannot determine whether the carrier and the hearing officers reviewed all of the relevant medical evidence and other documentation in making their determinations and decisions.

Moreover, as published in it's final form, the carrier's LMRP does not provide any criteria specifying what it considers to be an "unusual case" "when the number of individual tests is very high" which would require additional documentation for the coverage of more than 20 tests (Exhibit 113, p. 20). A professional article submitted by the appellant entitled "Optimal Number of Reagents Required To Evaluate Hematolymphoid Neoplasias: Results of an International Consensus Meeting", published in 2001, stated that at a meeting organized by the Clinical Cytometry Society for the purpose of reaching a consensus on the minimum number of antibodies required for a full evaluation of hematologic and lymphoid neoplasias, almost all voting participants believed that the appropriate number of markers for complete characterization of acute leukemia would average 20-24 (Exhibit 111, p. 1).

For all of the foregoing reasons, the undersigned finds that the services in question were medically reasonable and necessary as defined in the Act and Regulations. The carrier shall therefore allow, in accordance with this decision, up to 26 flow cytometry tests (markers) in the case of each beneficiary covered by the hearing officer decisions of November 20, 2002, November 21, 2002 and December 4, 2002.

## FINDINGS

After careful consideration of the entire record, the undersigned Administrative Law Judge makes the following findings:

1. The amount in controversy is $379,618.74.

2. The beneficiaries in this matter were diagnosed as having various severe medical conditions which required flow cytometry studies in order to arrive at a more accurate diagnosis and/or prognosis.

3. Flow cytometry studies involving up to 26 tests were provided by the appellant to the beneficiaries during the period January 2000 to August 2001.

4. Assigned claims were submitted by the appellant to the carrier for the flow cytometry studies performed under Procedure Code 88180.

5. The carrier determinations and the hearing officer decisions (other than in a few cases) allowed no more than 20 tests for each beneficiary, and denied the remaining tests as being not medically reasonable or necessary.

**CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER**

NHIC000010

Impath (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, et al.)                                    Page 7 of 7

6. The undersigned finds that the remaining flow cytometry tests in issue, up to 26 markers, were medically reasonable and necessary and are not excluded from Medicare coverage under section 1862(a)(1)(A) of the Act and 42 CFR 411.15(k).

**DECISION** COPY

It is therefore the decision of the undersigned that the flow cytometry tests at issue are covered under the provisions of sections 1832(a)(1)(B) and 1861(s)(3) of the Social Security Act. Therefore, the carrier is directed to determine the allowable amount for the services and to make appropriate payment under Part B of Title XVIII of the Social Security Act.

Sally C. Reason
Administrative Law Judge

AUG 2 7 2003
Date

**CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER**

NHIC000011

## LIST OF EXHIBITS

**Appellant:** Impath, Inc **DOC. NO.** Multiple

**Beneficiary:** Multiple Beneficiaries (See attached list) **Xref SSN:** Multiple

COPY

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 1 | | Provider's Request for a fair hearing dated 3/14/02 | 1-4 |
| 2 | | Acknowledgment of request for Hearing Officer Decision, 8/26/02 | 1-2 |
| 3 | | Hearing Officer Decision dated 11/20/02 | 1-3 |
| 4 | | Copy of HO Decision to Beneficiary Josephine Perez (See file 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) | 1-3 |
| 5 | | Copy of HO Decision to Beneficiary Manuel Soares (See file 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) | 1-3 |
| 6 | | Copy of HO Decision to Beneficiary Wallace Hutson (See file 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) | 1-3 |
| 7 | | Copy of HO Decision to Beneficiary Maria Castillo (See file 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) | 1-3 |
| 8 | | Copy of HO Decision to Beneficiary Edgar Milstead (See file 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) | 1-3 |
| 9 | | Copy of HO Decision to Beneficiary Buu Lien Le (See file 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) | 1-3 |
| 10 | | Copy of HO Decision to Beneficiary Joyce Mohney (See file 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) | 1-3 |
| 11 | | Copy of HO Decision to Beneficiary John Cope (See file 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) | 1-4 |
| 12 | | Copy of HO Decision to Beneficiary Bonnie Parker (See file 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) | 1-1 |
| 13 | | Copy of HO Decision to Beneficiary Thelma Strain (See file 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) | 1-3 |
| 14 | | Copy of HO Decision to Beneficiary William Schoendaller (See file 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) | 1-3 |
| 15 | | Copy of HO Decision to Beneficiary Charles Hunter (See file 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) | 1-3 |
| 16 | | Copy of HO Decision to Beneficiary Shirley Summers (See file 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) | 1-3 |
| 17 | | Copy of HO Decision to Beneficiary Willmar Graichen (See file 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) | 1-3 |
| 18 | | Copy of HO Decision to Beneficiary Harry Dietz (See file 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) | 1-3 |
| 19 | | Copy of HO Decision to Beneficiary Dolores Erbert (See file 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) | 1-3 |
| 20 | | Copy of HO Decision to Beneficiary Delmar Terrell (See file 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) | 1-3 |
| 21 | | Copy of HO Decision to Beneficiary Richard Weber (See file 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) | 1-3 |
| 22 | | Copy of HO Decision to Beneficiary Hratchooh Badalian (See file 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) | 1-3 |
| 23 | | Copy of HO Decision to Beneficiary Leo Barron (See file 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) | 1-3 |
| 24 | | Copy of HO Decision to Beneficiary Ruby Meinicke (See file 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) | 1-1 |
| [illegible] | | Copy of HO Decision to Beneficiary Ruby [illegible] (See file 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) | 1-[illegible] |
| 26 | | Copy of HO Decision to Beneficiary Raymond Gutierrez (See file 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) | 1-3 |

**CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER**

CONFIDENTIAL HEALTH INFORMATION -
SUBJECT TO PROTECTIVE ORDER

## LIST OF EXHIBITS

| Appellant: | Impath, Inc | DOC. NO. Multiple |
|---|---|---|
| Beneficiary: | Multiple Beneficiaries (See attached list) | Xref SSN: Multiple |

COPY

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 27 | | Copy of HO Decision to Beneficiary Paul Thiene (See file 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) | 1-3 |
| 28 | | Copy of HO Decision to Beneficiary Sarah Stokes (See file 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) | 1-3 |
| 29 | | Copy of HO Decision to Beneficiary Mattie Wade (See file 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) | 1-3 |
| 30 | | Copy of HO Decision to Beneficiary Zare Hacopian (See file 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) | 1-3 |
| 31 | | Copy of HO Decision to Beneficiary Tony Puccio (See file 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) | 1-3 |
| 32 | | Copy of HO Decision to Beneficiary Earle Terry (See file 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) | 1-3 |
| 33 | | Copy of HO Decision to Beneficiary Evelyn Stewart (See file 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) | 1-3 |
| 34 | | Copy of HO Decision to Beneficiary Ellen Tucker (See file 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) | 1-3 |
| 35 | | Copy of HO Decision to Beneficiary Fred Wayland (See file 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) | 1-3 |
| 36 | | Copy of HO Decision to Beneficiary Marilyn Billingsley (See file 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) | 1-3 |
| 37 | | Copy of HO Decision to Beneficiary Marvin Edwards (See file 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) | 1-3 |
| 38 | | Copy of HO Decision to Beneficiary Hazel Roy (See file 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) | 1-1 |
| 39 | | Copy of HO Decision to Beneficiary Rena Bailey (See file 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) | 1-3 |
| 40 | | Copy of HO Decision to Beneficiary Vagarsak Aladadyan (See file 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) | 1-3 |
| 41 | | Copy of HO Decision to Beneficiary Aida Arbi (See file 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) | 1-3 |
| 42 | | Copy of HO Decision to Beneficiary Eleanor Boyle (See file 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) | 1-3 |
| 43 | | Copy of HO Decision to Beneficiary Thelma Voss (See file 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) | 1-3 |
| 44 | | Copy of HO Decision to Beneficiary Karl Beck (See file 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) | 1-3 |
| 45 | | Copy of HO Decision to Beneficiary Antonella Barnes (See file 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) | 1-3 |
| 46 | | Copy of HO Decision to Beneficiary Richard Beach (See file 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) | 1-3 |
| 47 | | Copy of HO Decision to Beneficiary Lesbia Bebon (See file 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) | 1-3 |
| 48 | | Copy of HO Decision to Beneficiary Maria Beltran (See file 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) | 1-3 |
| 49 | | Copy of HO Decision to Beneficiary Elsie Borden (See file 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) | 1-3 |
| 50 | | Copy of HO Decision to Beneficiary Betty Bailey (See file 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) | 1-3 |
| 51 | | Copy of HO Decision to Beneficiary Dean Flowers (See file 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) | 1-3 |
| 52 | | Copy of HO Decision to Beneficiary [illegible] Hensley (See file 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) | 1-3 |
| 53 | | Copy of HO Decision to Beneficiary Jeanette Baker (See file 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) | 1-3 |

NHIC000013

# LIST OF EXHIBITS

**Appellant:** Impath, Inc

**Beneficiary:** Multiple Beneficiaries (See attached list)

**DOC. NO.** Multiple

**Xref SSN:** Multiple

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 54 | | Copy of HO Decision to Beneficiary Mary Stauf (See file 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) | 1-3 |
| 55 | | Copy of HO Decision to Beneficiary Franklin Steck (See file 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) | 1-3 |
| 56 | | Copy of HO Decision to Beneficiary Esther Avila (See file 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) | 1-3 |
| 57 | | Copy of HO Decision to Beneficiary Shirley Williams (See file 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) | 1-3 |
| 58 | | Copy of HO Decision to Beneficiary Reba Winsor (See file 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) | 1-3 |
| 59 | | Copy of HO Decision to Beneficiary Frances Wallace (See file 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) | 1-3 |
| 60 | | Copy of HO Decision to Beneficiary J. Lynn Benson (See file 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) | 1-3 |
| 61 | | Copy of HO Decision to Beneficiary Rufus Cook (See file 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) | 1-3 |
| 62 | | Copy of HO Decision to Beneficiary Nettie Hay (See file 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) | 1-3 |
| 63 | | Copy of HO Decision to Beneficiary Juana Hinojosa (See file 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) | 1-3 |
| 64 | | Copy of HO Decision to Beneficiary Elly Connin (See file 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) | 1-1 |
| 65 | | Copy of HO Decision to Beneficiary Cecil Hildreth (See file 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) | 1-3 |
| 66 | | Copy of HO Decision to Beneficiary Phin Bui (See file 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) | 1-1 |
| 67 | | Copy of HO Decision to Beneficiary Delmar Hinton (See file 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) | 1-3 |
| 68 | | Copy of HO Decision to Beneficiary John Comer (See file 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) | 1-3 |
| 69 | | Copy of HO Decision to Beneficiary Maria Alleman (See file 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) | 1-3 |
| 70 | | Copy of HO Decision to Beneficiary Floris Dome (See file 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) | 1-1 |
| 71 | | Copy of HO Decision to Beneficiary Paul Davidson (See file 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) | 1-3 |
| 72 | | Copy of HO Decision to Beneficiary Raymond Backer (See file 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) | 1-3 |
| 73 | | Copy of HO Decision to Beneficiary Harold Rosenblatt (See file 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) | 1-3 |
| 74 | | Copy of HO Decision to Beneficiary James Eddens (See file 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) | 1-3 |
| 75 | | Copy of HO Decision to Beneficiary Marjorie Blake (See file 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) | 1-3 |
| 76 | | Copy of HO Decision to Beneficiary Leonard Hill (See file 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) | 1-1 |
| 77 | | Copy of HO Decision to Beneficiary Julio Oruna (See file 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) | 1-3 |
| 78 | | Copy of HO Decision to Beneficiary Lawrence Seneker (See file 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) | 1-3 |
| 79 | | Copy of HO Decision to Beneficiary [illegible] (See file 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) | 1-3 |
| 80 | | Copy of HO Decision to Beneficiary Benjamin Blando (See file 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) | 1-3 |

CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER

NHIC000014

## LIST OF EXHIBITS

**Appellant:** Impath, Inc **DOC. NO.** Multiple

**Beneficiary:** Multiple Beneficiaries (See attached list) **Xref SSN:** Multiple

COPY

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 81 | | Copy of HO Decision to Beneficiary Rosalie Hammonds (See file 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) | 1-3 |
| 82 | | Copy of HO Decision to Beneficiary Reta Bidwell (See file 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) | 1-3 |
| 83 | | Copy of HO Decision to Beneficiary Richard Heileman (See file 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) | 1-3 |
| 84 | | Copy of HO Decision to Beneficiary Goro Ichinose (See file 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) | 1-3 |
| 85 | | Copy of HO Decision to Beneficiary Avis Fairfield (See file 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) | 1-3 |
| 86 | | Copy of HO Decision to Beneficiary Rosemary Albert (See file 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) | 1-3 |
| 87 | | Copy of HO Decision to Beneficiary Bessie Ashworth (See file 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) | 1-3 |
| 88 | | Copy of HO Decision to Beneficiary Stewart Singdale (See file 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) | 1-3 |
| 89 | | Copy of HO Decision to Beneficiary Jake Smith (See file 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) | 1-3 |
| 90 | | Copy of HO Decision to Beneficiary Eliseo Carrasco (See file 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) | 1-3 |
| 91 | | Copy of HO Decision to Beneficiary Rhoda Candelaria (See file 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) | 1-3 |
| 92 | | Copy of HO Decision to Beneficiary Bruce Burton (See file 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) | 1-3 |
| 93 | | Copy of HO Decision to Beneficiary Andranik Tondoyan (See file 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) | 1-3 |
| 94 | | Copy of HO Decision to Beneficiary IL Thompson (See file 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) | 1-3 |
| 95 | | Copy of HO Decision to Beneficiary Donald Thompson (See file 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) | 1-3 |
| 96 | | Copy of HO Decision to Beneficiary Kazue Tada (See file 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) | 1-3 |
| 97 | | Copy of HO Decision to Beneficiary Catherine Sweet (See file 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) | 1-3 |
| 98 | | Copy of HO Decision to Beneficiary Nora Sutton (See file 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) | 1-3 |
| 99 | | Copy of HO Decision to Beneficiary Charles Strobl (See file 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) | 1-3 |
| 100 | | Copy of HO Decision to Beneficiary I. Page Sowers (See file 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) | 1-3 |
| 101 | | Copy of HO Decision to Beneficiary Margaret Reid (See file 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) | 1-3 |
| 102 | | Copy of HO Decision to Beneficiary Donald Prochaska (See file 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) | 1-3 |
| 103 | | Copy of HO Decision to Beneficiary Clester Bentzinger (See file 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) | 1-3 |
| 104 | | Hearing Officer's addendum to decision dated 12/16/02 | 1-4 |
| 105 | | Request for ALJ Hearing dated 1/28/03, with Attachment B | 1-4 |
| 106 | | NHIC Inter-Office [illegible] 10/23/02, from Arthur Lurvey, M.D. | [illegible] |

**CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER**

LIST OF EXHIBITS

**Appellant:** Impath, Inc **DOC. NO.** Multiple

**Beneficiary:** Multiple Beneficiaries (See attached list) **Xref SSN:** Multiple

COPY

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 107 | | Medicare Part B Hearing Officer Decision dated 11/21/02 with attached list of beneficiaries | 1-12 |
| 108 | | Medicare Part B Hearing Officer Decision dated 12/4/02 with attached list of beneficiaries | 1-13 |
| 109 | | Review determination by NHIC New York, 3/14/02, with attachments | |
| 110 | | Diagnostic utility of flow cytometric immunophenotyping in meylodysplastic syndrome (article), 8/01 | |
| 111 | | Optimal number of reagents required to evaluate hematolymphoid neoplasias (article), 2001 | |
| 112 | | U.S.-Canadian consensus recommendations re: flow cytometry | |
| 113 | | NHIC LMRP on Flow cytometry, effective 1/15/03 | |
| 114 | | Documentation from appellant re: allowances for Procedure Code #88180 | |
| 115 | | Federal Register information re: Procedure Code #88180 | |
| 116 | | Appointment of Representative form, 8/13/03 | |
| 117 | | Draft version of NHIC's LMRP, Final version of NHIC's LMRP on flow cytometry, and other contractor's LMRPs on flow cytometry | |

CONFIDENTIAL HEALTH INFORMATION - SUBJECT TO PROTECTIVE ORDER