# EXHIBIT 10

# Medicare Program Integrity Manual
## Chapter 3 - Verifying Potential Errors and Taking Corrective Actions

**Table of Contents**
*(Rev. 184, 01-26-07)*
*(Rev. 185, 01-26-07)*

**Transmittals for Chapter 3**

3.1 – Introduction

    3.1.1 – Provider Tracking System (PTS)

    3.1.2 – Evaluating Effectiveness of Corrective Actions

3.2 – Verifying Potential Error and Setting Priorities

    3.2.1 – Determining Whether the Problem is Widespread or Provider Specific

    3.2.2 - Administrative Relief from Medical Review in the Presence of a Disaster

3.3 – Articles

3.4 - Overview of Prepayment and Postpayment Review for MR Purposes

    3.4.1 – Determinations Made During Prepayment and Postpayment MR

        3.4.1.1 - Documentation Specifications for Areas Selected for Prepayment or Postpayment MR

            3.4.1.1.1 - Exception From the Uniform Dollar Limitation ("Therapy Cap")

        3.4.1.2 – Additional Documentation Requests (ADR) During Prepayment or Postpayment MR

        3.4.1.3 – Completing Complex Reviews

        3.4.1.4– Handling Late Documentation

    3.4.1.5 - Reopenings of Claims Denied Due to Failure to Submit Necessary Medical Documentation (remittance advice code N102 or 56900)

        3.4.2 – *Medical Review* Denials Notices

            3.4.2.1 - Role of Conditions of Participation Requirements When Making a Payment Decision

        3.4.3 – Documenting That A Claim Should Be Denied

        3.4.4 – Internal MR Guidelines

3.4.5 – Types of Prepayment and Postpayment Review

3.4.6 - Spreading Workload Evenly

3.4.7 - New Provider / New Benefit Monitoring

3.4.8 - Review That Involves Utilization Parameters

3.5 – Prepayment Review of Claims For MR Purposes

    3.5.1 – Automated Prepayment Review

        3.5.1.1 – Prepayment Edits

    3.5.2 – Categories of MR Edits

    3.5.3 – CMS Mandated Edits

3.6 – Postpayment Review of Claims For MR Purposes

    3.6.1 – Postpayment Review Case Selection

    3.6.2 – Location of Postpayment Reviews

    3.6.3 – Re-adjudication of Claims

    3.6.4 – Calculation of the Correct Payment Amount and Subsequent Over/Underpayment

    3.6.5 – Notification of Provider(s) or Supplier(s) and Beneficiaries of the Postpayment Review Results

    3.6.6 – Provider(s) or Supplier(s) Rebuttal(s) of Findings

    3.6.7 – Referral of Overpayments

    3.6.8 – Evaluation of the Effectiveness of Postpayment Review and Next Steps

    3.6.9 – Postpayment Files

3.7 – Appeal of Denials

3.8 – Overpayment Procedures

    3.8.1 – Overpayment Assessment Procedures

        3.8.1.1 – Definition of Overpayment Assessment Terms

    3.8.2 – Assessing Overpayment When Review Was Based on Statistical Sampling for Overpayment Estimation

    3.8.3 – Assessing Overpayment or Potential Overpayment When Review Was Based on Limited Sample or Limited Statistical Sampling for Overpayment Estimation Sub–sample

        3.8.3.1 – Contractor Activities to Support Assessing Overpayment

        3.8.3.2 – Conduct of Expanded Review Based on Statistical Sampling for Overpayment Estimation and Recoupment of Projected Overpayment by Contractors

        3.8.3.3 - Consent Settlement Instructions

During exit conferences, the contractor shall discuss the findings of the review. The provider or supplier must be allowed an opportunity to discuss or comment on the claims decisions.

### 3.6.3 - Re-adjudication of Claims
(Rev. 174, Issued: 11-17-06; Effective: 10-01-2006; Implementation: 10-06-06)

This section applies to all three types of postpayment reviews (error validation reviews, statistical sampling for overpayment estimation reviews, and consent settlement reviews).

For each claim in the sample, contractors re-adjudicate claims by making a coverage, limitation of liability and/or coding determination in accordance with PIM, chapter 3, section 3.4.1. Contractors must document all items/services incorrectly paid, denied or under coded (e.g., billed using a HCPCS or other code that is lower than what is supported by the medical record). They report services newly denied as a result of re-adjudication as positive values and they report services that were denied but are reinstated as a result of re-adjudication as negative values. Contractors document the amount of the over/underpayment and how it was determined. Intermediaries must do this in conjunction with Audit/Reimbursement staff. (See PIM, chapter 3, section 3.8.4.) Contractors must assure that their documentation is clear and concise and includes the basis for revisions in each case (this is important for provider appeals). They include copies of the NCD, coverage provision in interpretive manual or LCD and any applicable references needed to support individual case determinations. Compliance with these requirements facilitates adherence to the provider or supplier notification requirements in PIM, chapter 3, section 3.6.5.

### 3.6.4 - Calculation of the Correct Payment Amount and Subsequent Over/Underpayment
(Rev. 96, Issued: 01-14-05, Effective: 02-14-05, Implementation: 02-14-05)

This section applies to two types of postpayment reviews (statistical sampling for overpayment estimation reviews, and consent settlement reviews).

The results of the re-adjudication within the sampling units are used to determine the total overpayment amount for each provider or supplier under review. MR shall refer to instructions in PIM Chapter 3, §3.10 and to Exhibits 9, 10, 11 and 12 for projection methodologies based on provider types for claims where PPS was not in effect. For claims paid under PPS rules, contractors should develop projection methodologies in conjunction with their statistician that are consistent with the requirements found in PIM, chapter 3, section 3.10. Contractors must net out the dollar amount of charges underbilled.

Amounts of the following overpayments are to be included in each provider's or supplier's estimate of overpayments for the sample:

- Initially paid claims which are denied on re-adjudication, and for which the provisions of §1879 of the Act apply and the provider or supplier is liable for the overpayment because: (1) the provider or supplier knew or could reasonably have been expected to know that items or services were excluded from coverage, and (2) the provider or supplier was not without fault for the overpayment under §1870 of the Act.

- Initially paid claims which are denied on re-adjudication, and for which the provisions of §1879 do not apply, but the provider or supplier is liable because it is determined to be not without fault for the overpayment under §1870 of the Act.

- Initially denied claims which are found to be payable on readjudication (in whole or in part). Such claims should be included to reduce the amount of the overpayment sample. For appeal purposes, overpayment estimations will be separately identified for denials in which §1879 of the Act is applied, and denials in which §1879 of the Act does not apply. Where both types of denials occur in the sample, contractors calculate and document separate under/overpayments for the two types of denials. For recovery purposes, however, both denial results are combined.

### 3.6.5 – Notification of Provider(s) or Supplier(s) and Beneficiaries of the Postpayment Review Results
**(Rev. 149, Issued: 06-30-06, Effective: 07-31-06, Implementation: 07-31-06)**

This section applies to all three types of postpayment reviews (error validation reviews, statistical sampling for overpayment estimation reviews, and consent settlement reviews).

**A. Provider or Supplier Notification**

Contractor MR staff must prepare a letter to notify each provider or supplier of the results of the postpayment review. These letters may (but are not required to) contain a demand for repayment of any overpayments they may have made. Some contractors may wish to have another department issue the actual demand letter. Contractors must notify the provider(s) that the postpayment review has been completed even in those instances where no corrective actions or overpayments are involved.

Contractors must send the Notification of Postpayment Review Results to each provider or supplier within 60 days of the exit conference (for provider or supplier site reviews) or receipt of medical records (for contractor site reviews). If the contractors need more than 60 days, they are to contact their RO (for PSCs, the Primary GTL, Associate GTL, and SME) for an extension. Each letter must include:

- Identification of the provider(s) or supplier(s)--name, address, and provider or supplier number;

- The reason for conducting the review;

> **Formatted:** Indent: Left: 0", First line: 0.25", Bulleted + Level: 1 + Aligned at: 0.25" + Tab after: 0.5" + Indent at: 0.5"