UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. JAMES J. TIESINGA,<br><br>    Plaintiffs,<br><br>v.<br><br>DIANON SYSTEMS, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 3:02 CV 1573(MRK)<br>)<br>)<br>)   May 30, 2007<br>)<br>) |

**PLAINTIFF'S POST-HEARING SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF STUART FLYNN, M.D.**

The United States hereby submits its supplemental memorandum in opposition to Dianon's *Daubert* motion which addresses the issues raised by the Court and in Dianon's supplemental memorandum.

**I.   Alleged Inconsistencies in Dr. Flynn's Testimony Were Not Caused By Flaws in His Methodology But By Misleading Documents Used During Deposition By Dianon Counsel**

Dianon's *Daubert* motion is based primarily on what Dianon terms inconsistencies in Dr. Flynn's deposition testimony and the fact that Dr. Flynn allowed different numbers of antibodies for patients with the same provisional diagnosis. Dianon admits that in many of the instances during Dr. Flynn's deposition where they point to "inconsistencies" that the exhibit given to Dr. Flynn did not include Dianon's flow cytometry panel. *(Defendant's Supplemental Memorandum p. 3).* As Dr. Flynn testified during the *Daubert* hearing, he did not have Dianon's panel

committed to memory and it changed over time.[1] Thus, questioning him about which of the antibodies in Dianon's panel he would have allowed for various patients in the absence of whatever testing Dianon actually did was nothing more than a "memory test" rather than a test of the reliability of his method.

Further, several of the exhibits provided to Dr. Flynn during the deposition were not complete because they did not include medical information which would have been helpful to Dr. Flynn during his review of the records - *e.g.* blood work sent to Dianon by the referring physician. Thus, the inconsistencies pointed out by Dianon are, to a large extent, really nothing more than the results of Dianon playing "gotcha" - setting up an unfair test during the deposition and then claiming in its *Daubert* motion that the resulting "inconsistencies" prove that Dr. Flynn's methodology is at fault, rather than his memory or incomplete documents.

Dianon questioned Dr. Flynn specifically about one patient who was included in both of the samples reviewed by Dr. Flynn. In the 2003 review, Dr. Flynn allowed 13 antibodies, *(Exhibit 1)*, yet for the same patient in 2005 Dr. Flynn allowed 24 antibodies *(Exhibit 2)*. This "discrepancy" is easily explained if one looks at the patient records Dr. Flynn actually reviewed *(Exhibits 1 and 2)*. In the 2003 record, the blood work sent by the referring physician is clear as a bell. Thus, that information enabled Dr. Flynn to rule out certain possible diseases and so he allowed only 13 antibodies. In the 2005 record, that same blood work is virtually unreadable and so Dr. Flynn allowed more antibodies to account for more potential diseases *i.e.* he erred on the side of caution.

---

[1] The transcript of the Daubert hearing has been unavailable so the Government is not able to cite to the record of the hearing.

Further, while the results of Dr. Flynn's review of the medical records in the sample appear to show that Dr. Flynn assigned different numbers of antibodies in cases with the same provisional diagnosis, a more careful review of the records shows otherwise. If one really analyzes the results of Dr. Flynn's review, it is clear that for a particular provisional diagnosis, there is a core "panel" of antibodies Dr. Flynn allowed in all cases and that any differences involve the addition of antibodies to the core panel - something that benefits Dianon in the resulting damages calculation. For example, in the case a provisional diagnosis of CLL, Dr. Flynn allowed a core panel of 14 antibodies,[2] but in some cases allowed additional antibodies. Dr. Flynn's core panel is not all that different from the panel Lab Corp uses for its Chronic panel which includes similar antibodies.[3] Thus, Dr. Flynn, through his review, essentially selected core panels by suspected disease state and added to them as necessary depending on the amount of clinical information available to him.

Dr. Flynn's opinion is neither speculative nor conjectural, it does not represent an apples to oranges comparison, and as such, any other attacks on the underlying assumptions go to the weight, but not the admissibility, of the testimony.[4]

---

[2] Those antibodies were CD **3, 4, 5, 8, 10**, 14, 16, **19, 20, 23, 45, 56, Kappa** and *Lambda*. Most often added antibodies were CD **11c, 25,** 103, and 34. (Exhibit 3)

[3] Those antibodies are CD 2, **3, 4, 5**, 7, **8, 10, 11c, 19, 20,** 22, **23, 25,** 33, **45, 56,** FMC-7 and **Kappa and Lambda**. (Exhibit 4). Antibodies common to both Lab Corp's and Flynn's panel are in bold.

[4] *See e.g. Amorgianos v. National Railroad Passenger Corporation*, 305 F.3d 256, 267 (2d Cir. 2002) (minor flaw in an expert's reasoning not grounds for exclusion); *Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 134 (2d Cir. 2006) (weaknesses in expert's conclusions treated on cross-examination and by opposing expert testimony, not exclusion); *Olson v. Ford Motor Company,* 481 F.3d 619, 627 (8th Cir. 2007) (factual basis for expert opinion goes to credibility not admissibility); *United States v. Vargas,* 471 F.3d 255, 265

II.   **Dr. Flynn's Testimony Goes Primarily To Prove Damages and Dianon Bears the Burden of Any Uncertainty in the Results Of His Medical Review Because Dianon's Fraud Caused the Government's Damages**

Dr. Flynn's review of the patient records in this case goes primarily to helping calculate damages. Once it was clear that at least one antibody was not medically necessary, Dr. Flynn's review is really aimed at determining how many of the antibodies were not necessary so that the Government's damages could be quantified. The law is well-established that where the conduct of the defendant causes damages to the plaintiff, uncertainty as to the amount of damages does not preclude recovery. *See e.g. Lasker v. Bear, Sterns & Co.*, 757 F.2d 15, 19 (2d Cir. 1985); *EGL Gem Lab Ltd v. Gem Quality Inst.*, 90 F. Supp. 2d 277, 308 (S.D.N.Y. 2000); *Coastal Power Int'l Ltd. V. Transcontinental Capital Corp.*, 10 F. Supp. 2d. 345, 369 (S.D.N.Y. 1998); *Am. Jur. 2d,* s. 332 - Certainty Not Required as to Amount of Damages (2007). Rather, all the plaintiff need do is present the best evidence available sufficient to allow the jury to make a fair and reasonable estimate of the damages.

To the extent that there are any uncertainties in Dr. Flynn's results, Dianon bears the burden of that uncertainty, not the Government, because Dianon's fraud caused the Government's damages. The Government is not bound to prove its damages in any particular way - as long as the method chosen by the Government is reasonable and will assist the jury in reaching a fair assessment of the damages. In light of the medical necessity requirement, the Government's method of proving damages in this case is a reasonable one.[5]

---

(1st Cir. 2006) (same).

[5]   If Dianon wanted to present conflicting testimony from experts and propose a different method of calculating damages by, for example, having its experts testify about disease-specific panels Dianon could have used, it could have elected to do so. Simply because Dianon

### III.  Dr. Holden's Testimony Should Be Given Little Weight

The only other evidence in the record on this issue of the reliability of Dr. Flynn's methodology is Dr. Holden's testimony. Dr. Holden testified that she could not understand what Dr. Flynn did during his review. One reason for this might be that she also does not understand the medical necessity requirements. Dr. Holden testified at her deposition that she was "vaguely familiar" with the Medicare medical necessity requirements. *Holden, p. 45:23 to p. 46:2. (Exhibit 5)*. However, she does not appear to have made any effort to comply with those requirements in her own practice. She testified that she also does a one-sized-fits-all-panel, apparently ignores the signs and symptoms of the patient in choosing which antibodies to bill and performs 30 antibodies in every case - and then bills Medicare for all 30 antibodies. *Holden p. 19: 9-12 ; 46:25 to p. 47:9. (Exhibit 5)*. In addition, she testified that, while charging Medicare for all 30 antibodies, she capped the charges to local hospitals and oncologists at the equivalent of 15 antibodies. *Holden p. 162:12-24. (Exhibit 5 )*. Apparently when Medicare was not footing the bill she made an effort to limit the number of antibodies she charged for. As a result, Dr. Holden has a vested interest in ensuring a favorable outcome in this case for Dianon - apart from her retention as an expert in the case.

### IV.  Dr. Stetler-Stevenson's Testimony is Irrelevant and Inadmissible

Most of Dianon's supplemental memorandum consists of citations to the deposition testimony of Dr. MaryAlice Stetler-Stevenson. Dianon continually refers to her as "the

---

chose not to present another way of calculating damages does not mean that the Government's approach is not reasonable and will not assist the jury in its deliberations.

Government's expert on flow cytometry."[6] Dr. Stetler-Stevenson is not, as Dianon keeps asserting, "the Government's flow cytometry expert." Dr. Stetler-Stevenson is one of many Government employees who conduct flow cytometry tests. As Dianon well knows, several VA hospitals have flow cytometry labs. The 30(b)(6) witness for VA testified that she spoke to personnel at these labs and found that the VA's general practice was to start with small panels and add tests on as needed to refine the diagnosis - much like Dr. Flynn's practice. *Deposition Transcript of Maureen Regan, Department of Veteran Affairs 30(b)(6) Witness, p. 13:2-13, 16:6-19, 23:16 to 24:11, Exhibit 6*). Testimony from VA doctors, since they are not conducting clinical trials, but treating patients on a day-to-day basis would be more illustrative of the Government's practice, than Dr. Stetler-Stevenson's practice.[7] Thus, referring to Dr. Stetler-Stevenson as "the Government's expert" completely ignores the fact that the Dr. Stetler-Stevenson represents only one lab and that one lab in a clinical trial setting. She does not bill anyone for her testing nor is she bound by the medical necessity requirements. If she wants to perform panels of 50 antibodies, there is no rule or regulation to say she cannot. So, if she believes she needs CD2 to do her job, that does not mean that CD2 is medically necessary for all patients.

Thus, Dr. Stetler-Stevenson's testimony about the utility of various antibodies or her

---

[6] Dr. Stetler-Stevenson's expert testimony is inadmissible in this case because she has not been offered as an expert by either party and no expert disclosure or report was filed as required by Rule 26. The Government will be filing a motion in limine to limit or exclude Dr. Stetler-Stevenson's testimony from the trial of this matter at the appropriate time.

[7] This assumes any Government practice is relevant since the VA doctors also are not bound by the CMS medical necessity requirements just as NIH is not bound by that requirement.

practice of performing a large panel of antibodies is both inadmissible and irrelevant, and it clearly does not have any bearing on whether Dr. Flynn's methodology is reliable enough to aid the jury in its deliberations on the amount of Dianon's liability to the United States.

**V.    Conclusion**

None of the grounds presented by Dianon provides a valid basis for excluding Dr. Flynn's testimony. Rather, Dianon's alleged deficiencies in Dr. Flynn's methodology amount, at best, to issues for cross-examination. To the extent there is any uncertainty in the results of Dr. Flynn's review, because his testimony goes primarily to damages, Dianon bears the burden of that uncertainty because Dianon's fraud caused the Government's damages. The Government's use of Dr. Flynn's review to prove damages is a reasonable method to assist the jury to assess damages in this case, and his testimony should be admitted.

                          Respectfully submitted,

                          PETER D. KEISLER
                          Assistant Attorney General

                          KEVIN J. O'CONNOR
                          United States Attorney
                          RICHARD M. MOLOT
                          Assistant United States Attorney
                          Federal Bar No. CT21676
                          157 Church Street
                          New Haven, Connecticut 06510
                          (203) 821-3700

                          _____
                          JOYCE R. BRANDA
                          PATRICIA R. DAVIS
                          JENNIFER CHORPENING
                          Attorneys, Civil Division
                          Commercial Litigation Branch

Post Office Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0240
Attorneys for the United States

## CERTIFICATION OF SERVICE

I hereby certify that on this 30th day of May 2007, a true and correct copy of the Plaintiff's Supplemental Post-Hearing Memorandum in Opposition to Defendant's Motion to Exclude Testimony of Stuart Flynn M.D. was served by email and first-class mail on:

> Bryan T. Carmody, Esq.
> Maya & Associates, P.C.
> 266 Post Road East
> Westport, CT 06880
> bcarmody@mayalaw.com
>
> Robert Salcido, Esq.
> Akin Gump Strauss Hauer & Feld, LLP
> Robert Strauss Building
> 1333 New Hampshire Ave, NW
> Washington, D.C. 20036
> rsalcido@akingump.com
>
> Bruce R. Parker
> Venable LLP
> 1800 Mercantile Bank & Trust Bldg.
> 2 Hopkins Plaza
> Baltimore, Md. 21201
> brparker@venable.com

_____
Richard M. Molot
Assistant U.S. Attorney